NB:NR/RCH/SPN/HDM
F. #2018R01309

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

     - against -

RASHID SULTAN RASHID AL MALIK
ALSHAHHI,
     also known as "Rashid Al Malik"
     and "Rashid Al-Malik,"
THOMAS JOSEPH BARRACK and
MATTHEW GRIMES,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

I N D I C T M E N T

**1:21-cr-00371(BMC)(TAM)**

Cr. No. _____
(T. 18, U.S.C., §§ 371, 951(a),
  981(a)(1)(C), 1001(a)(2), 1512(c)(2), 2
  and 3551 et seq.; T. 21, U.S.C.,
  § 853(p); T. 28, U.S.C., § 2461(c))

THE GRAND JURY CHARGES:

          At all times relevant to this Indictment, unless otherwise indicated:

INTRODUCTION

I.    The Defendants

          1.    The defendant RASHID SULTAN RASHID AL MALIK ALSHAHHI,

also known as "Rashid Al Malik" and "Rashid Al-Malik" ("ALSHAHHI"), was a citizen of

the United Arab Emirates, residing primarily in California on an F-1 visa.

          2.    The defendant THOMAS JOSEPH BARRACK was a United States

citizen, residing primarily in California.  BARRACK served as the Executive Chairman of a

global investment management firm ("Company A"), an entity the identity of which is

known to the Grand Jury, headquartered in Los Angeles, California.  Between

approximately April 2016 and November 2016, BARRACK served as an informal advisor to

the campaign (the "Campaign") of a candidate (the "Candidate") in the 2016 United States Presidential Election.  Between approximately November 2016 and January 2017, BARRACK served as Chairman of the Presidential Inaugural Committee.  Beginning in January 2017, BARRACK informally advised senior United States government officials on issues related to United States foreign policy in the Middle East.  BARRACK also sought appointment to a senior role in the United States government, including the role of Special Envoy to the Middle East.

3.     The defendant MATTHEW GRIMES was a United States citizen, residing in California.  GRIMES was employed at Company A, reporting directly to the defendant THOMAS JOSEPH BARRACK.

II.    The Government of the United Arab Emirates

4.     The Government of the United Arab Emirates (hereinafter, the "United Arab Emirates") was a foreign government.

5.     Emirati Official 1, an individual whose identity is known to the Grand Jury, was a member of the leadership of the United Arab Emirates and held a high-ranking position in its armed forces.

6.     Emirati Official 2, an individual whose identity is known to the Grand Jury, was a high-ranking official in the United Arab Emirates with responsibilities related to its national security.

7.     Emirati Official 3, an individual whose identity is known to the Grand Jury, was a member of the United Arab Emirates Supreme National Security Council.

2

8.      Emirati Official 4, an individual whose identity is known to the Grand Jury, was a government official in the United Arab Emirates who reported to Emirati Official 2 and Emirati Official 3.

9.      Emirati Official 5, an individual whose identity is known to the Grand Jury, was a high-ranking United Arab Emirates diplomat.

III.    Regulations for Agents of Foreign Governments

10.     An individual acting in the United States as an agent of a foreign government, such as the United Arab Emirates, was required to provide prior notification to the Attorney General of the United States (the "Attorney General"), under rules and regulations established by the Attorney General. See 18 U.S.C. § 951(b); 28 C.F.R. §§ 73.1 et seq.

11.     The term "agent of a foreign government" included an individual who agreed to operate within the United States subject to the direction or control of a foreign government or official. See 18 U.S.C. § 951(d). By statute, the term "agent of a foreign government" did not include:

(a)     a duly accredited diplomatic or consular official of a foreign government, recognized by the United States Department of State;

(b)     an officially and publicly acknowledged and sponsored official or representative of a foreign government;

(c)     an officially and publicly acknowledged and sponsored member of the staff of, or employee of, any such officer, official or representative described in subsection (a) or (b), who was not a United States citizen; or

(d)     any person engaged in a legal commercial transaction.

3

IV.     The Defendants' Actions in the United States as Agents of the United Arab Emirates

        12.     The defendants RASHID SULTAN RASHID AL MALIK

ALSHAHHI, also known as "Rashid Al Malik" and "Rashid Al-Malik," THOMAS JOSEPH

BARRACK and MATTHEW GRIMES acted, and aided and abetted one another in acting, in

the United States, as agents of the United Arab Emirates, a foreign government.

        13.     Government officials in the United Arab Emirates, including Emirati

Official 1, Emirati Official 2, Emirati Official 3 and Emirati Official 4, tasked the defendants

RASHID SULTAN RASHID AL MALIK ALSHAHHI, THOMAS JOSEPH BARRACK

and MATTHEW GRIMES with, variously and among other things, (a) influencing public

opinion, the foreign policy positions of the Campaign and the foreign policy positions of the

United States government; (b) obtaining information about foreign policy positions and

related decision-making within the Campaign and, at times, the United States government;

(c) developing a backchannel line of communication with the Campaign and, at times,

officials of the United States government; and (d) developing plans to increase the United

Arab Emirates' political influence and to promote its foreign policy preferences.

        A.     Initial Meeting and the Energy Speech

        14.     In or about May 2016, the defendant THOMAS JOSEPH BARRACK

took steps to establish himself as the key communications channel for the United Arab

Emirates to the Campaign.

        15.     On or about April 24, 2016, the defendant RASHID SULTAN

RASHID AL MALIK ALSHAHHI emailed the defendant THOMAS JOSEPH BARRACK

to confirm that BARRACK would meet with Emirati Official 2 on May 1, 2016 in the United

Arab Emirates.   The following day, on or about April 25, 2016, ALSHAHHI emailed

4

BARRACK that Emirati Official 2 was "[v]ery much focusing on building the right relationships to help the country and he knows ambassadors can't do much and they are limited even if they are active." In his response, BARRACK wrote that Emirati Official 2 should know that BARRACK had been a thirty-year partner with the Candidate and that BARRACK had staffed the Campaign. In reply, ALSHAHHI wrote that Emirati Official 2 and other senior United Arab Emirates officials wanted a "long term relationship with [BARRACK] and it will be great to speak freely and suggest strategies and to help them with contacts and relationships."

16.     On or about May 1, 2016, the defendants RASHID SULTAN RASHID AL MALIK ALSHAHHI and THOMAS JOSEPH BARRACK met with Emirati Official 2 and Emirati Official 4 in the United Arab Emirates. That same day, BARRACK emailed ALSHAHHI to ask whether Emirati Official 2 had been satisfied with the meeting. ALSHAHHI replied, "Beyond expectations and excited to move forward! And asked for more great ideas."

17.     On or about May 9, 2016, the defendant RASHID SULTAN RASHID AL MALIK ALSHAAHI informed the defendant THOMAS JOSEPH BARRACK that Emirati Official 4 had confirmed that BARRACK would be the "the only channel to the Candidate" for the United Arab Emirates.

18.     On or about May 13, 2016, the defendant THOMAS JOSEPH BARRACK emailed the defendant RASHID SULTAN RASHID AL MALIK ALSHAHHI a draft speech to be delivered by the Candidate about United States energy policy (the "Energy Speech") and asked for feedback. ALSHAHHI forwarded the email to Emirati Official 4.

5

Thereafter, ALSHAHHI sent a text message to BARRACK proposing language for the draft speech that praised Emirati Official 1 by name and stated, "This is what I got from them."

19. Later that day, the defendant THOMAS JOSEPH BARRACK emailed the defendant RASHID SULTAN RASHID AL MALIK ALSHAHHI a revised draft of the Energy Speech that praised Emirati Official 1 by name. ALSHAHHI replied, "They loved it so much! This is great!" BARRACK further advised ALSHAHHI that the revised draft of the Energy Speech was "[t]otally [c]onfidential," writing that he would deliver the revised draft to the Campaign the following day, and highlighting the "reference to [Emirati Official 1]." ALSHAHHI forwarded BARRACK's email to Emirati Official 4.

20. On or about May 17, 2016, the defendant RASHID SULTAN RASHID AL MALIK ALSHAHHI sent a text message to the defendant MATTHEW GRIMES stating that he was "excited for the speech . . . . This will be huge." ALSHAHHI further wrote that he and other United Arab Emirates officials would arrange "another meeting for [the defendant THOMAS JOSEPH BARRACK] and [Emirati Official 2]," and that the Energy Speech would "make us heroes."

21. On or about May 18, 2016, the defendant RASHID SULTAN RASHID AL MALIK ALSHAHHI emailed the defendant THOMAS JOSEPH BARRACK, "Everyone back home looking forward for the speech from [the Candidate]! They are following and excited."

