

200 Park Avenue
New York, NY 10166
T +1 212 294 6700
F +1 212 294 4700

**ABBE DAVID LOWELL**
Partner
202-282-5875
ADLowell@winston.com

October 27, 2021

**VIA ECF**
Hon. Brian M. Cogan
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:   *United States v. Alshahhi, et al.*, 21-cr-00371-BMC-TAM

Dear Judge Cogan:

We represent the defendant Matthew Grimes in the above-referenced case. We write, consistent with Your Honor's Individual Practices and Rules IV.B, to respectfully request a pre-motion conference with regard to Mr. Grimes's planned motion to modify his conditions of pretrial release as discussed further below. We have conferred with the government regarding these proposed modifications. The government has agreed to Mr. Grimes's requested modifications, except for the removal of one condition of release, which we expect will be the subject of Mr. Grimes's forthcoming motion. We also have spoken with Pretrial Services who are aware of the modifications to which the government has agreed. Pretrial Services has indicated they do not disagree with those modifications, and said they wanted to know more information (e.g., a different risk assessment) before making a decision on the one condition in dispute.

We respectfully intend to move the Court to modify Mr. Grimes's conditions of release as set forth in detail below and outlined in revised Attachment A. The relief we seek is on the basis of the law of which the Court is well aware, applied to the specific facts of our client, which we are bringing to the Court's attention. We are prepared to discuss the forthcoming motion at the November 2, 2021 Status Conference or as soon thereafter as our client can be heard.

**I.   Background**

Mr. Grimes was 21 years old, having just graduated from the University of Pennsylvania, when he went to work full-time as an analyst and assistant to co-defendant Thomas Barrack at Colony Capital ("Colony") in August 2015. At all times during the April 2016 through April 2018 timeframe at issue in the Indictment (beginning just eight months after Mr. Grimes began working full-time for Mr. Barrack at Colony), Mr. Grimes was working as an *assistant* to Mr. Barrack, in his role as Executive Chairman and Founder of Colony, a prominent New York Stock Exchange-listed real estate investment company.



Apart from his time at the University of Pennsylvania and briefly moving to Colorado for work, Mr. Grimes has lived his entire life in California, where he currently resides. He grew up and went to school in Santa Barbara, California, first at Marymount for his elementary and middle school education, and then to Bishop Diego High School, where he was the valedictorian and took classes at the University of California, Santa Barbara. During high school Mr. Grimes surfed regularly, played tennis, ran cross country, had a small business, and participated in student government. As of the time of these charges, he has a significant network of friends and family, including his parents, who live in Santa Barbara, where he visits frequently and lives close by in Santa Monica. Those ties are evidenced by the fact that his parents and brother were willing to serve as sureties for the $5 million appearance bond that was initially imposed by the Magistrate in the Central District of California. *See* Ex. A, Transcript on Arrest on Out of District Warrant at 11:2–11:3 (C.D. Cal. July 23, 2021).

Mr. Grimes's ties are to the United States, where all of his closest friends and family reside. He has never lived abroad. Neither has any member of his family. He speaks one language, English, with the exception of having limited educational training in Spanish. There are no allegations that Mr. Grimes has any assets, property, or bank accounts outside of the United States nor any relatives with whom he could live abroad (with the exception of a cousin in Australia with whom Mr. Grimes does not communicate). Furthermore, Mr. Grimes neither has access to private planes nor does he possess substantial funds on which he could flee or live abroad.

Mr. Grimes has no criminal history and the allegations in the Indictment do not suggest that Mr. Grimes is a danger to the community, nor has the government ever suggested otherwise. Mr. Grimes is charged with two counts for allegedly failing to notify the U.S. Attorney General that he was acting in the United States as an agent of a foreign government, and for allegedly conspiring to do so. While the charges filed are serious, boiled down to his conduct, the government alleges that Mr. Grimes acted as an assistant to the senior-most executive at a reputable, substantial, and heavily regulated public company. As alleged, he sent and received communications, accompanied his boss on certain business trips, worked on documents at the direction of his superior, and took similar actions. He was never paid by any foreign entity or individual nor even held a position with such a person or firm. Mr. Grimes has cooperated fully with the government's investigation (including days spent cooperating with Special Counsel Mueller's investigation) and is eager to put his substantial legal and factual defenses forward.

