

U.S. Department of Justice

*United States Attorney
Eastern District of New York*

RCH/SPN/HDM                         *271 Cadman Plaza East*
F. #2018R01309                        *Brooklyn, New York 11201*

November 1, 2021

By ECF

The Honorable Brian M. Cogan
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

         Re:     United States v. Matthew Grimes, et al.,
                     Criminal Docket No. 21-371 (BMC) (E.D.N.Y.)

Dear Judge Cogan:

       The government respectfully submits this letter in response to defendant Matthew Grimes's letter requesting a pre-motion conference regarding Grimes's planned motion to modify his conditions of pretrial release (the "Grimes Letter"). See Dkt. No. 53. For the reasons set forth below, Grimes's motion should be denied to the extent it seeks modifications beyond those to which the government has already consented.

       As Grimes acknowledges, the government has consented to three proposed modifications to the conditions of Grimes's release: (i) a modification of the geographic travel restrictions set forth as the first condition in Attachment A to the bond order entered by U.S. Magistrate Judge Sanket J. Bulsara on July 26, 2021 (the "Bond Order"), see Dkt. No. 20 at 3, that would permit Grimes to travel domestically outside of the Central District of California, Eastern District of New York and Southern District of New York with prior approval[1] of Pretrial Services; (ii) the removal of the curfew restriction set forth as the sixth condition in Attachment A to the Bond Order; and (iii) the modification of the seventh condition in Attachment A to require Grimes to provide notice to the government of all financial transactions in excess of $100,000 (excepting normal and customary payment of attorneys' fees, and including but not limited to any transactions involving publicly held securities of any description) and a continued prohibition on all financial transactions involving the United Arab Emirates, the Kingdom of

---

[1] In the Grimes Letter, defense counsel states that the government has agreed to permit Grimes to travel domestically outside the Central District of California, Eastern District of New York, and Southern District of New York with prior notice to Pretrial Services. See Dkt. No. 53 at 3. This is incorrect. The government consents to such travel with prior approval from Pretrial Services, not simply prior notice to Pretrial Services.

Saudi Arabia, and the State of Qatar. The government confirms its consent to these proposed modifications.

In addition, defense counsel requests that the Court remove the GPS monitoring condition set forth as the fifth condition to Attachment A of the Bond Order. For the reasons stated herein, the government opposes the removal of this condition and respectfully requests that the Court deny any motion by Grimes to remove this condition.

I. Background

On July 16, 2021, a grand jury sitting in the Eastern District of New York returned a seven-count indictment (the "Indictment") charging Grimes and his two co-defendants, Thomas J. Barrack and Rashid Sultan Rashid Al Malik Alshahhi ("Al Malik"), with: (i) one count of acting as an unregistered agent of a foreign government, in violation of Title 18, United States Code, Sections 951(a) and 2; and (ii) one count of conspiracy to act as an unregistered agent of a foreign government, in violation of Title 18, United States Code, Section 371.[2]

The Indictment charges that between approximately April 2016 and April 2018, Grimes, along with his co-defendants Barrack and Al Malik, acted in the United States as unregistered agents of the UAE to influence: (1) the foreign policy positions of the campaign of a candidate (the "Candidate") in the 2016 United States Presidential Election (the "Campaign"); (2) the incoming administration of the Candidate once elected in November 2016 (the "Administration"); and (3) media coverage and public perception of the UAE and its close ally, the Kingdom of Saudi Arabia ("KSA").

