

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

SPN:HDM/RCH/CRH
F. #2018R001309

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

December 23, 2021

By ECF

The Honorable Brian M. Cogan
United States District Judge
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:    United States v. Matthew Grimes
                Criminal Docket No. 21-371 (BMC)

Dear Judge Cogan:

      The government respectfully submits this letter to notify the Court regarding a potential conflict involving counsel for the defendant Matthew Grimes. This potential conflict arises from a written agreement between Grimes and co-defendant Thomas Barrack, in which Barrack has agreed to advance Grimes' legal fees (the "Fees Agreement"). Based upon representations by counsel for Barrack and Grimes, it appears that Barrack and Grimes executed the Fees Agreement after they were arrested in the above-captioned case. The Fees Agreement provides for advancing payments by Barrack to Grimes' legal counsel and provides that such payments are not intended to interfere with Grimes' independent defense of the case.

      The government advises the Court of this information pursuant to its obligation under Second Circuit law so the Court may conduct the appropriate inquiry pursuant to United States v. Curcio, 680 F.2d 881, 888-90 (2d Cir. 1982), including by appointing Curcio counsel during the next court appearance on January 5, 2021. See, e.g., United States v. Stantini, 85 F.3d 9, 13 (2d Cir. 1996); United States v. Malpiedi, 62 F.3d 465, 467 (2d Cir. 1995).

BACKGROUND

I.    The Indictment

      On July 16, 2021, a grand jury sitting in the Eastern District of New York returned a seven-count indictment (the "Indictment") charging the defendant and his two co-defendants, Barrack and Rashid Sultan Rashid Al Malik Alshahhi, with: (i) one count of acting as an unregistered agent of a foreign government, in violation of Title 18, United States Code, Sections 951(a) and 2; and (ii) one count of conspiracy to act as an unregistered agent of a foreign government, in violation of Title 18, United States Code, Section 371. Barrack was also charged

with one count of obstruction of justice, in violation Title 18, United States Code, Section 1512(c)(2), and four counts of material false statements, in violation of Title 18, United States Code, Section 1001(a)(2).

The Indictment charges that between approximately April 2016 and April 2018, the defendant, along with his co-defendants Barrack and Al Malik, acted in the United States as unregistered agents of the United Arab Emirates ("UAE") to influence: (1) the foreign policy positions of the campaign of then-candidate Donald J. Trump in the 2016 United States Presidential Election; (2) the administration of President Trump once elected in November 2016; and (3) media coverage and public perception of the UAE and its close ally, the Kingdom of Saudi Arabia ("KSA").

DISCUSSION

II.     Applicable Law

   A.   Overview

The Sixth Amendment affords a criminal defendant the right to the effective assistance of counsel. See Wood v. Georgia, 450 U.S. 261, 271 (1981); United States v. Perez, 325 F.3d 115, 124 (2d Cir. 2003). That right, however, is not absolute and does not guarantee the defendant counsel of his own choosing. See United States v. Jones, 381 F.3d 114, 119 (2d Cir. 2004); United States v. Locascio, 6 F.3d 924, 931 (2d Cir. 1993). While there is a "presumption in favor of the [defendant's] chosen counsel, such presumption will be overcome by a showing of an actual conflict or a potentially serious conflict." Jones, 381 F.3d at 119 (citing Locascio, 6 F.3d at 931); see also Wheat v. United States, 486 U.S. 153, 164 (1988).

To determine if a defendant's counsel is burdened by a conflict of interest, a district court "must investigate the facts and details of the attorney's interests to determine whether the attorney in fact suffers from an actual conflict, a potential conflict, or no genuine conflict at all." United States v. Levy, 25 F.3d 146, 153 (2d Cir. 1994). An actual conflict exists "when the attorney's and the defendant's interests diverge with respect to a material factual or legal issue or to a course of action, or when the attorney's representation of the defendant is impaired by loyalty owed to a prior client." Jones, 381 F.3d at 119 (internal quotation marks and citations omitted). A potential conflict arises if "the interests of the defendant could place the attorney under inconsistent duties in the future." Id. (emphasis and citations omitted).

   1.   Disqualification

If an attorney suffers from an actual or potential conflict of such a serious nature that no rational defendant would knowingly and intelligently desire that attorney's representation, the court must disqualify that attorney. See United States v. Lussier, 71 F.3d 456, 461-62 (2d Cir. 1995). Such per se conflicts of interest are not only unwaivable, but are of such a serious nature that if allowed to persist through trial and conviction, on appeal they result in automatic reversal without requiring a showing of prejudice. United States v. Williams, 372 F.3d 96, 103 (2d Cir. 2004). Regardless of the severity of the conflict or the defendant's willingness to waive the conflict, "[f]ederal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to

2

all who observe them." Wheat, 486 U.S. at 160. "The question of [attorney] disqualification therefore implicates not only the Sixth Amendment right of the accused, but also the interests of the courts in preserving the integrity of the process and the government's interests in ensuring a just verdict and a fair trial." Locascio, 6 F.3d at 931. Accordingly, "a district court should decline to permit a defendant to be represented by the counsel of his choice if that representation would undermine the integrity of the judicial process." United States v. DiPietro, No. 02 CR 1237 (SWK), 2004 WL 613073, at *4 (S.D.N.Y. Mar. 29, 2004) (citing Wheat, 486 U.S. at 163).

