

200 Park Avenue
New York, NY 10166
T +1 212 294 6700
F +1 212 294 4700

**ABBE DAVID LOWELL**
Partner
202-282-5875
ADLowell@winston.com

December 24, 2021

**VIA ECF**

Honorable Brian M. Cogan
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re:   *United States v. Alshahhi, et al.*, 21-cr-00371-BMC-TAM

Dear Judge Cogan:

It is routine for the government to seek to avoid any error under *United States v. Curcio*, 680 F.2d 881 (2d Cir. 1982), but the concerns raised by the government and its proposed remedy are overblown. Even where a conflict of interest is present, it is only in "rare cases" that the conflict is so severe as to be unwaivable. *United States v. Arrington*, 941 F.3d 24, 40 (2d Cir. 2019). Rather, "[t]he Sixth Amendment right to effective assistance of counsel 'generally ensures that an accused may be represented by any attorney who will agree to take his case.'" *Id.* at 39 (quoting *United States v. Perez*, 325 F.3d 115, 124 (2d Cir. 2003)); *see also United States v. Gonzalez-Lopez*, 548 U.S. 140, 147–48 (2006) (holding that erroneous deprivation of a defendant's right to counsel of choice constitutes structural error). Thus, "[t]he ultimate goal of these procedures is to permit the court to determine whether the defendant's waiver of his right to conflict-free counsel is knowing and intelligent." *Perez*, 325 F.3d at 119. The Court can readily make that determination here without all the government requests.

In the first place, there is no conflict of interest because defense counsel take their ethical responsibilities to Mr. Grimes seriously. Prior to the government filing its letter, counsel for Mr. Grimes (and Mr. Barrack as well) spoke with and assured the government of what it already knew – that both defendants were represented by lawyers and firms any research about would indicate that they independently and ethically represent their clients (often through trials) zealously.

Importantly, the fee agreement in this matter is designed to avoid any such conflict. As Mr. Petrocelli explained on behalf of Mr. Barrack, "the Fee Agreement specifically provides that Mr. Grimes retains and has the right to control his defense in this action, and that his counsel shall take direction from Mr. Grimes alone." (Dkt. 61.) Thus, Mr. Barrack and his counsel have acknowledged to the Court that they have no authority to instruct Mr. Grimes' counsel as to how to defend Mr. Grimes and – to be perfectly clear to everyone – we have no intention of taking direction from anyone but Mr. Grimes or recommending any course of action that we do not believe to be in his best interests.



December 24, 2021
Page 2

The history of the investigation alone should have ended any concern with this sort of financial arrangement. While Mr. Grimes was unaware that he was the subject of any investigation by the Eastern District of New York until the day he was arrested and then detained, he had fully cooperated with the predecessor investigation led by Special Counsel Robert Mueller, including sitting for an interview with the Office of Special Counsel in Washington, D.C. and testifying at two grand jury appearances in early 2018, *even though his fees were being paid by his employer* (which at the time may have had its own exposure). The government raised no issue or concerns then.

In suggesting a potential conflict now, the government complains about situations where a defendant's counsel is "hired and paid" by the head of some criminal enterprise (Dkt. 60 at 2), but those are not the facts here. DigitalBridge is a highly-regulated NYSE-listed company for which Mr. Barrack served as CEO before the charges here were filed. In addition, Mr. Grimes hired his own defense counsel, who were not selected for him by or subject to the approval of Mr. Barrack, so there should be no concern that our loyalties would be toward Mr. Barrack. The cases that the government cites arise in a vastly different context in which an alleged mob boss sends in his criminal enterprise's "house counsel" to represent some lesser member of the criminal enterprise. *United States v. Gotti,* 771 F. Supp. 552, 562 (E.D.N.Y. 1991), *see also In re Grand Jury Subpoena Served Upon John Doe,* 781 F.2d 238, 242 (2d Cir. 1986); joint or multiple representation of defendants, *Gotti,* 771 F. Supp. at 562; *United States v. Simmons,* 923 F.2d 934, 949 (2d Cir. 1991), and *Woods v. Georgia,* 450 U.S. 261, 271 (1981); existing employer-employee relationship and conflicting defenses, *United States v. Bernstein,* 533 F.2d 775, 788 (2d Cir. 1976). Not only did Mr. Barrack not hire the defense counsel for Mr. Grimes, but Mr. Grimes' counsel have never worked for Mr. Barrack and have no financial dependence upon him for work. In light of the government's apprehension expressed in its letter, it should be noted that during the Special Counsel's investigation, the government knew that Mr. Grimes was being advised by the same counsel representing Mr. Barrack (and others at Colony Capital/DigitalBridge) and raised no conflict concerns then. Similarly, when they picked up the investigation, the U.S. Attorney's Office here presumably knew that this same counsel represented Mr. Barrack and numerous others and did not raise or seek a conflict waiver then either. However, now, it is Mr. Grimes who has made sure he has his own, independent attorneys.

