IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 1:21-cr-00371(BMC)(TAM) |
| | ) | Hon. Brian M. Cogan |
| MATTHEW GRIMES | ) | |

# MR. GRIMES' MOTION FOR GRAND JURY SCREENING RECORDS AND LEGAL INSTRUCTIONS

Abbe David Lowell
Christopher D. Man
Andrew E. Tauber
WINSTON & STRAWN LLP
1901 L Street, NW
Washington, DC 20036
ADLowell@winston.com
202-282-5000 (ph)
202-282-5100 (fax)

Sofia Arguello
Johanna Hudgens
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
SArguello@winston.com
212-294-6700 (ph)
212-294-4700 (fax)

*Counsel for Matthew Grimes*

**TABLE OF CONTENTS**

INTRODUCTION ........................................................................................................................ 1
ARGUMENT .............................................................................................................................. 2
    I.    ROLE OF THE GRAND JURY ............................................................................ 2
        A.  The Grand Jury Exists To Protect The Accused .......................................... 2
        B.  The Grand Jury Must Be Unbiased .............................................................. 3
        C.  The Grand Jury Must Receive Proper Legal Instructions ............................ 3
    II.   DISCLOSURE OF LEGAL INSTRUCTIONS AND EMPANELMENT RECORDS ..... 5
        A.  Nothing Prevents Disclosure Of The Grand Jury Instructions And Empanelment Records Requested .................................................................................. 5
        B.  In Any Event, Disclosure Would Be Justified Under Rule 6 ........................ 7
            1.  Disclosure of the Grand Jury Instructions is Needed to Avoid Possible Injustice ..... 7
            2.  Disclosure of Grand Jury List is Needed to Avoid Possible Injustice ...................... 8
            3.  Disclosure of Voir Dire is Needed to Avoid Possible Injustice ............................. 10
            4.  The Need for Disclosure Is Greater Than the Need for Continued Secrecy ........... 11
            5.  The Request is Limited in Scope ........................................................................ 12
CONCLUSION ........................................................................................................................ 12

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bank of Nova Scotia v. United States*,
 487 U.S. 250 (1988)...................................................................................................... 4

*Costello v. United States*,
 350 U.S. 359 (1956)...................................................................................................... 3

*In re Cudahy*,
 294 F.3d 947 (7th Cir. 2002) (Posner, J.).................................................................... 6

*Douglas Oil Co. of Cal. v. Petrol Stops Nw.*,
 441 U.S. 211 (1979)...................................................................................................... 7

*Gaither v. United States*,
 413 F.2d 1061 (D.C. Cir. 1969).................................................................................... 3

*Lawn v. United States*,
 355 U.S. 339 (1958)...................................................................................................... 3

*Sheppard v. Maxwell*,
 384 U.S. 333 (1966).................................................................................................... 11

*Test v. United States*,
 420 U.S. 28 (1975)........................................................................................................ 9

*United States v. Abounnajah*,
 1991 WL 42895 (E.D.N.Y. Mar. 26, 1991).................................................................. 7

*United States v. Beaty*,
 465 F.2d 1376 (9th Cir. 1972)...................................................................................... 9

*United States v. Belton*,
 2015 WL 1815273 (Apr. 21, 2015)............................................................................... 6

*United States v. Bowling*,
 108 F. Supp. 3d 343 (E.D.N.C. 2015).......................................................................... 4

*United States v. Breslin*,
 916 F. Supp. 438 (E.D. Pa. 1996)................................................................................ 5

*United States v. Calandra*,
 414 U.S. 338 (1974)...................................................................................................... 2

*United States v. Cerullo*,
  2007 WL 2683799 (S.D. Cal. Sept. 7, 2007) ................................................................. 5

*United States v. Ciambrone*,
  601 F.2d 616 (2d Cir. 1979) (Friendly, J., dissenting) ................................................... 2

*United States v. Corbett*,
  2020 WL 5803243 (E.D.N.Y. Aug. 21, 2020), *reconsideration denied*, 2020
  WL 5802315 (E.D.N.Y. Sept. 29, 2020) ..................................................................... 10

*United States v. E. Air Lines Inc.*,
  923 F.2d 241 (2d Cir. 1991) ......................................................................................... 5

