# EXHIBIT A



1901 L Street, NW
Washington, DC 20036
T +1 202 282 5000
F +1 202 282 5100

**ABBE DAVID LOWELL**
Partner
202-282-5875
ADLowell@winston.com

November 8, 2021

**VIA EMAIL AND FIRST CLASS MAIL**

Samuel P. Nitze, Esq.
Ryan C. Harris, Esq.
Hiral D. Mehta, Esq.
U.S. Attorney's Office
 for the Eastern District of New York
147 Pierrepont Street
Brooklyn, NY 11201

  Re: *United States v. Al Malik Alshahhi, et. al.*, No. 1:21-cr-00371 (BMC)

Dear Counsel:

  Understanding that the government has begun to provide discovery without any requests, on behalf of our client, Matthew Nicholas Grimes, we hereby make the following requests to be thorough and to trigger the full requirements of Rule 16 of the Federal Rules of Criminal Procedure, Rule 404(b) of the Federal Rules of Evidence, the applicable rules of prosecutorial ethics, the Fifth and Sixth Amendments to the United States Constitution, and the Supreme Court's rulings in *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny, including *United States v. Agurs*, 427 U.S. 97 (1976), and *Giglio v. United States*, 405 U.S. 150 (1972).

  The documents and information that we request include not only documents and information in the possession, custody, or control of your office, or otherwise available to your office, but also documents and information in the possession, custody, or control of any federal, state, territorial, or local agency allied with the prosecution (including, without limitation, the Department of Justice ("DOJ") National Security Division or its Counterintelligence and Export Control Section; DOJ Special Counsel's Office ("SCO"); and the Federal Bureau of Investigation ("FBI")) (collectively, the "Prosecution Team"). *See, e.g.*, *United States v. Auten*, 632 F.2d 478, 481 (5th Cir. 1980); *United States v. Deutsch*, 475 F.2d 55, 57 (5th Cir. 1973), *overruled on other grounds by United States v. Henry*, 749 F.2d 203 (5th Cir. 1984); *United States v. Perdomo*, 929 F.2d 967, 970-71 (3d Cir. 1991); *United States v. Bryan*, 868 F.2d 1032, 1036 (9th Cir. 1989); *United States v. Bryant*, 439 F.2d 642, 650 (D.C. Cir. 1971), *overruled on other grounds by Arizona v. Youngblood*, 488 U.S. 51 (1988). In addition, given the nature of the investigation and charges, we ask that you seek documents from all intelligence agencies that might possess them, including the National Security Agency, the Central Intelligence Agency, the Department of Homeland Security, the Department of State, the Department of Defense, and the National Security Council. In addition, at the November 2, 2021 Status Conference, the Court inquired whether you had information about any foreign entity seeking


to interfere with this case. You indicated you could not answer the question. We seek the answer to that question in whatever form (i.e., protective order) is required.

**I.      Indictment Particulars**

The defendant requests more particular information about the allegations in the Indictment as follows. (In some cases we are asking to be sure that no variances occur from the charges presented to the grand jury.):

A. In paragraph 2, identify "senior United States government officials."

B. In paragraph 5, identify "Emirati Official 1" and define "high-ranking position in its armed forces."

C. In paragraph 6, identify "Emirati Official 2" and define "high-ranking official in the United Arab Emirates."

D. In paragraph 7, identify "Emirati Official 3" and define "member."

E. In paragraph 8, identify "Emirati Official 4" and define "government official."

F. In paragraph 9, identify "Emirati Official 5" and define "high-ranking United Arab Emirates diplomat."

G. In paragraph 14, define "key communications channel."

H. In paragraph 20, identify the "United Arab Emirates officials."

I. In paragraph 22, identify the "senior member of the Campaign."

J. In paragraph 25, define "acting at the direction," and identify each act that was at the "direction of United Arab Emirates."

