IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 1:21-cr-00371(BMC)(TAM) |
| | ) | Hon. Brian M. Cogan |
| MATTHEW GRIMES | ) | |

**MR. GRIMES' MOTION TO DISMISS THE INDICTMENT**

Abbe David Lowell
Christopher D. Man
Andrew E. Tauber
WINSTON & STRAWN LLP
1901 L Street, NW
Washington, DC 20036
ADLowell@winston.com
202-282-5000 (ph)
202-282-5100 (fax)

Sofia Arguello
Johanna Hudgens
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
SArguello@winston.com
212-294-6700 (ph)
212-294-4700 (fax)

*Counsel for Defendant Matthew Grimes*

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................ 1

ARGUMENT ..................................................................................................... 2

    I.    THE INDICTMENT FAILS TO STATE A CRIME AGAINST MR.
          GRIMES ................................................................................................ 2

          A.    The Facts Alleged In The Indictment Show That Mr. Grimes Was
                 An Agent Of Colony, Not The UAE ........................................................ 3

          B.    The Indictment Does Not Allege That Mr. Grimes *Agreed* To Act
                 As An Agent Of The UAE .......................................................................... 4

          C.    The Indictment Does Not Allege That Mr. Grimes *Acted* As An
                 Agent Of The UAE ................................................................................ 4

          D.    "Agent" Under Section 951 Does Not Include Employees Of
                 Agents ................................................................................................ 5

          E.    Mr. Grimes Was Not An Agent Of A Foreign Government
                 Because He Was Engaged In A "Legal Commercial Transaction" ............ 8

    II.    THE INDICTMENT FAILS TO CHARGE MR. GRIMES WITH
          SPECIFIC INTENT, WHICH DUE PROCESS REQUIRES ............................ 10

    III.    SECTION 951 IS UNCONSTITUTIONALLY VAGUE ................................... 13

          A.    Section 951 Is Void On Its Face ................................................................ 14

          B.    Section 951 Is Void As Applied ................................................................ 17

          C.    Mr. Grimes Was Not Provided Fair Notice That His Alleged
                 Conduct Was A Crime ................................................................................ 18

    IV.    SECTION 951 IS UNENFORCEABLE BECAUSE ITS
          IMPLEMENTING REGULATIONS ARE VOID .............................................. 24

    V.    SECTION 951 VIOLATES THE FIRST AMENDMENT ................................ 26

          A.    Section 951 Unduly Burdens Political Speech ........................................ 27

          B.    Section 951 Is An Unconstitutional Prior Restraint ................................ 29

          C.    Section 951 Constitutes Speaker-Based Discrimination .......................... 31

VI.     SECTION 951'S REGISTRATION REQUIREMENT VIOLATES THE
        SELF-INCRIMINATION CLAUSE OF THE FIFTH AMENDMENT .............. 32

        A.     Registration Requirements That Pose A Risk Of Prosecution To
               The Registrant Violate The Fifth Amendment's Self-Incrimination
               Clause .................................................................................................. 32

        B.     Section 951 Violates The Self-Incrimination Clause ............................... 35

VII.    CHARGING DEFECTS REQUIRE DISMISSAL ................................................. 37

        A.     Count 1 Should Be Dismissed As Duplicitous ........................................ 37

        B.     Count 1's Aiding-And-Abetting Theory And The Conspiracy
               Charged In Count 2 Fail To Allege Required Specific Intent And
               Should Be Dismissed ............................................................................... 38

        C.     Conspiracy Prosecutions Under Section 951 Are Not Authorized .......... 40

        D.     The Indictment Indicates No Basis For Venue To Charge Mr.
               Grimes In The Eastern District Of New York And Must Therefore
               Be Dismissed ........................................................................................... 42

CONCLUSION ......................................................................................................... 43

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Albertson v. Subversive Activities Control Board,*
    382 U.S. 70 (1965)................................................................................33, 35

*Allen v. Illinois,*
    478 U.S. 364 (1986)...............................................................................32

*Balt. Dep't of Soc. Servs. v. Bouknight,*
    493 U.S. 549 (1990)...............................................................................33

*Bouie v. City of Columbia,*
    378 U.S. 347 (1964)................................................................................18, 24

*Brown v. Entm't Merchants Ass'n,*
    564 U.S. 786 (2011)...............................................................................28, 29

*Burlington N. & Santa Fe. Ry. Co. v. White,*
    548 U.S. 53 (2006).................................................................................7

*Burson v. Freeman,*
    504 U.S. 191 (1992)...............................................................................27

*California v. Byers,*
    402 U.S. 424 (1971)...............................................................................32

*CFTC v. Vartuli,*
    228 F.3d 94 (2d Cir. 2000).....................................................................29

*Citizens United v. FEC,*
    558 U.S. 310 (2010)...............................................................................27, 28, 31

*City of Chi. v. Morales,*
    527 U.S. 41 (1999).................................................................................16

*Decker v. Nw. Env't Def. Ctr.,*
    568 U.S. 597 (2013)...............................................................................24, 26

*Elonis v. Unites States,*
    575 U.S. 723 (2015)...............................................................................12, 13

*F.C.C. v. Fox Television Stations, Inc.,*
    567 U.S. 239 (2012)...............................................................................14, 16

*First Nat'l Bank of Bos. v. Bellotti*,
    435 U.S. 765 (1978) ..................................................................................31

*FW/PBS, Inc. v. City of Dallas*,
    493 U.S. 215 (1990) ..................................................................................30

*Gen. Media Commc'ns, Inc. v. Cohen*,
    131 F.3d 273 (2d Cir. 1997) .....................................................................14

*Grayned v. City of Rockford*,
    408 U.S. 104 (1972) ..................................................................................13

*Grosso v. United States*,
    390 U.S. 62 (1968) ....................................................................................36

*Hawkins-El v. First Am. Funding, LLC*,
    891 F. Supp. 2d 402 (E.D.N.Y. 2012) .....................................................25

*Haynes v. United States*,
    390 U.S. 85 (1968) ..............................................................................34, 35

*Hous. Works, Inc. v. Safir*,
    101 F. Supp. 2d 163 (S.D.N.Y. 2000) .....................................................16

*Iannelli v. United States*,
    420 U.S. 770 (1975) ............................................................................40, 41

*Ins. Co. of N. Am. v. Gee*,
    702 F.2d 411 (2d Cir. 1983) .....................................................................24

*John Doe, Inc. v. Mukasey*,
    549 F.3d 861 (2d Cir. 2008) .....................................................................28

*Johnston v. United States*,
    351 U.S. 215 (1956) ..................................................................................42

*Lambert v. California*,
    355 U.S. 225 (1957) ......................................................................10, 11, 12

*Leary v. United States*,
    395 U.S. 6 (1969) ................................................................................34, 35

*Loughrin v. United States*,
    573 U.S. 351 (2014) ....................................................................................5

*Marchetti v. United States*,
    390 U.S. 39 (1968) ................................................................33, 34, 35, 36

*In re Maresca*,
   982 F.3d 859 (2d Cir. 2020) ........................................................................5

*N.Y. C.L. Union, Inc. v. Acito*,
   459 F. Supp. 75 (S.D.N.Y. 1978) ..............................................................27

*Neb. Press Ass'n v. Stuart*,
   427 U.S. 539 (1976) .................................................................................29

*Norman v. United States*,
   942 F.3d 1111 (Fed. Cir. 2019) ...............................................................25

*Ocasio v. United States*,
   578 U.S. 282 (2016) .................................................................................39

*Org. for a Better Austin v. Keefe*,
   402 U.S. 415 (1971) .................................................................................30

*Pierre v. Planet Auto., Inc.*,
   193 F. Supp. 3d 157 (E.D.N.Y. 2016) .....................................................24

*Rehaif v. United States*,
   139 S. Ct. 2191 (2019) ..................................................................11, 12, 13

*Rosemond v. United States*,
   572 U.S. 65 (2004) ...................................................................................38

*Rosenberger v. Rector & Visitors of Univ. of Va.*,
   515 U.S. 819 (1995) .................................................................................31

*Russello v. United States*,
   464 U.S. 16 (1983) .....................................................................................8

*Rutledge v. United States*,
   517 U.S. 292 (1996) .................................................................................41

*Sanford's Est. v. Comm'r of Internal Rev.*,
   308 U.S. 39 (1939) .....................................................................................5

*Scales v. United States*,
   367 U.S. 203 (1961) .................................................................................33

*Shuttlesworth v. City of Birmingham*,
   394 U.S. 147 (1969) .................................................................................29

*Sorich v. United States*,
   555 U.S. 1204 (2009) (Scalia, J., dissenting from denial of certiorari) ...................................18

*Staples v. United States*,
   511 U.S. 600 (1994)..........................................................................................13

*Thibodeau v. Portuondo*,
   486 F.3d 61 (2d Cir. 2007).......................................................................13, 16, 17

*Time Warner Cable Inc. v. F.C.C.*,
   729 F.3d 137 (2d Cir. 2013)...............................................................................31

*Torres v. Lynch*,
   578 U.S. 452 (2016).....................................................................................12, 13

*Travis v. United States*,
   364 U.S. 631 (1961).........................................................................................43

*United States v. Butenko*,
   384 F.2d 554 (3d Cir. 1967), *vacated and remanded on other grounds sub*
   *nom*, *Alderman v. United States*, 394 U.S. 165 (1968)..........................................39

*United States v. Campa*,
   529 F.3d 980 (11th Cir. 2008) .......................................................................11, 12

*United States v. Chung*,
   659 F.3d 815 (9th Cir. 2011) ...............................................................................4

*United States v. Cruz*,
   363 F.3d 187 (2d Cir. 2004)...............................................................................38

*United States v. Dumeisi*,
   424 F.3d 566 (7th Cir. 2005) .............................................................................12

*United States v. Duran*,
   2008 WL 11333989 (S.D. Fla. Oct. 10, 2008)...................................................9, 12

*United States v. Duran*,
   596 F.3d 1283 (11th Cir. 2010) ...................................................................11, 12, 14

*United States v. Enmons*,
   410 U.S. 396 (1973)............................................................................................9

*United States v. Friedman*,
   300 F.3d 111 (2d Cir. 2002)...............................................................................38

*United States v. Gallo*,
   859 F.2d 1078 (2d Cir. 1998)..............................................................................36

*United States v. Hamilton*,
   334 F.3d 170 (2d Cir. 2003)...............................................................................38

*United States v. Hoskins*,
 902 F.3d 69 (2d Cir. 2018).............................................................................40

*United States v. Hung*,
 629 F.2d 908 (4th Cir. 1980) .........................................................................14

*United States v. Ji Chaoqun*,
 2020 WL 1689826 (N.D. Ill. Apr. 7, 2020) ..................................................14

*United States v. Johnson*,
 323 U.S. 273 (1944)........................................................................................43

*United States v. Kahn*,
 5 F.4th 167 (2d Cir. 2021) .......................................................................25, 26

*United States v. Kerley*,
 416 F.3d 176 (2d Cir. 2005).............................................................................8

*United States v. Khalupsky*,
 5 F.4th 279 (2d Cir. 2021) .............................................................................38

*United States v. Kirk Tang Yuk*,
 885 F.3d 57 (2d Cir. 2018)..............................................................................42

*United States v. Lanier*,
 520 U.S. 259 (1997)........................................................................................18

*United States v. Larionoff*,
 431 U.S. 864 (1977)........................................................................................24

*United States v. Lindauer*,
 2004 WL 2813168 (S.D.N.Y. Dec. 6, 2004) ................................................14

*United States v. Magiotta*,
 646 F.2d 729 (2d Cir. 1981)...........................................................................37

*United States v. McCourty*,
 562 F.3d 458 (2d Cir. 2009)...........................................................................37

*United States v. McCoy*,
 995 F.3d 32 (2d Cir. 2021)..............................................................................38

*United States v. Nosal*,
 2010 WL 934257 (N.D. Cal. Jan. 6, 2010), *aff'd*, 676 F.3d 854 (9th Cir. 2012) ....................9

*United States v. Panarella*,
 277 F.3d 678 (3d Cir. 2002), *abrogated on other grounds*,
 *Skilling v. United States*, 561 U.S. 358 (2010) ........................................................9

*United States v. Pimenta*,
   2015 WL 6502098 (D.N.J. Oct. 27, 2015).................................................................................9

*United States v. Playboy Ent. Grp., Inc.*,
   529 U.S. 803 (2000).................................................................................28

