

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

SPN:RCH/HDM/CRH
F. #2018R01309

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

February 7, 2022

By ECF

The Honorable Brian M. Cogan
United States District Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:   United States v. Rashid Sultan Rashid Al Malik Alshahhi, et al.
              Criminal Docket No. 21-371 (BMC)

Dear Judge Cogan:

        The government respectfully writes in opposition to the motion of defendant Thomas Barrack ("Barrack") to unseal excerpt summaries of third-party witness statements and handwritten notes made by law enforcement officers that Barrack has attached as exhibits to his motion to dismiss the indictment in this matter (the "Indictment"). See Dkt. No. 68. The defendant's motion to unseal is meritless because (1) the materials at issue are not judicial documents entitled to a presumption of public access; and (2) their publication would jeopardize important law enforcement and privacy interests. Barrack filed the specified materials in connection with pretextual arguments in his motion to dismiss, and he all but acknowledges that he seeks their unsealing in a bid to improperly influence public opinion. Accordingly, and as discussed further below, the Court should deny Barrack's motion to unseal in its entirety.

      I.   Relevant Background

        On July 27, 2021, this Court, upon agreement of the parties, entered a protective order (the "Protective Order") pursuant to Federal Rule of Criminal Procedure 16(d) that provided, in relevant part, "[a]bsent prior agreement of the government or permission of the Court," materials produced by the government to Barrack pursuant to Federal Rule of Criminal Procedure 16, 18 U.S.C. § 3500, Brady v. Maryland, 373 U.S. 83 (1963), or Giglio v. United States, 405 U.S. 150 (1972) "shall not be included in any public filing with the Court, and instead shall be submitted under seal." Dkt. No. 27 at 3. On or about October 13, 2021, upon

substitution of counsel for Barrack, current counsel signed an acknowledgment form affirming their understanding of the terms of the Protective Order.

On January 31, 2022, Barrack moved to dismiss the Indictment, attaching under seal three documents produced by the government pursuant to the Protective Order that contain summaries of statements made by third-party witnesses and handwritten notes memorializing Barrack's statements to the FBI on June 20, 2019 (collectively, the "Sealed Materials"). Barrack now seeks permission to unseal the Sealed Materials and any reference to the content of the Sealed Materials in his memorandum of law in support of his motion to dismiss.

II. Applicable Law

"The public has a qualified right of access to judicial proceedings and documents, under both the common law and the First Amendment." United States v. Sattar, 471 F. Supp. 2d 380 384 (S.D.N.Y. 2006).

"[J]udicial documents [are] subject to the common law presumption of public access." United States v. Amodeo, 44 F.3d 141, 146 (2d Cir. 1995) ("Amodeo I"). In determining whether there is a common-law right of access to a particular document, a court must: (i) determine whether the documents in question are judicial documents; (ii) assess the weight of the common law presumption of access to the materials; and (iii) balance competing considerations against the presumption of access. See Lugosch v. Pyramid Co. of Onondaga, 435 F.3d 110, 119-20 (2d Cir. 2006)

With respect to the first determination, the "mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access." Amodeo I, 44 F.3d at 145. "In order to be designated a judicial document, 'the item filed must be relevant to the performance of the judicial function and useful in the judicial process.'" Lugosch, 435 F.3d at 119 (citing Amodeo I, 44 F.3d at 145). "Documents that play no role in the performance of Article III functions, such as those passed between the parties in discovery, lie entirely beyond the presumption [of public access's] reach, and stand on a different footing than . . . any other document which is presented to the court to invoke its powers or affect its decisions." Amodeo II, 71 F.3d at 1050. The Second Circuit, however, has held that "the public's common-law right . . . extend[s] to documents considered by the court in orders disposing of substantive pretrial motions." United States v. Wolfson, 55 F.3d 58, 61 (2d Cir. 1995).

With respect to the second determination, "[o]nce the court has determined that . . . documents are judicial documents and that therefore a common law presumption of access attaches, it must determine the weight of that presumption." Lugosch, 435 F.3d at 119. The weight is "governed by the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." Amodeo II, 71 F.3d at 1049. Thus, "[w]here testimony or documents play only a negligible role in the performance of Article III duties, the weight of the presumption is low and amounts to little more than a prediction of public access absent a countervailing reason." Id. at 1050

2

("Where such documents are usually filed with the court and are generally available, the weight of the presumption is stronger than where filing with the court is unusual or is generally under seal.").

