IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 1:21-cr-00371(BMC)(TAM) |
| | ) | Hon. Brian M. Cogan |
| MATTHEW GRIMES | ) | |

**MR. GRIMES' REPLY IN FURTHER SUPPORT OF MOTION FOR
GRAND JURY SCREENING RECORDS AND LEGAL INSTRUCTIONS**

Abbe David Lowell
Christopher D. Man
Andrew E. Tauber
WINSTON & STRAWN LLP
1901 L Street, NW
Washington, DC 20036
ADLowell@winston.com
202-282-5000 (ph)
202-282-5100 (fax)

Sofia Arguello
Johanna Hudgens
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
SArguello@winston.com
212-294-6700 (ph)
212-294-4700 (fax)

*Counsel for Matthew Grimes*

# INTRODUCTION

The government's opposition (GJ Opp.) to Mr. Grimes' Motion for Grand Jury Screening Records and Legal Instructions (Grimes GJ Mot.) can be summed up in one sentence: Mr. Grimes has not demonstrated a particularized need for the narrow set of grand jury materials requested because Section 951 charges are not rare and Mr. Grimes has already received all of the records he is entitled to under the Jury Selection and Service Act (JSSA). As the government's own case law demonstrates, however, Section 951 charges have never been brought against a person in Mr. Grimes' situation[1]—making this, in fact, a unique and rare case that is not a "fishing expedition." As for the second point, courts in this district have expressly rejected the government's argument that only information regarding the creation of the Master Jury Wheel is subject to disclosure under Section 1867(f).

The government's attempt to force every request of a defendant through its view of Rule 6 or Rule 16 is not only misguided, but flatly ignores the court's broad discretion in granting the requested disclosure where, as here, there is more than mere speculation suggesting the grand jury that returned the indictment must have proceeded on an improper theory and the pandemic may have distorted the jury selection process.

---

[1] Mr. Grimes is not alleged to have been employed by a foreign government to engage in espionage or anything illegal. He was a 22-year-old American recent college graduate who worked for an American CEO and everything he is alleged to have done in the indictment was legal and within the scope of his employment and directed by his American boss. *See* Mr. Grimes' concurrently filed Reply in Further Support of His Motion to Dismiss The Indictment (hereinafter "Grimes MTD Reply") at 1–2, 6, 18–19.

# ARGUMENT

## I. Nothing Prevents Disclosure Of The Grand Jury Instructions And Empanelment Records Requested

As explained in the grand jury motion, Rule 6(e) does not apply to the narrow set of grand jury materials being requested here as none of the information Mr. Grimes is seeking—jury instructions, empanelment records, and voir dire questions—involve the substance of jury deliberations or evidence that was actually presented to the jury. (Grimes GJ Mot. at 5–6.) The "trial court has broad discretion" to order disclosure of this material. *See United States v. Faltine*, 2014 WL 4370811, at *5 (E.D.N.Y. Sept. 2, 2014).

The government complains that Mr. Grimes does not invoke Rule 16 in his request. (GJ Opp. at 5.) But this argument is circular, as the government recognizes that grand jury material is outside the scope of Rule 16 and thus irrelevant to this discussion. Next, the government tries to shoehorn Mr. Grimes into the framework of Rule 6(e)'s particularized need standard. (*Id*. at 6.) But even if that standard were appropriate here (it is not), Mr. Grimes has provided more than mere speculation that the grand jury did not receive proper instructions on a charging element, or was biased, given the unprecedented application of Section 951 to a 22-year-old assistant to an American CEO and company and the facial omission of essential elements from the indictment. (*See* Grimes GJ Mot. at 7–8.)

This case is very different from the cases cited by the government. For example, in *Faltine* (cited in GJ Opp. at 6), a routine drug case, the defendant sought disclosure of grand jury instructions on the ground that the government may have used the Model Federal Grand Jury Charge concerning probable cause—an instruction that was found constitutional. 2014 WL 4370811, at *6–7. *United States v. Hunt*, 534 F. Supp. 3d 233 (E.D.N.Y. 2021) (cited in GJ Opp. at 6), is likewise distinguishable, as the request for grand jury instructions there was based on "a