22. On or about May 20, 2016, a senior member of the Campaign emailed the defendant THOMAS JOSEPH BARRACK a revised draft of the Energy Speech that no longer contained the language praising Emirati Official 1. BARRACK responded that they needed to "get one paragraph to balance foreign-policy concerns for energy dependent allies

6

in the gulf." In a subsequent email, BARRACK sent the senior member of the Campaign proposed language for the Energy Speech in which the Candidate would pledge to "work together with our supportive allies in the Gulf." On or about May 21, 2016, BARRACK emailed the proposed text to the defendant RASHID SULTAN RASHID AL MALIK ALSHAHHI.

23.     On or about May 26, 2016, the Candidate delivered the Energy Speech, including a pledge to "work with our Gulf allies." The defendant RASHID SULTAN RASHID AL MALIK ALSHAHHI emailed the defendant THOMAS JOSEPH BARRACK to praise the Energy Speech as "[a]mazing," noting that the Candidate "mentioned the Gulf allies which is great" and that Emirati Official 1 had watched the Candidate deliver the Energy Speech. Emirati Official 4 also emailed BARRACK, stating: "Congrats on the great job today, [Emirati Official 2] and everybody here are happy with the results."

B.     Media Appearances

24.     In or about and between May 2016 and October 2017, the defendant THOMAS JOSEPH BARRACK repeatedly promoted the United Arab Emirates and its foreign policy interests during media appearances after soliciting direction from the defendant RASHID SULTAN RASHID AL MALIK ALSHAHHI and United Arab Emirates officials. For example:

(a)     On or about May 31, 2016, BARRACK gave a nationally televised interview on a United States television channel during which he praised the United Arab Emirates. BARRACK forwarded an Internet link to the interview to ALSHAHHI. BARRACK then advised ALSHAHHI that he had a second nationally televised interview scheduled shortly thereafter and asked, "Anything [Emirati Official 2] would like me to

7

discuss on [the second nationally televised interview] that I did not do on [the first nationally televised interview]?"  ALSHAHHI responded that he would check and then advise BARRACK.

       (b)    On or about June 2, 2016, BARRACK emailed the news anchor for his upcoming nationally televised interview and indicated that he wished to discuss the Middle East during the interview.  That same day, BARRACK emailed ALSHAHHI to remind ALSHAHHI of the upcoming interview, stating that the Middle East would be a "big topic" during the interview.  In response, ALSHAHHI relayed to BARRACK that Emirati Official 2 and Emirati Official 3 had tried to call BARRACK and that they "wanted to thank [BARRACK]."  After BARRACK asked whether Emirati Official 2 and Emirati Official 3 had additional "themes" they wanted BARRACK to promote during the interview, ALSHAHHI stated that Emirati Official 3 and Emirati Official 4 would call BARRACK.  In a separate email, ALSHAHHI provided talking points for BARRACK's upcoming interview and reiterated that United Arab Emirates officials had been pleased with his nationally televised interview on May 31, 2016.  In a subsequent email, ALSHAHHI advised BARRACK, "[Emirati Official 2] was extremely impressed and happy with your [first televised interview]!  He showed it to [Emirati Official 1] and you are the new trusted friend!  [Emirati Official 2] will call you anytime in the next few days to thank u [sic] in person!"  ALSHAHHI added that Emirati Official 1 and Emirati Official 2 were "extremely excited on what we can achieve."  BARRACK replied, "You are there [sic] secret weapon."  The following day, ALSHAHHI emailed BARRACK that Emirati Official 3 "was complimentary after the phone call" with BARRACK.

8

(c)     On or about July 1, 2016, BARRACK participated in another nationally televised interview during which he praised the United Arab Emirates. Afterwards, ALSHAHHI emailed BARRACK, stating, "Great interview . . . send me the link will send it to [the United Arab Emirates] now."

(d)     On or about July 18, 2016, BARRACK participated in a nationally televised interview during which he repeatedly praised the United Arab Emirates. Thereafter, BARRACK emailed ALSHAHHI, "I nailed it on [the television network that televised the interview] [t]his morning . . . for the home team. Watch and send it."

(e)     On or about July 21, 2016, BARRACK participated in a nationally televised interview during which he praised Emirati Official 1 and the United Arab Emirates. Afterwards, ALSHAHHI text messaged BARRACK that he would send the interview "to [the United Arab Emirates] ASAP." The defendant MATTHEW GRIMES emailed ALSHAHHI an Internet link to the interview. ALSHAHHI sent a text message to GRIMES stating that "the feedback is amazing."

(f)     On or about August 2, 2016, Emirati Official 4 emailed ALSHAHHI talking points promoting the United Arab Emirates. ALSHAHHI then emailed those talking points to BARRACK and GRIMES.

(g)     On or about September 27, 2016, BARRACK participated in a nationally televised interview during which he praised the United Arab Emirates, Emirati Official 1 and Emirati Official 2. Thereafter, GRIMES sent a text message to ALSHAHHI stating that BARRACK had given a "shout out" to Emirati Official 1 and Emirati Official 2 during the interview. ALSHAHHI subsequently sent a text message to Emirati Official 4 containing an Internet link to what appeared to be BARRACK's interview and directed

9

Emirati Official 4 to the portion of the interview where BARRACK "mentioned the names." Emirati Official 4 replied, "He is doing well." GRIMES also advised ALSHAHHI that Emirati Official 1 had sent a text message to BARRACK "congratulating [BARRACK] about the show!" Thereafter, ALSHAHHI also advised GRIMES that Emirati Official 2 had watched BARRACK's interview.

        (h)     On or about January 28, 2017, GRIMES sent a text message to ALSHAHHI containing a link to a news article reporting that Executive Order 13769, which restricted admission of citizens from seven Middle Eastern countries from entry into the United States for ninety days, did not apply to the United Arab Emirates. ALSHAHHI responded, "This is [BARRACK] time. When he does interview." Three days later, on or about January 31, 2017, BARRACK participated in a nationally televised interview during which he discussed Executive Order 13769, including the need to promote "good Islam" and partner with "our allies" in the Middle East. Following the interview, GRIMES sent ALSHAHHI an Internet link to the interview. ALSHAHHI replied, "Wow that's exactly what I wanted."

        C.     Preparation of Strategy to Promote Emirati Policy Interests and Meeting in Morocco

        25.     Beginning in approximately June 2016, the defendants RASHID SULTAN RASHID AL MALIK ALSHAHHI, THOMAS JOSEPH BARRACK and MATTHEW GRIMES, acting at the direction of United Arab Emirates officials, drafted materials proposing a strategy for the United Arab Emirates to promote its foreign policy interests and increase its political influence in the United States.

26.     On or about June 7, 2016, the defendant RASHID SULTAN RASHID

AL MALIK ALSHAHHI emailed the defendant THOMAS JOSEPH BARRACK that

Emirati Official 4 had "asked [ALSHAHHI] to work together in building a strategy for us

moving forward regardless of the future election results to maintain strong relationships

. . . and benefit from it for UAE."   On or about July 11, 2016, ALSHAHHI sent a text

message to the defendant MATTHEW GRIMES to determine whether he and BARRACK

had made any progress on the strategy.   GRIMES responded that he had spoken to

BARRACK about it and would prepare a proposal.   The following day, GRIMES emailed

ALSHAHHI a rough draft of a strategy proposal, which stated that the United Arab Emirates

had historically "not used its vast economic surplus to obtain a level of influence with which

the country should rightfully command."   The strategy proposal recommended that the

United Arab Emirates use its financial investments to "increase [its] influence with USA and

European governments and people."   It further proposed the creation of a "council by which

all investments made by the [United Arab Emirates] are intertwined [with] the strategic

vision of the country's foreign and domestic policies," and which would "mandate that all

investments in operating companies use the resources at their disposal to influence [United

Arab Emirates] policy abroad."

27.     On or about July 14, 2016, the defendant MATTHEW GRIMES

emailed the defendant RASHID SULTAN RASHID AL MALIK ALSHAHHI a draft

presentation further outlining the strategy proposal.   The presentation proposed the creation

of a guidance board "through which all [United Arab Emirates] investments are intertwined

with the strategic vision of the country's foreign and domestic policies as well as economic

goals," with the guidance board mandating "that all investments in operating companies use

11

the resources at their disposal to influence [United Arab Emirates' interests] abroad . . . and partner with leading [United Arab Emirates] friendly-influential figures to do so." The presentation further proposed that the defendant THOMAS JOSEPH BARRACK work directly with Emirati Official 2 to execute the proposed strategy.

28. On or about July 16, 2016, the defendant RAHSID SULTAN RASHID AL MALIK ALSHAHHI emailed the defendant THOMAS JOSEPH BARRACK, "Our friends are extremely happy and proud of our relationships with you! Beyond expectations!"