On July 26, 2021, Magistrate Judge Bulsara set various conditions of release for Mr. Grimes. Dkt. 20 (Order Setting Conditions of Release and Appearance Bond, the "Order"); *see also* Ex. B, Transcript for Arraignment before Hon. Sanket J. Bulsara (E.D.N.Y. July 26, 2021) (hereinafter "Bail Hearing Tr."). Mr. Grimes agreed to these conditions of release at his arraignment with the knowledge and understanding, and the government's confirmation, that those conditions could be modified by Your Honor. Those conditions included the following:

1) a $5 million appearance bond partially secured by Mr. Grimes's parents' house and three co-signors (Order, Attachment B);

2) GPS location monitoring, at his own expense (*id.*, Attachment A, Condition 5);

3) a curfew "with hours to [be] fixed by Pretrial Services" (*id.*, Attachment A, Condition 6);



4) a prohibition against "transfer[ing] any funds overseas or engag[ing] in any foreign transaction with any overseas counterparty" (*id.*, Attachment A, Condition 7); and

5) a prohibition against engaging "in any domestic financial transactions in excess of $10,000 (excepting normal and customer payment of attorneys' fees, and including but not limited to any transactions involving publicly held securities of any description) without the prior written consent of the government" (*id.*, Attachment A, Condition 7).

Mr. Grimes also surrendered his passport, and his travel was limited to the Eastern and Southern Districts of New York and the Central District of California, among other conditions. (*Id.*, Attachment A, Conditions 1 and 3). In the nearly three months since, Mr. Grimes has traveled on a number of occasions cross-country, either consistent with the terms of the Order (which allows Mr. Grimes to travel to New York), or with the Court's express approval. Each time Mr. Grimes has travelled, he has done so on notice to the government and the Court's Pretrial Services Office, and with their consent. On all such occasions, Mr. Grimes returned home on time and without incident.

We proposed, and the government agreed, to remove (i) the domestic travel restriction (Condition 1), so long as Mr. Grimes gives Pretrial Services prior notice of the travel, and (ii) the curfew (Condition 6). In addition, the government agreed to modify the business transfer condition (Condition 7) to increase the limits of transactions from $10,000 to $100,000 before notice (not permission) is required, and to totally prohibit any foreign transactions to the countries of the U.A.E., Saudi Arabia and Qatar. The government did not agree to the removal of the ankle bracelet (Condition 5).

We request that Condition 5, GPS monitoring (via an ankle bracelet), be removed for the reasons set forth below.

**II.     Argument**

The Bail Reform Act requires the pretrial release of a defendant on personal recognizance or after execution of an unsecured appearance bond, "unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required, or will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b). If the court determines the defendant is a flight risk, it shall order his release "subject to the *least restrictive further condition, or combination of conditions*, that . . . will reasonably assure the appearance of the person." § 3142(c)(1)(B). The factors identified in § 3142(g) for determining whether conditions of release exist that will reasonably assure the defendant's appearance are: (1) the nature and circumstances of the offenses charged; (2) the weight of evidence; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to the community that would be posed by the person's release. *United States v. Diaz*, 2018 WL 5282882, at *4 (S.D.N.Y. Oct. 24, 2018) (granting motion to modify conditions of pretrial release where defendant did not present a risk of flight "sufficiently serious to warrant the extraordinary conditions of a curfew or electronic monitoring"). There is no allegation that Mr. Grimes is a danger to the community and therefore his release conditions must be based on an assessment of his risk of flight and the conditions to reasonably assure that Mr. Grimes will appear for trial.