II. Prior Proceedings

On July 20, 2021, Grimes and Barrack were arrested in the Central District of California. At an initial appearance in the U.S. District Court for the Central District of California, the government requested that the Court enter an order of detention as to Grimes given the risk of flight in this case but acknowledged that a set of conditions likely could be fashioned that would sufficiently mitigate that risk and permit Grimes's release pending trial. See Transcript dated July 20, 2021 at 10:24-12:25, attached hereto as Ex. A. In seeking Grimes's immediate release, prior counsel highlighted several of the same considerations referenced in the Grimes Letter, including Grimes's youth, lack of criminal history, discontinued access to private aircraft, and prior awareness of the investigation. See id. at 13:17-16:14. U.S. Magistrate Judge Patricia Donahue concluded that Grimes "presents a very serious risk of flight" and entered an order of detention "based on risk of flight." Id. 19:3-22, 23:4-7 ("The Court finds that the defendant presents a serious risk of flight and orders that he be detained pending [a] hearing.").

---

[2] Barrack is also charged with one count of obstruction of justice, in violation of 18 U.S.C. § 1512(c)(2), and four counts of material false statements, in violation of 18 U.S.C. § 1001(a)(2).

2

On July 23, 2021, the parties again appeared in the U.S. District Court for the Central District of California, where Magistrate Judge Donahue, on consent of the parties, entered an order setting the conditions of Grimes's release, which included: (i) a bond of $5,000,000 secured by his parents' home and three sureties; (ii) supervision by Pretrial Services; (iii) the surrender of all passports and travel documents; (iv) prohibition on contact with his codefendants (outside the presence of counsel) and officials of the United Arab Emirates and the Kingdom of Saudi Arabia or their associates; (v) restriction to travel by road or common air carrier; (vi) additional restrictions on travel beyond the Central District of California, Eastern District of New York, and Southern District of New York; (vii) application of a GPS monitoring bracelet; and (viii) prohibition on international financial transactions and restrictions on domestic financial transactions exceeding $10,000. See United States v. Matthew Grimes, 21 MJ 3395 (C.D.C.A. July 23, 2021), Dkt. No. 13.

On July 26, 2021, the parties appeared before Magistrate Judge Bulsara in this court for the defendants' arraignment on the indictment. At the arraignment, Magistrate Judge Bulsara, on consent of the parties, entered an order setting the conditions of Grimes's release that were substantially the same as those entered by Magistrate Judge Donahue on July 23, 2021. At that proceeding, the government noted that "the Court in the Central District [of California] imposed GPS monitoring with respect to both defendants including an ankle bracelet for each individual and the parties are recommending that that condition be continued." Transcript dated July 26, 2021 at 11:1-5, attached hereto as Ex. B. Before entering the Bond Order, Magistrate Judge Bulsara asked a series of questions of the parties and spoke with the proposed sureties, noting his "independent obligation to determine whether or not the conditions are sufficient to mitigate against the risk of flight here." Id. at 13:4-6.

III.   Applicable Law

Under the Bail Reform Act, 18 U.S.C. § 3141 et seq., federal courts are empowered to order a defendant's pretrial release subject to the least restrictive combination of conditions that such judicial officer determines will reasonably assure the appearance of the person as required. 18 U.S.C. § 3142(c). A risk of flight need only be established "by a clear preponderance of the evidence, not by the higher standard of clear and convincing evidence." United States v. Motamedi, 767 F.2d 1403, 1406 (9th Cir. 1985); United States v. Eng, 629 F.3d 311, 319 (2d Cir. 2011) (same); United States v. Jackson, 823 F.2d 4, 5 (2d Cir. 1987) (same).

The Bail Reform Act lists the following four factors as relevant to the determination of whether detention is appropriate: (1) the nature and circumstances of the crimes charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the seriousness of the danger posed by the defendant's release. See 18 U.S.C. § 3142(g).

IV.   Discussion

In the Grimes Letter, defense counsel requests that the Court remove the GPS monitoring condition set forth as the fifth condition to Attachment A of the Bond Order. Defense counsel argues that, given Grimes's personal characteristics, he "does not pose any risk whatsoever of nonappearance" in this matter, citing many of the same factors articulated before

3

Magistrate Judge Donahue, including Grimes's youth, prior cooperation with the Special Counsel's Office,[3] ties to the United States, and lack of criminal history.[4] Dkt. No. 53 at 4.