### 2. Conflicts That May Be Waived

If a conflict is such that a rational defendant could knowingly and intelligently choose to continue to be represented by the conflicted attorney, the court must obtain directly from the defendant a valid waiver in accordance with the procedures set forth in Curcio. See, e.g., Malpiedi, 62 F.3d at 470; Levy, 25 F.3d at 153; United States v. Iorizzo, 786 F.2d 52, 58-59 (2d Cir. 1986). In summarizing Curcio procedures, the Second Circuit has instructed the trial court to:

> (i) advise the defendant of the dangers arising from the particular conflict; (ii) determine through questions that are likely to be answered in narrative form whether the defendant understands those risks and freely chooses to run them; and (iii) give the defendant time to digest and contemplate the risks after encouraging him or her to seek advice from independent counsel.

Iorizzo, 786 F.2d at 59; see also Curcio, 680 F.2d at 888-90. By relying on waivers of potential conflict claims, courts are spared from having to wade into the intricacies of those claims. United States v. Jiang, 140 F.3d 124, 128 (2d Cir. 1998).

Finally, the need for a Curcio hearing exists regardless of whether a case is disposed of by way of guilty plea or trial. "A claim that counsel is conflicted is in essence a claim of ineffective assistance of counsel." Stantini, 85 F.3d at 15. Likewise, "[e]ffective assistance of counsel includes counsel's informed opinion as to what pleas should be entered." Boria v. Keane, 99 F.3d 492, 497 (2d Cir. 1996). Therefore, it necessarily follows that a defendant has a right to conflict-free representation during the plea negotiation stage. See id. ("[P]rior to trial an accused is entitled to rely upon his counsel to make an independent examination of the facts, circumstances, pleadings and laws involved and then to offer his informed opinion as to what plea should be entered.") (quoting Von Moltke v. Gillies, 332 U.S. 708, 721 (1948) (emphasis added)); see also Stantini, 85 F.3d at 16-17 (suggesting that ineffective assistance of counsel may be shown if attorney's dual representation led to inadequate advice "with respect to the advantages or disadvantages of a plea").

### B. Payment of Legal Fees by Third Parties

As articulated by the Second Circuit, a conflict may arise when an attorney is paid by a third party, rather than by his or her own client:

> Ethical considerations warn against an attorney accepting fees from someone other than her client. As we stated in a different context, the acceptance of such "benefactor payments" "may subject an

3

attorney to undesirable outside influence" and raises an ethical question "as to whether the attorney's loyalties are with the client or the payor."

Locascio, 6 F.3d at 932 (quoting In re Grand Jury Subpoena Served Upon John Doe, Esq., 781 F.2d 238, 248 n.6 (2d Cir. 1986) (en banc)); see Wood, 450 U.S. at 269–70 ("Courts and commentators have recognized the inherent dangers that arise when a criminal defendant is represented by a lawyer hired and paid by a third party, particularly when the third party is the operator of the alleged criminal enterprise."); United States v. Wells, 394 F.3d 725, 733–34 (9th Cir. 2005); Moreno-Godoy v. United States, 2014 WL 1088300, at *32 (S.D.N.Y. Mar. 20, 2014) ("A conflict of interest can arise where a third party's payment of a defendant's attorney's fees leads to a theoretical division of loyalties."); United States v. Arakelian, No. 04 Cr. 447 (RPP), 2005 WL 2173923, *6-7 (S.D.N.Y. Sept. 6, 2005) (describing Curcio-related inquiry related to potential benefactor payments); United States v. Gotti, 771 F. Supp. 552, 562 (E.D.N.Y. 1991) (discussing the "pernicious effect of benefactor payments upon the 'institutional interest in the rendition of just verdicts in criminal cases' and the extent to which they 'gravely imperil the prospect of a fair trial'" (citing Wood, 450 U.S. at 268-69)).[1]