Messrs. Grimes (and Barrack) were employed by Colony Capital, Inc., now DigitalBridge. There are advancement/indemnification obligations to both arising from that employment relationship, which Colony/DigitalBridge has acknowledged as to Mr. Barrack but has yet to do so for Mr. Grimes and for which Mr. Grimes will pursue if not forthcoming. There is *no* current employment relationship between Mr. Grimes and Mr. Barrack.

The sort of fee arrangements that arise in this context certainly do not create any sort of unwaivable conflict. *See Moreno-Godoy v. United States*, 2014 WL 1088300, at *33 (S.D.N.Y. Mar. 20, 2014) (finding no division of loyalties despite advancement from a co-defendant). There is no presumption that such a financial arrangement creates a conflict, *Feinberg v. United States*, 1983 U.S. Dist. LEXIS 12388, at *5 (S.D.N.Y. Oct. 25, 1983), *United States v. Hoffer*, 423 F. Supp. 811, 818 (S.D.N.Y. 1976), *aff'd without opinion*, 556 F.2d 561 (2d Cir. 1977). Where cases indicate that a basis for a lack of concern was that payments were to be made or were made early in a case, *see, e.g.*, *Feinberg*, this is the beginning of case and, had the government not raised any objection, the advancement would have occurred already.





When the government attempts to move past abstract potential conflicts, it identifies only two concerns: (1) whether the fee arrangement might interfere or inhibit Mr. Grimes from "cooperating with the government" and (2) whether it might prevent Mr. Grimes from testifying or otherwise "implicate Barrack." (Dkt. 60 at 5.) It seems that the government is less concerned with Mr. Grimes making a full and complete defense to the charges against him (to which he has pled not guilty) than some plan they might have to seek his help in proving their case against Mr. Barrack. So much for their concern for Mr. Grimes.

To be sure, the Court should satisfy itself that Mr. Grimes is comfortable with this fee arrangement and that he is willing to waive any even remote potential conflict of interest that it could generate, but the government's proposal goes too far. There is no need for the Court to appoint some new *Curcio* counsel as the government requests. To begin with, Mr. Grimes has consulted with an attorney on these issues (someone not being paid by any advancement from Mr. Barrack). Additionally, courts allow defendants to acknowledge potential conflict issues and waive them without choosing to consult with independent counsel (as Mr. Grimes already has done). *See, e.g.*, *United States v. Babilonia*, 687 F. App'x 63, 70 (2d Cir. 2017) (summary order; Cogan, J., on panel sitting by designation) (finding it sufficient that defendant was informed of his right to consult with independent counsel before waiving his rights, even though he did not do so and independent counsel was not appointed); *United States v. Outerie*, 2008 WL 11344619, at *1 (E.D.N.Y. May 22, 2008) (Orenstein, M.J., conducting *Curcio* hearing at the direction of Judge Cogan) (holding that defendant made a knowing waiver of any conflict after being advised of his right to confer with independent counsel, but declining).

Nor is there a need for the lengthy interrogation of Mr. Grimes that the government proposes in Exhibit A. (Dkt. 60.) As Your Honor observed in *Babilonia*, the Second Circuit is "more concerned with whether the defendant appreciated his predicament and made a properly informed choice than we are with whether the trial judge recited any particular litany of questions." 687 F. App'x at 69 (citations omitted). The Court need only satisfy itself that Mr. Grimes understands the fee arrangements and any conflicts that it may create, and that he is comfortable in proceeding. The Court can quickly confirm that to be true in a brief discussion with Mr. Grimes.

Respectfully,

*/s/ Abbe David Lowell*
Abbe David Lowell
WINSTON & STRAWN LLP
1901 L Street, N.W.
Washington, D.C. 20036
D: +1 202-282-5875
F: +1 202-282-5100
ADLowell@winston.com

Matthew L. Schwartz
BOIES SCHILLER FLEXNER LLP



December 24, 2021
Page 4

55 Hudson Yards
New York, NY 10001
D: +1 212-446-2300
F: +1 212-446-2350
mlschwartz@bsfllp.com

*Attorneys for Defendant Matthew Grimes*

cc: All counsel of record (via ECF)