*United States v. Hoey*,
  2014 WL 2998523 (S.D.N.Y. July 2, 2014) ................................................................. 7

*United States v. Holmes*,
  2020 WL 5408163 (N.D. Cal. Sept. 9, 2020) .............................................................. 10

*United States v. Hubbard*,
  474 F. Supp. 64 (D.D.C. 1979) ................................................................................... 11

*United States v. Johnston*,
  685 F.2d 934 (5th Cir. 1982) ........................................................................................ 3

*United States v. McKenzie*,
  678 F.2d 629 (5th Cir. 1982) ........................................................................................ 4

*United States v. McLernon*,
  746 F.2d 1098 (6th Cir. 1984) .................................................................................... 10

*United States v. Moten*,
  582 F.2d 654 (2d Cir. 1978) ..................................................................................... 3, 7

*United States v. Peralta*,
  763 F. Supp. 14 (S.D.N.Y. 1991) .............................................................................. 5, 8

*United States v. Pirk*,
  281 F. Supp. 3d 342 (W.D.N.Y. 2017) ....................................................................... 10

*United States v. Procter & Gamble Co.*,
  356 U.S. 677 (1958) ...................................................................................................... 7

*United States v. Rosen*,
  471 F. Supp. 2d 651 (E.D. Va. 2007) ........................................................................... 6

*United States v. Sells Eng'g, Inc.*,
  463 U.S. 418 (1983) ................................................................................................... 3, 4

*United States v. Singer*,
    660 F.2d 1295 (8th Cir. 1981) .................................................................................. 4

*United States v. Skelos*,
    2015 WL 6159326 (S.D.N.Y. Oct. 20, 2015) ..........................................................5, 6

*United States v. Stevens*,
    771 F. Supp. 2d 556 (D. Md. 2011) ......................................................................... 4

*United States v. Twersky*,
    1994 WL 319367 (S.D.N.Y. June 29, 1994) ............................................................ 4

*United States v. Vetere*,
    663 F. Supp. 381 (S.D.N.Y. 1987) .........................................................................5, 8

*United States v. Williams*,
    504 U.S. 36 (1992) ................................................................................................... 2

*Vasquez v. Hillery*,
    474 U.S. 254 (1986) ...............................................................................................2, 3

*Wells v. Murray*,
    831 F.2d 468 (4th Cir. 1987) ................................................................................. 11

*Wood v. Georgia*,
    370 U.S. 375 (1962) ................................................................................................. 2

**Statutes**

18 U.S.C. § 951 ................................................................................................................. 1

28 U.S.C. § 1861 ............................................................................................................... 8

28 U.S.C. § 1867(f) ...............................................................................................8, 9, 10

**Other Authorities**

1 S. Beale et al., *Grand Jury Law and Practice* §1:7 (2d ed. 2021) ..........................3, 6

Fed. R. Crim. P. 6(e) ................................................................................................*passim*

Susan Brenner & Lori Shaw, *Federal Grand Jury: A Guide to Law and Practice*
    §16:11 (2d ed. 2021) ............................................................................................... 6

**INTRODUCTION**

At the January 5, 2022 status conference, when a schedule was created for filings motions to dismiss, defense counsel indicated that additional such motions might not be able to be made until after certain discovery was sought and received. One such motion may address defects in the grand jury's selection, composition, and instructions. Counsel has sought to obtain from the government information on these subjects, explaining that the requests are not prohibited (indeed not even addressed) by Fed. R. Crim. P. 6(e). The government has denied the requests (with one exception related to the grand jury wheel, *see* Dkt. 65), and that denial leads to this motion. Depending on the grand jury information sought, Mr. Grimes might have additional grounds (other than those in his concurrently filed Motion to Dismiss) to seek dismissal of the indictment.

Mr. Grimes was indicted by a grand jury on a substantive violation of 18 U.S.C. § 951, and a charge of conspiring to violate the same. Given the high profile and political nature of the case and its charges, it is important to understand what steps were taken to screen for biased grand jurors. Moreover, the obscurity of Section 951's registration requirement—a statute that is charged only in rare and extreme cases (particularly espionage or subversive activities)—and the defects raised in Mr. Grimes' Motion to Dismiss the indictment, increase the risk of grand jury misinstruction in this case. To ensure that an unbiased and properly charged grand jury was empaneled, Mr. Grimes seeks the following *narrow* set of grand jury materials: (i) the prosecution's legal instructions to the grand jury; (ii) access to certain empanelment records; and (iii) the voir dire questions presented to potential grand jurors. To be clear, no grand jury deliberations are sought, and the materials are either not covered by the rule on grand jury secrecy or are defined as an exception to that rule. Nor does Mr. Grimes seek any personal identifying

information (names, addresses, telephone numbers, full dates of birth, or Social Security numbers) for the individuals referred to in the relevant records.