K. In paragraphs 35-42, define "encrypted messaging application" and "secure messaging application," and identify: (i) the name of the application; (ii) the phone(s) that downloaded the application; and (iii) the dates for which the application was downloaded on the corresponding phones.

L. In paragraph 37, identify the "employee at Company A."

M. In paragraph 43, identify the "senior United Arab Emirates Officials," and identify the date and time that "input" was purportedly "solicited" from those officials.

N. In paragraph 51, define "repeatedly," and identify every "step[ ] [taken] to assist the United Arab Emirates in connection with the transition to the incoming administration of the United States President-Elect."



O.     In paragraph 52, identify the "United Arab Emirates officials" and define the manner in which GRIMES purportedly "coordinated a telephone call between BARRACK and United Arab Emirates officials."

P.     In paragraph 53, identify the manner and method for the contention that "[b]oth BARRACK and GRIMES agreed."

Q.     In paragraph 57, identify the "United Arab Emirates officials in the United Arab Emirates" being discussed.

R.     In paragraph 67, identify the "senior official from the Kingdom of Saudi Arabia" and the "two senior United States government officials."

S.     In paragraph 70, identify when and to whom GRIMES purportedly "advocate[d] for the appointment of individuals favored by the United Arab Emirates."

T.     In paragraph 71, identify the "United States Congressman . . . whose identity is known to the Grand Jury."

U.     In paragraph 71, identify the governmental entity or government official that, on behalf of "the United Arab Emirates wanted" "an individual whose identity is known to the Grand Jury" "appointed as United States Ambassador to the United Arab Emirates."

V.     In paragraph 75, define "took steps to aid," and identify all "steps" GRIMES "took" "to aid United Arab Emirates officials in connection with Emirati Official 1's White House visit on or about May 15, 2017." For each such step, identity: (i) The date or dates of that "step[ ];" (ii) all person(s) involved in that "step[];" (iii) the nature and extent of other persons' involvement in that "step[];" and (iv) all communications, exchanges, emails, text messages, and agreements related to that "step[ ]."

W.     In paragraph 75, identify all information relevant to the contention that GRIMES "report[ed] information about that meeting to United Arab Emirates officials," and identify all officials to whom GRIMES reported such information.

X.     In paragraph 79, identify all "steps" GRIMES "took" "to advance the United Arab Emirates' foreign policy interests." For each such step, identify: (i) The specific "foreign policy interest[] being advanced; (ii) the date or dates of that "step[];" (iii) all person(s) involved in that "step[]," (iv) the nature and extent of other person's involvement in that "step[];" and (iv) all communications, exchanges, emails, text messages, and agreements related to that "step[ ]."

Y.     In paragraph 82, identify "U.S. Person 1," "whose identity is known to the Grand Jury."

Z.     In paragraph 91, identify the "individuals employed by or associated with Company A."

November 8, 2021
Page 4



AA. In paragraphs 94, identify each act relevant to COUNT ONE that occurred "within the Eastern District of New York," including: (i) The nature and type of the act; (ii) the date of the act; (iii) the time of the act; (iv) the city, state, and address where the act occurred; (v) all communications, exchanges, emails, text messages, and agreements related to the act; (vi) all other individuals involved in the act; (vii) the nature and extent of other individuals' involvement in the act; and (viii) all records, documents, materials, and things related to the act.

BB. In paragraph 94, define "elsewhere", and for each act relevant to COUNT ONE that occurred "elsewhere," identify: (i) The nature and type of the act; (ii) the date of the act; (iii) the time of the act; (iv) the city, state, and address where the act occurred; (v) all communications, exchanges, emails, text messages, and agreements related to the act; (vi) all other individuals involved in the act; (vii) the nature and extent of other individuals' involvement in the act; and (viii) all records, documents, materials, and things related to the act.