*United States v. Quattrone*,
   402 F.3d 304 (2d Cir. 2005).................................................................................30

*United States v. Rafiekian*,
   991 F.3d 529 (4th Cir. 2021) .................................................................................4, 28, 40

*United States v. Salinas*,
   373 F.3d 161 (1st Cir. 2004).................................................................................42

*United States v. Santos*,
   553 U.S. 507 (2008).................................................................................8

*United States v. Schofer*,
   310 F. Supp 1292 (E.D.N.Y. 1970) (Dooling, J.) .................................................................................32

*United States v. Valerio*,
   765 F. App'x 562 (2d Cir. 2019) .................................................................................41

*United States v. Willis*,
   14 F.4th 170 (2d Cir. 2021) .................................................................................38

*United States v. Willis*,
   844 F.3d 155 (3d Cir. 2016).................................................................................9

*United States v. X-Citement Video, Inc.*,
   513 U.S. 64 (1994).................................................................................12

*United States v. Ying Lin*,
   2018 WL 3416524 (E.D.N.Y. July 11, 2018) .................................................................................26

*United States v. Zemlyansky*,
   908 F.3d 1 (2d Cir. 2018).................................................................................39

*Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*,
   455 U.S. 489 (1982).................................................................................14

*Wilson v. CIA*,
   586 F.3d 171 (2d Cir. 2009).................................................................................30

**Constitutional Provisions**

U.S. Const. amend. I .................................................................................*passim*

U.S. Const. amend. V ............................................................................................ *passim*

**Statutes**

2 U.S.C. §1603(a)(1) ........................................................................................... 30

18 U.S.C. § 2 ................................................................................................. 37, 38

18 U.S.C. § 371 .............................................................................................. 1, 41

18 U.S.C. § 794(a) ............................................................................................... 36

18 U.S.C. § 798 .................................................................................................... 36

18 U.S.C. § 951 .............................................................................................. *passim*

18 U.S.C. § 2386 .................................................................................................... 7

22 U.S.C. §§611 *et seq.* (FARA) ..................................................................... *passim*

22 U.S.C. § 612(a) .................................................................................................. 6

22 U.S.C. § 614(b) ................................................................................................ 29

Pub. L. 89–486, § 1, July 4, 1966, 80 Stat. 244 ...................................................... 6

Pub. L. 98–473, title II, § 1209, Oct. 12, 1984, 98 Stat. 2164 .............................. 6

**Regulations**

28 C.F.R. § 5.202(b) ............................................................................................... 7

28 C.F.R. § 5.202(c) ............................................................................................. 20

28 C.F.R. § 73.1(a) .............................................................................................. 25

28 C.F.R. § 73.1(f) .................................................................................... 2, 3, 9, 10

28 C.F.R. § 73.3 ................................................................................................... 42

28 C.F.R. § 73.3(3) ................................................................................................. 7

28 C.F.R. § 73.3(a) .............................................................................................. 23

28 C.F.R. § 73.3(e) ................................................................................................. 6

28 C.F.R. § 73.6 ..................................................................................................... 7

72 Fed. Reg. 10070 (Mar. 7, 2007) ..................................................................... 23

**Rules**

Fed. R. Crim. P. 12(b)(3)(B)(i) ...........................................................................37

**Other Authorities**

1 R. Anderson, *Wharton's Criminal Law and Procedure* § 89 (1957)..........................................40

*Black's Law Dictionary* 788 (8th ed. 2004).................................................................37

*Communist Block Intelligence Gathering on Capitol Hill: Hearing. on S. 1959
   and S. 1963 Before the Subcomm. on Sec. & Terrorism of the S. Comm. on the
   Judiciary*, 97th Cong., 2d Sess. at 21 (May 12, 1982) (statement of Mark
   Richard, Deputy Assistant Att'y Gen. of Crim. Div.)   ....................................8, 9, 36

DOJ, *The Scope of Agency Under FARA* (May 2020),
   https://www.justice.gov/nsd-fara/page/file/1279836/download ........................................7, 23

*Justice Manual* § 9-90.700 (Jan. 2020).......................................................................23

2 K. O'Malley, J. Grenig, & W. Lee, *Federal Jury Practice and Instructions:
   Criminal* § 31:03 (6th ed. 2008) ................................................................................39

*Oversight of the Foreign Agents Registration Act and Attempts to Influence U.S.
   Elections: Lessons Learned from Current and Prior Administrations*, U.S.
   Sen. Comm. on the Judiciary at 2, 6 (July 26, 2017) (statement of Adam S.
   Hickey, Deputy Assistant Att'y Gen., Nat'l Sec. Div., DOJ)........................................ *passim*

S. Rep 98-225 (Aug. 4, 1983) ................................................................................8, 9

## INTRODUCTION

The federal government's prosecution of Matthew Grimes is unprecedented.

At the time of the alleged offense, Mr. Grimes was a twenty-two-year-old assistant to Thomas Barrack, the American Executive Chairman of Colony Capital, "a global investment management firm." (Dkt. 5 ¶ 2 (Indict.)).[1] Hired straight out of college, Mr. Grimes "report[ed] directly" to Mr. Barrack (*id.* ¶ 3) and assisted Mr. Barrack by relaying messages, coordinating meetings, and drafting materials. (*Id.* ¶¶ 24(c), 32, 37, 38, 52, 55.) Nothing that Mr. Grimes is alleged to have done occurred outside the scope of his "employ[ment]" as Mr. Barrack's assistant at Colony. (*Id.* ¶ 3.)

Although Mr. Grimes' work as an assistant to Mr. Barrack included, among other things, helping Mr. Barrack with his work related to the United Arab Emirates (UAE), there is no allegation that Mr. Grimes ever agreed to be an agent of the UAE. Nor is there any allegation that Mr. Grimes knew that his alleged activities on behalf of Colony rendered him an agent of the UAE.

Despite this, the government now alleges that Mr. Grimes was required to personally register as an agent of the UAE and that his failure to do so constitutes a felony under 18 U.S.C. § 951 and a conspiracy to violate the same charged under 18 U.S.C. § 371. Although Section 951 has existed in some form for more than a century, it has never before been used against a person in Mr. Grimes' position. Never. There is good reason for that. The statute, which targets spies and others engaged in criminal activity, does not apply to Mr. Grimes' alleged conduct.

Even if Mr. Grimes' alleged conduct did violate Section 951, the charges against Mr. Grimes must still be dismissed on multiple, independent grounds. Application of Section 951 to Mr. Grimes violates the Due Process Clause because the statute is unconstitutionally vague, both

---

[1]      Colony Capital was renamed Colony NorthStar. We refer to the company as "Colony."

on its face and as applied, and Mr. Grimes did not have required notice that his alleged conduct was criminal.  Prosecuting Mr. Grimes under Section 951 also violates the First Amendment, because the statute penalizes political speech, acts as a prior restraint, and constitutes speaker-based discrimination.  In addition, the statute's registration requirement violates the Fifth Amendment's Self-Incrimination Clause.  Finally, the indictment suffers from various charging defects, including duplicity and lack of venue.

For each of these reasons, the charges against Mr. Grimes should be dismissed.[2]

## ARGUMENT

## I.      THE INDICTMENT FAILS TO STATE A CRIME AGAINST MR. GRIMES

Mr. Grimes is charged with violating, and conspiring to violate Section 951, but Section 951 is not applicable to his alleged conduct.  Section 951(a) punishes whomever "acts in the United States as an agent of a foreign government without prior notification to the Attorney General if required" to register by the statute's implementing regulations.  Section 951(d) defines "agent of a foreign government" to mean "an individual," other than a "person engaged in a legal commercial transaction," who "agrees to operate within the United States subject to the direction or control of a foreign government or official."  The statute's implementing regulations define the term "legal commercial transaction" to include any "service … of any kind … not prohibited by federal or state legislation or implementing regulations."  28 C.F.R. § 73.1(f).

The indictment fails to allege that Mr. Grimes agreed to act as an "agent of a foreign government," subject to the direction or control of a foreign government—or that he in fact did so.  Nor does it allege that his alleged conduct—conveying messages and drafting materials while employed as an assistant to an investment company's chairman—was anything other than a lawful

---

[2]      Depending on what it reveals, additional motions to dismiss may follow discovery.

service that fits squarely into the "legal commercial transaction" exception.  18 U.S.C. § 951(d)(4); 28 C.F.R. § 73.1(f).  Accordingly, the charges against him must be dismissed.

### A.    The Facts Alleged In The Indictment Show That Mr. Grimes Was An Agent Of Colony, Not The UAE

Mr. Grimes was hired in August 2015 at age twenty-one by Colony, "a global investment management firm."  (Dkt. 5 ¶ 2.)  Mr. Grimes "report[ed] directly to" Mr. Barrack, the company's chairman.  (*Id.* ¶¶ 2–3.)  As the facts alleged in the indictment make clear, Mr. Grimes served as Mr. Barrack's personal assistant, relaying messages to and from Mr. Barrack, coordinating phone calls, facilitating meetings, and drafting written materials.  (*Id.* ¶¶ 24(c), 32, 37, 38, 52, 55.)

All of Mr. Grimes' alleged acts were within the scope of his "employ[ment] at [Colony]" as an assistant to Mr. Barrack.  (Dkt. 5 ¶ 3.)  Mr. Barrack directed Mr. Grimes' activity and Colony paid Mr. Grimes' salary.  Consistent with this reality, the indictment does not allege—and could not allege—that Mr. Grimes ever took direction from, or was controlled by, the UAE.  Further, the indictment does not identify any UAE official who controlled or directed Mr. Grimes at any point.

To be sure, Mr. Grimes recognized that Mr. Barrack was interacting with people in the UAE and that he was assisting Mr. Barrack with those interactions.  But there is nothing remarkable about that given that Mr. Barrack was the head of "a global investment management firm" who routinely interacted with investors and business partners "global[ly]."  (Dkt. 5 ¶ 2.)  The indictment alleges that Mr. Grimes helped Mr. Barrack prepare a "strategy proposal" whose "primary purpose" was to "achieve outsized financial returns" by encouraging UAE investments.  (*Id.* ¶ 34.)  That does not make Mr. Grimes an agent of the UAE, even if those investments would also "garner political credibility" for the UAE.  (*Id.*)  The facts alleged in the indictment show that Mr. Grimes, a Colony employee, was Colony's agent, not an agent of the UAE.

**B.    The Indictment Does Not Allege That Mr. Grimes *Agreed* To Act As An Agent Of The UAE**

By statute, the term "agent of a foreign government" means "an individual who *agrees* to operate within the United States subject to the direction or control of a foreign government or official." 18 U.S.C. § 951(d) (emphasis added). Thus, to allege a violation of Section 951(a), the Government must allege that Mr. Grimes "acted *pursuant to an agreement* to operate subject to the direction or control of" the UAE. *United States v. Chung*, 659 F.3d 815, 823 (9th Cir. 2011) (emphasis added). The indictment fails to allege any such agreement.

The indictment does not allege when, where, or how Mr. Grimes purportedly agreed to be an agent of the UAE, or who in the UAE controlled him. It does not allege that Mr. Grimes was employed by the UAE, had a contractual relationship with the UAE, or was ever paid by the UAE. Nor does it allege that Mr. Grimes ever reached an agreement with a UAE official—or anyone else—that he would act subject to the UAE's direction or control. To the contrary, the indictment accurately alleges that Mr. Grimes was "employed" by Colony and that he "reported to" Mr. Barrack throughout the time-period charged in the indictment. (Dkt. 5 ¶ 3.) In short, the indictment does not allege that Mr. Grimes "agree[d]" to act as "an agent of a foreign government" within the meaning of Section 951(a).

**C.    The Indictment Does Not Allege That Mr. Grimes *Acted* As An Agent Of The UAE**

As the Fourth Circuit recently explained, "[t]o fall within § 951's ambit, a person must do more than act in parallel with a foreign government's interests or pursue a mutual goal." *United States v. Rafiekian*, 991 F.3d 529, 538 (4th Cir. 2021). Thus, to charge Mr. Grimes with a violation of Section 951(a), the Government must allege that a UAE official *actually* "directed or controlled" his actions. *Chung*, 659 F.3d at 823. The indictment does not do so. In its long recitation of alleged facts, the indictment never alleges—not even in conclusory fashion—that Mr.