With respect to the third determination, "after determining the weight of the presumption of access, the court must balance competing considerations against it . . . [such as] the danger of impairing law enforcement or judicial efficiency and the privacy interests of those resisting disclosure." Lugosch, 435 F.3d at 120 (internal quotation marks omitted).

In addition, it is well established that the public and the press have a qualified First Amendment right to attend judicial proceedings and to access certain judicial documents. See Lugosch, 435 F.3d at 120. However, this right "is not all-encompassing." Wolfson, 55 F.3d at 60. The Second Circuit has recognized two approaches to the determination of whether the First Amendment right of access extends to particular judicial records. "First, the public has a right to gain access to judicial records (1) that have historically been open to the press and general public, and (2) where public access plays a significant positive role in the functioning of the particular process in question." In re New York Times Co. to Unseal Wiretap & Search Warrant Materials, 577 F.3d 401, 409 (2d Cir. 2009). Second, the Second Circuit has held that the First Amendment protects access to judicial documents that are "derived from or a necessary corollary of the capacity to attend the relevant proceedings." Hartford Courant Co. v. Pellegrino, 380 F.3d 83, 93 (2d Cir. 2004). "Once the First Amendment right of access attaches, the proponent of sealing must overcome the presumption of access by demonstrating a substantial probability of harm to a compelling interest." In re Motion for Civ. Contempt by John Doe, No. 12 MC 557, 2016 WL 3460368, at *3 (E.D.N.Y. June 22, 2016).

III. Argument

A. Witness Statements Are Not Judicial Documents, and Are Protected from Disclosure by Second Circuit Law and EDNY Local Rules

It is blackletter law in the Second Circuit that materials exchanged in discovery are not "judicial documents" subject to either a First Amendment or common law presumptive right of public access. See United States v. Longueuil, 567 F. App'x 13, 15 (2d Cir. 2014) ("Documents that play no role in the performance of Article III functions, such as those passed between the parties in discovery, lie entirely beyond the presumption [of public access's] reach." (quoting Amodeo II, 71 F.3d at 1050)); United States v. Kerik, No. 07 CR 1027, 2014 WL 12710346, at *1 (S.D.N.Y. July 23, 2014) ("There is no presumptive right of public access to documents exchanged by parties during discovery and not considered by the Court."); United States v. Smith, 985 F. Supp. 2d 506, 519 (S.D.N.Y. 2013) ("[E]xperience and logic show that there is no right of access to discovery materials."); see also United States v. Anderson, 799 F.2d 1438, 1441 (11th Cir. 1986) ("Discovery, whether civil or criminal, is essentially a private process because the litigants and the courts assume that the sole purpose of discovery is to assist trial preparation. That is why parties regularly agree, and courts often order, that discovery information will remain private."). To the contrary, there is "a general

3

and strong presumption against access to documents sealed under protective order when there was reasonable reliance upon such an order." S.E.C. v. TheStreet.com, 273 F.3d 222, 230 (2d Cir. 2001). "This presumption can only be overcome if there is a showing of improvidence in the grant of [the] order or some extraordinary circumstance or compelling need." Kerik, 2014 WL 12713046, at *1 (citing TheStreet.com, 273 F.3d at 229). As Barrack concedes, the Sealed Materials at issue here consist of materials that the government provided to Barrack during the discovery process and pursuant to the Protective Order. There is therefore no presumptive right of public access to these documents under either common law or the First Amendment, but instead a strong presumption against such access. See also Seattle Times Co. v. Rhinehart, 467 U.S. 20, 33 (1984) ("[R]estraints placed on discovered, but not yet admitted, information are not a restriction on a traditionally public source of information.").