one-off statement in the Complaint and a statement in a footnote in the Government's bail opposition letter." *Id.* at 259. Here, in contrast, as the government has recognized, even the courts have at times been confused about the proper application of Section 951. (*See* Govt Opp. at 11 n.1, 41 n.13 (noting that the court in *United States v. Amirnazmi* incorrectly referred to Section 951 counts as violations of the Foreign Agent Registration Act (FARA)).) In fact, the DOJ OIG's own report pointed out that DOJ personnel "frequently confused FARA (22 U.S.C. § 611 et seq.) with 18 U.S.C. § 951." *Audit of the National Security Division's Enforcement of the Foreign Agent's Registration Act* at 24 (Sept. 2016). It is not a stretch to imagine that the grand jury may have been likewise confused, particularly if the legal instructions were deficient, as the indictment itself suggests. (*See* Grimes MTD Reply at 6.)

To be sure, Mr. Grimes does not dispute that Section 951 has existed in some form for more than a century or that grand juries in this district have returned indictments charging a Section 951 offense. (GJ Opp. at 7–8.) The point is that Section 951 has never before been applied as it is now as to Mr. Grimes. There is good reason for that. The statute targets spies and others engaged in criminal or espionage-like activity, not Mr. Grimes, an American assistant employed by an American company to engage in lawful activity as directed by his American boss. The government's string cite of Section 951 cases (GJ Opp. at 8) only underscores this point, as the cases all involve spies[2] or individuals engaged in criminal activity.[3] Even in *United States v.*

---

[2] *See United States v. Buryakov*, No. 15-CR-73 (S-1) (S.D.N.Y. 2015) (Russian spy); *United States v. Lindauer*, 2004 WL 2813168, at *1 (S.D.N.Y. Dec. 6, 2004) (Iraqi spy); *United States v. Ji Chaoqun*, 2020 WL 1689826, at *5 (N.D. Ill. Apr. 7, 2020) (Chinese spy); *United States v. Latchin*, 2005 WL 8160638, at *2 (N.D. Ill. July 26, 2005) (Iraqi spy); *United States v. Dumeisi*, 2003 WL 22757747, at *2 (N.D. Ill. Nov. 20, 2003) (Iraqi spy).

[3] *United States v. Hu Ji, et al.*, 2022 WL 595259, at *1 (E.D.N.Y. Feb. 28, 2022) (interstate stalking); *United States v. Angwang*, 2020 WL 5947187, at *1 (E.D.N.Y. Oct. 7, 2020) (wire fraud and making false statements); *United States v. Ying Lin*, 2018 WL 3416524, at *3 (E.D.N.Y. July 11, 2018) (bank and wire fraud); *United States v. Fishenko*, 2014 U.S. Dist. LEXIS 136356, at *1

*Rafiekian*, 2019 WL 3021769, *3 (E.D. Va. Sept. 7, 2019), a foreign government hired and paid agents to discredit a member of the political opposition who was residing in the United States, so that the United States would extradite that political opponent for prosecution. The government does not and cannot identify a single Section 951 case that involves a 22-year-old whose alleged conduct—conveying messages and drafting materials while employed as an assistant to an American investment company's chairman—fits squarely in the legal commercial transaction exception. That is because Section 951 was not intended to cover such conduct.

Put simply, and contrary to the government's suggestion, Mr. Grimes is not requesting disclosure of the grand jury instructions and certain empanelment records simply because this is a high-profile case involving an obscure statute (GJ Opp. at 9)—although both points are certainly true—but rather because the statute, which the DOJ (prior to this opposition) has agreed is confusing and often-misidentified, has *never* been used in this manner before, and the high-profile nature of the case only exacerbates the concern that either bias or improper instructions may have led to this unprecedented application of the statute.

## II.    Even If Rule 6 Applied, Disclosure Would Be Justified

Even if Rule 6 were applicable, Mr. Grimes has met the standard for disclosure. The bulk of the cases that the government cites in this section are related to broad requests for grand jury minutes. *See United States v. Sugar*, 606 F. Supp. 1134, 1146 (S.D.N.Y. 1985) (GJ Opp. at 7);

---

(E.D.N.Y. Sept. 25, 2014) (conspiracy to illegally export controlled micro-electronics from the US to Russia, money laundering, and conspiracy to commit wire fraud); *United States v. Defendant #1, et al.*, No. 10-CR-598 (S.D.N.Y. 2010) (money laundering); *United States v. Abouammo, et al.*, 2021 WL 718842, at *1 (N.D. Cal. Feb. 24, 2021) (wire fraud, honest services mail fraud, money laundering and falsification of records); *United States v. Amirnazmi*, 2009 WL 32481, at *3 (E.D. Pa. Jan. 5, 2009 (violations of the International Emergency Economic Powers Act ("IEEPA"), false statements and bank fraud); *United States v. Szuhsiung Ho*, 2016 WL 7435900, at *1 (D. Tenn. 2016) (conspiring to develop special nuclear material illegally).