29. On or about July 20, 2016, the defendant RASHID SULTAN RASHID AL MALIK ALSHAHHI sent a text message to the defendant MATTHEW GRIMES that stated, "Let's finish Saudi/UAE/USA strategy." A few days later, on or about July 25, 2016, GRIMES sent a text message to ALSHAHHI stating that he would continue to revise the presentation on the strategy proposal. ALSHAHHI responded that they would be meeting with Emirati Official 2 the following week. On or about July 26, 2016, ALSHAHHI sent a text message to GRIMES stating that United Arab Emirates officials were "expecting ou[r] strategy." GRIMES responded that the defendant THOMAS JOSEPH BARRACK "ha[d] the presentation and is reviewing it."

30. On or about July 27, 2016, the defendant MATTHEW GRIMES emailed the defendant RASHID SULTAN RASHID AL MALIK ALSHAHHI an updated version of the presentation, which had been revised to indicate that it would be presented by the defendant THOMAS JOSEPH BARRACK and ALSHAHHI in August 2016.

31. On or about August 3, 2016, the defendants THOMAS JOSEPH BARRACK, MATTHEW GRIMES and RASHID SULTAN RASHID AL MALIK

12

ALSHAHHI flew to Tangier, Morocco for the purpose of meeting with Emirati Official 2.
After arriving in Morocco, BARRACK met with Emirati Official 2.

   32. On or about August 7, 2016, the defendant RASHID SULTAN
RASHID AL MALIK ALSHAHHI emailed the defendant THOMAS JOSEPH BARRACK
and provided the email address for Emirati Official 2.   On or about August 16, 2016, the
defendant MATTHEW GRIMES sent a text message to ALSHAHHI stating that BARRACK
"[l]oved you[r] messages from [Emirati Official 2]."   ALSHAHHI replied, "They are
extremely happy. . . . I [g]ave [Emirati Official 2] [BARRACK's] private email."

   33. On or about August 22, 2016, the defendant THOMAS JOSEPH
BARRACK emailed Emirati Official 2, blind copying the defendant RASHID SULTAN
RASHID AL MALIK ALSHAHHI, and advised Emirati Official 2, among other things, "We
are on track on all counts and I have updated your team."   ALSHAHHI forwarded
BARRACK's email to Emirati Official 4.

   34. On or about December 14, 2016, the defendant MATTHEW GRIMES
emailed the defendant RASHID SULTAN RASHID AL MALIK ALSHAHHI a document
summarizing the strategy proposal, which stated in relevant part that "[w]hile the primary
purpose of the platform [will be] to achieve outsized financial returns, it will also accomplish
a secondary mandate to garner political credibility for its contributions to the policies of [the
recently elected Candidate, hereinafter, the "President-Elect"]. . . . We will do so by sourcing
investing, financing, operationally improving, and harvesting assets in those industries which
will benefit most from a [President-Elect] Presidency."

D.    The Encrypted Messaging Application

35.    In or about and between September 2016 and October 2016, the defendants THOMAS JOSEPH BARRACK and MATTHEW GRIMES, with the assistance of the defendant RASHID SULTAN RASHID AL MALIK ALSHAHHI, acquired a dedicated cellular telephone and installed a secure messaging application to facilitate BARRACK's communications with senior United Arab Emirates officials.

36.    On or about September 6, 2016, the defendant MATTHEW GRIMES sent a text message to the defendant RASHID SULTAN RASHID AL MALIK ALSHAHHI stating, "[BARRACK] wanted me to let you know that we need [to] setup meetings within the next two weeks for [Emirati Official 2] and our friends.   Everybody is coming to [BARRACK] asking for personal meetings with [the Candidate].   So we need to do it soon." ALSHAHHI replied, "Relayed the msg."

37.    On or about September 25, 2016, the defendant THOMAS JOSEPH BARRACK emailed the defendant RASHID SULTAN RASHID AL MALIK ALSHAHHI to advise that Emirati Official 1 had called BARRACK.   The following day, an employee at Company A emailed BARRACK that ALSHAHHI had been "[l]ooking to reach you on behalf of his Abu Dhabi contacts."   That same day, Emirati Official 4 sent a text message to ALSHAHHI stating that Emirati Official 1 and BARRACK were "supposed to talk today," and that Emirati Official 4 had sent BARRACK "a link for a secure application [Emirati Official 1] uses."   ALSHAHHI then sent a text message to the defendant MATTHEW GRIMES directing him to tell BARRACK that Emirati Official 4 had sent him the aforementioned message.   ALSHAHHI separately sent a text message to BARRACK stating that "they were trying to connect with u [sic] from [the United Arab Emirates] today."

14

38.     On or about September 27, 2016, Emirati Official 4 sent a text message
to the defendant RASHID SULTAN RASHID AL MALIK ALSHAHHI to inquire whether
ALSHAHHI had contacted the defendant THOMAS JOSEPH BARRACK "[r]egarding the
application." Subsequently, ALSHAHHI advised Emirati Official 4 that Emirati Official 4
should brief Emirati Official 2 "ASAP." Thereafter, ALSHAHHI sent a text message to the
defendant MATTHEW GRIMES stating that Emirati Official 2 wanted to speak with
BARRACK. Subsequently, ALSHAHHI advised GRIMES that he needed to update "the
AD [Abu Dhabi] guys" regarding the secure messaging application that Emirati Official 4
had sent to BARRACK on or about September 25, 2016. GRIMES responded:
"Downloading now."

39.     On or about September 28, 2016, the defendant RASHID SULTAN
RASHID AL MALIK ALSHAHHI sent a text message to the defendant MATTHEW
GRIMES advising him to acquire a dedicated cellular telephone on which the defendant
THOMAS JOSEPH BARRACK and GRIMES could download the secure messaging
application that Emirati Official 4 had sent to BARRACK on or about September 25, 2016,
so that BARRACK could "talk to our friends."

40.     On or about September 29, 2016, the defendant RASHID SULTAN
RASHID AL MALIK ALSHAHHI sent a text message to the defendant MATTHEW
GRIMES stating that Emirati Official 2 was "trying to speak with [BARRACK]" and "[t]he
app is [a] secure line." Thereafter, ALSHAHHI sent Emirati Official 4 a message from the
defendant THOMAS JOSEPH BARRACK stating, "Rashid, received text from [Emirati
Official 1], it was amazing, thanks for keeping in touch with your friends, will keep you
posted . . . great job. From [BARRACK]."

15

41. On or about October 5, 2016, the defendant MATTHEW GRIMES sent a text message to the defendant RASHID SULTAN RASHID AL MALIK ALSHAHHI stating that the dedicated cellular telephone on which the defendant THOMAS JOSEPH BARRACK and GRIMES would download the secure messaging application was scheduled to arrive the following day.

42. On or about October 6, 2016, the defendant RASHID SULTAN RASHID AL MALIK ALSHAHHI sent a text message to the defendant MATTHEW GRIMES asking, "Do u [sic] have the phone ready with the app?" GRIMES replied, "Just text[ed] [Emirati Official 4]. We did it. I have phone." ALSHAHHI then sent a text message to Emirati Official 4, stating "[BARRACK] is ready with the phone." Emirati Official 4 responded, "Yeah he told me. I just tried doing a test call before telling [Emirati Official 2]."

E. The BARRACK Op-Ed

43. In or about October 2016, the defendant THOMAS JOSEPH BARRACK published an opinion article in a national media outlet relating to United States foreign policy (the "Op-Ed"). Prior to the publication of the Op-Ed, the defendant MATTHEW GRIMES solicited and received input from senior United Arab Emirates officials relating to the Op-Ed through the defendant RASHID SULTAN RASHID AL MALIK ALSHAHHI.

44. On or about October 8, 2016, the defendants MATTHEW GRIMES and RASHID SULTAN RASHID AL MALIK ALSHAHHI exchanged text messages about the planned Op-Ed. ALSHAHHI reminded GRIMES to obtain "our friends [sic] inputs,"

16

and that GRIMES should send ALSHAHHI an outline for him to forward to Emirati Official 4. GRIMES then agreed to meet with ALSHAHHI to review the outline.

45. On or about October 10, 2016, the defendant RASHID SULTAN RASHID AL MALIK ALSHAHHI asked Emirati Official 4 to call him. Thereafter, ALSHAHHI sent a text message to the defendant MATTHEW GRIMES containing talking points about United States-Middle East foreign policy for BARRACK's Op-Ed. GRIMES replied, "From Abu Dhabi?" ALSHAHHI then confirmed that the talking points came from Emirati Official 4. Emirati Official 4 then sent a text message to ALSHAHHI containing additional talking points about United States-Middle East foreign policy for the Op-Ed; ALSHAHHI copied and sent the message to GRIMES.

46. On or about October 13, 2016, the defendant MATTHEW GRIMES emailed the defendant RASHID SULTAN RASHID AL MALIK ALSHAHHI a draft of the Op-Ed and solicited input. ALSHAHHI then sent a text message containing the draft of the Op-Ed to Emirati Official 4, stating, "Read the plan and let me know cuz [BARRACK] will publish it soon." Later that day, GRIMES sent a text message to ALSHAHHI asking, "Any word from [Emirati Official 4]?" GRIMES then clarified that he was referring to the Op-Ed. ALSHAHHI replied that Emirati Official 4 would run the Op-Ed by Emirati Official 2 shortly and would then provide "feedback."