October 27, 2021<br>Page 4

The government must establish by a preponderance of the evidence that a defendant, if released, presents a risk of flight. *See United States v. Berrios-Berrios*, 791 F.2d 246, 250 (2d Cir. 1986. *See Diaz*, 2018 WL 5282882 at *4; *cf.* Ex. B, Bail Hearing Tr. at 13:4–14:23 (only discussing Mr. Barrack as a flight risk). In fact, as discussed above, the evidence here shows that Mr. Grimes does not pose any risk whatsoever of nonappearance for any scheduled hearing in this matter. Mr. Grimes has demonstrated repeatedly that he is prepared to face the charges against him, first by cooperating fully with the government's Special Counsel investigation and second by travelling repeatedly and with the Court's permission (and Pretrial Services' consent) during the pendency of this case without incident. Apart from complying with all conditions to date, it bears mention that Mr. Grimes just turned 28 and, with his entire life in front of him in this country, has no reason to give that up to live as a fugitive. Accordingly, the current conditions are not the right starting point.

Were it not for the high-profile nature of this Indictment or the allegations against Mr. Grimes's co-defendant, Mr. Grimes would have been subject to the "usual" conditions—personal recognizance, giving his passport to his counsel or Pretrial Services, and some notice requirement for travel in the United States. While Mr. Grimes does not believe additional conditions are merited or otherwise meet the requirements under the Bail Reform Act, Mr. Grimes has agreed to continue the appearance bond (secured by real property), the surrender of his passport, and providing advance notice to Pretrial Services for any travel. This would go beyond what is required to constitute the "least restrictive . . . conditions, that . . . will reasonably assure" his appearance. *See* Ex. B, Bail Hearing Tr. at 48:21–49:1 (noting that "the significant financial and property that is being pledged is sufficient [to] ameliorate any risk of flight").

The electronic monitoring device on Mr. Grimes's ankle is uncomfortable and unnecessarily burdensome given that Mr. Grimes poses no flight risk whatsoever. *See Diaz*, 2018 WL 5282882 at *5 ("[B]ecause the Government has not argued that Diaz poses any danger to the community, the Government has minimal interest in keeping him under a curfew or electronically monitoring his every move."). Mr. Grimes is an active 28-year-old. He regularly surfs and attends fitness classes. He cannot immerse the device in water and obviously the ankle bracelet is a subject of notice, comment, and embarrassment in his daily activities. The bracelet comes up when he has started to seek new employment and it is not something that makes that effort easier. We do not think the government can sustain its burden to show Mr. Grimes to be a flight risk. The fact that he has agreed to keep in place the security bond which would cause his family to lose their homes and assets were he to flee, is more than enough condition to address any small theoretical risk of flight the government might argue. Mr. Grimes is about to be the best man in the wedding of his brother, Scott Grimes, who is one of the family members who pledged his property and finances in support of Mr. Grimes's release.

For all of the foregoing reasons, we respectfully request that the Court schedule a pre-motion conference for Mr. Grimes's forthcoming motion to modify the conditions of his release, as discussed herein, and to replace Attachment A to the Order (Dkt. 20) with the revised new Attachment A to this letter. As noted above, the government has consented to the proposed modifications to Mr. Grimes's conditions of release with the exception of the removal of Condition 5 (GPS monitoring).



We look forward to providing the Court with more detailed briefing in support of Mr. Grimes's motion.

Sincerely,

*/s/ Abbe David Lowell*

Abbe David Lowell
WINSTON & STRAWN LLP
1901 L Street, N.W.
Washington, D.C. 20036
D: +1 202-282-5875
F: +1 202-282-5100
ADLowell@winston.com

Matthew L. Schwartz
BOIES SCHILLER FLEXNER LLP
55 Hudson Yards
New York, NY 10001
D: +1 212-446-2300
F: +1 212-446-2350
mlschwartz@bsfllp.com

*Attorneys for Defendant Matthew Grimes*

cc: All counsel of record (via ECF)