The government opposes the removal of the GPS monitoring condition. The government has consented to reasonable requests for modifications by both Grimes and Barrack, see Dkt. No. 48 (noting the government's consent), but removal of GPS monitoring presents an unacceptably high risk of flight for the reasons set forth below. Accordingly, the government respectfully requests that the Court deny the request.

1. The Seriousness of the Charged Crimes and the Evidence of the Defendant's Guilt

Grimes is charged with offenses that are "serious by any measure." United States v. Angwang, 20 CR 442, 2020 WL 5947187, at *2 (E.D.N.Y. Oct. 7, 2020) (concluding that defendant charged with acting as an agent of a foreign government should be detained pending trial). Grimes is alleged to have conspired with Barrack and Al Malik to use Barrack's position of significant influence as an outside advisor to the Campaign and the Administration and as a national media figure with regularly televised interviews on major news networks to further the interests of the UAE as directed by senior UAE officials and their intermediaries. Although it is undisputed that Grimes's primary role was to assist Barrack in this endeavor, the evidence reflects that this assistance was critical to the success of the illegal scheme. Grimes acted as a trusted intermediary between Barrack and Al Malik, often at the direction of UAE government officials, relaying requests and directions from Al Malik and UAE government officials to Barrack. Grimes also drafted critical strategy documents that proposed how Barrack and Grimes could increase the influence of UAE government officials in the United States. In the context of the charged offenses, Grimes was hardly a mere assistant; rather, he was a central actor essential to the success of the illicit foreign influence campaign.

Moreover, the evidence of Grimes's guilt in this case is overwhelming. The actions of Grimes and his codefendants during the relevant time period are heavily documented and corroborated in thousands of emails, text messages, iCloud records, flight records, social media records, photographs, video recordings, and other types of evidence, all of which capture their agreement to take direction from UAE government officials and their actions on behalf of

---

[3] Although the government does not dispute that the defendant met with investigators from the Special Counsel's Office on multiple occasions, it bears noting that the Special Counsel's Office was authorized to investigate links or coordination between the Russian government and individuals associated with the campaign of President Trump, an area of inquiry that is distinct from the conduct at issue in this case. Moreover, it cannot be disputed that a defendant's incentive to flee from justice increases significantly after learning that he has been charged with a crime.

[4] Notably, Magistrate Judge Donahue concluded, even after being apprised of the same factors set forth before this Court in the Grimes Letter, that the defendant not only presented a risk of flight but a "very serious risk of flight." Id. 19:3-22.

the UAE.  The "existence of concrete evidence . . . may weigh against release when it sheds light on a defendant's role in an alleged crime."  Angwang, 2020 WL 5947187, at *3.

        2.        <u>The Potential Period of Incarceration</u>

As a result of his conduct, the defendant potentially faces an incarceratory sentence of meaningful duration.  See United States v. Bruno, 89 F. Supp. 3d 425, 431 (E.D.N.Y. 2015) ("When the sentence . . . upon conviction is likely to be long . . . a defendant has stronger motives to flee.").  There is no section in the United States Sentencing Guidelines that expressly applies to violations of 18 U.S.C. § 951.  Where "there is not a sufficiently analogous guideline, the provisions of 18 U.S.C. § 3553 shall control." U.S.S.G. § 2X5.1. Courts have repeatedly concluded that there is no sufficiently analogous guideline for 18 U.S.C. § 951 and that 18 U.S.C. § 3553 controls.  See, e.g., United States v. Butina, No. 18 CR 218 (D.D.C. May 1, 2019), Dkt. No. 124; United States v. Soueid, No. 11 CR 494, (E.D.Va. July 20, 2012) Dkt. No. 59; United States v. Chun, No. 16 CR 618 (S.D.N.Y. Oct. 14, 2016), Dkt. No. 17 at 10.