"By their very nature, third-party fee arrangements create numerous ethical pitfalls into which even the most wary criminal defense attorney may stumble." United States v. Duran-Benitez, 110 F. Supp. 2d 133, 151-52 (E.D.N.Y. 2000) (citing New York Disciplinary Rule 5-107); see also Restatement § 134(1) ("A lawyer may not represent a client if someone other than the client will wholly or partly compensate the lawyer for the representation, unless the client consents . . . and knows of the circumstances and conditions of the payment."). "These ethical pitfalls become especially dangerous when a defendant's lawyer is hired and paid by 'the operator of the alleged criminal enterprise.'" Duran-Benitez, 110 F. Supp. 2d at 152 (quoting Wood, 450 U.S. at 269). In such situations, the Supreme Court wrote in Wood, there exists a "risk that the lawyer will prevent his client from obtaining leniency by preventing the client from offering testimony against his former employer or from taking other actions contrary to the employer's interest." Wood, 450 U.S. at 269; see also In re: Grand Jury Subpoena Served Upon John Doe, Esq., 781 F.2d at 248 n.6 (noting that when "the third party is the head of a criminal enterprise of which the clients are members . . . an ethical question arises as to whether the attorney's loyalties are with the client or the payor").

---

[1] "[A]bsent special circumstances . . . , disclosure of fee information and client identity is not privileged . . . ." In re Grand Jury Subpoena Served Upon John Doe, Esq., 781 F.2d at 248.

4

III.    Analysis

Here, because Grimes' co-defendant and alleged co-conspirator in the case, Barrack, is paying his legal fees, Grimes' counsel face a potential conflict of interest. These circumstances pose real "inherent dangers" in that the payment of legal fees by a third party—particularly a co-defendant and alleged co-conspirator—"may subject an attorney to undesirable outside influence" and raise an ethical question "as to whether the attorney's loyalties are with the client or the payor." Locascio, 6 F.3d at 932.

Specifically, the Fees Agreement, which was executed after the defendants were arrested has the potential to affect defense counsel's advice, including (1) whether to seek possible leniency by cooperating with the government against Barrack (the party who is paying his legal fees), and (2) whether Grimes should testify in his own defense at trial, where such testimony might implicate Barrack. See, e.g., Wood, 450 U.S. at 270 ("One risk is that the lawyer will prevent his client from obtaining leniency by preventing the client from offering testimony against his former employer or from taking other actions contrary to the employer's interest."); Amiel v. United States, 209 F.3d 195, 198–99 (2d Cir. 2000) (reasoning that if trial counsel advised defendant not to testify even though testifying was in the best interests of the defendant, to avoid inculpating the payor of counsel's fees, "these facts . . . would entitle appellant to relief [on an ineffective assistance claim] on the ground that trial counsel abdicated his duty of loyalty by permitting a third party who paid his fees to influence his professional judgment in representing [the defendant]" (citations omitted)); Wood, 450 U.S. at 270 ("Another kind of risk is present where, . . . the party paying the fees may have had a long-range interest in establishing a legal precedent and could do so only if the interests of the defendants themselves were sacrificed.").[2]

This concern is even more present when the third party paying a defendant's legal fees is a member of the charged conspiracy. See In re Grand Jury Subpoena Served Upon Doe, 781 F.2d at 251 ("[P]ayment for legal representation may be a form of compensation to members of a crime 'crew'"); United States v. Simmons, 923 F.2d 934, 949 (2d Cir. 1991) ("Rather, the evidence demonstrated that Peter Monsanto preferred that appellants use [attorney] Port and that, in at least some situations, he made benefactor payments to Port on their behalf, including a payment with Gary Simmons of $10,000 to handle an appeal for Arnold Lawson in a state narcotics case and of $100,000 to $150,000 for services in connection with certain FBI searches. These facts alone created a suspicion that appellants were somehow linked.").

---

[2] See also United States v. Bernstein, 533 F.2d 775, 788 (2d Cir. 1976) ("Since the codefendants were underwriting Behar's defense, this readily apparent conflict could be seen by the court to indicate a significant probability of prejudice. The freedom of the attorney, whether in cross-examination or assertion of the defense of lack of authority, could have been inhibited and a full and uncompromised defense of his clients' interests have been seriously impaired. While neither Judge Travia nor this court in any manner questioned the integrity of Mr. Boitel or his assurance that he would give Behar full and proper representation regardless of who was paying him, the court had a special duty to make certain that any waiver was knowingly and intelligently made.").

5

Accordingly, the government respectfully requests that the Court appoint <u>Curcio</u> counsel to advise the defendant regarding the potential conflict and evaluate whether the defendant is able to knowingly and intelligently waive that conflict. A <u>Curcio</u> hearing is necessary to determine: (i) whether the payment of the defendant's legal fees by Barrack presents a conflict; (ii) the nature and extent of that conflict; and (iii) whether the defendant is willing and able to make a knowing and voluntary waiver of the conflict. The defendant should also be reminded that, if he cannot afford counsel, he need not rely on his co-defendant and alleged co-conspirator to pay his legal fees because counsel will be provided to him by the Court. The government has provided proposed questions for the Court to ask the defendant to ensure a valid waiver, which are attached as Exhibit A.