ARGUMENT

I.  ROLE OF THE GRAND JURY

   A.  The Grand Jury Exists To Protect The Accused

The grand jury is a check against unfounded prosecution—a bulwark between the accuser and the accused. *See Wood v. Georgia*, 370 U.S. 375, 390 (1962); *United States v. Williams*, 504 U.S. 36, 47 (1992) (describing the grand jury as a "buffer or referee between the Government and the people"). "[T]he Founders thought the grand jury so essential to basic liberties that they provided in the Fifth Amendment that federal prosecution for serious crimes can only be instituted by 'a presentment or indictment of a Grand Jury'" in order to "protect[] citizens against arbitrary and oppressive governmental action." *United States v. Calandra*, 414 U.S. 338, 343 (1974); *see also Williams*, 504 U.S. at 51 (recognizing a defendant's constitutional right to "an independent and informed grand jury") (quotation omitted). Thus, the grand jury's function is not only to determine whether probable cause exists to charge an offense; it is also to protect from prosecution those for whom criminal charges are unfounded. *See Calandra*, 414 U.S. at 343.

In the hands of the grand jury lies the power to charge a greater offense or a lesser offense; numerous counts or a single count; and perhaps most significant of all, a capital offense or a noncapital offense—all on the basis of the same facts. Moreover, "[t]he grand jury is not bound to indict in every case where a conviction can be obtained." *Vasquez v. Hillery*, 474 U.S. 254, 263 (1986) (quoting *United States v. Ciambrone*, 601 F.2d 616, 629 (2d Cir. 1979) (Friendly, J., dissenting)). "Since it has the power to refuse to indict even where a clear violation of law is shown, the grand jury can reflect the conscience of the community in providing relief where strict

application of the law would prove unduly harsh." *Gaither v. United States*, 413 F.2d 1061, 1066 n.6 (D.C. Cir. 1969); 1 S. Beale et al., *Grand Jury Law and Practice* §1:7 (2d ed. 2021) ("The indicting grand jury—like the trial jury—may also shield the accused from criminal charges even though there is an adequate evidentiary basis if the grand jurors conclude that the charges are improperly motivated or unjust.").

### B. The Grand Jury Must Be Unbiased

There is no question that Mr. Grimes is constitutionally entitled to an unbiased grand jury. The Supreme Court has "several times" ruled on the importance of an indictment being "returned by a legally constituted and nonbiased grand jury." *Lawn v. United States*, 355 U.S. 339, 349–50 (1958); *Costello v. United States*, 350 U.S. 359, 363 (1956) ("legally constituted and unbiased grand jury"); *see also United States v. Moten*, 582 F.2d 654, 660 (2d Cir. 1978) ("defendant has a constitutional right to a trial by an impartial jury"). One form of bias addressed does not undercut the principle that there should be *no* bias in such bodies.

With this requirement, it is crucial to determine whether the government screened the grand jury for bias because an improperly constituted grand jury is grounds for reversal. *See Vasquez*, 474 U.S. at 263 (reversing conviction for discrimination in selecting the grand jury). There is usually a presumption of regularity in grand jury proceedings. *United States v. Johnston*, 685 F.2d 934, 938 (5th Cir. 1982). But "a reviewing court can neither indulge a presumption of [grand jury] regularity nor evaluate the resulting harm" when "constitutional error calls into question the objectivity of those charged with bringing a defendant to judgment." *Vasquez*, 474 U.S. at 263.