CC. In paragraphs 94, identify each act GRIMES took as an "agent[] of a foreign government."

DD. In paragraphs 96, identify each act relevant to COUNT TWO that occurred "within the Eastern District of New York," including: (i) The nature and type of the act; (ii) the date of the act; (iii) the time of the act; (iv) the city, state, and address where the act occurred; (v) all communications, exchanges, emails, text messages, and agreements related to the act; (vi) all other individuals involved in the act; (vii) the nature and extent of other individuals' involvement in the act; and (viii) all records, documents, materials, and things related to the act.

EE. In paragraph 96, define "elsewhere", and for each act relevant to COUNT TWO that occurred "elsewhere," identify: (i) The nature and type of the act; (ii) the date of the act; (iii) the time of the act; (iv) the city, state, and address where the act occurred; (v) all communications, exchanges, emails, text messages, and agreements related to the act; (vi) all other individuals involved in the act; (vii) the nature and extent of other individuals' involvement in the act; and (viii) all records, documents, materials, and things related to the act.

FF. In paragraphs 96, identify each act GRIMES took as an "agent[] of a foreign government."

GG. In paragraphs 96, for each instance that GRIMES allegedly acted to "conspire" "in the United States as agents of a foreign government," identify: (i) Each overt act in furtherance of the conspiracy; (ii) each individual that acted; (iii) each individual that GRIMES "conspire[d]" with; (iv) the agreement entered into; (v) the illegal goal the agreement was in furtherance of; (vi) all foreign government entities that the conspiracy aimed to benefit; (vii) all acts taken under the direction and control of a foreign government; (viii) all agreements entered into under the direction and control of a foreign government; (ix) all communications, messages, text messages, emails, or statements, demonstrating that GRIMES was "knowingly and intentionally" acting as an "agent[ ] of a foreign government"



        in furtherance of an illegal goal; and (x) whether GRIMES received financial compensation for such act to "conspire" "in the United States as agents of a foreign government."

HH.    In paragraph 97, identify each act, relevant to paragraph 97, that occurred "within the Eastern District of New York," including: (i) The nature and type of the act; (ii) the date of the act; (iii) the time of the act; (iv) the city, state, and address where the act occurred; (v) all communications, exchanges, emails, text messages, and agreements related to the act; (vi) all other individuals involved in the act; (vii) the nature and extent of other individuals' involvement in the act; and (viii) all records, documents, materials, and things related to the act.

II.    In paragraph 97, define "elsewhere", and for each act relevant to paragraph 97, that occurred "elsewhere," identify: (i) The nature and type of the act; (ii) the date of the act; (iii) the time of the act; (iv) the city, state, and address where the act occurred; (v) all communications, exchanges, emails, text messages, and agreements related to the act; (vi) all other individuals involved in the act; (vii) the nature and extent of other individuals' involvement in the act; and (viii) all records, documents, materials, and things related to the act.

## II.   Rule 16 Discovery

Defense counsel requests the ongoing production of all materials subject to disclosure under Rule 16(a)(1)(A), (B), and (D). In addition, pursuant to Rule 16(a)(1), defendant specifically requests the production of all statements (oral, written and/or recorded) made by Mr. Grimes or anyone the government alleges to be a co-conspirator that are in the possession, custody, or control of the Prosecution Team. Redactions of Thomas Joseph Barrack's or Rashid Sultan Rashid Al Malik Alshahhi's (Al Malik) statements should accord with *Bruton v. United States*, 391 U.S. 123 (1968).

## III.   Specific Requests Under *Brady*, *Agurs*, *Giglio*, and the Fifth Amendment

As ordered by Magistrate Judge Bulsara (Dkt. 22), Mr. Grimes requests any and all exculpatory material—including impeachment material—relevant to either guilt or punishment, pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963). For purposes of this request, "all exculpatory or impeaching material" includes, but is not limited to, any information indicating or tending to indicate that any of the allegations contained in the Indictment are not true, that government witnesses are not credible, or that Mr. Grimes was not involved in the acts alleged.