Grimes acted subject to the "control[]" of the UAE or one of its officials.  And although it does allege that the co-defendants collectively drafted materials "at the direction of United Arab Emirates official" (Dkt. 5 ¶ 25), it does not adequately allege that Mr. Grimes himself took directions from any UAE official.

### D.    "Agent" Under Section 951 Does Not Include Employees Of Agents

The indictment accurately alleges that Mr. Grimes was "employed" by Colony and "report[ed] directly" to Mr. Barrack, his boss.  It does not allege that any of the actions Mr. Grimes allegedly took were taken outside the scope of his employment by Colony.  Thus, the government's theory appears to be that Mr. Grimes somehow became a derivative agent of the UAE by working for Mr. Barrack, who the government claims was an agent of the UAE.

That theory is not viable.  Holding an employee of an American company liable under Section 951 as an agent of a foreign government when the employee has not personally agreed to act subject to the direction or control of a foreign government writes the "agree[ment]" element out of the statute.  18 U.S.C. § 951(d).  That is "contrary to 'the cardinal principle of interpretation that courts must give effect, if possible, to every clause and word of a statute.'"  *In re Maresca*, 982 F.3d 859, 863 (2d Cir. 2020) (quoting *Loughrin v. United States*, 573 U.S. 351, 358 (2014)).

Extending liability to employees of American companies such as Mr. Grimes who do not themselves agree to operate "subject to the direction or control of a foreign government or official" (Sec. 951(d)) also violates the principle that related statutes—statutes that are *in pari materia*— "must be construed together."  *Sanford's Est. v. Comm'r of Internal Rev.*, 308 U.S. 39, 44 (1939). When viewed against the backdrop of similar registration statutes, it is clear that Mr. Grimes is not "an agent of a foreign government" within the meaning of Section 951.

The government recognizes that Section 951 and the Foreign Agents Registration Act (FARA), 22 U.S.C. §§ 611 *et seq.*, are "related statutes."  Dep't of Justice, *FARA Related Statutes*,

https://www.justice.gov/nsd-fara/fara-related-statutes (last accessed Jan. 30, 2022).  That FARA

and 18 U.S.C. § 951 are *in pari materia* and must therefore be construed together is confirmed by

28 C.F.R. § 73.3(e), which states that an individual has satisfied Section 951(a)'s registration

requirement if that person "has filed a registration under [FARA]."

Significantly, Congress expressly extended the concept of agency under FARA in 1966 to

reach those who are only indirectly agents—something that it did *not* do when it later defined

"agent of foreign government" in Section 951 in 1984.[3]  FARA requires every "agent of a foreign

principal" to register with the Attorney General.  22 U.S.C. § 612(a).  Notably, FARA defines that

phrase to include not only individuals who act "under the direction or control[] of a foreign

principal," *i.e.*, traditionally understood direct agents, but those who act "under the direction or

control[] … of a person any of whose activities are directly or indirectly supervised, directed,

controlled, financed, or subsidized … by a foreign principal." *Id.* § 611(c)(1).  Thus, unlike Section

951, FARA expressly reaches both individuals whose actions are directly controlled by a foreign

principal and individuals whose actions are only indirectly controlled by a foreign principal.

The government recognizes that "[t]he second clause" of the definition of "agent" found in

Section 611(c)(1) "goes beyond the common-law definition of agency" and that the statutory

"expansion of the term 'agent'" is what "allows FARA to reach conduct that is undertaken on

---

[3]     The focal point of the 1984 amendments to Section 951 was to provide, for the first time, a definition of "agent of a foreign government" and to thereby fill a gap that had made the statute too broad to be workably enforced in prior years and that had led a court to find the statute unconstitutionally vague.  Pub. L. 98–473, title II, § 1209, Oct. 12, 1984, 98 Stat. 2164.  To be sure, Section 951 still suffers from vagueness problems but one thing is clear: In amending Section 951, Congress plainly had FARA's 1966 definition of "agent of a foreign principal" before it but nonetheless adopted a narrower definition of what constituted agency.  Pub. L. 89–486, § 1, July 4, 1966, 80 Stat. 244.

behalf of a foreign principal even without a formal relationship."[4]  Section 951(d) contains no such language.[5]  Given that the definition of "agent" for purposes of § 612 includes indirect agents but the definition of "agent" for purposes of § 951 does not, it would violate the *in pari materia* doctrine—and the rule against surplusage—to read § 951 as also covering indirect agents.

In fact, DOJ regulations recognize that FARA's reach is broader than that of § 951. Although registration under FARA is sufficient to satisfy § 951 (*cf.* 28 C.F.R. § 73.3(3)), "notification under [§ 951] shall not be deemed compliance with the requirements of [FARA]" by 28 C.F.R. § 73.6.

Another "related" registration statute—18 U.S.C. § 2386—is further evidence that Congress did not intend Section 951 to reach indirect agents.  *See* DOJ, *FARA Related Statutes*. Since 1948, Section 2386 has required certain organizations "subject to foreign control" to register with the Attorney General.  The statute deems an organization to be "subject to foreign control" if it "is affiliated directly *or indirectly* with [] a foreign government."  *Id.* § 2386(A)(5)(a) (emphasis added).  It is thus clear that when Congress wants a registration requirement to reach actors indirectly controlled by a foreign government, it says so explicitly.  Because Section 951—in contrast to Section 2386 and FARA—does not cover indirect agents explicitly, it should not be read to do so implicitly.

Courts "normally presume that, where words differ as they differ here, 'Congress acts intentionally and purposely in the disparate inclusion or exclusion.'"  *Burlington N. & Santa Fe.*

---

[4]      DOJ, *The Scope of Agency Under FARA* at 2 (May 2020), https://www.justice.gov/nsd-fara/page/file/1279836/download [hereinafter "DOJ Agency Guidance"].

[5]      FARA's implementing regulations highlight the distinction between traditional agents and indirect agents subsumed within the statute's expanded definition of "agent" by requiring a traditional agent to file a detailed registration as a "registrant" while allowing an "employee … of a registrant … to file a short form registration statement."  28 C.F.R. § 5.202(b).

*Ry. Co. v. White*, 548 U.S. 53, 63 (2006) (quoting *Russello v. United States*, 464 U.S. 16, 23 (1983)).  This presumption is especially forceful when it involves "closely related statutes" such as Sections 951 and 2386 and FARA.  *United States v. Kerley*, 416 F.3d 176, 180 (2d Cir. 2005).  When the statutes are construed together, as they must be, it is apparent that § 951 does not require registration by indirect agents.[6]

### E.    Mr. Grimes Was Not An Agent Of A Foreign Government Because He Was Engaged In A "Legal Commercial Transaction"

Congress amended Section 951 in 1984 to define the term "agent of a foreign government," which had not previously been defined.  The previous lack of a statutory definition had rendered Section 951 so broad as to be unworkable and had "impede[d] our foreign relations" by creating an "awkward relationship to the representatives of foreign governments" with whom the United States "routinely does business." S. Rep 98-225 at 415 (Aug. 4, 1983).

To avoid those problems, Congress, on the recommendation of the Justice Department, defined the term "agent of a foreign government" to "not include . . . any person engaged in a legal commercial transaction." 18 U.S.C. § 951(d)(4).  DOJ recommended excluding anyone engaged in a legal commercial transaction from the definition of "agent of a foreign government" so that the term would be construed "narrowly," and extend only to those engaged in espionage and other clandestine activities.  Judiciary Hr'g at 22, 37 (statement of Mr. Richard).[7]  To effect that limiting

---

[6]    The government may respond to ignore or try to distinguish these differences in statutory language to have Section 951 be read to reach indirect agents.  Doing so would be inappropriate under the "rule of lenity," which requires ambiguous criminal laws to be interpreted in favor of the defendants subjected to them."  *United States v. Santos*, 553 U.S. 507, 514 (2008).

[7]    *Communist Block Intelligence Gathering on Capitol Hill: Hearing on S. 1959 and S. 1963 Before the Subcomm. on Sec. & Terrorism of the S. Comm. on the Judiciary*, 97th Cong., 2d Sess. at 21 (May 12, 1982) (statement of Mark Richard, Deputy Assistant Att'y Gen. of Crim. Div.) [hereinafter "Judiciary Hr'g"].  Following DAG Richard's testimony, Assistant Attorney General Robert McConnell submitted a letter proposing a definition of that phrase, which Congress later adopted.  *Id.* at 67.

purpose, DOJ has defined "legal commercial transaction" broadly: "The term legal commercial transaction, for the purpose of 18 U.S.C. 951(d)(4)," is defined to include, among many other things, "any . . . service . . . of any kind . . . not prohibited by federal or state legislation or implementing regulations."  28 C.F.R. § 73.1(f).

The broad exclusion of anyone engaged in a "*legal* commercial transaction" from Section 951's registration requirement reflects the statute's underlying purpose—namely, "to impede espionage."  Judiciary Hr'g at 4, 40; *see also* S. Rep. 98-225 at 415.  It is only by broadly excluding persons involved in "legal commercial transactions" that Section 951 can effectively serve the purpose that DOJ ascribes to it: "to punish and deter criminal, espionage-like behavior."[8] *Cf. United States v. Duran*, 2008 WL 11333989, at *3 (S.D. Fla. Oct. 10, 2008) (exception inapplicable where the agent's conduct—fraud, bribery, and witnesses tampering—was itself criminal).

Although the indictment alleges that none of Mr. Grimes' alleged activities "constituted a legal commercial transaction" (Dkt. 5 ¶ 90), that naked assertion is inconsistent with the specific facts charged in the indictment.[9]  Again, the indictment alleges that Mr. Grimes was "employed"

---

[8]     *Oversight of the Foreign Agents Registration Act and Attempts to Influence U.S. Elections: Lessons Learned from Current and Prior Administrations*, U.S. Sen. Comm. on the Judiciary at 2, 6 (July 26, 2017) (statement of Adam S. Hickey, Deputy Assistant Att'y Gen., Nat'l Sec. Div., DOJ) [hereinafter "Hickey"].

[9]     "[A] defendant may move to dismiss on the grounds that 'the specific facts alleged . . . fall beyond the scope of the relevant criminal statute, as a matter of statutory interpretation.'"  *United States v. Willis*, 844 F.3d 155, 162 (3d Cir. 2016); *see also United States v. Enmons*, 410 U.S. 396, 412 (1973) (dismissing indictment).  General allegations setting forth the elements of the offense are insufficient where the specific factual allegations charged fail to allege a crime.  *See United States v. Panarella*, 277 F.3d 678, 685 (3d Cir. 2002) (rejecting government argument "that an indictment . . . charges an offense . . . as long as it recites in general terms the essential elements of the offense, even if the specific facts alleged in the charging instrument fail to satisfy those elements"), *abrogated on other grounds*, *Skilling v. United States*, 561 U.S. 358 (2010); *see also United States v. Nosal*, 2010 WL 934257, at *2 (N.D. Cal. Jan. 6, 2010) ("General conclusory allegations need not be credited . . . when they are belied by more specific allegations in the

by Mr. Barrack's company and "reported directly" to Mr. Barrack (*id.* ¶ 3). There is no allegation that Mr. Grimes' employment was itself unlawful. Nor could there be. Assisting Mr. Barrack by relaying messages; making calls; setting up meetings; tagging along on trips; helping him draft speeches, presentations, and articles; and fetching his coffee are all perfectly lawful. And there is no allegation that any of these innocent activities as a Colony employee—such as helping Mr. Barrack prepare a "strategy proposal" whose "primary purpose" was to "achieve outsized financial returns" by encouraging UAE investment in certain industries (*id.* ¶ 34)—were in furtherance of espionage or any other criminal activity. In short, there is no allegation that Mr. Grimes did anything other than provide "a service … not prohibited by federal or state legislation or implementing regulations." 28 C.F.R. § 73.1(f). Because the indictment fails to adequately allege that Mr. Grimes was engaged in anything other than a "legal commercial transaction" (Sec. 951(d)(4)), he was *not* "an agent of a foreign government" as that term is defined for purposes of Section 951. The government's unsupported assertion to the contrary effectively repeals Congress's 1984 amendment, which was designed to narrow Section 951's reach.

## II.   THE INDICTMENT FAILS TO CHARGE MR. GRIMES WITH SPECIFIC INTENT, WHICH DUE PROCESS REQUIRES

If Section 951 does not require specific intent, it violates due process and Mr. Grimes may not be prosecuted under it. If Section 951 does require specific intent, the indictment fails to state a crime against Mr. Grimes because it does not allege that he acted with specific intent. Either way, the charges against Mr. Grimes must be dismissed.