Moreover, Barrack has not argued that the Protective Order was improvidently granted and cites no extraordinary circumstance or compelling need warranting public disclosure of these documents, other than a belief that "[t]he public has a right to know the full story." Dkt. No. 68 at 2. Setting aside that excerpted summaries of two witness statements is hardly the full story, Barrack's attempt to weaponize discovery materials to influence public opinion on this matter is wholly inappropriate. As the Second Circuit has noted, the purpose of discovery is "to facilitate orderly preparation for trial, not to educate or titillate the public." TheStreet.com, 273 F.3d at 233 (quoting Joy v. North, 692 F.2d 880, 893 (2d Cir. 1982)). "Defendant[s] [have] no constitutional right to use the media to influence public opinion concerning [t]his case so as to gain an advantage at trial." Smith, 985 F. Supp. 2d at 540 (alterations in original). This is because "[t]he theory of our system is that the conclusions to be reached in a case will be induced only by evidence and argument in open court, and not by any outside influence, whether of private talk or public print." Patterson v. Colorado, 205 U.S. 454, 462 (1907); see also Bridges v. California, 314 U.S. 252, 271 (1941) ("Legal trials are not like elections, to be won through the use of the meeting-hall, the radio, and the newspaper."); United States v. McVeigh, 918 F. Supp. 1452, 1460 (W.D. Okla. 1996) (limitations on public disclosure of discovery information "assure the fairness of the proceedings" and "emphasize that trials are conducted inside the courtroom . . . rather than on the courthouse steps").

Indeed, it is for the very purpose of assuring fair trials that this Court's local rules prohibit precisely what Barrack seeks to do here, namely publicize witness statements and law enforcement reports disclosed during discovery. Specifically, Local Rule 23.1(a) prohibits lawyers from "releas[ing] or authoriz[ing] the release of non-public information . . . which a reasonable person would expect to be disseminated by means of public communication, in connection with pending or imminent criminal litigation with which they are associated, if there is a substantial likelihood that such dissemination will interfere with a fair trial or otherwise prejudice the due administration of justice." Local Rule 23.1(d) provides that statements concerning "[t]he identity, testimony or credibility of prospective witnesses" or concerning "[t]he existence or contents of any . . . statement given by the accused" "presumptively involve a substantial likelihood that their public dissemination will interfere with a fair trial or otherwise prejudice the due administration of justice." This is precisely the type of information that Barrack seeks to disclose here in an inappropriate effort

to influence public sentiment as to this matter. Courts in this circuit have frequently expressed concern with efforts by litigants to disclose discovery materials to the media and thereby jeopardize the fairness of trial. See, e.g., Smith, 985 F. Supp. 2d at 520. Further, "the risk of prejudice to the fair administration of justice from a public-relations battle is heightened in high-profile cases," such as this one. Id. at 541 (citing cases). This Court should not condone Barrack's effort to litigate this case in the media. See United States v. Lindh, 198 F. Supp. 2d 739, 743 (E.D. Va. 2002) ("[I]t is a lamentable fact of life that parties in newsworthy trials may attempt to use the media precisely for th[e] purpose [of influencing public opinion by disclosing discovery materials].").

> B. The Defendant Cannot Convert Discovery Materials into Judicial Documents by Improperly Including Them in a Motion to Dismiss

Recognizing that the Sealed Materials here are not judicial documents under well-settled Second Circuit law, Barrack attempts to make them so by attaching them as exhibits to his motion to dismiss. The Court should reject Barack's transparent attempt to circumvent the law. The "mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access." Amodeo I, 44 F.3d at 145; see also Newsday LLC v. County of Nassau, 730 F.3d 156 (2d Cir. 2013) ("[T]he category of 'judicial documents' should not be readily expanded. The fact that a document is relevant to the subject matter of a judicial proceeding, or that the proceeding was in some way stimulated by the document, does not make it public."). Rather, "the item filed must be relevant to the performance of the judicial function and useful in the judicial process in order for it to be designated a judicial document." Amodeo I, 44 F.3d at 145 The Second Circuit has rejected the notion "that any document that is docketed with a court is a judicial document, regardless of the likelihood that it will ever be relevant to the judicial function." United States v. HSBC Bank USA, N.A., 863 F.3d 125 142 (2d Cir. 2017).