*United States v. Donovan*, 2021 WL 5819915, at *3 (E.D.N.Y. Dec. 6, 2021) (GJ Opp. at 7); *United States v. Loera*, 2017 WL 2821546, at *8 (E.D.N.Y. June 29, 2017) (GJ Opp. at 7); *United States v. Bruno*, 159 F. Supp. 3d 311, 322–23 (E.D.N.Y. 2016) (GJ Opp. at 7); *United States v. Leung*, 40 F.3d 577, 582 (2d Cir. 1994) (GJ Opp. at 7). But as made clear in Mr. Grimes' GJ Motion, he is not seeking any information concerning the substance of grand jury deliberations, only the specific jury instructions provided and certain limited empanelment records. (Grimes GJ Mot. at 1, 5.) These are not "matters" before the grand jury as that rule defines. Nor does Mr. Grimes seek any personal identifying information for the individuals referred to in the relevant records. (*Id*. at 2.) Indeed, none of the reasons traditionally cited for maintaining the secrecy of active grand jury proceedings exist here. *See United States v. Abounnajah*, 1991 WL 42895, at *1 (E.D.N.Y. Mar. 26, 1991). The government thus cannot reasonably dispute that any concerns of secrecy in this case are largely diminished "and accordingly the showing of particularized need required of the defendant need not be 'compelling.'" *Id*. at *2. Mr. Grimes easily meets this standard.

As noted above, Mr. Grimes has presented more than mere speculation that the grand jury did not receive proper instruction. Moreover, the unprecedented application of the statute, coupled with the external events surrounding the indictment, raise a strong possibility of the type of jury bias that should have been questioned. The need for the requested disclosure far outweighs any minimal concerns of secrecy and does not prejudice the government in any way. At most, it incentivizes proper instructions and encourages screening of grand jurors for conscious or unconscious prejudice as is routine in selecting trial juries.

The government's attempt to hide behind a narrow interpretation of the JSSA fares no better. (GJ Opp. at 9–11.) Courts have expressly rejected the government's argument that only

5

information regarding creation of the Master Jury Wheel is subject to disclosure under Section 1867(f). *See United States v. Corbett*, 2020 WL 5803243, at *3 (E.D.N.Y. Aug. 21, 2020); *see also United States v. Miller*, 116 F.3d 641, 658 (2d Cir. 1997) (approving district court's grant of discovery beyond generalized master wheel data, including completed jury questionnaires and the testimony of the district's jury administrator); *United States v. Holmes*, 2020 WL 5408163, at *4 (N.D. Cal. Sept. 9, 2020) (rejecting government's argument that "only information regarding the creation of the Master Jury Wheel—and not information regarding subsequent selection procedures—is subject to disclosure"). Just because the government does not agree with those holdings (GJ Opp. at 11 n.8) does not render them any less persuasive.

As this court has made clear, "the Master Jury Wheel, standing alone, cannot be used to determine whether grand juries in this district are selected in compliance with the JSSA." *Corbett*, 2020 WL 5803243, at *3. The "unqualified right" under *United States v. Test*, 420 U.S. 28, 30 (1975) to inspect jury lists extends to *all* records that are necessary to investigate and, if appropriate, prepare a motion to dismiss the indictment on "the ground of substantial failure to comply with the provisions of this title in selecting the grand . . . jury." 28 U.S.C. § 1867(a), (f). For that reason, courts frequently grant disclosure to additional data, including grand jury lists for the grand jury that returned the indictment and attendance records. *Corbett*, 2020 WL 5803243, at *7 (granting request for "attendance record and reason for absence by date for each grand juror"); *United States v. Todd*, 2020 WL 5981673, at *6 (E.D.N.Y. Oct. 8, 2020) (same); *United States v. Celestine*, 2021 WL 4133755, at *1 (E.D.N.Y. Sept. 10, 2021) (same).