47. On or about October 14, 2016, Emirati Official 4 sent a text message to the defendant RASHID SULTAN RASHID AL MALIK ALSHAHHI stating that the "article is great in concept." ALSHAHHI forwarded the message to the defendant MATTHEW GRIMES and stated, "That's the feedback." ALSHAHHI further clarified, "Big boss loved it."

17

48.     On or about October 16, 2016, Emirati Official 4 sent a text message to the defendant RASHID SULTAN RASHID AL MALIK ALSHAHHI about the draft Op-Ed, and stated, "Let me send you a feedback. I prefer that you see it and say to [BARRACK]."

49.     On or about October 18, 2016, the defendant MATTHEW GRIMES sent the defendant RASHID SULTAN RASHID AL MALIK ALSHAHHI what appeared to be an updated draft of the Op-Ed.   The prior draft of the Op-Ed had identified certain Middle Eastern governments as "dictatorships."   ALSHAHHI subsequently advised GRIMES, "They didn't like Dictatorships word. . . . If you can say some of the governments or regimes.   Because they don't want to be also labeled as dictators.   Which is true."   GRIMES agreed to change the language to "regimes."   GRIMES then sent ALSHAHHI an updated draft of the Op-Ed that removed the reference to "dictatorships."

50.     On or about October 22, 2016, the defendant THOMAS JOSEPH BARRACK published the Op-Ed.   In the Op-Ed, BARRACK referred to Middle Eastern governments as "regimes," not "dictatorships."   BARRACK also praised the "brilliant young leaders" of the United Arab Emirates and certain other Middle Eastern countries. BARRACK emailed the Op-Ed to the defendant RASHID SULTAN RASHID AL MALIK ALSHAHHI, who replied that he had already sent the Op-Ed to United Arab Emirates officials.   The defendant MATTHEW GRIMES separately sent a text message to ALSHAHHI with a link to the Op-Ed and asked ALSHAHHI to "[s]end to our friends!" ALSHAHHI sent BARRACK's Op-Ed to Emirati Official 4 via text message.   On or about October 24, 2016, ALSHAHHI advised Emirati Official 4 that BARRACK was "asking how Boss liked the article?"

18

F.    Assistance to the United Arab Emirates During the Presidential Transition

51.    In or about and between November 2016 and January 2017, the defendants RASHID SULTAN RASHID AL MALIK ALSHAHHI, THOMAS JOSEPH BARRACK and MATTHEW GRIMES repeatedly took steps to assist the United Arab Emirates in connection with the transition to the incoming administration of the United States President-Elect.

52.    On or about November 9, 2016, the defendant RASHID SULTAN RASHID AL MALIK ALSHAHHI advised the defendant THOMAS JOSEPH BARRACK that Emirati Official 2 wanted to speak with BARRACK on a telephone call.    Over the next day, ALSHAHHI, BARRACK and the defendant MATTHEW GRIMES coordinated a telephone call between BARRACK and United Arab Emirates officials.    On or about November 10, 2016, BARRACK spoke by telephone with United Arab Emirates officials. Following the telephone call, ALSHAHHI sent a text message to GRIMES stating, "It's done, great call . . . . Wow."

53.    On or about November 11, 2016, the defendant THOMAS JOSEPH BARRACK sent a text message to the defendant RASHID SULTAN RASHID AL MALIK ALSHAHHI containing a link to a news article reporting that BARRACK could be appointed as Chairman of the Presidential Inaugural Committee.    In response, ALSHAHHI advised both BARRACK and the defendant MATTHEW GRIMES that ALSHAHHI wanted to be involved and would "take care of ME [Middle East] side" of the process, adding to GRIMES that it would "position us well."    Both BARRACK and GRIMES agreed.

54.    On or about November 16, 2016, Emirati Official 5 contacted the defendant THOMAS JOSEPH BARRACK and asked BARRACK to provide insight on the

19

President-Elect's potential appointments to the positions of United States Secretary of State, United States Secretary of Defense, Director of the Central Intelligence Agency and United States National Security Advisor, noting, "I would only brief my bosses. Any indicators would be highly appreciated." BARRACK responded, "I do, and we're working through them in real time and I have our regional interest in high profile. When you get a chance let's talk by phone."

55.     On or about November 17, 2016, the defendant RASHID SULTAN RASHID AL MALIK ALSHAHHI asked the defendant MATTHEW GRIMES to inform the defendant THOMAS JOSEPH BARRACK that Emirati Official 3, who ALSHAHHI identified to GRIMES by title, sent a text message to and called BARRACK on or about November 16, 2016. GRIMES responded, "Spoke with [BARRACK] about everything . . . all good! And he will call soon. [Emirati Official 3]." ALSHAHHI then sent a text message to Emirati Official 4 stating that BARRACK would contact Emirati Official 3 if he had not already done so.

56.     On or about November 18, 2016, Emirati Official 4 asked the defendant RASHID SULTAN RASHID AL MALIK ALSHAHHI to gather information about the incoming United States National Security Advisor. In response, ALSHAHHI advised Emirati Official 4 that the defendant THOMAS JOSEPH BARRACK already had a conversation with the incoming United States National Security Advisor about the United Arab Emirates and that, as a result, "[t]hey already believe in the region partnership. I will gather as much as I can." ALSHAHHI subsequently asked the defendant MATTHEW GRIMES about the incoming United States National Security Advisor.

57. On or about November 24, 2016, the defendants RASHID SULTAN RASHID AL MALIK ALSHAHHI and MATTHEW GRIMES discussed a potential meeting between the defendant THOMAS JOSEPH BARRACK and United Arab Emirates officials in the United Arab Emirates. ALSHAHHI advised GRIMES that United Arab Emirates officials would "share with us some of their ideas." GRIMES replied that he and BARRACK "are ready to work on outside!" GRIMES added that BARRACK was "good with [GRIMES] going anywhere doing anything to help. . . . Wants to be as help [sic] as we can."

58. On or about November 25, 2016, the defendant RASHID SULTAN RASHID AL MALIK ALSHAHHI sent a text message to the defendant MATTHEW GRIMES: "Tomorrow I will see [Emirati Official 1's] team and on draft ideas for [BARRACK] to Champion them." ALSHAHHI further stated that he was "impressed" with the confidence that the United Arab Emirates officials had in BARRACK.

59. On or about November 28, 2016, the defendant THOMAS JOSEPH BARRACK sent a text message to the defendant RASHID SULTAN RASHID AL MALIK ALSHAHHI advising ALSHAHHI that BARRACK could travel to Abu Dhabi on December 2, 2016, to meet with Emirati Official 1. ALSHAHHI replied, "Great, [Emirati Official 4] confirmed all ok and waiting for timing with [Emirati Official 1]." Two days later, ALSHAHHI and the defendant MATTHEW GRIMES exchanged text messages about the upcoming meeting between BARRACK and Emirati Official 1, during which ALSHAHHI expressed "how important [GRIMES and ALSHAHHI were] in the process" and advised GRIMES that ALSHAHHI was "just a friend" and "not official."

21

60.     On or about December 1, 2016, the defendants THOMAS JOSEPH

BARRACK and MATTHEW GRIMES traveled to the United Arab Emirates, where they

first met with the defendant RASHID SULTAN RASHID AL MALIK ALSHAHHI. The

following day, BARRACK met with Emirati Official 1, Emirati Official 2 and Emirati

Official 3. After the meeting, ALSHAHHI sent a text message to GRIMES stating, "They r

[sic] very happy here great feedback." ALSHAHHI further texted GRIMES, "Btw [sic] try

to think about what [BARRACK] said regarding the 100 days plan/6 months/year/4 years. . .

. And me and u will work with the guys here and Saudi." GRIMES replied, "Yes. I'm 110%

percent committed in anyway [sic] I can. To help you."

61.     On or about December 3, 2016, the defendant RASHID SULTAN

RASHID AL MALIK ALSHAHHI sent a text message to Emirati Official 4 that Emirati

Official 3 wanted ALSHAHHI and Emirati Official 4 to work on the plan, as previously

discussed by the defendant THOMAS JOSEPH BARRACK, to influence United States

foreign policy in the first 100 days, 6 months, 1 year and 4 years of the incoming

administration of the United States President-Elect. ALSHAHHI, writing in Arabic, added

that BARRACK would "be with the Arabs." Emirati Official 4 advised ALSHAHHI to

continue proposing ideas to Emirati Official 3. That same day, ALSHAHHI began drafting

a "100 days plan" and confirmed with Emirati Official 4 that Emirati Official 1 and Emirati

Official 2 were "very" happy with their progress through BARRACK.