If Grimes is convicted of the charged offenses and the Court similarly concludes that 18 U.S.C. § 3553 controls, the Court will then consider as its starting point under 18 U.S.C. § 3553(a)(6) the sentences of "defendants with similar records who have been found guilty of similar conduct."  Although sentences for violations of 18 U.S.C. § 951 vary greatly, the government highlights some non-exhaustive examples below:

- In United States v. Alvarez, No. 05 CR 20943 (S.D. Fla.), the defendant pled guilty to conspiring to act as an unregistered agent of Cuba, in violation of 18 U.S.C. §§ 371 and 951. As part of his activities, the defendant gathered information on prominent people, community attitudes, political developments, and current events and passed that information to Cuba.  The court sentenced the defendant to 60 months of imprisonment.

- In United States v. Latchin, No. 04 CR 661 (N.D. Ill.), the defendant was convicted after trial for acting as an unregistered agent of Iraq, in violation of 18 U.S.C. § 951, although there was no evidence that he took any covert action inside the United States.  The court sentenced the defendant to 48 months of imprisonment.

- In United States v. Butina, No. 18 CR 218 (D.D.C.), the defendant pled guilty to conspiring to act as an unregistered agent of Russia, in violation of 18 U.S.C. § 371.  The defendant worked to spot and assess politically powerful and well-connected United States citizens on behalf of the Russian government.  Based, in part, on her cooperation with the government, the court sentenced the defendant to 18 months of imprisonment.

- In United States v. Soueid, No. 11 CR 494 (E.D. Va.), the defendant pled guilty to acting as an unregistered agent of Syria, in violation of 18 U.S.C.

5

§ 951. The defendant's conduct included collecting video and audio recordings of individuals in the United States who were protesting the regime of Bashar al-Assad and providing information on those individuals to the Syrian government. The court sentenced the defendant to 18 months of imprisonment.

- In United States v. Al-Awadi, No. 07 CR 20314 (E.D. Mich.), the defendant pled guilty to acting as an unregistered agent of Iraq, in violation of 18 U.S.C. § 951, as a result of his efforts to report on Iraqi dissidents within the United States for the Iraqi Intelligence Services. The court sentenced the defendant to 18 months of imprisonment.

- In United States v. Buryakov, No. 15 CR 73 (S.D.N.Y.), the defendant pled guilty to acting as an unregistered agent of Russia, stemming from his agreement to act at the direction of a Russian government official. The court sentenced the defendant to 30 months of imprisonment.

Here, while this matter is still in its initial stages, the government notes that even the prospect of a meaningful incarceratory sentence supports the determination that the defendant poses a risk of flight that cannot be sufficiently mitigated without GPS monitoring.

        3.      The Defendant's International Travel and Contacts

The defendant also poses a significant risk of flight warranting GPS monitoring due to his extensive international travel and contacts with extremely powerful foreign government officials. As part of his employment for Barrack, Grimes has traveled abroad with Barrack extensively, including more than 50 international trips in the past five years, according to flight records. On many of these trips, Grimes has traveled to foreign countries that do not have extradition treaties with the United States, including, most relevant here, the United Arab Emirates and the Kingdom of Saudi Arabia as recently as February 2020 and March 2020. See Angwang, 2020 WL 5947187, at *3 (noting defendant's ties to China, "a country with which the United States has no extradition treaty," in entering permanent order of detention).

Indeed, the defendant is charged with acting at the direction or control of such a country, the United Arab Emirates to promote its interests and the interests of its close ally, the Kingdom of Saudi Arabia. Evidence gathered during this investigation has revealed that the defendant has met with senior leaders, including national security officials, of the United Arab Emirates and the Kingdom of Saudi Arabia on multiple occasions and that those leaders are directly aware of Grimes's assistance. In fact, in communications with Al Malik, the defendant was informed that his "name came up many times" in conversations with the leaders of the UAE, who regarded him as their "hero." Neither the UAE nor the KSA have extradition treaties with the United States. If the defendant were to successfully flee to either of these two countries, he would potentially have the assistance of their highest leaders, virtually ensuring that the defendant would never face justice in the United States. See United States v. Donziger, No. 11 CV 691 (LAK), 2020 WL 789489, at *2 (S.D.N.Y. Dec. 31, 2020) (denying motion to remove pretrial conditions of home confinement and GPS monitoring for defendant charged with a

6

misdemeanor offense based in part on the defendant's "significant ties" to a foreign country, including its "high-ranking government officials").