IV. <u>Conclusion</u>

For the foregoing reasons, the government respectfully requests that the Court notify the defendant of the potential conflicts described above and conduct an appropriate inquiry pursuant to <u>Curcio</u>. The Court should further advise the defendant regarding his right to conflict-free representation and determine whether he waives those rights.

Respectfully submitted,

BREON PEACE
United States Attorney

By:   /s/ Hiral D. Mehta
Hiral D. Mehta
Ryan C. Harris
Sam Nitze
Craig R. Heeren
Assistant U.S. Attorneys
(718) 254-7000

MATTHEW G. OLSEN
Assistant Attorney General
Department of Justice
National Security Division

By:   /s/ Matthew J. McKenzie
Matthew J. McKenzie
Trial Attorney

cc:   Clerk of the Court (by email)
     Counsel of Record (by ECF)

## **EXHIBIT A**

Proposed Curcio Examination

I. Potential Conflict of Interest Posed by Co-Defendant's Payment of Legal Fees

    a. Are you satisfied with the services of your attorneys thus far in the case?

    b. Do you understand that, in every criminal case, including this one, the defendant is entitled to the assistance of counsel whose loyalty to him or her is undivided, and who is not subject to any force or consideration that might in any way intrude upon the attorney's loyalty to his or her client's interests?

    c. Have you received any inducements, promises, or threats about your choice of counsel in this case?

    d. Are you paying your attorneys' fees or is someone else paying for them to represent you? Who specifically is paying them? How long has that been the case?

    e. Do you have an understanding whether, in the future, they will continue to pay, indemnify, or reimburse your legal fees in this case? What is your understanding?

    f. Because your attorneys are being paid by a third party, they may be influenced by this third party in connection with their representation of you, that is, they may be influenced to advise you to do things that are in the third party's best interests and not in your best interests.

        i. For instance, if the third party is involved in the alleged crime, the third party may have a vested interest in having your lawyers advise you to accept sole responsibility for the unlawful scheme or to minimize the third party's involvement with or knowledge of the scheme. Do you understand that?

        ii. Your lawyers may also have an interest in advising you not to seek to cooperate with the government, even if that might be in your interest, where your cooperation might directly or indirectly implicate the third party that is paying your legal fees. Do you understand that?

    g. Have you consulted with counsel other than your attorneys about the risks associated with this potential conflict of interest?

    h. Let me give you some examples of the ways in which your attorneys' ability to represent you might be affected by the fact that they have been paid by Mr. Thomas Barrack. This could affect the way that your lawyers consider and advise you:

7

      i. Whether, and when, you should plead guilty;

      ii. Whether you should seek to cooperate with the government;

      iii. What defenses you should raise;

      iv. Whether you should testify at trial;

      v. Which witnesses should be cross examined, and what questions they should be asked;

      vi. Which witnesses should be called, and what other evidence to offer on your behalf;

      vii. What arguments to make on your behalf to the jury;

      viii. What arguments to make to the Court, and what facts to bring to the Court's attention, before trial, during trial, or, if you are convicted, at your sentencing.

    i. Tell me in your own words what your understanding is of the potential conflict of interest arising in this situation.

II. <u>Right to Conflict-Free Representation</u>

    a. Do you understand that you have the right to object to your attorneys' continued representation of you based upon the existence of a potential conflict of interest?

    b. It is important that you understand that no one can predict with any certainty the course that this case will take or how this conflict may affect it.

    c. What is your understanding of the right to "effective assistance of counsel"?

    d. Is there anything I have said that you wish to have explained further?

    e. I will give you an opportunity to think about what you have been told, and, if you would like, to talk it over with counsel other than your attorneys. After you have thought it over, I will ask whether you have considered the matters that I have talked to you about, either with or without an attorney. Then I will ask whether you wish to continue with your attorneys.

III. <u>Continuation of Curcio Hearing</u>

    a. Given that having your co-defendant Thomas Barrack pay your legal fees may adversely affect your defense, do you still believe that it is in your best interest to proceed with your attorneys?

    b. Is that your wish?

    c. Do you understand that by continuing in this fashion with your attorneys, you are waiving your right to be represented by an attorney who has no conflict of interest?

    d. Are you knowingly and voluntarily waiving your right to conflict-free representation?

    e. Do you agree to waive any post-conviction argument, on appeal or otherwise, that by virtue of having a third party—and, indeed, your co-defendant—pay your legal fees, you were denied effective assistance of counsel?

    f. Is there anything that the Court has said that you wish to have explained further?