### C. The Grand Jury Must Receive Proper Legal Instructions

Although constitutionally independent, the "modern grand jury" relies extensively on the prosecution in discharging its duties. *United States v. Sells Eng'g, Inc.*, 463 U.S. 418, 430 (1983);

3

*see also United States v. Singer*, 660 F.2d 1295, 1303 (8th Cir. 1981) (noting the prosecutor often "serves as the 'guiding arm of the grand jury'") (citation omitted). In addition to putting on evidence, the prosecutor "advises the lay jury on the applicable law." *Sells Eng'g*, 463 U.S. at 430; *see also United States v. McKenzie*, 678 F.2d 629, 633 (5th Cir. 1982) (explaining "[t]he prosecutor may not involve himself in deliberations but may advise the grand jury as to its duty"). "As a legal advisor to the grand jury, the prosecutor must give the grand jury sufficient information concerning the relevant law 'to enable it intelligently to decide whether a crime has been committed.'" *United States v. Twersky*, 1994 WL 319367, at *4 (S.D.N.Y. June 29, 1994).

Where irregularities infect the grand jury process, courts will dismiss the indictment "'if it is established that the violation substantially influenced the grand jury's decision to indict,' or if there is 'grave doubt' that the decision to indict was free from the substantial influence of such violations." *Bank of Nova Scotia v. United States*, 487 U.S. 250, 256 (1988) (citations omitted). Because the prosecutor's guidance is the *only* guidance the grand jury receives, it is crucial that the prosecutor's statements of law be fair and accurate. Incorrect or misleading legal instructions can constitute error by preventing the grand jury from discharging its function of making an independent determination whether there was probable cause to believe an offense was committed.

Due to the inherently prejudicial impact of mis-instructing a grand jury, numerous courts have ordered dismissal of indictments based, at least in part, on erroneous legal instructions.

- *United States v. Bowling*, 108 F. Supp. 3d 343, 352–53 (E.D.N.C. 2015) (dismissing multiple counts where "the government's erroneous legal instruction to the grand jury concerning the Procurement Integrity Act played a significant and impermissible role in the grand jury's decision to indict");

- *United States v. Stevens*, 771 F. Supp. 2d 556, 564, 567–68 (D. Md. 2011) (dismissing indictment where prosecutor gave erroneous advice to grand jury on advice-of-counsel defense that negated wrongful intent);

4

- *United States v. Cerullo*, 2007 WL 2683799, at *3 (S.D. Cal. Sept. 7, 2007) (dismissing indictment where prosecutor's failure to explain an important legal issue accurately and fairly "misled the grand jury" and "prejudiced the Defendant");

- *United States v. Breslin*, 916 F. Supp. 438, 442–46 (E.D. Pa. 1996) (dismissing indictment on several grounds, but labeling "most disturbing" the prosecutor's erroneous legal instruction as to the grand jury's deliberation on a conspiracy charge);

- *United States v. Peralta*, 763 F. Supp. 14, 19–21 (S.D.N.Y. 1991) (dismissing indictment where there was "grave doubt that the decision to indict was free from the substantial influence" of the prosecutor's "misleading statements of the law" regarding constructive possession of a firearm); and

- *United States v. Vetere*, 663 F. Supp. 381, 386–87 (S.D.N.Y. 1987) (dismissing indictment, *even after a guilty verdict at trial*, on grounds that the independent role of the grand jury was impaired based on the prosecutor's misleading "presentation both with respect to the facts and the law").

II. **DISCLOSURE OF LEGAL INSTRUCTIONS AND EMPANELMENT RECORDS**

　　A. **Nothing Prevents Disclosure Of The Grand Jury Instructions And Empanelment Records Requested**

The secrecy of grand jury proceedings is governed by Rule 6(e).[1] Rule 6(e) applies to the *substance* of jury deliberations or evidence that is actually presented to the jury, not the ground rules by which the grand jury conducts its proceedings. *United States v. E. Air Lines Inc.*, 923 F.2d 241, 244–45 (2d Cir. 1991). The Second Circuit has interpreted Rule 6(e) to include, at its core, not only the evidence "actually presented to the grand jury" but also "anything that may tend to reveal what transpired before it." *United States v. Skelos*, 2015 WL 6159326, at *9 (S.D.N.Y. Oct. 20, 2015) (quoting *E. Air Lines Inc.*, 923 F.2d at 244). However, we are aware of no Second Circuit case that expands that to include jury instructions, empanelment records, or voir dire

---

[1] Rule 6(e)(2) states: "Unless these rules provide otherwise, the following persons must not disclose a matter occurring before the grand jury: (i) a grand juror; (ii) an interpreter; (iii) a court reporter; (iv) an operator of a recording device; (v) a person who transcribes recorded testimony; (vi) an attorney for the government; or (vii) a person to whom disclosure is made under Rule 6(e)(3)(A)(ii) or (iii)."