As noted above, this request is not limited to documents and information in the possession, custody, or control of your office, or otherwise available to your office, but also documents and information in the possession, custody, or control of any member of the Prosecution Team and the intelligence agencies of the United States.

This request includes, but is not limited to, the following:



 A. Any documents and/or information reflecting that, during the April 2016 through April 2018 timeframe, members of the executive branch were aware that Mr. Barrack and/or Mr. Grimes were assisting United Arab Emirates officials in any endeavor.

 B. Any documents and/or information reflecting that, during the April 2016 through April 2018 timeframe, Mr. Barrack took positions in his discussions with members of the executive branch that were in conflict with the United Arab Emirates and its foreign policy interests.

 C. Any documents and/or information reflecting that, during the April 2016 through April 2018 timeframe, Mr. Grimes was excluded from Mr. Barrack's meetings and/or conversations with United Arab Emirates officials or other foreign leaders (including but not limited to those meetings and conversations referenced in the Indictment).

 D. Any documents and/or information reflecting that, during the April 2016 through April 2018 timeframe, Mr. Grimes was excluded from Mr. Barrack's meetings and/or conversations with White House or State Department officials.

 E. Any documents and/or information reflecting that, during the April 2016 through April 2018 timeframe, Mr. Grimes believed that Mr. Barrack was transparent in his disclosures with White House or State Department officials.

 F. Any documents and/or information reflecting that, during the April 2016 through April 2018 timeframe, Mr. Grimes believed that Mr. Barrack took positions in conflict with directions of United Arab Emirates officials.

 G. Any documents and/or information reflecting that, during the April 2016 through April 2018 timeframe, Mr. Grimes's communications, dealings, and/or other involvement with United Arab Emirates officials were done at the direction of Mr. Barrack.

 H. Any documents and/or information reflecting that Colony Capital (Colony) compliance and legal counsel (O'Melveny and then Steptoe) were aware of Mr. Barrack's relationship with United Arab Emirates officials and did not advise Mr. Barrack or Mr. Grimes to register and/or did not require Colony to register.

 I. Any documents and/or information reflecting privilege protocols regarding attorneys communicating with Mr. Grimes.

 J. Any documents and/or information regarding the scope of any corporate privilege waivers by Colony.

 K. Dates and times that Mr. Barrack purportedly made presentations to White House or State Department officials on behalf of United Arab Emirates officials.



L.    The identity of anyone the government alleges to be a co-conspirator in the above-referenced case.

M.    Any communications intercepted by any U.S. agency involving officials or private citizens of the United Arab Emirates in which Mr. Barrack or Mr. Grimes are participants or mentioned.

N.    Any communications intercepted by any U.S. agency involving officials or private citizens of the United Arab Emirates in which actions or issues described in the Indictment are mentioned and Mr. Grimes is not mentioned.

O.    Any agreements of any kind reflecting any benefits of any kind provided by the Department of Justice or any of its agencies to any individual interviewed or otherwise involved in the above-referenced case.

P.    Any affidavits or other statements or submissions made by law enforcement agents to support any search warrant or Title III warrant applied for or granted in the above-referenced case, including but not limited to search warrant affidavits for Mr. Al Malik's texts and emails, Mr. Barrack's texts and emails, and Mr. Grimes's texts and emails.

Q.    Any documents or information describing or reflecting any violation of law, rules, or policy by anyone associated with or involved in the investigation of this matter with respect to their activities in the investigation of this case.

R.    Any documents or information describing or reflecting prior criminal convictions, guilty verdicts, or juvenile adjudications (including but not limited to any relevant "rap sheets") of any witness the government intends to call at trial.