---

[indictment].") (citation omitted), *aff'd*, 676 F.3d 854 (9th Cir. 2012). This analysis is part of the court's "duty to review the Government's Indictment and confirm that a legally deficient charge does not go to the jury." *United States v. Pimenta*, 2015 WL 6502098, at *5 (D.N.J. Oct. 27, 2015) (dismissing charge).

The Supreme Court has long recognized that statutes that define crimes based on an individual's status violate due process unless they contain a specific-intent requirement.  For example, in *Lambert v. California*, 355 U.S. 225 (1957), the Supreme Court reversed a conviction on due process grounds under a statute that made it illegal for a convicted felon to "remain in Los Angeles for a period of more than five days without registering" with the city's chief of police.  *Id.* at 242.  Because "[n]o element of willfulness is by terms included in the ordinance nor read into it by the California court as a condition necessary for a conviction," the Supreme Court reversed the conviction explaining that "actual knowledge of the duty to register or proof of the probability of such knowledge and subsequent failure to comply are necessary before a conviction under the ordinance can stand."  *Id.* at 228, 230.

Similarly, in *Rehaif v. United States*, 139 S. Ct. 2191 (2019), the Court held that for an individual to be found guilty of knowingly violating a provision that bars persons illegally in the country from possessing firearms, the Government must prove that the individual not only knowingly possessed a firearm but also knew that they were in the country illegally.  The Court explained that "[w]ithout knowledge of that status, the defendant may well lack the intent needed to make his behavior wrongful" and "[h]is behavior may instead be an innocent mistake to which criminal sanctions normally do not attach."  *Id.* at 2197.

Like the statutory requirements at issue in *Lambert* and *Rehaif*, Section 951's registration requirement is based on an individual's status.  Only someone who acts "*as* an agent of a foreign government" is required to register.  18 U.S.C. § 951(a) (emphasis added).  An individual engaged in the very same conduct is not required to register so long as they are not an agent of a foreign government within the meaning of the statute.  Thus, due process demands that Section 951 contain

a specific-intent requirement.  Insofar as it lacks such a requirement, it violates the Due Process Clause.

True, the Eleventh Circuit has twice held, in the context of vagueness challenges, that Section 951 "is a general intent crime, as there is no *mens rea* element on the face of the statute." *United States v. Duran*, 596 F.3d 1283, 1291 (11th Cir. 2010); *accord United States v. Campa*, 529 F.3d 980, 999 (11th Cir. 2008).[10]  But if the Eleventh Circuit is right and Section 951 does not require specific intent, then Section 951 is unconstitutional under *Lambert* and *Rehaif*.

In fact, the Eleventh Circuit misinterprets Section 951. According to the Eleventh Circuit, "[t]he silence of § 951 as to a specific intent element is dispositive of the fact that Congress intended it to be one of general intent."  *Duran*, 596 F.3d at 1291; *accord Campa*, 529 F.3d at 999. But that gets its exactly backwards.[11]  Courts "start from a longstanding presumption, traceable to the common law, that Congress intends to require a defendant to possess a culpable mental state regarding 'each of the statutory elements that criminalize otherwise innocent conduct.'" *Id.* (quoting *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 72 (1994)). Given this presumption, courts generally "interpret criminal statutes to require that a defendant possess a *mens rea,* or guilty mind, as to every element of an offense," and do "so even when the 'statute by its terms does not contain' any demand of that kind."  *Torres v. Lynch*, 578 U.S. 452, 467 (2016)) (quoting *X-Citement*, 513 U.S. at 70); *accord Elonis v. Unites States*, 575 U.S. 723, 734 (2015).  Indeed, the scienter presumption is so strong that the Supreme Court has not only "interpreted statutes to include a scienter requirement . . . where the statutory text is silent on the question" but also

---

[10]     Notably, both *Duran* and *Campa* involved clandestine, espionage-like activity.
[11]     Equally misguided is *United States v. Dumeisi*, 424 F.3d 566, 581 (7th Cir. 2005), which held, without analysis, that "[k]nowledge of the requirement to register is not an element of § 951."

"interpreted statutes to include a scienter requirement even where 'the most grammatical reading of the statute does not support one.'" *Rehaif*, 139 S. Ct. at 2195, 2197 (quoting *X-Citement*, 513 U.S. at 70). Thus, contrary to what the Eleventh Circuit held, a court must "apply the presumption in favor of scienter even when," as with § 951(a), "Congress does not specify any scienter in the statutory text." 139 S. Ct. at 2195; *see, e.g.*, *Torres*, 578 U.S. at 458; *Elonis*, 575 U.S. at 734; *Staples v. United States*, 511 U.S. 600, 605 (1994).

In short, to comport with due process, Section 951 must be interpreted as containing a specific-intent requirement, even though such a requirement does not appear on its face. But reading a specific-intent requirement into the statute does not save the indictment from dismissal because the indictment does not allege that Mr. Grimes knew that he was required to register as "an agent of a foreign government."

## III.   SECTION 951 IS UNCONSTITUTIONALLY VAGUE

Due process as guaranteed by the Fifth Amendment requires that criminal offenses be defined with "sufficient clarity to give the person of ordinary intelligence a reasonable opportunity to know what is prohibited and to provide explicit standards for those who apply them." *Thibodeau v. Portuondo*, 486 F.3d 61, 65 (2d Cir. 2007) (internal quotation marks omitted). Thus, "[i]t is a basic principle of due process that an enactment is void for vagueness if its prohibitions are not clearly defined." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972).

Section 951 is unconstitutionally vague both on its face and as applied to Mr. Grimes in particular. Neither the statute itself nor its implementing regulation gives a person of ordinary intelligence a reasonable opportunity to know what conduct would make a person "an agent of a foreign government" and thus what conduct is prohibited without having given prior notice to the Attorney General. As a result of that vagueness, Mr. Grimes did not receive notice that his alleged conduct was prohibited by law.

A.    **Section 951 Is Void On Its Face**

As the facts alleged in the indictment make clear, the government construes Section 951 as

applying to an expansive array of expressive conduct.   "When," as here, "speech is involved,

rigorous adherence to [Due Process] requirements is necessary to ensure that ambiguity does not

chill protected speech."  *F.C.C. v. Fox Television Stations, Inc.,* 567 U.S. 239, 253–54 (2012).

Consequently, "statutes that implicate . . . the First Amendment[] are subject to 'more stringent'

vagueness analysis" than other statutes.  *Gen. Media Commc'ns, Inc. v. Cohen*, 131 F.3d 273, 286

(2d Cir. 1997) (quoting *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 497-

99 (1982)).

Section 951(a) does not withstand such analysis.[12]  An individual who wishes to comport

with Section 951 must understand what conduct triggers its notification requirement.  Neither the

statute nor its implementing regulation provides sufficient guidance.

To know what conduct Section 951 prohibits prior to registering with the Attorney General,

one must at minimum know who qualifies as a "foreign . . . official" and what it means to "agree[]"

to operate "subject to" their "direction or control."   Neither the statute nor its regulations define

those critical terms, whose meanings are not self-evident.  DOJ itself has identified this problem,

but it has done nothing to fix it.

> While the statute does define the term "agent of a foreign government" as, subject
> to certain exceptions, 'an individual who agrees to operate within the United States
> subject to the direction or control of a foreign government or official,' the statute

---

[12]     Although several courts have rejected vagueness challenges to Section 951, they have done
so only in cases involving espionage and other inherently criminal acts such as bribery, and, when
considering facial challenges, they have been careful to distinguish such cases from those, such as
this, "that implicate conduct protected by the First Amendment."  *United States v. Lindauer*, 2004
WL 2813168, at *4 (S.D.N.Y. Dec. 6, 2004); *accord United States v. Ji Chaoqun*, 2020 WL
1689826, at *4 (N.D. Ill. Apr. 7, 2020); *see also United States v. Duran*, 596 F.3d 1283, 1291
(11th Cir. 2010); *United States v. Hung*, 629 F.2d 908, 920 (4th Cir. 1980).  *See infra* Section III,
at 13.

does not include a comprehensive description of what types of activities constitute acting as an agent of a foreign government. Although the Department is required to promulgate rules and regulations establishing the requirements for notifications made pursuant to the statute, the regulations do not describe the types of activities that would trigger a requirement to notify the Department.[13]

The failure to describe what constitutes acting "subject to the direction or control" of a foreign government leaves Section 951's statutory prohibition undefined.

Consider the following examples and ask whether the person at issue has acted "subject to the direction or control" of a foreign official:

- A Columbia University history professor who, at the request of Germany's education ministry, provides graduate students printed information regarding a German fellowship program.

- A Hofstra professor who, at the request of a Mexican university administrator, interviews American exchange-program applicants and then evaluates them based on criteria established by Mexico's education ministry.

- A U.S. human rights activist who attends a protest against Chinese human rights abuses outside the United Nations at the request of a Taiwanese official.

- A Nicaraguan refugee who, at the exhortation of an exiled parliamentarian, joins in call-and-response chants outside the Nicaraguan consulate.

- A U.S. N.G.O. researcher who helps prepare briefing materials and position papers for the government of Vanuatu in anticipation of the annual U.N. climate conference.

- An East Hampton builder who, asked by a friend to assist an irrigation project in Morocco, donates the necessary building materials identified as needed by a Moroccan development official.

- The mayor of Buffalo who, responding to a specific request from the mayor of Yeongcheon, Buffalo's sister city in Korea, sends a picture of Buffalo Lighthouse for use on Yeongcheon's website.

- A Brooklyn rabbi who, at the request of Israel's ambassador to the U.N., arranges for synagogue youth to participate in an official Holocaust remembrance service.

- A Staten Island priest who offers a prayer of peace for Ukraine after the Pope Francis, Vatican City's chief of state, called for such prayers to be offered.

- A Park Slope super who, at the request of a Brazilian consular officer who lives in the super's building, purchases a Brazilian flag and hangs it from the building for the duration of the World Cup tournament.

Are any of these people subject to Section 951's notification requirement?  Are all of them?  It is impossible to know.

Intuition suggests that none of the people described above are subject to Section 951's notification requirement, and diligent research has located no case charging anyone under Section 951 for having failed to notify the Attorney General prior to engaging in such conduct.  But if Section 951 covers Mr. Grimes' alleged conduct, as the government contends, then it would seem to reach all this hypothetical conduct as well.

The discrepancy between, on the one hand, intuition and history and, on the other hand, the extraordinary range of conduct covered by the government's construction of Section 951 exists because the statute fails to adequately distinguish between conduct that is subject to the notification requirement and conduct that is not.  The lack of clarity means that a person of ordinary intelligence cannot know whether certain conduct would require prior notice to the Attorney General or not.  It also means that the statute does not "provide explicit standards for those who" enforce it. *Thibodeau*, 486 F.3d at 65.

This situation results in exactly what the void-for-vagueness doctrine is designed to prevent.  On the one hand, Section 951 "chill[s] protected speech" by causing those who might otherwise engage in First Amendment activity to refrain from doing so out of fear that they might later be held criminally liable for having done so without first notifying the Attorney General. *F.C.C.,* 567 U.S. at 254.  On the other hand, the lack of explicit standards defining what conduct triggers the notification requirement gives prosecutors "unbridled discretion" (*Hous. Works, Inc. v. Safir*, 101 F. Supp. 2d 163, 168 (S.D.N.Y. 2000)) that "may authorize and even encourage

16

arbitrary and discriminatory enforcement." *City of Chi. v. Morales*, 527 U.S. 41, 56 (1999).  For these reasons, Section 951(a) is void on its face.

### B. Section 951 Is Void As Applied

Section 951 is also void as applied to Mr. Grimes in this case because the statute does not give a "person of ordinary intelligence a reasonable opportunity to know" that his alleged conduct "is prohibited" absent prior notice to the Attorney General. *Thibodeauo*, 486 F.3d at 65.  Although the Government alleges in conclusory fashion that Mr. Grimes "knowingly and intentionally" acted as an agent of a foreign government (Dkt. 5 ¶ 94), it does not allege that he ever "agree[d]" (Sec. 951(a)) to act as a foreign agent.  On the contrary, consistent with Mr. Grimes' status as a Colony "employ[ee]" who "report[ed] directly to" Mr. Barrack, the vast majority of communications Mr. Grimes is alleged to have had were communications with Mr. Barrack or Mr. Barrack's associate, Mr. Alshahhi.  (*Id.* ¶ 3; *cf. id.* ¶¶ 20, 24(d), 24(g), 24(h), 26, 27, 29, 30, 32, 34, 36–42, 44–50.)