Moreover, the Sealed Materials are not even material to Barrack's motion to dismiss and thus, are irrelevant to the judicial function before the Court. Here, Barrack cites them in support of arguments challenging the sufficiency of the government's evidence but "the sufficiency of the [government's] evidence is not appropriately addressed on a pretrial motion to dismiss an indictment." United States v. Lemay, No. 20 CR 235, 2022 WL 125743, at *2 (E.D.N.Y. Jan. 13, 2022) (citing United States v. Alfonso, 143 F.3d 772, 776-77 (2d Cir. 1998)); United States v. Stephenson, No. 20 CR 511, 2021 WL 4972601, at *2 (E.D.N.Y. Oct. 26, 2021) ("It is not appropriate to weigh the sufficiency of the evidence on a pretrial motion to dismiss."); United States v. Aronov, et al., No. 19 CR 408, 2021 WL 2351175, at *4 (E.D.N.Y. June 9, 2021) ("Arguments . . . which concern the sufficiency and/or truth of the allegations in the [indictment], raise factual questions not appropriate for decisions on a pretrial motion to dismiss."). Because Barrack's arguments regarding the sufficiency of the evidence are not appropriate for judicial resolution on a motion to dismiss, the Sealed Materials are entirely immaterial to any question before the Court. Indeed, Barrack implicitly concedes that his arguments related to the Sealed Materials lack any merit, as he fails to cite any legal authority whatsoever to support his claim that purportedly exculpatory statements of a witness can warrant the pretrial dismissal of an indictment with prejudice. In short, Barrack has

attempted to transform the Sealed Materials into judicial documents and thereby improperly influence public opinion by attaching them as exhibits under the misleading pretext of a motion to dismiss.

Although the Second Circuit has embraced a definition of judicial documents entitled to the presumption of public access as including "documents submitted to a court for its consideration" in a dispositive motion, Lugosch, 435 F.3d at 121, 126 (2d Cir. 2006), it has noted that this definition "relies on the general principle that parties may 'be assumed to have supported their papers with admissible evidence and non-frivolous arguments.'" Brown v. Maxwell, 929 F.3d 41, 47 n.12 (2d Cir. 2019) (quoting Lugosch, 435 F.3d at 121). Where, as here, counsel premises its claim for the public disclosure of evidence on their relevance to frivolous arguments on a motion to dismiss, the presumption of public access is inapplicable. See id. Barrack's gambit to transform the Sealed Materials into judicial documents must fail because there is no relationship between the Sealed Materials and any argument that can appropriately be considered on a motion to dismiss. As a result, the Sealed Materials will not "reasonably have the tendency to influence a district court's ruling on a motion." Brown, 929 F.3d at 49.

> C. Law Enforcement and Privacy Interests Justify Sealing Even if the Materials Are Judicial Documents

Even assuming the Sealed Materials are judicial documents—which they are not—the Court should deny the motion as unsealing would jeopardize important law enforcement interests and the privacy interests of third parties. Barrack's conduct threatens to expose private individuals to undue public scrutiny and chill cooperation with law enforcement investigations that involve the national security of the United States.

"[T]he fact that a document is a judicial record does not mean that access to it cannot be restricted." Amodeo I, 44 F.3d at 146. Courts in the Second Circuit "have repeatedly recognized that materials, including even judicial documents which are presumptively accessible, can be kept from the public if their dissemination might adversely affect law enforcement interests." Smith, 985 F. Supp. 2d at 531 (citing cases); Amodeo I, 44 F.3d at 147 (recognizing "the law enforcement privilege as an interest worthy of protection"). Further, the Second Circuit has repeatedly recognized that the privacy interests of third parties may justify restrictions on public access to judicial documents.[1] See Amodeo II, 71 F.3d at 1050-51 (noting that the "privacy interests of innocent third parties . . . should weigh heavily in a court's balancing equation" in determining the public's access to judicial documents). "Both the

---

[1] In his motion to unseal, Barrack argues that only his privacy interests are really at stake here, ignoring the privacy interests of the third party witnesses whose statements he seeks to unseal. "Although courts consider the defendant's privacy interest, it is generally '[t]he privacy interests of innocent third parties . . . [that] weigh heavily in a court's balancing equation.'" United States v. Martoma, No 12 CR 973, 2014 WL 164181, at *5-6 (S.D.N.Y. Jan. 9, 2014) (quoting Amodeo II, 71 F.3d at 1050).