The cases the government cites in opposition stand largely for the inapposite proposition that personally identifiable information from the Master Jury Wheel, such as names and addresses, may not properly be disclosed. *See, e.g.*, *United States v. Gotti*, 2004 WL 32858, at *11 (S.D.N.Y.

6

Jan. 6, 2004) (court declined to turn over grand juror identifying information based on witness intimidation and accusations of defendants serving as hitmen for the Gambino crime family); *United States v. Harvey*, 756 F.2d 636, 642 (8th Cir. 1985) (district court had not "erred in refusing to disclose the names and addresses of the persons on the master grand jury list," particularly where defendant provided no basis for the requested disclosures and never inspected what was provided); *United States v. Nichols*, 248 F. Supp. 2d 1027, 1034 (D. Kan. 2003) (denying only defendant's request for access to the names of jurors and jury questionnaires).[4] But as made unequivocally clear in the GJ Motion, Mr. Grimes does not "seek any personal identifying information . . . for the individuals referred to in the relevant records." (Grimes GJ Mot. at 1–2.)

The government tries to distinguish *United States v. McLernon*, 746 F.2d 1098 (6th Cir. 1984), on the grounds the court held that disclosure of the Master List and the relevant demographic data about the general pool was sufficient in that case (which involved drug charges). (GJ Opp. at 10.) But as the government recognized, the *McLernon* court noted that in some situations more disclosure is necessary. (*Id.* (citing *McLernon*, 746 F.2d at 1123).) This is such a situation—where the grand jury was tasked with returning a verdict on a complicated and rarely charged statute and evidence suggests that the grand jury was empaneled during the pandemic which may have distorted the jury selection process. *See Holmes*, 2020 WL 5408163, at *3, 5 ("it is the qualification and excuse stage of jury selection that is principally relevant to Defendants'

---

[4] The other cases cited by the government are similarly inapposite. For example, *United States v. Davenport*, 824 F.2d 1511, 1515 (7th Cir. 1987) (cited in GJ Opp. at 9), involves petit jury records (completed jury qualification questionnaires), not the grand jury materials at issue here. And *United States v. Brown*, 116 F.3d 466, 466 (2d Cir. 1997) (cited in GJ Opp. at 9), does not address the scope of disclosure permitted under JSSA (in fact, it criticizes the defendant for not having availed himself of the right to inspection).

prospective § 1867(a) claim").[5]  Without the requested attendance records and information concerning the selection of qualified jurors from the master jury wheel, Mr. Grimes is unable to assess whether the grand jury that returned the indictment against him was selected, and treated, in accordance with the provisions of the JSSA.  Disclosure of this information is necessary to determine both the demographic effect of the current pandemic on the operation of the grand jury in this case and to see if enough of the same jurors heard the key evidence of this case.

The government argues that the narrow set of grand jury materials Mr. Grimes is requesting cannot be the basis for a proper JSSA motion to dismiss.  (GJ Opp. at 11.)  But the cases cited for that proposition—*Taylor v. Louisiana*, 419 U.S. 522 (1975) and *Duren v. Missouri*, 439 U.S. 357 (1979)—only address the fair cross section principle, not the scope of a proper JSSA motion, let alone the proper scope of related discovery.

## CONCLUSION

For the foregoing reasons, the Court should order the government to produce, or provide Mr. Grimes with access to, the requested grand jury materials.

---

[5] Contrary to the government's curious and inaccurate assertion (GJ Opp. at 10), Mr. Grimes is making the *same claim* as was made in *Holmes* that COVID-19 created a "fair cross section" issue that can only be observed in the additional data that we are requesting.  (*See* Grimes GJ Mot. at 8–10.)

Dated: March 14, 2022

                                                Respectfully submitted,

/s/ *Abbe David Lowell*

| | |
|---|---|
| Abbe David Lowell | Sofia Arguello |
| Christopher D. Man | Johanna Hudgens |
| Andrew E. Tauber | WINSTON & STRAWN LLP |
| WINSTON & STRAWN LLP | 200 Park Avenue |
| 1901 L Street, NW | New York, NY 10166 |
| Washington, DC 20036 | SArguello@winston.com |
| ADLowell@winston.com | 212-294-6700 (ph) |
| 202-282-5000 (ph) | 212-294-4700 (fax) |
| 202-282-5100 (fax) | |

*Counsel for Matthew Grimes*