62.     On or about December 11, 2016, the defendant RASHID SULTAN

RASHID AL MALIK ALSHAHHI created a draft "wish list" of United States foreign policy

positions that would benefit the United Arab Emirates. That same day, ALSHAHHI sent a

22

text message to the defendant MATTHEW GRIMES stating, "I have an idea [a]nd strategy."

ALSHAHHI and GRIMES then arranged to meet.

63.     On or about January 17, 2017, the defendants THOMAS JOSEPH

BARRACK and RASHID SULTAN RASHID AL MALIK ALSHAHHI were present in

Washington, D.C. and attended the Chairman's Global Dinner, an event BARRACK

organized as the Chairman of the Presidential Inaugural Committee. ALSHAHHI attended

as a personal guest of BARRACK. On or about January 20, 2017, BARRACK, the

defendant MATTHEW GRIMES and ALSHAHHI attended the Presidential Inauguration

and social events related to the Presidential Inauguration. ALSHAHHI attended as a

personal guest of BARRACK.

G.     Assistance to the United Arab Emirates in the New Presidential
       Administration

64.     In or about and between January 2017 and October 2017, the

defendants THOMAS JOSEPH BARRACK and MATTHEW GRIMES acted, in concert

with the defendant RASHID SULTAN RASHID AL MALIK ALSHAHHI, to aid the United

Arab Emirates in its dealings with the executive branch of the United States government.

65.     On or about January 23, 2017, the defendant RASHID SULTAN

RASHID AL MALIK ALSHAHHI advised the defendant MATTHEW GRIMES that he had

spoken with a United Arab Emirates official and that there was a "great opportunity" for the

United States government "to list" the Muslim Brotherhood, a transnational Sunni Islamist

organization, "on the list" – a reference to designation as a foreign terrorist organization.

ALSHAHHI advised GRIMES, "This will be a huge win. If we can list them. And they

deserve to be." GRIMES responded, "Yes. At your direction." On or about February 8,

2017, ALSHAHHI sent GRIMES a news article reporting that the United States government was considering whether to designate the Muslim Brotherhood as a terrorist organization.

66.     On or about January 23, 2017, the defendant RASHID SULTAN RASHID AL MALIK ALSHAHHI sent a text message to the defendant MATTHEW GRIMES about arranging a telephone call between senior United Arab Emirates officials and the President-Elect (hereafter, the "President").  GRIMES advised ALSHAHHI that GRIMES had spoken to the defendant THOMAS JOSEPH BARRACK about it.  On or about January 29, 2017, GRIMES advised ALSHAHHI that the President would speak with Emirati Official 1 that day.  GRIMES further noted that the telephone call between the President and Emirati Official 1 was arranged "right after I spoke to [BARRACK] about it again last night."  GRIMES subsequently advised ALSHAHHI, "We can take credit for phone call."

67.     On or about March 14, 2017, a senior official from the Kingdom of Saudi Arabia, a close ally of the United Arab Emirates, visited the White House.  The following day, the defendant THOMAS JOSEPH BARRACK sent a text message to the defendant RASHID SULTAN RASHID AL MALIK ALSHAHHI advising ALSHAHHI that he had briefed the President regarding the meeting with the senior official from the Kingdom of Saudi Arabia and that BARRACK had arranged for another senior United States government official to speak with Emirati Official 1 on a telephone call.  ALSHAHHI replied, "Amazing."  Subsequently, BARRACK advised ALSHAHHI that BARRACK had taken care of the senior official from the Kingdom of Saudi Arabia and "force[d]" the White House to "elevate" the senior official "for protocol purposes."  BARRACK further stated

24

that he had "program[med]" two senior United States government officials that day regarding the senior official from the Kingdom of Saudi Arabia.

      68.    On or about March 21, 2017, the defendant RASHID SULTAN RASHID AL MALIK ALSHAHHI contacted the defendants THOMAS JOSEPH BARRACK and MATTHEW GRIMES and stated that ALSHAHHI needed to meet with them. After BARRACK and ALSHAHHI arranged to meet the following day, ALSHAHHI stated, "[Emirati Official 2] is coming in few days. Need to brief u. Then the big guy. . . . They have high expectations from us. They love you." ALSHAHHI subsequently clarified that the United Arab Emirates officials would be traveling to Washington, D.C.

      69.    On or about May 14, 2017, the defendant THOMAS JOSEPH BARRACK sent a text message to the defendant RASHID SULTAN RASHID AL MALIK ALSHAHHI stating that he would "remain on the sidelines to help [the United Arab Emirates] navigage [sic]" the new United States government administration. ALSHAHHI subsequently stated, "Our ppl wants u to help. They were hoping you can officially run the agendas." BARRACK replied, "I will!"

    H.    Assistance to the United Arab Emirates with Appointments in the New Presidential Administration

      70.    Beginning in approximately March 2017, the defendant THOMAS JOSEPH BARRACK, in concert with the defendants RASHID SULTAN RASHID AL MALIK ALSHAHHI and MATTHEW GRIMES, as part of their actions on behalf of the United Arab Emirates, agreed to advocate for the appointment of individuals favored by the United Arab Emirates in the new United States government administration.

71.     On or about March 13, 2017, the defendant RASHID SULTAN

RASHID AL MALIK ALSHAHHI sent the defendant MATTHEW GRIMES the résumé for

a United States Congressman (the "Congressman"), an individual whose identity is known to

the Grand Jury, that the United Arab Emirates wanted appointed as United States

Ambassador to the United Arab Emirates.  ALSHAHHI advised GRIMES that the

appointment of the Congressman was "important for our friends. Because ur [sic] are about

to change the current one."   GRIMES agreed to relay the message to BARRACK.

72.     On or about March 15, 2017, the defendant RASHID SULTAN

RASHID AL MALIK ALSHAHHI asked the defendant THOMAS JOSEPH BARRACK to

assist the United Arab Emirates in securing the appointment of the Congressman as United

States Ambassador to the United Arab Emirates, stating: "They r [sic] very keen on the

ambassador they suggested to help the relationship.   Your help will go long way."

BARRACK replied, "Yes – give me name again."   ALSHAHHI then provided BARRACK

with the Congressman's résumé.   BARRACK further advised ALSHAHHI that Emirati

Official 1 "should let [a senior United States official] know[ ]when he speaks to him that he

would be happy to work with me as a special envoy . . . . [I]t would be helpful to have

[Emirati Official 1] mention[ ]how much he would like[ ]my help."   ALSHAHHI agreed to

relay the message.   ALSHAHHI subsequently apprised BARRACK that it was "[d]one from

our side," and that BARRACK should "[g]et close with [a United Arab Emirates official] he

likes you a lot and have great expectations from you."

73.     That same day, in subsequent communications, the defendant RASHID

SULTAN RASHID AL MALIK ALSHAHHI advised the defendant THOMAS JOSEPH

BARRACK that senior United Arab Emirates officials wanted BARRACK and ALSHAHHI

"to meet with [the Congressman] next week so you can be comfortable with him. . . . I will coordinate with you and him for the best time. [Emirati Official 2] and [Emirati Official 3] send[s] their best regards. . . . They will support u to the max . . . . All the way and everything." BARRACK replied: "And me them!" ALSHAHHI replied: "Very grateful for your support to us."

74.     On or about April 12, 2017, the defendant THOMAS JOSEPH BARRACK sent a text message to the defendant RASHID SULTAN RASHID AL MALIK ALSHAHHI stating that the President had discussed appointing BARRACK as either United States Ambassador to the United Arab Emirates or as Special Envoy to the Middle East. BARRACK advised ALSHAHHI that any such appointment "would give ABU DHABI more power!" ALSHAHHI replied, "This will be great for us. And make you deliver more. Very effective operation." BARRACK responded, "And great for u!" The following day, ALSHAHHI sent a text message to BARRACK stating that senior United Arab Emirates officials "love the idea" of BARRACK's potential appointment and would give him their support.

I.      Emirati Official 1's White House Visit

75.     In or about May 2017, the defendants RASHID SULTAN RASHID AL MALIK ALSHAHHI, THOMAS JOSEPH BARRACK and MATTHEW GRIMES took steps to aid United Arab Emirates officials in connection with Emirati Official 1's White House visit on or about May 15, 2017, and to report information about that meeting to United Arab Emirates officials.

76.     On or about May 14, 2017, the defendants THOMAS JOSEPH BARRACK and RASHID SULTAN RASHID AL MALIK ALSHAHHI discussed Emirati

Official 1's upcoming White House visit, scheduled for the following day, during which
ALSHAHHI stated that ALSHAHHI would be meeting with United Arab Emirates officials
in Washington, D.C.  BARRACK asked ALSHAHHI, "Do u [sic] want me to make sure
[two senior United States officials are] in [the] meetings[?]" ALSHAHHI responded,
"Yes plz [sic]."