Further, if Grimes were to learn that senior leaders of these countries were actively seeking to encourage Grimes's flight from justice, as they would have every incentive to do, the pressure on Grimes to comply with such a demand by such powerful government officials would be substantial. Similarly, Grimes could face similar pressure if he came to believe his codefendant Barrack was encouraging Grimes to flee. As detailed by defense counsel, Grimes has spent his entire career working directly for Barrack, an individual with vast financial resources who until recently was the executive chairman of a global investment management firm headquartered in Los Angeles with more than $40 billion under management. Bank records and telephone records reflect that, prior to his arrest, the defendant listed Barrack's $15 million dollar home in Aspen, Colorado as his primary residence. Further, thousands of emails and text message communications obtained during the course of this investigation further confirm that the defendant and Barrack have a close, albeit asymmetrical, relationship. The potential for numerous powerful and wealthy individuals, including foreign leaders and his codefendant, to pressure Grimes to flee significantly increases Grimes's risk of flight.

### 4. Continuation of GPS Monitoring is Necessary to Mitigate Risk of Flight

In light of the significant factors outlined above that increase the risk of flight in this case, continuation of GPS monitoring is wholly warranted and appropriate here. GPS monitoring will allow Pretrial Services to monitor Grimes's location and ensure that he is not fleeing the district. Further, GPS monitoring will also alert Pretrial Services if Grimes is not complying with other conditions of his release, such as traveling outside of the Central District of California, Southern District of New York, and Eastern District of New York without the prior approval of Pretrial Services or impermissibly associating with his codefendant outside of the presence of counsel. See United States v. Paulino, 335 F. Supp. 3d 600, 617-18 (S.D.N.Y. 2018) ("[P]retrial monitoring now enables a pretrial officer to track a defendant in real time, on a computer or a cell phone, so that the officer can be assured that, for example, when [the defendant] says he is going to the hospital, that he is in fact doing so.").

Although defense counsel argues that Grimes should be subject only to the "usual" conditions of pretrial release, the imposition of GPS monitoring is hardly an unusual condition, particularly in circumstances where, as here, the charged conduct reflects significant ties between the defendant and foreign government officials. Rather, defendants in the Eastern District of New York charged with acting as unregistered agents of a foreign government have routinely been released subject to the imposition of GPS monitoring. See, e.g., United States v. Hu, et al., No. 21 CR 265 (PKC) (E.D.N.Y.), Dkt. Nos. 14, 32, 93 (releasing three defendants charged with violations of 18 U.S.C. § 951 subject to GPS monitoring); United States v. Angwang, 20 CR 442 (ERK) (E.D.N.Y.), Dkt. No. 48 (releasing a defendant charged with violating 18 U.S.C. § 951 subject to GPS monitoring).

Finally, it should be noted that the burden on the defendant from GPS monitoring is not significant. Although defense counsel argues that the electronic monitoring device is embarrassing, uncomfortable, and inhibits Grimes's activities, such as surfing, these impositions are not unreasonable in light of the significant risk factors outlined above that require mitigation.

7

III.　Conclusion

   For the reasons set forth above, the government respectfully requests that the Court deny any motion by Grimes to remove the condition requiring GPS monitoring from the conditions of his release.

            Respectfully submitted,

            BREON PEACE
            United States Attorney

    By:  /s/_____
            Ryan C. Harris
            Samuel P. Nitze
            Hiral D. Mehta
            Assistant U.S. Attorneys
            (718) 254-7000