5

questions, which is all we are seeking here. The reason is that the disclosure of such materials *would not* reveal the substance or essence of grand jury deliberations or some secret aspect of its inner workings that Rule 6(e) is designed to protect.

"Past decisions indicate that disclosures about the following might constitute Rule 6(e) violations: revelations of the identity of either grand jurors or expected witnesses; information about expected testimony of witnesses or likely questions; information that reveals the strategy or direction of a grand jury investigation (distinct from any outside investigations); or the date when a grand jury will return an indictment." *Skelos*, 2015 WL 6159326 at *10 (citing *United States v. Rosen*, 471 F. Supp. 2d 651, 655 (E.D. Va. 2007)). But, again, those are not the items contemplated or sought by Mr. Grimes in this instance.

Commentators note that grand jury secrecy "does not govern matters such as the court's charge to a grand jury . . . ." Susan Brenner & Lori Shaw, *Federal Grand Jury: A Guide to Law and Practice* §16:11 (2d ed. 2021). "The legal instructions given to the grand jury regarding the charges on which they are deliberating are a part of the 'ground rules' by which the grand jury conducts its proceedings. The instructions do not reveal the substance of the grand jury's deliberative process or other information that would compromise the secrecy that Rule 6 seeks to protect." *United States v. Belton*, 2015 WL 1815273, at *3 (Apr. 21, 2015); *see also In re Cudahy*, 294 F.3d 947, 951 (7th Cir. 2002) (Posner, J.) ("ministerial grand jury records, such as records reflecting the empaneling and extension of the grand jury, are not within the reach of Rule 6(e) because they reveal nothing of substance about the grand jury's investigation." (quoting 1 S. Beale et al., *Grand Jury Law and Practice* §5:6 (2d ed. 2001))).

Because Rule 6(e) does not apply to the narrow set of grand jury materials being requested here, the Court should order their disclosure.

6

B.  **In Any Event, Disclosure Would Be Justified Under Rule 6**

Rule 6 would permit disclosure even if it were applicable. In *United States v. Procter & Gamble Co.*, 356 U.S. 677 (1958), the Supreme Court recognized that "the secrecy of grand jury proceedings" may be broken "where there is a compelling necessity" that is "shown with particularity." *Id.* at 682; *see also Douglas Oil Co. of Cal. v. Petrol Stops Nw.*, 441 U.S. 211, 223 (1979) (disclosure of grand jury proceedings is appropriate "where the need for it outweighs the public interest in secrecy."); *United States v. Moten*, 582 F.2d 654, 662 (2d Cir. 1978). This requirement extends, for example, to the legal instructions given to a grand jury. *See United States v. Abounnajah*, 1991 WL 42895, at *2 (E.D.N.Y. Mar. 26, 1991) (defendant demonstrated a particularized need sufficient to warrant disclosure of instructions given to a grand jury, finding the instructions "are potentially relevant [] to the defendant's motion").

1.  **Disclosure of the Grand Jury Instructions is Needed to Avoid Possible Injustice**

Given the obscurity of Section 951's registration requirement—a statute that is charged only in rare and extreme cases (*see* Grimes MTD at Section III.C)—it is even more important to review the written instructions given to the jury in this case to ensure they did not include incorrect statements about the law. It is not uncommon to disclose narrow grand jury materials in a case like this one, and nothing here would prevent their disclosure. *See United States v. Hoey*, 2014 WL 2998523, at *3 (S.D.N.Y. July 2, 2014) (ordering *in camera* review of limited grand jury minutes that reflect the instructions provided to jurors where defendant provided "more than mere speculation that the grand jury did not receive the proper instructions" on a charging element). Given the rarity of Section 951 prosecutions and its unprecedented application to someone in Mr. Grimes' position, and the facial omissions of essential elements from the indictment (as

demonstrated in Mr. Grimes' Motion to Dismiss, *see, e.g.*, Grimes MTD, Sections I and II), it is not speculation to seek clarification on what the grand jury was told.