S.    Any documents or information describing or reflecting any consideration or promise given by any law enforcement official, prosecutor, or government agent during the course of the investigation of the above-referenced case to any witness the government intends to call at trial. Such "consideration" or "promise" includes, but is not limited to, anything that could be of value to the witness, such as favorable treatment or assistance in another criminal matter, immunity, letters of support for the witness, or anything else that would provide the witness with an incentive or motive to provide testimony against the defendant at trial.

T.    Any recordings and transcripts of such recordings that the government obtained of Mr. Grimes in the course of its investigation of this case.

U.    Any recordings and transcripts of such recordings that the government obtained of Mr. Barrack in the course of its investigation of this case.

V.    Any recordings and transcripts of such recordings that the government obtained of any other witness or co-defendant in the course of its investigation of this case.



  W. All subpoenas and informal requests for documents and information issued by the government and/or Grand Jury in the course of the government's investigation of this case.

  X. Any documents or information not requested above that describe or reflect the motivation of any witness to cooperate with the United States.

  Y. Any documents or information not requested above that describe or reflect the competency or credibility of any witness the government intends to call at trial.

  Z. Any documents or information not requested above that describe or reflect any bias or hostility against defendant of any witness the government intends to call at trial.

  AA. A copy of every criminal indictment or criminal information filed by DOJ from 2008 to the present charging anyone with violating 18 U.S.C. § 951(a).

  BB. Any documents or information from 2008 to the present reflecting that DOJ permitted late registrations as agents under the Foreign Agents Registration Act (FARA) without prosecuting the registrants for violations of the statute.

  CC. Any document or public statement by a DOJ official from 2008 to the present addressing the exercise of DOJ's criminal enforcement discretion with respect to FARA or its policy of allowing those who fail to register under FARA to register late and avoid prosecution.

  DD. Any document or public statement by a DOJ official from 2008 to the present that identifies ambiguity in FARA's statutory or regulatory agent registration requirements.

  EE. Any documents or information that provide a basis for venue in the Eastern District of New York as to Mr. Grimes.

## IV. Rule 26/Jencks Act Material

For some time, in cases where there is no legitimate concern for flight or witness tampering and in the spirit of full compliance with *Brady* and its progeny, the Department of Justice has provided witness interview memoranda and grand jury testimony as part of initial discovery. We request this material in this phase of discovery.

## V. Other Crimes Evidence

Pursuant to the Fifth and Sixth Amendments and Federal Rule of Evidence 404(b), defendant requests that the prosecution disclose all evidence of any similar crimes, wrongs, or acts allegedly committed by Mr. Grimes or Mr. Barrack, upon which the prosecution intends to rely to prove motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.




## VI. Investigative Witness Statements

With respect to those individuals interviewed by the government as part of its investigation in this matter, defendant specifically requests:

A. Any draft 302s or interview memoranda describing such interviews.

B. Any requests by investigating agents or members of the Department of Justice to edit, revise, or otherwise change the content of any 302 or interview memorandum.

## VII. Grand Jury

With respect to grand jury proceedings in the above-referenced case, defendant requests that the prosecution disclose:

A. The empanelment date and place of each grand jury that heard evidence concerning this case.

B. Any voir dire questions presented to potential grand jurors.

C. The record of any grand jurors who were summoned but excused from service.

D. The dates on which each such grand jury sat, the number of grand jurors present on those dates, and the dates on which each grand juror was in attendance.

E. The identities of all persons to whom grand jury materials were disclosed.

F. Whether anyone was present during grand jury proceedings other than the grand jurors, witnesses, court reporter, and the prosecutors, and, if so, the identities of all such persons.

G. The instructions provided to the grand jury before the indictment was returned.

H. The voting record and record of return of the indictment in open court.

Defense counsel would appreciate your response to these requests as soon as possible, but before the next scheduled status conference on January 5, 2022. As has been occurring, the government can provide the materials requested on a rolling basis. We will supplement these requests as we continue our preparation for trial. If you have any questions regarding these requests, please contact me. Thank you for your consideration.



Sincerely,

Abbe David Lowell