Nothing in the statute's text or its enforcement history indicates that a person in Mr. Grimes' position was required to give notice to the Attorney General before engaging in the conduct that Mr. Grimes is alleged to have engaged in.  If a person of ordinary intelligence were to consult the U.S. Code, the Code of Federal Regulations, and the DOJ guidance addressed below, *see infra* Section III.C. at 18, they would most likely conclude that someone in Grimes' position was not required to register.  By its express terms, Section 951(d) makes the registration requirement applicable to only those who "agree[] to operate within the United States subject to the direction or control of a foreign government or official."  A person of ordinary intelligence is not likely to understand that as applying to a junior employee of an American firm who "reports directly to" an American supervisor (Dkt. 5 ¶ 2) and does not personally agree to act as an agent of a foreign government.  Given that Section 951(d) does not mention indirect agents while FARA

and other related statutes do (*see supra* Section I.D at 5), that is true even if the junior employee *knows* that their supervisor is "an agent of a foreign government," something the indictment in this case does not even allege.

### C.   Mr. Grimes Was Not Provided Fair Notice That His Alleged Conduct Was A Crime

Even if Mr. Grimes' alleged conduct violated Section 951, and even if Section 951 were not impermissibly vague, the charges against him would still have to be dismissed because "due process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope." *United States v. Lanier*, 520 U.S. 259, 266 (1997). As Justice Scalia explained: "It is simply not fair to prosecute someone for a crime that has not been defined until the judicial decision that sends him to jail." *Sorich v. United States*, 555 U.S. 1204, 1206 (2009) (Scalia, J., dissenting from denial of certiorari).

*Bouie v. City of Columbia*, 378 U.S. 347 (1964), illustrated these principles. In that case, the South Carolina Supreme Court had affirmed the conviction of sit-in demonstrators for trespass under a state statute that previously had been applied only to people who entered a premises despite having received notice not to enter. The law had never before been applied to individuals, such as the protesters, who remained on a premises after being asked to leave. *Id.* at 355. Nevertheless, the South Carolina Supreme Court interpreted the statute to apply in those circumstances as well, a decision it was entitled to make as the final arbiter of a state statute's construction. *Id.* at 361–62. But the U.S. Supreme Court reversed the convictions on due process grounds, holding that this new construction of the statue could apply only prospectively. Because it was not clear that the statute would apply in these circumstances until the South Carolina Supreme Court ruled, the

U.S. Supreme Court equated it to an unconstitutional *ex post facto* law that denied those charged with advance notice of what the statute required. *Id.* at 362.

These same principles bar prosecution of Mr. Grimes under Section 951. As previously noted (*see infra* at 16), diligent research has uncovered no case in which Section 951 has been applied to a person in Mr. Grimes' situation. Not one. Mr. Grimes would be the first person ever tried under the factual circumstances alleged here. The statutory text does not provide due notice of what activity triggers Section 951's notification requirement. As noted above, DOJ's own Inspector General has highlighted that Section 951 "does not include a comprehensive description of what types of activities constitute acting as an agent of a foreign government" and "the regulations do not describe the types of activities that would trigger a requirement to notify the Department." Horowitz QFR at 2.

NSD publishes numerous Advisory Opinions under FARA, which provide useful notice to the public of FARA's requirements, but there is *no* comparable guidance with respect to Section 951.

Worse yet, applying Section 951 to the circumstances alleged here runs directly counter to how the statute is understood by DOJ's National Security Division ("NSD"), the unit charged with implementing the statute. "It is NSD's opinion that a key difference between FARA and 18 U.S.C. § 951 is that FARA covers agents of foreign principals who engage in political activity on behalf of that principle, while 18 U.S.C. § 951 covers agents of foreign governments who engage in non-political activity, such as 'espionage-lite' or clandestine behavior." *Id.* Thus, according to NSD, "Section 951 ... is used to prosecute clandestine, espionage-like behavior, information gathering, and procurement of technology on behalf of foreign governments or officials." Hickey at 2, 6. In

other words, NSD believes that § 951 targets activity fundamentally different from the activity Mr. Grimes is alleged to have engaged in.

Inasmuch as Mr. Grimes is alleged to have "engage[d] in political activity" on behalf of the UAE (*cf.* Dkt. 5 ¶ 13), his alleged activity is covered, if at all, by FARA rather than § 951. But even DOJ's Advisory Opinions under FARA makes clear that the type of services that Mr. Grimes rendered to his employer, Colony, and to his direct supervisor, Mr. Barrack, did not make him the agent of the UAE, even if the UAE encouraged those activities.

Mr. Grimes is mostly alleged to have acted as a conduit in exchanging messages or information or setting up calls or meeting between his boss, Mr. Barrack, and others.  (*See* Dkt. 5 ¶¶ 24, 26–27, 29–30, 39.)  But in AO 12/6/17,[14] DOJ found that someone who had a contractual relationship with only American companies and whose interactions with foreign government "officials [are] limited to scheduling, coordinating, and facilitating communications" was not required to register under FARA because those interactions did not create an agency relationship.[15]

According to DOJ, even someone who agrees to work for a registered foreign agent does not themself become an agent by virtue of that contract.  In AO 4/6/18, DOJ advised an individual who hosted a television show in the U.S. for a FARA-registered company that the individual did not have to register under FARA because the individual was not an agent of that company despite the individual's contract with it. DOJ explained:

> The consideration most relevant to our determination that [the individual] does not have an obligation to register is, as you have pointed out, that [the individual] does

---

[14]    We cite Advisory Opinions as AO, followed by the date they are issued.  These opinions can be found on the DOJ website: https://www.justice.gov/nsd-fara/advisory-opinions.

[15]    FARA requires those who work for a registered agent in furtherance of the registerable activities to file a short form registration, but there is an exception there as well for persons who, like Mr. Grimes (if Mr. Barrack were a UAE agent), was "[a]n employee or agent of a registrant whose services in furtherance of the interests of the foreign principal are rendered in a clerical, secretarial, or in a related or similar capacity." 28 C.F.R. § 5.202(c).

> not have a contractual relationship with [foreign state-owned company] or other foreign principal. [The individual]'s contractual relationship is with [U.S. company], a FARA-registered U.S. entity.  Therefore, it cannot be said the [individual] is an "agent of a foreign principal" who is acting "at the order, request, or under the direction or control of a foreign principal."  Accordingly, we have determined that [individual] does not have an obligation to register under FARA because of his contract with [U.S. company].

AO 4/6/18.  Here, even the government acknowledges that Mr. Grimes was "employed" by Colony, not the UAE.  If DOJ has advised someone who has directly contracted with a registered foreign agent that they are not required to register under FARA, which has significantly broader definition of "agent" than Section 951 (*see* Section I.D., *supra* at 5), then Mr. Grimes could not possibly have been on notice that his employment by Colony required registration as an agent of the UAE.

Notably, DOJ advised the person seeking guidance in AO 4/6/18 that they were not themselves an agent of a foreign principal even though they knew they had contracted with a U.S. company that was operating as an agent of a foreign principal.  Here, by contrast, it is not even alleged here that Mr. Grimes knew Mr. Barrack (or Colony) was acting as an agent of the UAE, as the government claims. Having told the person seeking guidance in AO 4/6/18 that they were not required to register as an agent even under FARA's more expansive definition of "agent," DOJ cannot reasonably claim that Mr. Grimes had notice that his employment by Colony required him to register under Section 951's narrower definition.

Other DOJ guidance further undermines any suggestion that Mr. Grimes had constitutionally adequate notice.  Mr. Grimes was not on notice that helping to draft an op-ed and other materials would make him subject to Section 951's registration requirement.  DOJ Advisory Opinions under FARA suggest that such activities would not trigger the registration requirement.  For example, in AO 9/16/20, DOJ advised a U.S. journal that compiled information on U.S. decisionmakers and policy and then sold it to foreign embassies in the U.S. was advised by DOJ

that it was not required to register even though the foreign embassies could suggest topics that they wanted covered.  DOJ found there was no agency relationship so long as the U.S. journal maintained "editorial control."  Similarly, in AO 10/22/20, a U.S. journalist who published an interview with a foreign government official was advised that they did not need to register under FARA, even though the foreign official was "allow[ed] … to review a draft before submission in order to suggest clarifications or revisions," because "all final decisions" were up to the journalist. Likewise in AO 7/13/18, DOJ advised a company that soliciting and receiving comments on a draft publication from a foreign leader's advisor did not render it an agent of a foreign principal because the company "was not under any obligation to follow any suggestions made by the advisor, and there [was] no evidence of any contractual relationship between [the company] and any [foreign government] entity."

Here, although Mr. Grimes allegedly "solicited and received input" from UAE officials regarding an op-ed subsequently published by Mr. Barrack (*see* Dkt. 5 ¶¶ 43–50), the indictment does not allege that the UAE had "editorial control" over the op-ed or any other materials Mr. Grimes allegedly helped prepare and certainly does not allege that Mr. Grimes believed that Mr. Barrack had ceded final "editorial control" to any UAE official.  Given DOJ's Advisory Opinions under FARA, Mr. Grimes had no notice that helping Mr. Barrack prepare those materials made Mr. Grimes "an agent of a foreign government" within the meaning of Section 951.

Neither was Mr. Grimes on notice that his work helping Mr. Barrack prepare an investment strategy for the UAE would trigger Section 951(a)'s registration requirement.  Under AO 11/8/12, which advised a U.S. entity that it did not have to register under FARA despite receiving a financial grant from a foreign entity, the fact that Mr. Grimes possibly hoped that he, Mr. Barrack, or Colony

22

would benefit financially from fostering a better relationship with the UAE did make him an agent

of the UAE.  Indeed, in another guidance document, DOJ stated:

> In assessing whether a person is acting on behalf of a foreign principal, the Department may consider whether the person appears to be advancing his own interests or those of a U.S. person, on the one hand, or the interests of a foreign principal, on the other.  For example, a businessperson may be expected to have his own reasons for advocating for a particular policy change that will benefit him financially (*e.g.*, lobbying against tariffs that make it more expensive for him to import goods from China).…Likewise, the fact that a person is persuaded on a matter by a foreign principal and then advances that position is not, standing alone, sufficient to make him an agent.  A foreign government's explanation of its point of view, for example, may persuade a policymaker to adopt that position as his own; his subsequent actions in support of that position may be taken of his own accord, not as a function of any agency relationship.

DOJ Agency Guidance at 4.  That analysis applies here, where the "primary purpose" of the alleged

investment strategy was to "achieve outsized financial returns," something that was obviously in

the interest of Mr. Grimes' employer, "a global investment management firm."  (Dkt. 5 ¶¶ 2, 34.)

It would be extremely unfair to prosecute Mr. Grimes for failing to register under Section

951 when even DOJ officials seem to forget and often misunderstand it.  Although DOJ's National

Security Division was given responsibility for registrations under Section 951 in 2007, 72 Fed.

Reg. 10070 (Mar. 7, 2007), there is no mention of Section 951 on the NSD website. *See*

https://www.justice.gov/nsd. And although DOJ's regulations require an "agent" under Section

951 to submit the required notification to DOJ "addressed to the Attorney General, directed to the

attention of the National Security Division" (28 C.F.R. § 73.3(a)), when NSD addresses the

"Registration and Lobbying Provisions" within its purview in the *Justice Manual*, there is no

mention of Section 951's registration requirements. *Justice Manual* § 9-90.700 (Jan. 2020).

Perhaps that is because, as a DOJ OIG report found, DOJ personnel "frequently confused FARA

(22 U.S.C. § 611 *et seq*.) with 18 U.S.C. § 951." *Audit of the National Security Division's*

*Enforcement of the Foreign Agent's Registration Act* at 24 (Sept. 2016) [hereinafter "OIG Audit"].

Put simply, "officials at NSD, the FBI, and certain United States Attorney's Offices did not have a common understanding of the intent of FARA and of what constituted a prosecutable FARA case, particularly as it related to the relationship between FARA and 18 U.S.C. § 951." As Senator Grassley observed: "No organization can properly enforce the law when it is confused about what the law is." How then can someone like Mr. Grimes be expected to understand the statute better than the officials at DOJ who administer and enforce the statute?