6

claims of law enforcement privilege and privacy are proper concerns for a trial court in performing the balancing test required to determine whether access should be allowed or denied." Amodeo I, 44 F.3d at 147.

Here, public disclosure of the Sealed Materials would reveal the identity of third-party witnesses and excerpted summaries of their statements to law enforcement investigators, as well as law enforcement reports. The damage to law enforcement interests and privacy interests here would be significant and severalfold. First, disclosure of the Sealed Materials would unnecessarily expose these third-party witnesses to public scrutiny prior to trial and invade their privacy, deterring their willingness to meet with law enforcement investigators in the future. Second, because there is no assurance that these witnesses will testify for either the government or the defense at trial, such disclosure could expose the public to potentially inadmissible evidence and jeopardize the fairness of trial. Third, disclosure of the Sealed Materials would chill the cooperation of witnesses with the government, not only for these two witnesses specifically, but also for other witnesses in this case, and for witnesses in other investigations as well.[2] Indeed, as the Second Circuit has recognized "[o]fficials with law enforcement responsibilities may be heavily reliant upon the voluntary cooperation of persons who may want or need confidentiality. If that confidentiality cannot be assured, cooperation will not be forthcoming." Amodeo I, 71 F.3d at 1051; Kerik, 2014 WL 12710346, at *2 (denying request to unseal documents that "might reveal investigatory tactics and might also discourage potential cooperators in ongoing or future Government investigations"). Where the release of sealed information is "likely to cause persons in the particular or future cases to resist involvement where cooperation is desirable, that effect should be weighed against the presumption of access." Amodeo I, 71 F.3d at 1050; see also In re Dep't of Investigation of City of New York, 856 F.2d at 486. Notably, in Longueuil, the defendant attached confidential witness statements and law enforcement reports, the same types of documents at issue here, to her motion pursuant to 28 U.S.C. § 2255 and then moved to vacate the protective order restraining her from publicly disclosing those documents. 2014 WL 2055714, at *1. The Second Circuit held that, even if the documents were "judicial documents" with a presumption of public access, there was no abuse of discretion in denying the defendant's request given countervailing law enforcement and privacy concerns. Id. at *2.

Moreover, the law enforcement interests at stake here are particularly heightened, given that one defendant in this matter remains a fugitive not entitled to discovery and that the charges in this case involve allegations of malign foreign influence implicating national security concerns as well. See Amodeo I, 44 F.3d at 147 (recognizing that courts have properly restricted access to judicial documents "to guard against risks to national security interests"). The government has a legitimate interest in ensuring that witness statements to law enforcement investigators and law enforcement reports are not disclosed to fugitive defendants and foreign government officials. This is particularly salient here, where it has

---

[2] Barrack's apparently deliberate decision to file his unsealing application publicly and characterize witness statements therein itself may have a troubling and chilling effect on the cooperation of witnesses in this matter, as it publicly broadcasts a message that the confidentiality of witnesses is at risk, even if those witnesses never testify.

7

already been alleged in the Indictment that such fugitive defendants and foreign government officials have sought to clandestinely influence the operations of the United States government.

IV. Conclusion

For the foregoing reasons, the government respectfully submits that the Court should deny Barrack's motion to unseal the unredacted memorandum and exhibits in support of his motion to dismiss the indictment.

Respectfully submitted,

BREON PEACE
United States Attorney

By: /s/
Ryan C. Harris
Samuel P. Nitze
Hiral D. Mehta
Craig R. Heeren
Assistant U.S. Attorneys
(718) 254-7000

MATTHEW G. OLSEN
Assistant Attorney General
Department of Justice
National Security Division

By: /s/ Matthew J. McKenzie
Matthew J. McKenzie
Trial Attorney

cc: Counsel for Thomas Joseph Barrack (by ECF)
Counsel for Matthew Grimes (by ECF)
Clerk of the Court (BMC) (by ECF)