77.    On or about May 15, 2017, Emirati Official 1, Emirati Official 2 and
Emirati Official 3 attended meetings at the White House.  Simultaneously, the defendants
MATTHEW GRIMES and RASHID SULTAN RASHID AL MALIK ALSHAHHI arranged
for the defendant THOMAS JOSEPH BARRACK to meet with senior United Arab Emirates
officials in the United Arab Emirates in the coming weeks.  That same day, BARRACK
instructed a business associate, "Rashid [ALSHAHHI] is on his way to DC.  Please make
sure you guys get together and we help Abu Dhabi with whatever they need."  The
following day, BARRACK advised ALSHAHHI that he had "lots of info on [the White
House] meeting!"

78.    On or about May 16, 2017, the defendants RASHID SULTAN
RASHID AL MALIK ALSHAHHI and THOMAS JOSEPH BARRACK discussed
arrangements for BARRACK to meet with Emirati Official 1 and Emirati Official 2, with
ALSHAHHI advising BARRACK that Emirati Official 3 wanted to ensure that both Emirati
Official 1 and Emirati Official 2 were present for the meeting with BARRACK.
BARRACK agreed.  Thereafter, the defendant MATTHEW GRIMES and ALSHAHHI
discussed via text message that BARRACK would provide ALSHAHHI with information
about the meetings that occurred at the White House on or about May 15, 2017.

28

ALSHAHHI further advised GRIMES that GRIMES was "the hero of [Emirati Official 1] [and] [Emirati Official 2]."

    J.    The Qatari Blockade and Continuing Efforts to Assist the United Arab Emirates

    79.    In or about and between June 2017 and October 2017, the defendants RASHID SULTAN RASHID AL MALIK ALSHAHHI, THOMAS JOSEPH BARRACK and MATTHEW GRIMES took steps to advance the United Arab Emirates' foreign policy interests by attempting to influence United States foreign policy, including United States foreign policy with respect to the State of Qatar.

    80.    On or about June 5, 2017, the defendant RASHID SULTAN RASHID AL MALIK ALSHAHHI sent a text message to the defendants THOMAS JOSEPH BARRACK and MATTHEW GRIMES containing an Internet link to a news article reporting that the United Arab Emirates, along with several other Middle Eastern governments, had severed ties with the State of Qatar. The following day, ALSHAHHI relayed talking points to GRIMES that promoted Emirati Official 1 and the United Arab Emirates. GRIMES later confirmed that he relayed the talking points to BARRACK.

    81.    On or about July 8, 2017, the defendant RASHID SULTAN RASHID AL MALIK ALSHAHHI sent a text message to the defendant THOMAS JOSEPH BARRACK stating that he was in Washington, D.C. with a United Arab Emirates official and that ALSHAHHI and the United Arab Emirates official wanted "to set up a meeting for u [sic] with [Emirati Official 2] . . . to come to push our plan!" BARRACK responded, "I am so ready!" BARRACK added that ALSHAHHI was "the secret weapon to get Abu Dhabi's plan initiated by the [President]."

29

82.    On or about September 13, 2017, the defendant MATTHEW GRIMES

sent a text message to the defendant RASHID SULTAN RASHID AL MALIK ALSHAHHI

stating, "Heads up, [Emirati Official 1] is meeting with [a former United States government

official ("U.S. Person 1"), an individual whose identity is known to the Grand Jury] on

Friday.   Please keep super confidential."   GRIMES further advised ALSHAHHI that the

defendant THOMAS JOSEPH BARRACK and GRIMES "worked hard to show [U.S.

Person 1] how strong of allies we are.   Very hard. . . . [BARRACK] spent lots of time."

ALSHAHHI then confirmed with GRIMES that U.S. Person 1 "was briefed by [BARRACK]

a lot on [Emirati Official 1] and his vision."   GRIMES added that BARRACK "worked hard

to show our friendship and alliance," and that BARRACK had met with U.S. Person 1 many

times in the past several weeks "[a]bout this meeting" with Emirati Official 1, in which

BARRACK was "[c]hampioning [the] UAE."

83.    On or about September 20, 2017, the defendants THOMAS JOSEPH

BARRACK and RASHID SULTAN RASHID AL MALIK ALSHAHHI met in New York

City.   During the meeting, BARRACK advised ALSHAHHI that the United States

government was considering convening a summit at the Naval Support Facility Thurmont,

also known as "Camp David," with senior government officials from the United Arab

Emirates, the State of Qatar and other Middle Eastern governments to address the ongoing

dispute between the State of Qatar and the United Arab Emirates and other Middle Eastern

governments.   ALSHAHHI subsequently relayed this information to United Arab Emirates

officials and indicated that he did not believe such a meeting was in the interests of the

United Arab Emirates.

84.     On or about September 22, 2017, the defendant RASHID SULTAN

RASHID AL MALIK ALSHAHHI advised the defendant THOMAS JOSEPH BARRACK

that he had "a msg" and arranged to meet BARRACK on or about September 25, 2017 in

Los Angeles, California.   After meeting with ALSHAHHI on or about September 25, 2017,

BARRACK, through his assistant, sent an email to an executive assistant to the President,

requesting to speak to the President, as he had "something very important to share . . . about

the Middle East."   On or about September 27, 2017, ALSHAHHI sent a text message to

BARRACK stating, "I have very special thanks and appreciations from the big guy.   All

respect for your efforts."

85.     On or about October 11, 2017, the defendant MATTHEW GRIMES

sent a text message to the defendant RASHID SULTAN RASHID AL MALIK ALSHAHHI

containing an Internet link to a news article profiling the defendant THOMAS JOSEPH

BARRACK, which discussed how BARRACK had advised the President not to get involved

in the ongoing dispute between the State of Qatar and other Middle Eastern governments,

including the United Arab Emirates.   ALSHAHHI replied that BARRACK had told

ALSHAHHI "that in this article [BARRACK] praised [Emirati Official 1] for his alliance

with [the United States] for 30 years!   But it wasn't mentioned [i]n this one."   GRIMES

responded that BARRACK did so during the interview, to which ALSHAHHI replied that

the news organization had not included BARRACK's praise of Emirati Official 1 in the news

article.

86.     Thereafter, the defendant RASHID SULTAN RASHID AL MALIK

ALSHAHHI advised United Arab Emirates officials that he had spoken to the defendant

THOMAS JOSEPH BARRACK and that BARRACK was "not happy about missing lots of

parts of his interview specially [sic] about we have to support our longest ally in the current leadership [Emirati Official 1]," and that BARRACK, through the news article, "wanted to tell others indirectly in [the United States] specially [sic] [a senior United States government official] that [BARRACK] know[s] the region very well and don't interfere (By telling the [President] don't do it but can't specify the Camp David)."

87. On or about October 13, 2017, the defendant RASHID SULTAN RASHID AL MALIK ALSHAHHI created a note in his cellular telephone containing a draft message for United Arab Emirates officials, in which ALSHAHHI wrote that he had met the defendant THOMAS JOSEPH BARRACK the previous day and that BARRACK had advised ALSHAHHI that several senior United States government officials were seeking to convince the President "that Qatar is a victim! And that all of other countries (Saudi, UAE) are also funding [terrorist] groups!!!" The note further stated that BARRACK had further advised ALSHAHHI that the State of Qatar was "pushing all the tactics to isolate [the United Arab Emirates]" from support in the United States government.

V. The Defendants' Failure to Comply with the Notification Requirement

88. At no time did the defendants RASHID SULTAN RASHID AL MALIK ALSHAHHI, THOMAS JOSEPH BARRACK or MATTHEW GRIMES provide notification to the Attorney General that they were acting in the United States as agents of a foreign government, specifically the United Arab Emirates, as required by law.

89. At no time was the defendant RASHID SULTAN RASHID AL MALIK ALSHAHHI, the defendant THOMAS JOSEPH BARRACK or the defendant MATTHEW GRIMES:

32

(a)     a duly accredited diplomatic or consular official of a foreign

government, recognized by the United States Department of State;

(b)     an officially and publicly acknowledged and sponsored official or

representative of a foreign government; or

(c)     an officially and publicly acknowledged and sponsored member of the

staff of, or employee of, any such officer, official or representative described in subsection

(a) or (b).

90.     None of the conduct described herein, as engaged in by the defendants

RASHID SULTAN RASHID AL MALIK ALSHAHHI, THOMAS JOSEPH BARRACK

and MATTHEW GRIMES, constituted a legal commercial transaction.

VI.     BARRACK's Obstruction of Justice and Materially False Statements

91.     In or about February 2019, Federal Bureau of Investigation ("FBI")

special agents served federal grand jury subpoenas on several individuals employed by or

associated with Company A, including individuals that reported directly to the defendant

THOMAS JOSEPH BARRACK, in connection with the criminal investigation of the

activities of the defendants RASHID SULTAN RASHID AL MALIK ALSHAHHI,

BARRACK and MATTHEW GRIMES.