Courts in this circuit have ordered dismissal of an indictment based, at least in part, on erroneous or misleading legal instructions. *See, e.g.*, *Peralta*, 763 F. Supp. at 19–21 (dismissing indictment where there was "grave doubt that the decision to indict was free from the substantial influence" of prosecutor's "misleading statements of the [law]" regarding constructive possession of a firearm); *Vetere*, 663 F. Supp. at 386–87 (dismissing indictment, *even after a guilty verdict at trial*, on grounds that the independent role of the grand jury was impaired based on the prosecutor's misleading "presentation both with respect to the facts and the law"). Absent an examination of the legal instructions provided, it will be impossible for defense counsel to determine whether such errors may have infected the grand jury in this case, and whether any grounds exist for a motion to dismiss the indictment on issues the rules contemplate can be disclosed for such purposes.

### 2. Disclosure of Grand Jury List is Needed to Avoid Possible Injustice

The Jury Selection and Services Act of 1968 ("JSSA") provides that criminal defendants "shall have the right to grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes." 28 U.S.C. § 1861. Section 1867(f) of the Act, in relevant part, provides:

> The contents of records or papers used by the jury commission or clerk in connection with the jury selection process shall not be disclosed, except . . . as may be necessary in the preparation or presentation of a motion (challenging compliance with selection procedures) under . . . this section. . . . The parties in a case shall be allowed to inspect, reproduce, and copy such records or papers at all reasonable times during the preparation and pendency of such a motion.

To determine compliance with that statute, Mr. Grimes requested access to certain records from the government with respect to grand jury proceedings, including but not limited to (i) "[t]he dates on which each such grand jury sat, the number of grand jurors present on those dates, and

8

the dates on which each grand juror was in attendance," and (ii) the record of any grand jurors who were summoned but excused from service.[2] The government did "not object to the inspection of a limited set of data [about the grand jury] – namely, the county of residence, zip code, and, to the extent available, the race and age of the individual listed in the Master Jury Wheel from which the grand jury was selected" (*see* Dkt. 65) – but objected to Mr. Grimes' other requests as to the composition of the grand jury. While the limited data the government has consented to provide is helpful, Mr. Grimes respectfully requests (i) access to the grand jury list for the grand jury that returned the indictment, including attendance record and reasons for absence of each grand juror from any sitting of the grand jury during which evidence regarding this case was presented; and (ii) the record of any grand juror who was summoned but excused from serving on the grand jury that returned the indictment. Without inspection of this additional data, Mr. Grimes is unable to assess whether the grand jury that returned the indictment against him was selected, and treated, in accordance with the provisions of the JSSA, and, accordingly, whether he has a potentially meritorious jury challenge. *See Test v. United States*, 420 U.S. 28, 30 (1975). The attendance record and reasons for absence are also necessary to ensure that, even assuming the grand jury represented a fair cross-section of the community, enough of the same jurors heard the key evidence of this case.

It is well established that, under 28 U.S.C. § 1867(f), "a litigant has essentially an unqualified right" to this inspection. *Test*, 420 U.S. at 30. As the Supreme Court has explained, "without inspection, a party almost invariably would be unable to determine whether he has a potentially meritorious jury challenge." *Id.*; *see also United States v. Beaty*, 465 F.2d 1376, 1382

---

[2]   *See* November 8, 2021 letter from counsel for Mr. Grimes to U.S. Attorney's Office, at 9 (attached as Ex. A).

9

(9th Cir. 1972) (holding defendant "had a right to make the inspection before he made a motion to challenge the jury under § 1867(a)"). Access to the relevant records may not be conditioned on a defendant first showing a probability of success on the merits of the jury challenge. *United States v. Pirk*, 281 F. Supp. 3d 342, 343 (W.D.N.Y. 2017). Moreover, courts have rejected the notion that only information regarding the creation of the Master Jury Wheel—and not information regarding subsequent selection procedures—is subject to disclosure under Section 1867(f), particularly where, as here, the evidence suggests that the grand jury was empaneled during the pandemic which may have distorted the grand jury selection process. *United States v. Holmes*, 2020 WL 5408163, at *4 (N.D. Cal. Sept. 9, 2020); *see also United States v. McLernon*, 746 F.2d 1098, 1123 (6th Cir. 1984) ("[w]e can certainly envision a situation in which a defendant must be afforded access to the names, addresses, and demographics of those jurors who returned the indictment in order to vindicate the 'unqualified' right to inspection and to insure that the jury actually represented a wide spectrum of the community.").