In sum, neither the statute itself, the statute's implementing regulations, nor DOJ guidance documents placed Mr. Grimes on notice that his alleged activity was subject to Section 951. Even if the statute could be construed as requiring Mr. Grimes to have registered, it has never been construed that way before—not by any court and not even by DOJ. The Government's novel construction of the statute "may not be applied retroactively, an[y] more than a legislative enactment may be, to impose criminal penalties for conduct committed at a time when it was not fairly stated to be criminal." *Bouie*, 378 U.S. at 362.

## IV.   SECTION 951 IS UNENFORCEABLE BECAUSE ITS IMPLEMENTING REGULATIONS ARE VOID

Due Process and other constitutional concerns aside, Mr. Grimes cannot be prosecuted under Section 951(a) because all that it criminalizes is failure to comply with invalid regulatory requirements. Section 951(a) penalizes those who "act[] … as an agent of a foreign government without prior notification to the Attorney General *if"* such notification is *"required in subsection (b)*," which in turn declares that the Attorney General "shall promulgate rules and regulations establishing requirements for notification." § 951(a), (b) (emphasis added). In other words, no person has any duty to register under Section 951 unless DOJ's implementing regulations require them to register. The problem here is that no valid regulation directing who must register exists.

24

"It is a basic tenet that 'regulations, in order to be valid, must be consistent with the statute under which they are promulgated.'" *Decker v. Nw. Env't Def. Ctr.*, 568 U.S. 597, 609 (2013) (quoting *United States v. Larionoff*, 431 U.S. 864, 873 (1977)); *accord, e.g.*, *Pierre v. Planet Auto., Inc.,* 193 F. Supp. 3d 157, 175 (E.D.N.Y. 2016). "Regulations … assume the force of law only to the extent consistent with the statutory scheme they were designed to implement." *Ins. Co. of N. Am. v. Gee*, 702 F.2d 411, 414 (2d Cir. 1983). Because a "regulation cannot override a clearly stated statutory requirement," a "regulation that contravenes a statute is invalid." *United States v. Kahn*, 5 F.4th 167, 175 (2d Cir. 2021) (quoting *Norman v. United States*, 942 F.3d 1111, 1118 (Fed. Cir. 2019)); *accord, e.g.*, *Hawkins-El v. First Am. Funding, LLC*, 891 F. Supp. 2d 402, 408 (E.D.N.Y. 2012).

Here, the regulations issued pursuant to Section 951 are invalid because they are inconsistent with the statute. In particular, 28 C.F.R. § 73.1(a) defines "[t]he term agent" for purposes of Section 951 to "mean[] all individuals acting as representatives of, or on behalf of, a foreign government or official, who are subject to the direction or control of that foreign government or official[.]" That definition, however, is inconsistent with the statute, which states that "the term 'agent of a foreign government' means an individual who *agrees* to operate within the United States subject to the direction or control of a foreign government or official[.]" § 951(d) (emphasis added).

By omitting the "agree[ment]" element from the definition of who must provide notice under 18 U.S.C. § 951(a), 28 C.F.R. § 73.1(a) sweeps far more broadly than its authorizing statute, ensnaring not only those who agreed to be agents of foreign governments but also those, like Mr. Grimes, who did not. Without an agreement requirement, the regulation expands to reach *anyone*

who is functionally acting as an agent, even if they had not agreed to do so.  The difference is critical in terms of criminality.

A person who is employed by an American company and reports to an American boss would not necessarily know that either his employer or boss is an agent of a foreign government within the meaning of Section 951.  Under the statutory definition of "agent," the employee would not be required to register—and would not be subject to criminal penalties for failing to register— because he did not personally *agree* to be an agent of a foreign government, having agreed only to by the agent of his American employer.  But if the employees American company or his American boss were secretly controlled by a foreign government, the employee would arguably be required to register under the regulatory definition of "agent" if it turns out that he was unwittingly being controlled by a foreign agent.  In short, the regulation, by omitting the "agrees" element contained in the statute, would require the employee to register under circumstances not covered by the statute.

Regulations cannot broaden criminal statutes.  Because the regulation is not "consistent with the statute under which" it was "promulgated" (*Decker*, 568 U.S. at 609 (quotation marks omitted)), the regulation is "invalid." *Kahn*, 5 F.4th at 175.  Given that § 951(a) only criminalizes regulatory violations and its "implementing regulation" (*United States v. Ying Lin*, 2018 WL 3416524, at *11 (E.D.N.Y. July 11, 2018) is invalid, § 951(a) cannot be enforced and the indictment must be dismissed.

## V.      SECTION 951 VIOLATES THE FIRST AMENDMENT

As the facts alleged in the indictment make clear, Section 951 implicates the First Amendment. According to the indictment, Mr. Grimes was required to register because he was, supposedly, "tasked" by UAE officials with

> (a) influencing public opinion, the foreign policy positions of the [Trump] Campaign and the foreign policy positions of the United States government; (b) obtaining information about foreign policy positions and related decision-making within the Campaign and, at times, the United States government; (c) developing a backchannel line of communication with the Campaign and, at times, officials of the United States government; and (d) developing plans to increase the United Arab Emirates' political influence and to promote its foreign policy preferences.

(Dkt. 5 ¶ 13.)  The right to engage in at least some of these alleged activities—influencing public opinion and government policy—is precisely what the First Amendment guarantees when it declares that "Congress shall make no law … abridging the freedom of speech … or the right of the people … to petition the Government for a redress of grievances."  U.S. Const. amend. I.  It is, moreover, clear that individuals' willingness to exercise these "freedom[s] may … be chilled by reporting and disclosure requirements which are," as in the case of Section 951, "backed by civil and criminal penalties."  *N.Y. C.L. Union, Inc. v. Acito*, 459 F. Supp. 75, 87 (S.D.N.Y. 1978).

At least as the Government seeks to apply it here, Section 951 violates the First Amendment.  Section 951 is subject to strict scrutiny because it penalizes people for engaging in First Amendment activity; impermissibly discriminates between speakers; and acts as a prior restraint.  It is "rare … that a law survives strict scrutiny."  *Burson v. Freeman*, 504 U.S. 191, 211 (1992).  Section 951 does not survive strict scrutiny because the Government is unable to prove it is "narrowly tailored" to achieve a "compelling interest."  *Citizens United v. FEC*, 558 U.S. 310, 340 (2010) (internal quotation marks omitted).  Thus, the indictment must be dismissed.

## A.    Section 951 Unduly Burdens Political Speech

The government contends that Section notification requirement was triggered by Mr. Grimes' alleged efforts to influence public opinion and government policy.  In particular, the indictment alleges Mr. Grimes was required to provide notice under Section 951(a) because he:

- "drafted materials proposing a strategy for the United Arab Emirates to promote its foreign policy interests and increase its political influence in the United States" (Dkt. 5 ¶ 25);

- "solicited and received input" on an op-ed "relating to United States foreign policy" that was ultimately "published … in a national media outlet" (*id.* ¶ 43);

- "took steps … to influence United States foreign policy" (*id.* ¶ 79);

- "sent a text message … containing an Internet link to a news article" (*id.* ¶ 85); and

- otherwise communicated with Barrack and Alshahhi regarding their purported efforts to "promote [the United Arab Emirates'] foreign policy preferences" (*id.* ¶ 13; *see also id.* ¶¶ 20, 24(d), 24(g), 24(h), 26, 27, 29, 30, 32, 34, 36–42, 44–50).

None of these alleged acts is itself unlawful and each is protected by the First Amendment.

Thus, as applied here, Section 951 burdens political speech. Because "political speech must prevail against laws that would suppress it, whether by design or inadvertence," laws "that burden political speech are subject to strict scrutiny, which requires the Government to prove that the restriction furthers a compelling interest and is narrowly tailored to achieve that interest." *Citizens United*, 558 U.S. at 340 (internal quotation marks omitted).

The Government cannot carry that burden because Section 951, at least as applied to the facts alleged in this case, is not narrowly tailored to achieve a compelling government interest. To prove the existence of a compelling government interest, the government "must specifically identify an actual problem in need of solving." *Brown v. Entm't Merchants Ass'n,* 564 U.S. 786, 799 (2011) (internal quotations omitted). To show that a restriction is narrowly tailored, the Government must prove "that there are no less restrictive alternatives that would be at least as effective in achieving" the government's compelling interest. *John Doe, Inc. v. Mukasey*, 549 F.3d 861, 878 (2d Cir. 2008), as modified (Mar. 26, 2009); *see also United States v. Playboy Ent. Grp., Inc.*, 529 U.S. 803, 813 (2000). Here, the Government can establish neither of these things.

Section 951 "has its roots in the Espionage Act of 1917." *Rafiekian*, 991 F.3d at 538. Congress never found—either when first enacting the statute or when subsequently amending it— that First Amendment activity by agents of foreign governments is "an actual problem in need of

solving." *Brown*, 564 U.S. at 799.  Nor did Congress prohibit the speech itself, after a person has registered.  Rather, as one would expect of a provision that was adopted as part of the Espionage Act, "Section 951 is designed to punish and deter criminal, espionage-like behavior," such as, for example, "acting as a procurement agent for foreign governments in order to evade U.S. export controls or sanctions"  Hickey at 2, 6.  Deterring and punishing espionage is a compelling government interest, but Section 951 is not narrowly tailored to achieve that interest, which can be achieved without punishing First Amendment activity.[16]

### B.    Section 951 Is An Unconstitutional Prior Restraint

Section 951(a) criminalizes engaging in certain activity "without prior notification to the Attorney General."  Here, the government contends that Section 951(a)'s notification requirement was triggered by Mr. Grimes' alleged efforts to influence public opinion and government policy.  *See infra* Section V at 25.  According to the indictment, Mr. Grimes could not lawfully engage in any of the alleged acts without having given "prior notification to the Attorney General."  (Dkt. 5 ¶ 94 (citing Sec. 951(a)).  In other words, under the government's construction of the statute, § 951(a) bars individuals from engaging in First Amendment activity *before* fulfilling a congressionally imposed registration requirement.

---

[16]    Had Congress concluded that First Amendment activity by agents of foreign governments were "an actual problem in need of solving" (*Brown*, 564 U.S. at 799), Section 951 is not narrowly tailored to address any such problem as it allows such activity to continue unabated so long as the agents engaged in it have registered with the Attorney General.  While one might imagine Congress conceivably concluding that First Amendment activity by undisclosed foreign agents is problematic because members of the public would not know that the information they are receiving comes from the agent of a foreign government, such a finding still would not support Section 951 because the public is not informed of who registers under it.  *Cf.* 22 U.S.C. § 614(b) (prohibiting agents of foreign principals from distributing informational materials on behalf of their foreign principal without "placing in such material a conspicuous statement  that the materials are distributed by the agent on behalf of the foreign principal").

That is a prior restraint.  As the Second Circuit teaches, "registration requirements insofar as they are a prerequisite for constitutionally protected speech are a quintessential form of prior restraint." *CFTC v. Vartuli*, 228 F.3d 94, 109 (2d Cir. 2000) (citing *Shuttlesworth v. City of Birmingham*, 394 U.S. 147, 150–51 (1969)).

"[P]rior restraints on speech and publication are the most serious and the least tolerable infringement on First Amendment rights." *Neb. Press Ass'n v. Stuart*, 427 U.S. 539, 559 (1976). Prior restraints "are not unconstitutional *per se*" but "[a]ny system of prior restraint . . . bear[s] a heavy presumption against its constitutional validity." *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 225 (1990) (internal quotations omitted).  The presumption against prior restraints "is a bedrock principle of First Amendment jurisprudence." *Wilson v. CIA*, 586 F.3d 171, 183 (2d Cir. 2009).  Thus, "courts subject prior restraints on speech or publication to exacting review." *United States v. Quattrone*, 402 F.3d 304, 310 (2d Cir. 2005).  To overcome the strong presumption against prior restraints, the government "carries a heavy burden of showing justification for the imposition of such a restraint." *Org. for a Better Austin v. Keefe*, 402 U.S. 415, 419 (1971).