92.     Following the service of these federal grand jury subpoenas, the

defendant THOMAS JOSEPH BARRACK volunteered to speak with FBI special agents.

On or about June 20, 2019, FBI special agents interviewed BARRACK, in the presence of

counsel, regarding the activities of the defendant RASHID SULTAN RASHID AL MALIK

ALSHAHHI, BARRACK and the defendant MATTHEW GRIMES.  At the outset of the

interview, United States government officials advised BARRACK, and confirmed that he

33

understood, that lying to federal agents is a federal crime. Thereafter, during the course of the interview, BARRACK knowingly made numerous materially false statements relating to the activities of ALSHAHHI, BARRACK and GRIMES.

## COUNT ONE
(Acting as Agents of a Foreign Government
Without Prior Notification to the Attorney General)

93.     The allegations in paragraphs one through 92 are realleged and incorporated as if fully set forth in this paragraph.

94.     In or about and between April 2016 and April 2018, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants RASHID SULTAN RASHID AL MALIK ALSHAHHI, also known as "Rashid Al Malik" and "Rashid Al-Malik," THOMAS JOSEPH BARRACK and MATTHEW GRIMES, together with others, did knowingly and intentionally act in the United States as agents of a foreign government, to wit: the United Arab Emirates, without prior notification to the Attorney General of the United States, as required by law.

(Title 18, United States Code, Sections 951(a), 2 and 3551 et seq.)

## COUNT TWO
(Conspiracy to Act as Unregistered Agents of a Foreign Government)

95.     The allegations in paragraphs one through 92 are realleged and incorporated as if fully set forth in this paragraph.

96.     In or about and between April 2016 and April 2018, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants RASHID SULTAN RASHID AL MALIK ALSHAHHI, also known as "Rashid Al Malik" and "Rashid Al-Malik," THOMAS JOSEPH BARRACK and MATTHEW

GRIMES, together with others, did knowingly and intentionally conspire to act in the United

States as agents of a foreign government, to wit: the United Arab Emirates, without prior

notification to the Attorney General of the United States as required by law, contrary to Title

18, United States Code, Section 951(a).

    97. In furtherance of the conspiracy and to effect its objects, within the

Eastern District of New York and elsewhere, the defendants RASHID SULTAN RASHID

AL MALIK ALSHAHHI, also known as "Rashid Al Malik" and "Rashid Al-Malik,"

THOMAS JOSEPH BARRACK and MATTHEW GRIMES, together with others, did

commit and caused the commission of, among others, the following:

## OVERT ACTS

    (a) On or about the following dates, among others, the defendants

exchanged text messages and emails relating to BARRACK's promotion of the United Arab

Emirates and its foreign policy interests in media appearances:

| DATE | OVERT ACT |
| --- | --- |
| August 2, 2016 | Emails among BARRACK, GRIMES and ALSHAHHI |
| August 29, 2016 | Text messages between GRIMES and ALSHAHHI |
| September 2, 2016 | Emails between BARRACK and ALSHAHHI |
| September 5, 2016 | Text messages between GRIMES and ALSHAHHI |
| September 5, 2016 | Emails between BARRACK and ALSHAHHI |
| September 27, 2016 | Text messages between GRIMES and ALSHAHHI |
| October 14, 2016 | Text messages between GRIMES and ALSHAHHI |
| January 28, 2017 | Text messages between GRIMES and ALSHAHHI |

35

| January 31, 2017 | Text messages between GRIMES and ALSHAHHI |
| March 27, 2017 | Text messages between GRIMES and ALSHAHHI |
| March 28, 2017 | Text messages between GRIMES and ALSHAHHI |
| April 20, 2017 | Text messages between GRIMES and ALSHAHHI |
| May 9, 2017 | Text messages between GRIMES and ALSHAHHI |
| October 24, 2017 | Text messages among BARRACK, GRIMES and ALSHAHHI |

(b)     On or about the following dates, among others, the defendants

exchanged text messages and emails relating to drafting materials proposing a strategy for

the United Arab Emirates to further its foreign policy interests with the United States:

| DATE | OVERT ACT |
| --- | --- |
| July 25, 2016 | Text messages between GRIMES and ALSHAHHI |
| July 26, 2016 | Text messages between GRIMES and ALSHAHHI |
| July 27, 2016 | Emails between GRIMES and ALSHAHHI |
| August 7, 2016 | Emails between BARRACK and ALSHAHHI |
| August 12, 2016 | Text messages between GRIMES and ALSHAHHI |
| August 22, 2016 | Emails between BARRACK and ALSHAHHI |
| December 14, 2016 | Emails between GRIMES and ALSHAHHI |

(c)     On or about the following dates, among others, the defendants

exchanged text messages and emails relating to BARRACK and GRIMES acquiring a

cellular telephone and installing a secure messaging application to facilitate BARRACK's

communications with senior officials of the United Arab Emirates:

36

| DATE | OVERT ACT |
|---|---|
| September 6, 2016 | Text messages between GRIMES and ALSHAHHI |
| September 25, 2016 | Emails between BARRACK and ALSHAHHI |
| September 25, 2016 | Text messages between GRIMES and ALSHAHHI |
| September 25, 2016 | Text messages between BARRACK and ALSHAHHI |
| September 27, 2016 | Text messages between GRIMES and ALSHAHHI |
| September 28, 2016 | Text messages between GRIMES and ALSHAHHI |
| September 29, 2016 | Text messages between GRIMES and ALSHAHHI |
| October 5, 2016 | Text messages between GRIMES and ALSHAHHI |
| October 6, 2016 | Text messages between GRIMES and ALSHAHHI |

(d)     On or about the following dates, among others, the defendants

exchanged text messages and emails relating to BARRACK and GRIMES soliciting and

receiving input from senior United Arab Emirates officials relating to the Op-Ed:

| DATE | OVERT ACT |
|---|---|
| October 7, 2016 | Text messages between GRIMES and ALSHAHHI |
| October 10, 2016 | Text messages between GRIMES and ALSHAHHI |
| October 13, 2016 | Emails between GRIMES and ALSHAHHI |
| October 13, 2016 | Text messages between GRIMES and ALSHAHHI |
| October 14, 2016 | Text messages between GRIMES and ALSHAHHI |
| October 18, 2016 | Text messages between GRIMES and ALSHAHHI |
| October 22, 2016 | Emails between BARRACK and ALSHAHHI |

37

| October 22, 2016 | Text messages between GRIMES and ALSHAHHI |

(e)     On or about the following dates, among others, the defendants exchanged text messages and emails relating to BARRACK providing assistance to the United Arab Emirates in connection with the transition within the United States government to the incoming administration of the President-Elect:

| DATE | OVERT ACT |
| --- | --- |
| November 9, 2016 | Text messages between GRIMES and ALSHAHHI |
| November 9, 2016 | Text messages between BARRACK and ALSHAHHI |
| November 10, 2016 | Text messages between GRIMES and ALSHAHHI |
| November 10, 2016 | Text messages between BARRACK and ALSHAHHI |
| November 16, 2016 | Emails between BARRACK and Emirati Official 5 |
| November 17, 2016 | Text messages between GRIMES and ALSHAHHI |
| November 18, 2016 | Text messages between GRIMES and ALSHAHHI |
| November 24, 2016 | Text messages between GRIMES and ALSHAHHI |
| November 25, 2016 | Text messages between GRIMES and ALSHAHHI |
| November 28, 2016 | Text messages between GRIMES and ALSHAHHI |
| November 28, 2016 | Text messages between BARRACK and ALSHAHHI |
| November 30, 2016 | Text messages between GRIMES and ALSHAHHI |
| December 1, 2016 | Text messages between GRIMES and ALSHAHHI |
| December 11, 2016 | Text messages between GRIMES and ALSHAHHI |

38

(f)     On or about the following dates, among others, the defendants exchanged text messages and emails relating to BARRACK and GRIMES providing assistance to the United Arab Emirates in its dealings with the executive branch of the United States government:

| DATE | OVERT ACT |
|------|-----------|
| January 23, 2017 | Text messages between GRIMES and ALSHAHHI |
| January 29, 2017 | Text messages between GRIMES and ALSHAHHI |
| February 8, 2017 | Text messages between GRIMES and ALSHAHHI |
| March 15, 2017 | Text messages between BARRACK and ALSHAHHI |
| March 21, 2017 | Text messages between BARRACK and ALSHAHHI |
| March 21, 2017 | Text messages between GRIMES and ALSHAHHI |
| May 14, 2017 | Text messages between BARRACK and ALSHAHHI |