As this court has made clear, "[t]he Master Jury Wheel, standing alone, cannot be used to determine whether grand juries in this district are selected in compliance with the JSSA." *United States v. Corbett*, 2020 WL 5803243, at *3 (E.D.N.Y. Aug. 21, 2020), *reconsideration denied*, 2020 WL 5802315 (E.D.N.Y. Sept. 29, 2020). Thus, Section 1867(f) entitles Mr. Grimes to inspect records regarding the grand jurors who returned the indictment in this case, not just the Master Jury Wheel, to ensure compliance with the statute. *Id*. at *4.

### 3. Disclosure of Voir Dire is Needed to Avoid Possible Injustice

This is undoubtedly a high profile, politically charged case involving divisive political figures that garner significant media attention and evoke strong feelings of hate or adoration. To eliminate those grand jurors who would indict Mr. Grimes based upon prejudice rather than the

merits of the prosecution's case, it would not have been difficult to voir dire all potential grand jurors. Given the individuals involved and the nature of the charges being sought, specific questions should have and could easily have been asked to elicit conscious and unconscious prejudices of the jurors concerning political affiliation, politics, and foreign influences. Such screening is routine in selecting trial juries, *see, e.g.*, *Sheppard v. Maxwell*, 384 U.S. 333, 362 (1966); *Wells v. Murray*, 831 F.2d 468, 472 (4th Cir. 1987) ("when external events such as pretrial publicity raise a strong possibility of jury bias, the court has a duty to determine whether the accused may have a fair trial. Inquiry into jury bias typically entails an evaluation of 'the pre-trial publicity complained of and its impact, if any, on the jury, as developed through adequate voir dire examination of the jurors'"); *United States v. Hubbard*, 474 F. Supp. 64, 78 (D.D.C. 1979) ("[v]oir dire is the appropriate means for determining whether a fair and impartial jury can be selected"), but if the grand jury is going to fulfill its function to sort out and bring only charges based on the facts and law, then these same protections should apply to prohibiting biased people from serving on this body as well. Actual bias cannot be discerned absent answers on voir dire.

### 4. The Need for Disclosure Is Greater Than the Need for Continued Secrecy

Additionally, the need for disclosure in this case is greater than the need for continued secrecy under Rule 6(e). Mr. Grimes has already been indicted and arraigned, so there is no threat of him tampering with witnesses or suffering additional reputational damage. Further, disclosure of the legal instructions provided to the grand jury and the narrow set of empanelment records requested will not reveal any substance of the jurors' deliberations, and therefore will not dissuade future grand jurors from participating in the investigative process.

On the other hand, the need for disclosing the narrow set of grand jury materials being requested is high. Disclosing these instructions will ensure that the grand jury found probable

cause that Mr. Grimes committed an *actual crime*, and the empanelment records and voir dire questions will confirm whether the grand jury was (i) selected from a fair cross-section of the community and (ii) unbiased. Because the need for these materials is greater than the need for continued secrecy, the Court should order their disclosure in this case.

### 5. The Request is Limited in Scope

Finally, Mr. Grimes' request for these grand jury materials is limited in scope and particularized. This motion requests (i) the prosecution's legal instructions to the grand jury; (ii) access to certain empanelment records; and (iii) the voir dire questions presented to potential grand jurors. Mr. Grimes is *not* seeking the substance of jury deliberations or evidence that was actually presented to the grand jury.

## CONCLUSION

For the foregoing reasons, the Court should order the government to produce, or provide Mr. Grimes with access to, the requested grand jury materials.

Dated: January 31, 2022

                                                             Respectfully submitted,

/s/ *Abbe David Lowell*
Abbe David Lowell
Christopher D. Man
Andrew E. Tauber
WINSTON & STRAWN LLP
1901 L Street, NW
Washington, DC 20036
ADLowell@winston.com
202-282-5000 (ph)
202-282-5100 (fax)

Sofia Arguello
Johanna Hudgens
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
SArguello@winston.com
212-294-6700 (ph)
212-294-4700 (fax)

*Counsel for Matthew Grimes*