Here, the government cannot sustain its burden.  Even if there were a compelling governmental interest in receiving timely notice of who has engaged in First Amendment activity "subject to the direction or control of a foreign government" (Sec. 951(d)), there is no reason why such notice must be received before the First Amendment activity occurs.  For example, the Lobbyist Disclosure Act requires paid lobbyists to register but it avoids the prior restraint problem because it only requires them to register "45 days *after* . . . first mak[ing] a lobbying contact" or being employed to do so.  2 U.S.C. § 1603(a)(1) (emphasis added).  Thus, even if there were a sufficiently strong governmental interest in registering individuals engaged in First Amendment activity on behalf of others, prior registration is not necessary to achieve that end.  Accordingly,

30

the Government cannot carry its "heavy burden" of overcoming the strong presumption that § 951(a) is an unconstitutional prior restraint.  *Keefe*, 402 U.S. at 419.

### C.    Section 951 Constitutes Speaker-Based Discrimination

Additionally, Section 951 unconstitutionally discriminates against certain speakers.  As construed by the Government, Section 951 distinguishes those who advocate on behalf of themselves or at the direction and control of a domestic principal from those who advocate on behalf a position at the direction and control of a foreign government.  Under the Government's construction of Section 951, it is legal for some people to engage in political advocacy without prior notification to the Attorney General but illegal for others to do the same, even if they are advocating the identical position through identical means.

Such discrimination is anathema to the First Amendment, which "[p]rohibit[s] … restrictions distinguishing among different speakers, allowing speech by some but not others." *Citizens United*, 558 U.S. at 340; *accord, e.g.*, *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 828 (1995); *First Nat'l Bank of Bos. v. Bellotti*, 435 U.S. 765, 784–85 (1978).  A "speaker-based restriction on protected speech is subject to strict scrutiny and will be tolerated only upon a showing that it is narrowly tailored to a compelling government interest." *Time Warner Cable Inc. v. F.C.C.*, 729 F.3d 137, 155 (2d Cir. 2013).  Once again, Section 951 does not survive such scrutiny.

Imagine that the government of a foreign country would like the United States to adopt a certain policy. Under the government's construction of Section 951, the country's ambassador to the U.S. is free to write an op-ed advocating that policy without prior notice to the Attorney General but an individual who writes the identical op-ed at the ambassador's direction may not, even though that same individual could write the op-ed without prior notice to the Attorney General if they did so spontaneously, at the direction of a domestic rather than foreign government

official, or at the direction of a foreign corporation or foreign political party rather than a foreign

government official. Nothing in the provision's legislative history suggests that Congress

identified any reason for, much less "a compelling government interest" in, such discrimination

based on who is speaking or the capacity in which they are speaking. *Time Warner Cable*, 729

F.3d at 155. That is dispositive. Absent a compelling government interest in distinguishing among

speakers, Section 951 cannot stand.

## VI.   SECTION 951'S REGISTRATION REQUIREMENT VIOLATES THE SELF-INCRIMINATION CLAUSE OF THE FIFTH AMENDMENT

Section 951's registration requirement violates the Self-Incrimination Clause of the Fifth

Amendment. DOJ, which oversees compliance with the registration requirement of Section 951,

distinguishes it from other registration statutes—such as FARA, which is "designed to encourage

transparency" into what foreign principals are doing, but "not to discourage that conduct itself"—

because Section 951 serves "a different purpose: Section 951 . . . is used to prosecute clandestine,

espionage-like behavior, information gathering, and procurement of technology on behalf of

foreign governments or officials." Hickey at 2, 6. Because Section 951's registration scheme

compels a defendant to engage in speech that DOJ will then use to investigate and prosecute the

registrant, Section 951's registration scheme violates the Self-Incrimination Clause of the Fifth

Amendment. *See, e.g.*, *United States v. Schofer*, 310 F. Supp 1292, 1297 (E.D.N.Y. 1970)

(Dooling, J.) (granting motion to dismiss firearm registration charge).

### A.   Registration Requirements That Pose A Risk Of Prosecution To The Registrant Violate The Fifth Amendment's Self-Incrimination Clause

The Fifth Amendment protects a person from being "compelled in any criminal case to be

a witness against himself." U.S. Const. amend. V. This protection extends to any proceeding in

which the answers could incriminate the speaker in a future criminal proceeding or subject him to

additional criminal liability. *Allen v. Illinois*, 478 U.S. 364, 368 (1986). To invoke the privilege,

"it is necessary to show that the compelled disclosures will themselves confront the claimant with 'substantial hazards of self-incrimination.'" *California v. Byers*, 402 U.S. 424, 430 (1971).  When asked whether a statute compels potentially incriminating disclosure, the court must carefully "balance[] the public need on the one hand, and the individual claim to constitutional protections on the other; neither interest can be treated lightly." *Id.* at 427.  And while the privilege against self-incrimination "may not be invoked to resist compliance with a regulatory regime constructed to effect the state's public purposes unrelated to the enforcement of its criminal laws" (*Balt. Dep't of Soc. Servs. v. Bouknight*, 493 U.S. 549, 556 (1990)), it does prevent the government from requiring self-incriminatory statements be made so that law enforcement can target the speaker for prosecution or to secure their convictions.

The Supreme Court's ruling in *Albertson v. Subversive Activities Control Board*, 382 U.S. 70 (1965), is instructive.  *Albertson* examined the Subversive Activities Control Act of 1950, which required members of Communist Party to register.  The Court vacated an order requiring registration under the act because the registration form required the registrant to admit that they were a member of the Communist Party and such an admission could be used to prosecute the registrant under various laws that criminalized Communist Party membership, at least under certain circumstances.  382 U.S. at 77–79.  The Supreme Court had narrowed those statutes such that mere membership was not sufficient to establish criminal liability.  *See, e.g.*, *Scales v. United States*, 367 U.S. 203, 220–21 (1961).  Even so, the Court found the registration requirement "inconsistent" with the guarantee against compulsory self-incrimination because registration was "directed at a highly selective group inherently suspect of criminal activities," rather than the public at large.  *Albertson*, 382 U.S. at 79.  As the Court noted, it had found in a series of earlier cases that being asked questions about "mere association with the Communist Party presents

33

sufficient threat of prosecution to support a claim of privilege." *Id.* at 78. At the very least, the registration requirement would infringe upon the Fifth Amendment because it "might be used as evidence in or at least supply investigatory leads to a criminal prosecution." *Id.* at 79.

The Supreme Court reiterated its holding in *Albertson* in a series of cases invalidating other registration requirements. In *Marchetti v. United States*, 390 U.S. 39 (1968), the Supreme Court found that a statute requiring gamblers to register and pay an occupational tax on gamblers violated the Fifth Amendment. *Id.* at 60–61. Although guilt would not necessarily follow from registration,

> Petitioner was confronted by a comprehensive system of federal and state prohibitions against wagering activities; he was required, on pain of criminal prosecution, to provide information which he might reasonably suppose would be available to prosecuting authorities, and which would surely prove a significant 'link in a chain' of evidence tending to establish his guilt.

*Id.* at 48. The Supreme Court found it particularly troubling that this information was shared with law enforcement. *Id.* at 49. Additionally, *Marchetti* made clear that registration could provide a basis for prosecuting a registrant for future conduct that had yet to occur: "[p]rospective registrants can reasonably expect that registration and payment of the occupational tax will significantly enhance the likelihood of their prosecution for future acts, and that it will readily provide evidence which will facilitate their convictions." *Id.* at 54.

Similarly, in *Haynes v. United States*, 390 U.S. 85 (1968), the Supreme Court found that a registration system for certain firearms "used primarily by the gangster-type element" violated the privilege against self-incrimination. *Id.* at 87 n.4 (citation omitted). Although "registration [wa]s not invariably indicative" of criminal liability, it would be "uncommon" for possession a weapon subject to the requirement not to be a crime. *Id.* at 96. In striking down the registration requirement, the Supreme Court highlighted that the requirement was enacted to "aid in prosecution." *Id.* at 94.

The same is true of *Leary v. United States*, 395 U.S. 6 (1969).  In *Leary*, the Court reversed a conviction under a statute requiring persons in the marijuana business to register and pay an occupational tax because the compulsory registration system violated the Fifth Amendment Self-Incrimination Clause.  *Id.* at 28.  Although there were certain circumstances under which a person required to register could lawfully possess or sell marijuana, a host of statutes criminalized anything having to do with marijuana in most instances.  *Id.* at 17.  By statute, information regarding those who registered was provided to law enforcement officials.  *Id.* at 16.  Because the registration would provide a "link in the chain" of evidence against the registrant, the Supreme Court held that registration could not be required under the Fifth Amendment.  *Id.* at 16.

### B.      Section 951 Violates The Self-Incrimination Clause

Section 951 suffers from the same constitutional defect that prohibited the enforcement of the registration schemes in *Albertson*, *Marchetti*, *Haynes*, and *Leary*, but to an even greater degree.  The registration requirement is, by DOJ's own admission, "designed to punish and deter criminal, espionage-like behavior."  Hickey at 6.  By its express terms, the statute excludes from the registration requirement anyone engaged in a "legal commercial transaction." 18 U.S.C. § 951(d)(4).  Moreover, unlike the registration requirements at issue in *Marchetti*, *Haynes*, and *Leary*, which were at least nominally part of larger regulatory schemes, Section 951 is embedded in Title 18, alongside other criminal offenses.  And the information that one must supply when giving notice under Section 951(a) is not merely shared with law enforcement officials but must be filed directly with the "Attorney General," the federal government's chief law enforcement officer.  In short, unlike the registration schemes at issue in *Albertson*, *Marchetti*, *Haynes*, and *Leary*, for which there was at least a veneer of regulatory justification, Section 951's overt purpose is "to prosecute" individuals.  Hickey at 2.

In leading up to the 1984 amendments, which transferred the notification requirement from the State Department to DOJ, Senator Denton explained that Section 951's "usefulness" was in "espionage prosecutions" and the purpose of the proposed legislation was explicitly "to impede espionage." Judiciary Hr'g at 4, 40. Not surprisingly then, DOJ reports: "[t]he typical conduct to which Section 951 applies consists of espionage-like behavior, information gathering, and procurement of technology, on behalf of foreign governments or officials." OIG Audit at 30. The unconstitutional purpose of registration is plain.

As in *Marchetti*, registration under Section 951 will not only "significantly enhance the likelihood" that registrants will face "prosecution for future acts" but also "readily provide evidence which will facilitate their convictions." 390 U.S. at 54; *see United States v. Gallo*, 859 F.2d 1078, 1082 (2d Cir. 1998) (finding that *Marchetti* rejected an "inflexible chronological test" to the Self-Incrimination Clause, which protected against having to make statements that are "potentially incriminating both as to past and future crimes arising out of the activity being investigated").

Section 951's compulsory notification requirement violates the Constitution's protection against self-incrimination because an individual required to provide notice to the Attorney General under the statute is "confronted by substantial and 'real,' and not merely trifling or imaginary, hazards of incrimination." *Marchetti*, 390 U.S. at 53. Enacted as part of the Espionage Act, Section 951's notification requirement is, by design, "directed almost exclusively to individuals inherently suspect of criminal activities." *Grosso v. United States*, 390 U.S. 62, 69 (1968). Like the unconstitutional registration scheme in *Marchetti*, the notification that an individual must provide under Section 951(a) "would surely prove a significant 'link in a chain' of evidence tending to establish [the individual's] guilt" in an espionage prosecution. 390 U.S. at 48.

36

For example, registering as "an agent of a foreign government" could help prove a violation of 18 U.S.C. § 794(a), which prohibits gathering or delivering certain information "with intent or reason to believe that it is to be used . . . to the advantage of a foreign nation." It could also help prove a violation of 18 U.S.C. § 798, which criminalizes the disclosure of classified information "for the benefit of any foreign government." Obviously, it would be far easier for the government to prosecute someone for intentionally aiding a foreign government through clandestine activity if that person had already formally self-identified to the Attorney General as an agent of that foreign government. For these reasons, Section 951 violates the Self-Incrimination Clause.

## VII.   CHARGING DEFECTS REQUIRE DISMISSAL

### A.   Count 1 Should Be Dismissed As Duplicitous

"A duplicitous indictment is '[a]n indictment containing two or more offenses in a single count.'" *United States v. McCourty*, 562 F.3d 458, 462 n.2 (2d Cir. 2009) (quoting *Black's Law Dictionary* 788 (8th ed. 2004)). Duplicity, *i.e.*, "joining two or more offenses in the same count," is "a defect in the indictment." Fed. R. Crim. P. 12(b)(3)(B)(i). The policies behind the prohibition on duplicitous indictments

> include avoiding the uncertainty of whether a general verdict of guilty conceals a finding of guilty as to one crime and a finding of not guilty as to another, avoiding the risk that the jurors may not have been unanimous as to any one of the crimes charged, assuring the defendant adequate notice, providing the basis for appropriate sentencing, and protecting against double jeopardy in a subsequent prosecution.