(g)     On or about the following dates, among others, the defendants exchanged text messages and emails relating to BARRACK and GRIMES advocating for the appointment of candidates favored by the United Arab Emirates in the new administration of the President in the United States government:

| DATE | OVERT ACT |
|------|-----------|
| March 13, 2017 | Text messages between GRIMES and ALSHAHHI |
| March 14, 2017 | Text messages between GRIMES and ALSHAHHI |
| April 12, 2017 | Text messages between BARRACK and ALSHAHHI |

39

(h)     On or about the following dates, among others, the defendants exchanged text messages and emails relating to BARRACK aiding United Arab Emirates officials in connection with Emirati Official 1's visit on or about May 15, 2017 to the White House and reporting information about that meeting to United Arab Emirates officials after it occurred:

| DATE | OVERT ACT |
|------|-----------|
| May 14, 2017 | Text messages between BARRACK and ALSHAHHI |
| May 15, 2017 | Text messages between GRIMES and ALSHAHHI |
| May 16, 2017 | Text messages between BARRACK and ALSHAHHI |
| May 16, 2017 | Text messages between GRIMES and ALSHAHHI |

(i)     On or about the following dates, among others, the defendants exchanged text messages and emails relating to the defendants advancing the foreign policy interests of the United Arab Emirates by influencing the foreign policy of the United States with respect to Qatar:

| DATE | OVERT ACT |
|------|-----------|
| June 3, 2017 | Text messages between BARRACK and ALSHAHHI |
| June 4, 2017 | Text messages between GRIMES and ALSHAHHI |
| July 7, 2017 | Text messages between BARRACK and ALSHAHHI |
| September 13, 2017 | Text messages between GRIMES and ALSHAHHI |
| September 22, 2017 | Text messages between BARRACK and ALSHAHHI |
| September 27, 2017 | Text messages between BARRACK and ALSHAHHI |

| October 11, 2017 | Text messages between GRIMES and ALSHAHHI |
|---|---|

(Title 18, United States Code, Sections 371 and 3551 et seq.)

## COUNT THREE
(Obstruction of Justice)

98.     The allegations in paragraphs one through 92 are realleged and incorporated as if fully set forth in this paragraph.

99.     On or about June 20, 2019, within the Eastern District of New York and elsewhere, the defendant THOMAS JOSEPH BARRACK, together with others, did knowingly, intentionally and corruptly obstruct, influence and impede, and attempt to obstruct, influence and impede, an official proceeding, to wit: a Federal Grand Jury investigation in the Eastern District of New York.

(Title 18, United States Code, Sections 1512(c)(2), 2 and 3551 et seq.)

## COUNT FOUR
(Material False Statements)

100.    The allegations in paragraphs one through 92 are realleged and incorporated as if fully set forth in this paragraph.

101.    On or about June 20, 2019, within the Eastern District of New York and elsewhere, the defendant THOMAS JOSEPH BARRACK did knowingly and willfully make one or more materially false, fictitious and fraudulent statements and representations in a matter within the jurisdiction of the executive branch of the Government of the United States, to wit: the FBI, in that BARRACK falsely stated and represented to FBI special agents that RASHID SULTAN RASHID AL MALIK ALSHAHHI, also known as "Rashid Al Malik" and "Rashid Al-Malik," did not ask BARRACK to do anything for the United

41

Arab Emirates and never proffered any policies or requests to BARRACK on behalf of the

United Arab Emirates, when in fact, as he then and there well knew and believed,

ALSHAHHI asked BARRACK to assist the United Arab Emirates on numerous occasions

and proffered policies and requests to BARRACK on behalf of the United Arab Emirates on

numerous occasions.

(Title 18, United States Code, Sections 1001(a)(2) and 3551 et seq.)

### COUNT FIVE
(Material False Statements)

102.    The allegations in paragraphs one through 92 are realleged and

incorporated as if fully set forth in this paragraph.

103.    On or about June 20, 2019, within the Eastern District of New York

and elsewhere, the defendant THOMAS JOSEPH BARRACK did knowingly and willfully

make one or more materially false, fictitious and fraudulent statements and representations in

a matter within the jurisdiction of the executive branch of the Government of the United

States, to wit: the FBI, in that BARRACK falsely stated and represented to FBI special

agents that BARRACK was never asked to download any messaging application by anyone

associated with the Middle East, never had a dedicated telephone to communicate with

anyone associated with the Middle East and was never asked to acquire a dedicated

telephone to communicate with anyone associated with the Middle East, when in fact, as he

then and there well knew and believed, BARRACK was asked by Emirati Official 4 and

ALSHAHHI to download a messaging application to communicate directly with Emirati

Official 1 and Emirati Official 2, ALSHAHHI asked BARRACK to acquire a dedicated

telephone to communicate directly with Emirati Official 1 and Emirati Official 2 via the

42

messaging application and BARRACK in fact acquired a dedicated telephone to
communicate directly with Emirati Official 1 and Emirati Official 2 via the messaging
application.

(Title 18, United States Code, Sections 1001(a)(2) and 3551 et seq.)

## COUNT SIX
(Material False Statements)

104.    The allegations in paragraphs one through 92 are realleged and
incorporated as if fully set forth in this paragraph.

105.    On or about June 20, 2019, within the Eastern District of New York
and elsewhere, the defendant THOMAS JOSEPH BARRACK did knowingly and willfully
make one or more materially false, fictitious and fraudulent statements and representations in
a matter within the jurisdiction of the executive branch of the Government of the United
States, to wit: the FBI, in that BARRACK falsely stated and represented to FBI special
agents that, after the 2016 United States Presidential Election, BARRACK had no role in
facilitating communications between the President-Elect and officials from the United Arab
Emirates, including Emirati Official 1 and Emirati Official 2, when in fact, as he then and
there well knew and believed, BARRACK facilitated communications between the
President-Elect and Emirati Official 1 and Emirati Official 2 after the 2016 Presidential
Election, including by arranging one or more telephone calls between the President-Elect and
Emirati Official 1 and Emirati Official 2 and by providing contact information for Emirati
Official 1 and Emirati Official 2 to the President-Elect's assistant.

(Title 18, United States Code, Sections 1001(a)(2) and 3551 et seq.)

43

## COUNT SEVEN
(Material False Statements)

106.   The allegations in paragraphs one through 92 are realleged and incorporated as if fully set forth in this paragraph.

107.   On or about June 20, 2019, within the Eastern District of New York and elsewhere, the defendant THOMAS JOSEPH BARRACK did knowingly and willfully make one or more materially false, fictitious and fraudulent statements and representations in a matter within the jurisdiction of the executive branch of the Government of the United States, to wit: the FBI, in that BARRACK falsely stated and represented to FBI special agents that BARRACK did not provide any guidance or input in arranging U.S. Person 1's meeting with Emirati Official 1 in or about September 2017 and that BARRACK did not learn of U.S. Person 1's meeting with Emirati Official 1 until after the meeting, when in fact, as he then and there well knew and believed, BARRACK advised U.S. Person 1 to meet with Emirati Official 1 in or about September 2017 and BARRACK had advance notice of U.S. Person 1's meeting with Emirati Official 1 in or about September 2017.

(Title 18, United States Code, Sections 1001(a)(2) and 3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATION AS TO COUNTS TWO AND THREE

108.   The United States hereby gives notice to the defendants that, upon their conviction of either of the offenses charged in Counts Two and Three, the government will seek forfeiture in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which require any person convicted of such offenses to forfeit any property, real or personal, constituting, or derived from, proceeds obtained directly or indirectly as a result of such offenses.

44

109.    If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

        (a)    cannot be located upon the exercise of due diligence;

        (b)    has been transferred or sold to, or deposited with, a third party;

        (c)    has been placed beyond the jurisdiction of the court;

        (d)    has been substantially diminished in value; or

        (e)    has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

A TRUE BILL

_____
FOREPERSON

_____
JACQUELYN M. KASULIS
ACTING UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

45

F.#: 2018R001309
FORM DBD-34
JUN. 85

No.

# UNITED STATES DISTRICT COURT

EASTERN *District of* NEW YORK

## CRIMINAL DIVISION

### THE UNITED STATES OF AMERICA

*vs.*

RASHID SULTAN RASHID AL MALIK ALSHAHHI, et al.,

Defendants.

# INDICTMENT

(T. 18, U.S.C., §§ 2, 371, 951(a), 981(a)(1)(C), 1001(a)(2), 1512(c)(2)
and 3551 et seq.; T. 21, U.S.C., § 853(p); T. 28, U.S.C., § 2461(c))

*A true bill.*

_____
*Foreperson*

*Filed in open court this* _____ *day,*

*of* _____ *A.D. 20* _____

_____
*Clerk*

*Bail, $* _____

_____

*Nathan Reilly, Ryan Harris, Samuel Nitze, Hiral Mehta, Assistant U.S. Attorneys (718) 254-7000*