*United States v. Magiotta*, 646 F.2d 729, 733 (2d Cir. 1981).

Count 1 is duplicitous. It alleges that Mr. Grimes violated not only Section 951 but also 18 U.S.C. § 2, which makes it a crime to aid or abet a crime. (Dkt. 5 ¶ 94.) A person cannot aid or abet himself, so the charge under Section 2 must be that Mr. Grimes aided or abetted Mr. Barrack, Mr. Alshahhi, or both, in acting as purported agents of a foreign government without registering. That means that Mr. Grimes could be found guilty on Count 1 if (a) he acted as an

37

agent without registering, or (b) if he aided and abetted Mr. Barrack in doing so, or (c) if he aided and abetted Mr. Alshahhi in doing so.  Likewise, Mr. Alshahhi and Mr. Barrack would each face three similar charges within Count 1.  Duplicitous counts cannot stand, so Count 1 should be dismissed.

### B.     Count 1's Aiding-And-Abetting Theory And The Conspiracy Charged In Count 2 Fail To Allege Required Specific Intent And Should Be Dismissed

Count 1's aiding-and-abetting theory and the conspiracy charged in Count 2 are defective because they fail to allege that Mr. Grimes had the required specific intent to aid and abet or conspire with anyone to violate Section 951.  Aiding and abetting is a "specific intent crime." *United States v. Khalupsky*, 5 F.4th 279, 297 (2d Cir. 2021) (citing *Rosemond v. United States*, 572 U.S. 65, 77 (2004)).  Thus, "'[u]nder 18 U.S.C. § 2, a defendant may be convicted of aiding and abetting a given crime" only "where the government proves that the underlying crime was committed by a person other than the defendant, that the defendant knew of the crime, and that the defendant acted with the intent to contribute to the success of the underlying crime.'" *United States v. Willis*, 14 F.4th 170, 183 (2d Cir. 2021) (quoting *United States v. Hamilton,* 334 F.3d 170, 180 (2d Cir. 2003)).  In other words, Section 2 requires "the specific intent of aiding the commission of that underlying crime." *United States v. McCoy*, 995 F.3d 32, 58 (2d Cir. 2021). This requires "full knowledge of the circumstances constituting the charged offense." *Rosemond*, 572 U.S. at 77.  "Proof that the defendant knew that *some* crime would be committed is not enough," rather the government must "prove, beyond a reasonable doubt, that the defendant knew the specific nature of the . . . underlying crime." *United States v. Cruz*, 363 F.3d 187, 198 (2d Cir. 2004) (quoting *United States v. Friedman,* 300 F.3d 111, 124 (2d Cir. 2002)).

Section 951 does not prohibit acting as an agent of a foreign government, it only prohibits doing so without first registering.  Thus, to be guilty of aiding and abetting a violation of

Section 951, one must assist someone in acting as an agent of a foreign government with the knowledge that the person being aided is an agent required to register but has not. Otherwise, the statute would easily become a trap for the unwary, particularly as there is no public database to identify anyone who has registered as an agent under Section 951. For example, a person who calls a government office asking to speak with an official on behalf of a foreign government could make their assistant who sets up the call, transfers the call once connected, or takes notes during the call guilty of aiding and abetting, even if the assistant had no idea that their boss had not registered under Section 951. Here, Count 1's aiding-and-abetting theory of liability is defective because the indictment fails to allege that Mr. Grimes knew that either Mr. Barrack or Mr. Alshahhi were foreign agents of the UAE and that they had failed to register as required by the law.

Likewise, conspiracy requires that a defendant join an agreement with the "specific intent that the underlying crime *be committed*" by some member of the conspiracy. *Ocasio v. United States*, 578 U.S. 282, 288 (2016) (quoting 2 K. O'Malley, J. Grenig, & W. Lee, *Federal Jury Practice and Instructions: Criminal* § 31:03 at 225 (6th ed. 2008)); *accord United States v. Zemlyansky*, 908 F.3d 1, 10 (2d Cir. 2018). Consequently, the conspiracy count is flawed as well because there is no allegation that Mr. Grimes conspired to violate Section 951.

In *United States v. Butenko*, 384 F.2d 554 (3d Cir. 1967), *vacated and remanded on other grounds sub nom*, *Alderman v. United States*, 394 U.S. 165 (1968), the Third Circuit considered the intent requirement under Section 951. The Third Circuit agreed that "an essential element in the proof of the conspiracy here obtaining must be that Ivanov and the other alleged co-conspirators had knowledge of the fact that Butenko had not registered as an agent of a foreign government, either directly or indirectly by a compelling inference," explaining that "knowledge of the fact, on the part of Ivanov, that Butenko had not registered, was a basic matter of proof."

*Id.* at 564–65.  That makes sense because the object of the alleged conspiracy cannot simply be for someone to act as an agent of a foreign government, conduct which is not illegal, but for someone to act as an agent of a foreign government without registering.

Requiring knowledge that a purported co-conspirator is acting as an agent of a foreign government without registering is a vital safeguard against uncontained criminal liability. Unlike the foreign agent who would personally know whether he or she had registered, a mere aider or conspirator would have no way of knowing whether the foreign agent had registered.  Without a requirement of knowledge that the foreign agent is unregistered, a purported aider or conspirator could be convicted even if they had been misled into believing the foreign agent was registered and they only aided an innocent activity, such as gathering food for famine victim or simply putting a peace sign in their window.

### C.    Conspiracy Prosecutions Under Section 951 Are Not Authorized

A violation of Section 951 necessarily requires joint activity.  There must be both a defendant who "agrees to operate within the United States subject to the direction or control of a foreign government or official" and a foreign government or official who "direct[s] or control[s]" the defendant's actions.  18 U.S.C. § 951(a), (d).  Because "§ 951's definition of 'agent' envisions a mutual agreement to operate subject to foreign direction or control," the requisite agreement cannot be one-sided, and "a person does not become an 'agent' for purposes of Section 951 simply by acting in accordance with foreign interests or by privately pledging allegiance." *Rafiekian*, 991 F.3d at 539, 541.  The agreement is essential.

Where, as in the case of Section 951, a statute only punishes jointly undertaken activity, there is a statutory construction presumption—known as "Wharton's Rule"—that no conspiracy prosecution is authorized.  *Iannelli v. United States*, 420 U.S. 770, 785–86 (1975).  "Wharton's Rule states that '[a]n agreement by two persons to commit a particular crime cannot be prosecuted

as a conspiracy when the crime is of such a nature as to necessarily require the participation of two persons for its commission,' such as dueling." *United States v. Hoskins*, 902 F.3d 69, 79 (2d Cir. 2018) (quoting 1 R. Anderson, *Wharton's Criminal Law and Procedure* § 89 at 191 (1957)).  In other words, where a crime already involves jointly undertaken activity, a conspiracy requirement is embedded within the statute itself such that Congress would not have intended for the general conspiracy statute to apply in addition.  *Iannelli*, 420 U.S. at 785–86 ("The substantive offense therefore presents some of the same threats that the law of conspiracy normally is thought to guard against, and it cannot automatically be assumed that the Legislature intended the conspiracy and the substantive offense to remain as discrete crimes upon consummation of the latter").  In making that assessment, the Court "focuses on the statutory elements of the offense," rather than "the proof offered to establish the crimes."  *Id.* at 785 n.17.

Applying Wharton's Rule is particularly warranted here because the focus of the statute is on the failure to register.  Section 951 does not otherwise prohibit anything that a foreign agent may do.  The requirement to register is personal—only the foreign agent can register himself—so nobody can aid someone in not doing it.  Thus, additional conspirators cannot aid the failure to register.  There is no reason to supplement Section 951 with a separate conspiracy charge.[17]

---

[17]    Additionally, double jeopardy principles would preclude a conviction on both such a conspiracy and a Section 951 charge.  "Lesser included offenses and their greater offenses are considered a single offense and may not be punished separately."  *United States v. Valerio*, 765 F. App'x 562, 568 (2d Cir. 2019) (citing *Rutledge v. United States*, 517 U.S. 292, 297 (1996)).  Section 371 conspiracy would merely be a less-included offense of Section 951 because the conspiracy charge requires an agreement and an overt act, although it does not require the substantive crime to be committed.  18 U.S.C. § 371.  All of that is required for a substantive conviction as well.  There must be the agreement between agent and principal followed by the agent who actually "acts in the United States as a foreign agent." 18 U.S.C. § 951(a).  Accordingly, double jeopardy would require the dismissal of the lesser charge. *Rutledge*, 517 U.S. at 301 (explaining dismissal of the lesser conviction is the "only remedy").

D.     **The Indictment Indicates No Basis For Venue To Charge Mr. Grimes In The Eastern District Of New York And Must Therefore Be Dismissed**

Although the indictment uses stock language claiming Counts 1 and 2 were committed "withing the Eastern District of New York and elsewhere" (Dkt. 5 ¶¶ 94, 96), it pleads no facts plausibly suggesting that venue for either charge is in this district.  Count 1, for example, is a charge based on Mr. Grimes' alleged failure to register, usually something charged where the omitted filing should have been made.  *Johnston v. United States*, 351 U.S. 215, 220 (1956) ("the general rule that where the crime charged is a failure to do a legally required act, the place fixed for its performance fixes the situs of the crime"). But Section 951 registrations with the Attorney General cannot be made in this district.  28 C.F.R. § 73.3.  And if the Government were to argue venue is established by Mr. Grimes' alleged actions as a purported agent of the UAE, that argument would fail because the indictment does not allege that Mr. Grimes committed *any* such act in this district.

When asked for details in a discovery letter about the basis for bringing this charge in the Eastern District, the government referred to its conspiracy allegations in Count 2, but those allegations do not describe any overt act in this district and a such an act would not automatically confer venue in any event.  *United States v. Kirk Tang Yuk*, 885 F.3d 57, 69 (2d Cir. 2018) ("[T]he venue analysis does not end as to all defendants charged with a conspiracy when we find a single overt act performed in the district of prosecution. . . . [I]t must have been 'reasonably foreseeable' to each defendant charged with the conspiracy that a qualifying overt act would occur in the district where the prosecution is brought.").

Even if there were venue for the conspiracy charged in Count 2 based on an overt act occurring in this district, that would not provide venue for the substantive failure to file charge in Count 1.  "The criminal law does not recognize the concept of supplemental venue." *United States*

*v. Salinas*, 373 F.3d 161, 163 (1st Cir. 2004).  If successful, the government's attempt to fuse the two charges would mean that the failure to file charge could be brought in any of the ninety-four judicial districts of the United States if it turned out that any of the alleged co-conspirators happened to be there when a communication—whether by phone, email, or text—was made or received.  But because "questions of venue are more than matters of mere procedure" and instead "'raise deep issues of public policy,'" venue provisions "should not be so freely construed" so as to essentially give government free choice of tribunal.  *Travis v. United States*, 364 U.S. 631, 634 (1961) (citing *United States v. Johnson*, 323 U.S. 273, 275 (1944)).  Therefore, Counts 1 and 2 should be dismissed for lack of venue.

## CONCLUSION

This unprecedented indictment is not justified by the statute or the Constitution and should be dismissed.

Dated: January 31, 2022                       Respectfully submitted,

/s/ *Abbe David Lowell*
Abbe David Lowell                             Sofia Arguello
Christopher D. Man                            Johanna Hudgens
Andrew E. Tauber                              WINSTON & STRAWN LLP
WINSTON & STRAWN LLP                          200 Park Avenue
1901 L Street, NW                             New York, NY 10166
Washington, DC 20036                          SArguello@winston.com
ADLowell@winston.com                          212-294-6700 (ph)
202-282-5000 (ph)                             212-294-4700 (fax)
202-282-5100 (fax)

*Counsel for Defendant Matthew Grimes*

**CERTIFICATE OF SERVICE**

I certify that on January 31, 2022, a copy of the foregoing was filed with the Court's electronic case filing system, thereby effecting service on counsel for all parties.

/s/ Abbe David Lowell
Abbe David Lowell