SPN:RCH/HDM/CRH
F. #2018R01309

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -

RASHID SULTAN RASHID AL MALIK
ALSHAHHI,
      also known as "Rashid Al Malik"
        and "Rashid Al-Malik,"
THOMAS JOSEPH BARRACK and
MATTHEW GRIMES,

                Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

# 1:21-cr-00371-BMC-TAM

S U P E R S E D I N G
I N D I C T M E N T

Cr. No. <u>21-371 (BMC) (S-1)</u>
(T. 18, U.S.C., §§ 371, 951(a),
 981(a)(1)(C), 1001(a)(2), 1512(c)(2), 2
 and 3551 <u>et seq.</u>; T. 21, U.S.C.,
 § 853(p); T. 28, U.S.C., § 2461(c))

THE GRAND JURY CHARGES:

        At all times relevant to this Superseding Indictment, unless otherwise indicated:

<u>INTRODUCTION</u>

I.    <u>The Defendants</u>

        1.    The defendant RASHID SULTAN RASHID AL MALIK ALSHAHHI, also known as "Rashid Al Malik" and "Rashid Al-Malik" ("AL MALIK"), was a citizen of the United Arab Emirates, residing primarily in California on an F-1 visa.

        2.    The defendant THOMAS JOSEPH BARRACK was a United States citizen, residing primarily in California.   BARRACK served as the Executive Chairman of a global investment management firm ("Company A"), an entity the identity of which is

known to the Grand Jury, headquartered in Los Angeles, California.   Between

approximately April 2016 and November 2016, BARRACK served as an informal advisor to

the campaign (the "Campaign") of a candidate (the "Candidate") in the 2016 United States

Presidential Election.   Between approximately November 2016 and January 2017,

BARRACK served as Chairman of the Presidential Inaugural Committee.   Beginning in

January 2017, BARRACK informally advised senior United States government officials on

issues related to United States foreign policy in the Middle East.   BARRACK also sought

appointment to a senior role in the United States government, including the role of Special

Envoy to the Middle East.

   3. The defendant MATTHEW GRIMES was a United States citizen,

residing in California.   GRIMES was employed at Company A as an analyst in the Office of

the Chairman and was subsequently promoted to Vice President.   Grimes worked directly

with and reported to the defendant THOMAS JOSEPH BARRACK.

II. The Government of the United Arab Emirates

   4. The Government of the United Arab Emirates (hereinafter, the "United

Arab Emirates") was a foreign government.

   5. Emirati Official 1, an individual whose identity is known to the Grand

Jury, was a member of the leadership of the United Arab Emirates and held a high-ranking

position in its armed forces.   Emirati Official 1 was the chairman of a United Arab Emirates

sovereign wealth fund ("UAE SWF 1"), an entity the identity of which is known to the

Grand Jury.   Emirati Official 1 also served on the board of directors of another United Arab

Emirates sovereign wealth fund ("UAE SWF 2"), an entity the identity of which is known to

the Grand Jury.

2

6.      Emirati Official 2, an individual whose identity is known to the Grand Jury, was a high-ranking official in the United Arab Emirates with responsibilities related to its national security.

7.      Emirati Official 3, an individual whose identity is known to the Grand Jury, was a member of the United Arab Emirates Supreme National Security Council.

8.      Emirati Official 4, an individual whose identity is known to the Grand Jury, was a government official in the United Arab Emirates who reported to Emirati Official 2 and Emirati Official 3.

9.      Emirati Official 5, an individual whose identity is known to the Grand Jury, was a high-ranking United Arab Emirates diplomat.

10.     Emirati Official 6, an individual whose identity is known to the Grand Jury, was a government official in the United Arab Emirates who reported to Emirati Official 2.

III.   Regulations for Agents of Foreign Governments

11.     An individual acting in the United States as an agent of a foreign government, such as the United Arab Emirates, was required to provide prior notification to the Attorney General of the United States (the "Attorney General"), under rules and regulations established by the Attorney General.   See 18 U.S.C. § 951(b); 28 C.F.R. §§ 73.1 et seq.

12.     The term "agent of a foreign government" included an individual who agreed to operate within the United States subject to the direction or control of a foreign government or official.   See 18 U.S.C. § 951(d).   By statute, the term "agent of a foreign government" did not include:

3

      (a)     a duly accredited diplomatic or consular official of a foreign government, recognized by the United States Department of State;

      (b)     an officially and publicly acknowledged and sponsored official or representative of a foreign government;

      (c)     an officially and publicly acknowledged and sponsored member of the staff of, or employee of, any such officer, official or representative described in subsection (a) or (b), who was not a United States citizen; or

      (d)     any person engaged in a legal commercial transaction.

IV.    The Defendants' Actions in the United States as Agents of the United Arab Emirates

      13.     The defendants RASHID SULTAN RASHID AL MALIK ALSHAHHI, THOMAS JOSEPH BARRACK and MATTHEW GRIMES acted, and aided and abetted one another in acting, in the United States, as agents of the United Arab Emirates, a foreign government.

      14.     Government officials in the United Arab Emirates, including Emirati Official 1, Emirati Official 2, Emirati Official 3 and Emirati Official 4, tasked the defendants RASHID SULTAN RASHID AL MALIK ALSHAHHI, THOMAS JOSEPH BARRACK and MATTHEW GRIMES with, variously and among other things, (a) influencing public opinion, the foreign policy positions of the Campaign and the foreign policy positions of the United States government; (b) obtaining information about foreign policy positions and related decision-making within the Campaign and, at times, the United States government; (c) developing a backchannel line of communication with the Campaign and, at times, officials of the United States government; and (d) developing plans to increase the United Arab Emirates' political influence and to promote its foreign policy preferences.

A.    Initial Meeting and the Energy Speech

15.    In or about May 2016, the defendant THOMAS JOSEPH BARRACK took steps to establish himself as the key communications channel for the United Arab Emirates to the Campaign.

16.    On or about April 24, 2016, the defendant RASHID SULTAN RASHID AL MALIK ALSHAHHI emailed the defendant THOMAS JOSEPH BARRACK to confirm that BARRACK would meet with Emirati Official 2 on May 1, 2016 in the United Arab Emirates.   The following day, on or about April 25, 2016, AL MALIK emailed BARRACK that Emirati Official 2 was "[v]ery much focusing on building the right relationships to help the country and he knows ambassadors can't do much and they are limited even if they are active."   In his response, BARRACK wrote that Emirati Official 2 should know that BARRACK had been a thirty-year partner with the Candidate and that BARRACK had staffed the Campaign.   In reply, AL MALIK wrote that Emirati Official 2 and other senior United Arab Emirates officials wanted a "long term relationship with [BARRACK] and it will be great to speak freely and suggest strategies and to help them with contacts and relationships."

17.    On or about May 1, 2016, the defendants RASHID SULTAN RASHID AL MALIK ALSHAHHI and THOMAS JOSEPH BARRACK met with Emirati Official 2 and Emirati Official 4 in the United Arab Emirates.   That same day, BARRACK emailed AL MALIK to ask whether Emirati Official 2 had been satisfied with the meeting.   AL MALIK replied, "Beyond expectations and excited to move forward!   And asked for more great ideas."

5

18.     On or about May 9, 2016, the defendant RASHID SULTAN RASHID

AL MALIK ALSHAHHI informed the defendant THOMAS JOSEPH BARRACK that

Emirati Official 4 had confirmed that BARRACK would be the "the only channel to the

Candidate" for the United Arab Emirates.

19.     On or about May 12, 2016, the defendant THOMAS JOSEPH

BARRACK sent the defendant RASHID SULTAN RASHID AL MALIK ALSHAHHI a

draft speech to be delivered by the Candidate about United States energy policy (the "Energy

Speech") and asked for feedback, informing AL MALIK: "It is my own first draft."   AL

MALIK emailed the draft speech to Emirati Official 4.   Thereafter, AL MALIK sent a text

message to BARRACK proposing language for the draft speech that praised Emirati Official

1 by name and stated, "This is what I got from them."

20.     Later that day, the defendant THOMAS JOSEPH BARRACK emailed

the defendant RASHID SULTAN RASHID AL MALIK ALSHAHHI a revised draft of the

Energy Speech that praised Emirati Official 1 by name.   AL MALIK replied, "They loved it

so much!   This is great!"   BARRACK further advised AL MALIK that the revised draft of

the Energy Speech was "[t]otally [c]onfidential," writing that he would deliver the revised

draft to the Campaign the following day and highlighting the "reference to [Emirati

Official 1]."   AL MALIK forwarded BARRACK's email to Emirati Official 4.

Subsequently, BARRACK emailed a senior member of the Campaign ("U.S. Person 1"), an

individual whose identity is known to the Grand Jury, the draft of the Energy Speech that

praised Emirati Official 1 by name and described the draft as "final from me."

21.     On or about May 17, 2016, the defendant RASHID SULTAN RASHID

AL MALIK ALSHAHHI sent a text message to the defendant MATTHEW GRIMES stating

that he was "excited for the speech . . . . This will be huge."   AL MALIK further wrote that

he and other United Arab Emirates officials would arrange "another meeting for [the

defendant THOMAS JOSEPH BARRACK] and [Emirati Official 2]," and that the Energy

Speech would "make us heroes."

22.     On or about May 18, 2016, the defendant RASHID SULTAN RASHID

AL MALIK ALSHAHHI emailed the defendant THOMAS JOSEPH BARRACK, "Everyone

back home looking forward for the speech from [the Candidate]!   They are following and

excited."

23.     On or about May 20, 2016, U.S. Person 1 emailed the defendant

THOMAS JOSEPH BARRACK a revised draft of the Energy Speech that no longer

contained the language praising Emirati Official 1.   BARRACK responded that they needed

to "get one paragraph to balance foreign-policy concerns for energy dependent allies in the

gulf."   Thereafter, U.S. Person 1 invited BARRACK to send an Energy Speech "insert that

works for our friends."   In a subsequent email, BARRACK sent U.S. Person 1 proposed

language for the Energy Speech in which the Candidate would pledge to "work together with

our supportive allies in the Gulf."   On or about May 21, 2016, BARRACK emailed the

proposed language to the defendant RASHID SULTAN RASHID AL MALIK ALSHAHHI.

24.     On or about May 26, 2016, the Candidate delivered the Energy Speech,

including a pledge to "work with our Gulf allies."   The defendant RASHID SULTAN

RASHID AL MALIK ALSHAHHI emailed the defendant THOMAS JOSEPH BARRACK

to praise the Energy Speech as "[a]mazing," noting that the Candidate "mentioned the Gulf

allies which is great" and that Emirati Official 1 had watched the Candidate deliver the

Energy Speech.   Emirati Official 4 also emailed BARRACK, stating: "Congrats on the great

job today, [Emirati Official 2] and everybody here are happy with the results."

      B.     <u>The National Political Party Platform</u>

      25.     On or about May 30, 2016, U.S. Person 1 emailed the defendant

THOMAS JOSEPH BARRACK, stating: "[W]e need to talk about language for me to put in

[the national political party] platform at national convention.   Can be much more expansive

than what we did in speech."   U.S. Person 1 added that the "platform language" would be

"based on what you hear from your friends."

      26.     On or about July 13, 2016, the defendant THOMAS JOSEPH

BARRACK forwarded an email from U.S. Person 1 to RASHID SULTAN RASHID AL

MALIK ALSHAHHI.   The email from U.S. Person 1 advised that language "that was anti

the Saudi Royal Family was removed from the platform" of the U.S. political committee

associated with the Candidate.   The removed language had "called for the release of 28

pages of sensitive documents gathered during the" investigation of the terrorist attacks on

September 11, 2001, which "allegedly contain information that asserts involvement by the

Saudi Government/Royals[.]"   In his email to AL MALIK, BARRACK stated that U.S.

Person 1's email was "[v]ery confidential but you can share with HH.   Please do not

circulate any further since it is very sensitive."   Thereafter, AL MALIK forwarded the email

to Emirati Official 4.   BARRACK also advised Emirati Official 5 of the information

provided by U.S. Person 1, stating that the information was "[r]eally confidential but

important."

8

C.   Media Appearances

27.   In or about and between May 2016 and October 2017, the defendant THOMAS JOSEPH BARRACK repeatedly promoted the United Arab Emirates and its foreign policy interests during media appearances after soliciting direction from the defendant RASHID SULTAN RASHID AL MALIK ALSHAHHI and United Arab Emirates officials.   For example:

a.   On or about May 31, 2016, BARRACK gave a nationally televised interview on a United States television channel during which he praised the United Arab Emirates.   BARRACK forwarded an Internet link to the interview to AL MALIK. BARRACK then advised AL MALIK that he had a second nationally televised interview scheduled shortly thereafter and asked, "Anything [Emirati Official 2] would like me to discuss on [the second nationally televised interview] that I did not do on [the first nationally televised interview]?"   AL MALIK responded that he would check and then advise BARRACK.

b.   On or about June 2, 2016, BARRACK emailed the news anchor for his upcoming nationally televised interview and indicated that he wished to discuss the Middle East during the interview.   That same day, BARRACK emailed AL MALIK to remind AL MALIK of the upcoming interview, stating that the Middle East would be a "big topic" during the interview.   In response, AL MALIK relayed to BARRACK that Emirati Official 2 and Emirati Official 3 had tried to call BARRACK and that they "wanted to thank [BARRACK]."   After BARRACK asked whether Emirati Official 2 and Emirati Official 3 had additional "themes" they wanted BARRACK to promote during the interview, AL MALIK stated that Emirati Official 3 and Emirati Official 4 would call BARRACK.   Later

9

that day, Emirati Official 3 and BARRACK communicated via telephone.   In a separate email, AL MALIK provided talking points for BARRACK's upcoming interview and reiterated that United Arab Emirates officials had been pleased with his nationally televised interview on May 31, 2016.   In a subsequent email, AL MALIK advised BARRACK, "[Emirati Official 2] was extremely impressed and happy with your [first televised interview]!   He showed it to [Emirati Official 1] and you are the new trusted friend! [Emirati Official 2] will call you anytime in the next few days to thank u [sic] in person!" AL MALIK added that Emirati Official 1 and Emirati Official 2 were "extremely excited on what we can achieve."   BARRACK replied, "You are there [sic] secret weapon."   The following day, AL MALIK emailed BARRACK that Emirati Official 3 "was complimentary after the phone call" with BARRACK.

        c.      On or about July 1, 2016, BARRACK participated in another nationally televised interview during which he praised the United Arab Emirates.   Afterwards, AL MALIK emailed BARRACK, stating, "Great interview . . . send me the link will send it to [the United Arab Emirates] now."

        d.      On or about July 18, 2016, BARRACK participated in a nationally televised interview during which he repeatedly praised the United Arab Emirates. Thereafter, BARRACK emailed AL MALIK, "I nailed it on [the television network that televised the interview] [t]his morning . . . for the home team. Watch and send it."

        e.      On or about July 21, 2016, BARRACK participated in a nationally televised interview during which he praised Emirati Official 1 and the United Arab Emirates. Afterwards, AL MALIK sent a text message to BARRACK that he would send the interview "to [the United Arab Emirates] ASAP."   The defendant MATTHEW GRIMES emailed AL

MALIK an Internet link to the interview.   AL MALIK sent a text message to GRIMES stating that "the feedback is amazing."

        f.     On or about August 2, 2016, Emirati Official 4 emailed AL MALIK talking points promoting the United Arab Emirates.   AL MALIK then emailed those talking points to BARRACK and GRIMES.

        g.     On or about September 2, 2016, BARRACK participated in a nationally televised interview during which he discussed the needs of "[o]ur Arab allies." On or about September 5, 2016, AL MALIK sent a text message to GRIMES that Emirati Official 2 "loved [BARRACK's] interviews."   That same day, AL MALIK emailed BARRACK that BARRACK's interview on or about September 2, 2016, had been "[p]ositively perceived . . . by Boss."

        h.     On or about September 25, 2016, BARRACK emailed AL MALIK stating, "Call me HH Mo called me[.]"   That same day, BARRACK and a senior United Arab Emirates official communicated via telephone.   Two days later, BARRACK participated in a nationally televised interview during which he praised the United Arab Emirates, Emirati Official 1 and Emirati Official 2.   Thereafter, GRIMES sent a text message to AL MALIK stating that BARRACK had given a "shout out" to Emirati Official 1 and Emirati Official 2 during the interview.   AL MALIK subsequently sent a text message to Emirati Official 4 containing an Internet link to what appeared to be BARRACK's interview and directed Emirati Official 4 to the portion of the interview where BARRACK "mentioned the names."   Emirati Official 4 replied, "He is doing well."   GRIMES also advised AL MALIK that Emirati Official 1 had sent a text message to BARRACK

"congratulating [BARRACK] about the show!"   Thereafter, AL MALIK also advised

GRIMES that Emirati Official 2 had watched BARRACK's interview.

        i.      On or about January 27, 2017, GRIMES sent a text message to AL

MALIK containing a link to a news article reporting that Executive Order 13769, which

restricted admission of citizens from seven Middle Eastern countries from entry into the

United States for ninety days, did not apply to the United Arab Emirates.   AL MALIK

responded, "This is [BARRACK] time.   When he does interview."   Three days later, on or

about January 31, 2017, BARRACK participated in a nationally televised interview during

which he discussed Executive Order 13769, including the need to promote "good Islam" and

partner with "our allies" in the Middle East.   Following the interview, GRIMES sent AL

MALIK an Internet link to the interview.   AL MALIK replied, "Wow that's exactly what I

wanted."

        j.      On or about March 27, 2017, the defendant RASHID SULTAN

RASHID AL MALIK ALSHAHHI sent text messages to the defendant MATTHEW

GRIMES that "[o]ur friends" had sent AL MALIK "the key msgs for [BARRACK.] Media."

AL MALIK sent GRIMES eight talking points praising the policies of the United Arab

Emirates and the actions of Emirati Official 1.   GRIMES then advised AL MALIK that he

had shared the talking points with BARRACK.   On or about April 17, 2017, the defendant

THOMAS JOSEPH BARRACK emailed a news anchor at a national television network

"Talking Points for the UAE," which included all eight talking points previously provided by

AL MALIK to GRIMES.

D.     Preparation of Strategy to Promote Emirati Policy Interests and Meeting in Morocco

28.     Beginning in approximately June 2016, the defendants RASHID SULTAN RASHID AL MALIK ALSHAHHI, THOMAS JOSEPH BARRACK and MATTHEW GRIMES, acting at the direction of United Arab Emirates officials, drafted materials proposing a strategy for the United Arab Emirates to promote its foreign policy interests and increase its political influence in the United States.

29.     On or about June 7, 2016, the defendant RASHID SULTAN RASHID AL MALIK ALSHAHHI emailed the defendant THOMAS JOSEPH BARRACK that Emirati Official 4 had "asked [AL MALIK] to work together in building a strategy for us moving forward regardless of the future election results to maintain strong relationships . . . and benefit from it for UAE." On or about July 11, 2016, AL MALIK sent a text message to the defendant MATTHEW GRIMES to determine whether he and BARRACK had made any progress on the strategy. GRIMES responded that he had spoken to BARRACK about it and would prepare a proposal. The following day, GRIMES emailed AL MALIK a rough draft of a strategy proposal, which stated that the United Arab Emirates had historically "not used its vast economic surplus to obtain a level of influence with which the country should rightfully command." The strategy proposal recommended that the United Arab Emirates use its financial investments to "increase [its] influence with USA and European governments and people." It further proposed the creation of a "council by which all investments made by the [United Arab Emirates] are intertwined [with] the strategic vision of the country's foreign and domestic policies," and which would "mandate that all

13

investments in operating companies use the resources at their disposal to influence [United Arab Emirates] policy abroad."

30.     On or about July 14, 2016, the defendant MATTHEW GRIMES emailed the defendant RASHID SULTAN RASHID AL MALIK ALSHAHHI a draft presentation further outlining the strategy proposal.   The presentation proposed the creation of a guidance board "through which all [United Arab Emirates] investments are intertwined with the strategic vision of the country's foreign and domestic policies as well as economic goals," with the guidance board mandating "that all investments in operating companies use the resources at their disposal to influence [United Arab Emirates' interests] abroad . . . and partner with leading [United Arab Emirates] friendly-influential figures to do so."   The presentation further proposed that the defendant THOMAS JOSEPH BARRACK work directly with Emirati Official 2 to execute the proposed strategy.

31.     On or about July 16, 2016, the defendant RASHID SULTAN RASHID AL MALIK ALSHAHHI emailed the defendant THOMAS JOSEPH BARRACK, "Our friends are extremely happy and proud of our relationships with you!   Beyond expectations!"

32.     On or about July 20, 2016, the defendant RASHID SULTAN RASHID AL MALIK ALSHAHHI sent a text message to the defendant MATTHEW GRIMES that stated, "Let's finish Saudi/UAE/USA strategy."   A few days later, on or about July 25, 2016, GRIMES sent a text message to AL MALIK stating that he would continue to revise the presentation on the strategy proposal.   AL MALIK responded that they would be meeting with Emirati Official 2 the following week.   On or about July 26, 2016, AL MALIK sent a text message to GRIMES stating that United Arab Emirates officials were "expecting

14

ou[r] strategy." GRIMES responded that the defendant THOMAS JOSEPH BARRACK "ha[d] the presentation and is reviewing it."

33. On or about July 27, 2016, the defendant MATTHEW GRIMES emailed the defendant RASHID SULTAN RASHID AL MALIK ALSHAHHI an updated version of the presentation, which had been revised to indicate that it would be presented by the defendant THOMAS JOSEPH BARRACK and AL MALIK in August 2016.

34. On or about August 3, 2016, the defendants THOMAS JOSEPH BARRACK, MATTHEW GRIMES and RASHID SULTAN RASHID AL MALIK ALSHAHHI flew to Tangier, Morocco for the purpose of meeting with Emirati Official 2. After arriving in Morocco, BARRACK met with Emirati Official 2.

35. On or about August 7, 2016, the defendant RASHID SULTAN RASHID AL MALIK ALSHAHHI emailed the defendant THOMAS JOSEPH BARRACK and provided the email address for Emirati Official 2. On or about August 16, 2016, the defendant MATTHEW GRIMES sent a text message to AL MALIK stating that BARRACK "[l]oved you[r] messages from [Emirati Official 2]." AL MALIK replied, "They are extremely happy. . . . I [g]ave [Emirati Official 2] [BARRACK's] private email."

36. On or about August 22, 2016, the defendant THOMAS JOSEPH BARRACK emailed Emirati Official 2, blind copying the defendant RASHID SULTAN RASHID AL MALIK ALSHAHHI, and advised Emirati Official 2, among other things, "We are on track on all counts and I have updated your team." AL MALIK forwarded BARRACK's email to Emirati Official 4.

37. On or about August 25, 2016, the defendant RASHID SULTAN RASHID AL MALIK ALSHAHHI sent a text message to the defendant MATTHEW

15

GRIMES that Emirati Official 4 would call the defendant THOMAS JOSEPH BARRACK.

That same day, Emirati Official 4 and BARRACK communicated via telephone.   GRIMES

sent a text message to AL MALIK: "Great call!!"

    E.    The Encrypted Messaging Application

    38.    In or about and between September 2016 and October 2016, the

defendants THOMAS JOSEPH BARRACK and MATTHEW GRIMES, with the assistance

of the defendant RASHID SULTAN RASHID AL MALIK ALSHAHHI, acquired a

dedicated cellular telephone and installed a sfecure messaging application to facilitate

BARRACK's communications with senior United Arab Emirates officials.

    39.    On or about September 6, 2016, the defendant MATTHEW GRIMES

sent a text message to the defendant RASHID SULTAN RASHID AL MALIK ALSHAHHI

stating, "[BARRACK] wanted me to let you know that we need [to] setup meetings within

the next two weeks for [Emirati Official 2] and our friends.   Everybody is coming to

[BARRACK] asking for personal meetings with [the Candidate].   So we need to do it soon."

AL MALIK replied, "Relayed the msg."

    40.    On or about September 25, 2016, the defendant THOMAS JOSEPH

BARRACK emailed the defendant RASHID SULTAN RASHID AL MALIK ALSHAHHI

to advise that a senior United Arab Emirates official had called BARRACK.   The following

day, an employee at Company A emailed BARRACK that AL MALIK had been "[l]ooking

to reach you on behalf of his Abu Dhabi contacts."   That same day, Emirati Official 4 sent a

text message to AL MALIK stating that Emirati Official 1 and BARRACK were "supposed

to talk today," and that Emirati Official 4 had sent BARRACK "a link for a secure

application [Emirati Official 1] uses."   AL MALIK then sent a text message to the defendant

16

MATTHEW GRIMES directing him to tell BARRACK that Emirati Official 4 had sent him

the aforementioned message.   AL MALIK separately sent a text message to BARRACK

stating that "they were trying to connect with u [sic] from [the United Arab Emirates] today."

        41.     On or about September 27, 2016, Emirati Official 4 sent a text message

to the defendant RASHID SULTAN RASHID AL MALIK ALSHAHHI to inquire whether

AL MALIK had contacted the defendant THOMAS JOSEPH BARRACK "[r]egarding the

application."   Subsequently, AL MALIK advised Emirati Official 4 that Emirati Official 4

should brief Emirati Official 2 "ASAP."   Thereafter, AL MALIK sent a text message to the

defendant MATTHEW GRIMES stating that Emirati Official 2 wanted to speak with

BARRACK.   Subsequently, AL MALIK advised GRIMES that he needed to update "the

AD [Abu Dhabi] guys" regarding the secure messaging application that Emirati Official 4

had sent to BARRACK on or about September 25, 2016.   GRIMES responded:

"Downloading now."

        42.     On or about September 28, 2016, the defendant RASHID SULTAN

RASHID AL MALIK ALSHAHHI sent a text message to the defendant MATTHEW

GRIMES advising him to acquire a dedicated cellular telephone on which the defendant

THOMAS JOSEPH BARRACK and GRIMES could download the secure messaging

application that Emirati Official 4 had sent to BARRACK on or about September 25, 2016,

so that BARRACK could "talk to our friends."

        43.     On or about September 29, 2016, the defendant RASHID SULTAN

RASHID AL MALIK ALSHAHHI sent a text message to the defendant MATTHEW

GRIMES stating that Emirati Official 2 was "trying to speak with [BARRACK]" and "[t]he

app is [a] secure line."   Thereafter, AL MALIK sent Emirati Official 4 a message from the

defendant THOMAS JOSEPH BARRACK stating, "Rashid, received text from [Emirati Official 1], it was amazing, thanks for keeping in touch with your friends, will keep you posted . . . great job.   From [BARRACK]."

44.   On or about October 5, 2016, the defendant MATTHEW GRIMES sent a text message to the defendant RASHID SULTAN RASHID AL MALIK ALSHAHHI stating that the dedicated cellular telephone on which the defendant THOMAS JOSEPH BARRACK and GRIMES would download the secure messaging application was scheduled to arrive the following day.

45.   On or about October 6, 2016, the defendant RASHID SULTAN RASHID AL MALIK ALSHAHHI sent a text message to the defendant MATTHEW GRIMES asking, "Do u [sic] have the phone ready with the app?"   GRIMES replied, "Just text[ed] [Emirati Official 4].   We did it. I have phone."   AL MALIK then sent a text message to Emirati Official 4, stating "[BARRACK] is ready with the phone."   Emirati Official 4 responded, "Yeah he told me. I just tried doing a test call before telling [Emirati Official 2]."

F.   The BARRACK Op-Ed

46.   In or about October 2016, the defendant THOMAS JOSEPH BARRACK published an opinion article in a national media outlet relating to United States foreign policy (the "Op-Ed").   Prior to the publication of the Op-Ed, the defendant MATTHEW GRIMES solicited and received input from senior United Arab Emirates officials relating to the Op-Ed through the defendant RASHID SULTAN RASHID AL MALIK ALSHAHHI.

18

47.     On or about October 8, 2016, the defendants MATTHEW GRIMES

and RASHID SULTAN RASHID AL MALIK ALSHAHHI exchanged text messages about

the planned Op-Ed.   AL MALIK reminded GRIMES to obtain "our friends [sic] inputs,"

and that GRIMES should send AL MALIK an outline for him to forward to Emirati

Official 4.   GRIMES then agreed to meet with AL MALIK to review the outline.

48.     On or about October 10, 2016, the defendant RASHID SULTAN

RASHID AL MALIK ALSHAHHI asked Emirati Official 4 to call him.   Thereafter, AL

MALIK sent a text message to the defendant MATTHEW GRIMES containing talking

points about United States-Middle East foreign policy for BARRACK's Op-Ed.   GRIMES

replied, "From Abu Dhabi?"   AL MALIK then confirmed that the talking points came from

Emirati Official 4.   Emirati Official 4 then sent a text message to AL MALIK containing

additional talking points about United States-Middle East foreign policy for the Op-Ed; AL

MALIK copied and sent the message to GRIMES.

49.     On or about October 13, 2016, the defendant MATTHEW GRIMES

emailed the defendant RASHID SULTAN RASHID AL MALIK ALSHAHHI a draft of the

Op-Ed and solicited input.   AL MALIK then sent a text message containing the draft of the

Op-Ed to Emirati Official 4, stating, "Read the plan and let me know cuz [BARRACK] will

publish it soon."   Later that day, GRIMES sent a text message to AL MALIK asking, "Any

word from [Emirati Official 4]?"   GRIMES then clarified that he was referring to the

Op-Ed.   AL MALIK replied that Emirati Official 4 would run the Op-Ed by Emirati

Official 2 shortly and would then provide "feedback."

50.     On or about October 14, 2016, Emirati Official 4 sent a text message to

the defendant RASHID SULTAN RASHID AL MALIK ALSHAHHI stating that the "article

19

is great in concept."   AL MALIK forwarded the message to the defendant MATTHEW

GRIMES and stated, "That's the feedback."   AL MALIK further clarified, "Big boss loved

it."

       51.    On or about October 16, 2016, Emirati Official 4 sent a text message to

the defendant RASHID SULTAN RASHID AL MALIK ALSHAHHI about the draft Op-Ed,

and stated, "Let me send you a feedback. I prefer that you see it and say to [BARRACK]."

       52.    On or about October 18, 2016, the defendant MATTHEW GRIMES

sent the defendant RASHID SULTAN RASHID AL MALIK ALSHAHHI what appeared to

be an updated draft of the Op-Ed.   The prior draft of the Op-Ed had identified certain

Middle Eastern governments as "dictatorships."   AL MALIK subsequently advised

GRIMES, "They didn't like Dictatorships word. . . . If you can say some of the governments

or regimes.   Because they don't want to be also labeled as dictators.   Which is true."

GRIMES agreed to change the language to "regimes."   GRIMES then sent AL MALIK an

updated draft of the Op-Ed that removed the reference to "dictatorships."

       53.    On or about October 22, 2016, the defendant THOMAS JOSEPH

BARRACK published the Op-Ed.   In the Op-Ed, BARRACK referred to Middle Eastern

governments as "regimes," not "dictatorships."   BARRACK also praised the "brilliant

young leaders" of the United Arab Emirates and certain other Middle Eastern countries.

BARRACK emailed the Op-Ed to the defendant RASHID SULTAN RASHID AL MALIK

ALSHAHHI, who replied that he had already sent the Op-Ed to United Arab Emirates

officials.   The defendant MATTHEW GRIMES separately sent a text message to AL

MALIK with a link to the Op-Ed and asked AL MALIK to "[s]end to our friends!" AL

MALIK sent BARRACK's Op-Ed to Emirati Official 4 via text message.   On or about

October 24, 2016, AL MALIK advised Emirati Official 4 that BARRACK was "asking how Boss liked the article?"

      G.      Assistance to the United Arab Emirates During the Presidential Transition

      54.      In or about and between November 2016 and January 2017, the defendants RASHID SULTAN RASHID AL MALIK ALSHAHHI, THOMAS JOSEPH BARRACK and MATTHEW GRIMES repeatedly took steps to assist the United Arab Emirates in connection with the transition to the incoming administration of the United States President-Elect.

      55.      On or about November 9, 2016, the defendant RASHID SULTAN RASHID AL MALIK ALSHAHHI advised the defendant THOMAS JOSEPH BARRACK that Emirati Official 2 wanted to speak with BARRACK on a telephone call.   That same day, BARRACK and Emirati Official 3 communicated briefly on a telephone call.   Over the next day, AL MALIK, BARRACK and the defendant MATTHEW GRIMES coordinated a telephone call between BARRACK and United Arab Emirates officials.

      56.      On or about November 10, 2016, the defendant THOMAS JOSEPH BARRACK spoke by telephone with multiple United Arab Emirates officials, including Emirati Official 6.   That same day, the defendant RASHID SULTAN RASHID AL MALIK ALSHAHHI sent a text message to the defendant MATTHEW GRIMES providing contact information for Emirati Official 4 and Emirati Official 6 and indicating that both of them reported to Emirati Official 2.   GRIMES advised AL MALIK that they needed to identify "times that [would] work with [the President-Elect]."   GRIMES then provided the contact information for Emirati Official 6, as well as the names and titles for Emirati Official 1 and Emirati Official 2 to an assistant to BARRACK who, in turn, provided that information to an

assistant to the President-Elect.   Thereafter, Emirati Official 6 and the assistant to the

President-Elect arranged a telephone call between the President-Elect and Emirati Official 1.

AL MALIK then sent a text message to GRIMES to confirm that "the call [was] set."

GRIMES advised AL MALIK that he had confirmed the telephone call with Emirati

Official 6.   Subsequently, AL MALIK sent a text message to GRIMES: "It's done, great call

. . . . WoW."   That same day, BARRACK emailed Emirati Official 5 that he had "arranged"

the telephone call between the President-Elect and Emirati Official 1.

57.     On or about November 11, 2016, the defendant THOMAS JOSEPH

BARRACK sent a text message to the defendant RASHID SULTAN RASHID AL MALIK

ALSHAHHI containing a link to a news article reporting that BARRACK could be

appointed as Chairman of the Presidential Inaugural Committee.   In response, AL MALIK

advised both BARRACK and the defendant MATTHEW GRIMES that AL MALIK wanted

to be involved and would "take care of ME [Middle East] side" of the process, adding to

GRIMES that it would "position us well."   Both BARRACK and GRIMES agreed.

58.     On or about November 16, 2016, Emirati Official 5 contacted the

defendant THOMAS JOSEPH BARRACK and asked BARRACK to provide insight on the

President-Elect's potential appointments to the positions of United States Secretary of State,

United States Secretary of Defense, Director of the Central Intelligence Agency and United

States National Security Advisor, noting, "I would only brief my bosses.   Any indicators

would be highly appreciated."   BARRACK responded, "I do, and we're working through

them in real time and I have our regional interest in high profile.   When you get a chance

let's talk by phone."

59.     On or about November 17, 2016, the defendant RASHID SULTAN
RASHID AL MALIK ALSHAHHI asked the defendant MATTHEW GRIMES to inform the
defendant THOMAS JOSEPH BARRACK that Emirati Official 3, who AL MALIK
identified to GRIMES by title, sent a text message to and called BARRACK on or about
November 16, 2016.   GRIMES responded, "Spoke with [BARRACK] about
everything . . . all good!   And he will call soon. [Emirati Official 3]."   AL MALIK then sent
a text message to Emirati Official 4 stating that BARRACK would contact Emirati Official 3
if he had not already done so.

60.     On or about November 18, 2016, Emirati Official 4 asked the defendant
RASHID SULTAN RASHID AL MALIK ALSHAHHI to gather information about the
incoming United States National Security Advisor.   In response, AL MALIK advised
Emirati Official 4 that the defendant THOMAS JOSEPH BARRACK already had a
conversation with the incoming United States National Security Advisor about the United
Arab Emirates and that, as a result, "[t]hey already believe in the region partnership.   I will
gather as much as I can."   AL MALIK subsequently asked the defendant MATTHEW
GRIMES about the incoming United States National Security Advisor.

61.     On or about November 24, 2016, the defendants RASHID SULTAN
RASHID AL MALIK ALSHAHHI and MATTHEW GRIMES discussed a potential meeting
between the defendant THOMAS JOSEPH BARRACK and United Arab Emirates officials
in the United Arab Emirates.   AL MALIK advised GRIMES that United Arab Emirates
officials would "share with us some of their ideas."   GRIMES replied that he and
BARRACK "are ready to work on outside!"   GRIMES added that BARRACK was "good

with [GRIMES] going anywhere doing anything to help. . . . Wants to be as help [sic] as we can."

62.     On or about November 25, 2016, the defendant RASHID SULTAN RASHID AL MALIK ALSHAHHI sent a text message to the defendant MATTHEW GRIMES: "Tomorrow I will see [Emirati Official 1's] team and on draft ideas for [BARRACK] to Champion them."   AL MALIK further stated that he was "impressed" with the confidence that the United Arab Emirates officials had in BARRACK.

63.     On or about November 28, 2016, the defendant THOMAS JOSEPH BARRACK sent a text message to the defendant RASHID SULTAN RASHID AL MALIK ALSHAHHI advising AL MALIK that BARRACK could travel to Abu Dhabi on December 2, 2016, to meet with Emirati Official 1.   AL MALIK replied, "Great, [Emirati Official 4] confirmed all ok and waiting for timing with [Emirati Official 1]."   Two days later, AL MALIK and the defendant MATTHEW GRIMES exchanged text messages about the upcoming meeting between BARRACK and Emirati Official 1, during which AL MALIK expressed "how important [GRIMES and AL MALIK were] in the process" and advised GRIMES that AL MALIK was "just a friend" and "not official."

64.     On or about December 1, 2016, the defendants THOMAS JOSEPH BARRACK and MATTHEW GRIMES traveled to the United Arab Emirates, where they first met with the defendant RASHID SULTAN RASHID AL MALIK ALSHAHHI.   The following day, BARRACK met with Emirati Official 1, Emirati Official 2 and Emirati Official 3.   After the meeting, AL MALIK sent a text message to GRIMES stating, "They r [sic] very happy here great feedback."   AL MALIK further texted GRIMES, "Btw [sic] try to think about what [BARRACK] said regarding the 100 days plan/6 months/year/4 years. . .

24

. And me and u will work with the guys here and Saudi." GRIMES replied, "Yes. I'm 110% percent committed in anyway [sic] I can. To help you."

65. On or about December 3, 2016, the defendant RASHID SULTAN RASHID AL MALIK ALSHAHHI sent a text message to Emirati Official 4 that Emirati Official 3 wanted AL MALIK and Emirati Official 4 to work on the plan, as previously discussed by the defendant THOMAS JOSEPH BARRACK, to influence United States foreign policy in the first 100 days, 6 months, 1 year and 4 years of the incoming administration of the United States President-Elect. AL MALIK, writing in Arabic, added that BARRACK would "be with the Arabs." Emirati Official 4 advised AL MALIK to continue proposing ideas to Emirati Official 3. That same day, AL MALIK began drafting a "100 days plan" and confirmed with Emirati Official 4 that Emirati Official 1 and Emirati Official 2 were "very" happy with their progress through BARRACK.

66. On or about December 11, 2016, the defendant RASHID SULTAN RASHID AL MALIK ALSHAHHI created a draft "wish list" of United States foreign policy positions that would benefit the United Arab Emirates. That same day, AL MALIK sent a text message to the defendant MATTHEW GRIMES stating, "I have an idea [a]nd strategy." AL MALIK and GRIMES then arranged to meet.

67. On or about December 17, 2016, the defendant THOMAS JOSEPH BARRACK and Emirati Official 3 communicated via telephone. Also that day, Emirati Official 4 sent a text message to the defendant RASHID SULTAN RASHID AL MALIK ALSHAHHI that BARRACK had sent Emirati Official 4 a message for Emirati Official 3.

68. On or about January 17, 2017, the defendants THOMAS JOSEPH BARRACK and RASHID SULTAN RASHID AL MALIK ALSHAHHI were present in

25

Washington, D.C. and attended the Chairman's Global Dinner, an event BARRACK

organized as the Chairman of the Presidential Inaugural Committee.   AL MALIK attended

as a personal guest of BARRACK.   On or about January 20, 2017, BARRACK, the

defendant MATTHEW GRIMES and AL MALIK attended the Presidential Inauguration and

social events related to the Presidential Inauguration.   AL MALIK attended as a personal

guest of BARRACK.

      H.     Assistance to the United Arab Emirates in the New Presidential
            Administration

      69.     In or about and between January 2017 and October 2017, the

defendants THOMAS JOSEPH BARRACK and MATTHEW GRIMES acted, in concert

with the defendant RASHID SULTAN RASHID AL MALIK ALSHAHHI, to aid the United

Arab Emirates in its dealings with the executive branch of the United States government.

      70.     On or about January 23, 2017, the defendant RASHID SULTAN

RASHID AL MALIK ALSHAHHI advised the defendant MATTHEW GRIMES that he had

spoken with a United Arab Emirates official and that there was a "great opportunity" for the

United States government "to list" the Muslim Brotherhood, a transnational Sunni Islamist

organization, "on the list" – a reference to designation as a foreign terrorist organization.

AL MALIK advised GRIMES, "This will be a huge win.   If we can list them.   And they

deserve to be."   GRIMES responded, "Yes.   At your direction."   On or about February 8,

2017, AL MALIK sent GRIMES a news article reporting that the United States government

was considering whether to designate the Muslim Brotherhood as a terrorist organization.

      71.     On or about January 23, 2017, the defendant RASHID SULTAN

RASHID AL MALIK ALSHAHHI sent a text message to the defendant MATTHEW

26

GRIMES about arranging a telephone call between senior United Arab Emirates officials and the President-Elect (hereafter, the "President"). GRIMES advised AL MALIK that GRIMES had spoken to the defendant THOMAS JOSEPH BARRACK about it. On or about January 29, 2017, GRIMES advised AL MALIK that the President would speak with Emirati Official 1 that day. GRIMES further noted that the telephone call between the President and Emirati Official 1 was arranged "right after I spoke to [BARRACK] about it again last night." GRIMES subsequently advised AL MALIK, "We can take credit for phone call."

72.     On or about March 14, 2017, a senior official from the Kingdom of Saudi Arabia, a close ally of the United Arab Emirates, visited the White House. The following day, the defendant THOMAS JOSEPH BARRACK sent a text message to the defendant RASHID SULTAN RASHID AL MALIK ALSHAHHI advising AL MALIK that he had briefed the President regarding the meeting with the senior official from the Kingdom of Saudi Arabia and that BARRACK had arranged for another senior United States government official to speak with Emirati Official 1 on a telephone call. AL MALIK replied, "Amazing." Subsequently, BARRACK advised AL MALIK that BARRACK had taken care of the senior official from the Kingdom of Saudi Arabia and "force[d]" the White House to "elevate" the senior official "for protocol purposes." BARRACK further stated that he had "program[med]" two senior United States government officials that day regarding the senior official from the Kingdom of Saudi Arabia.

73.     On or about March 21, 2017, the defendant RASHID SULTAN RASHID AL MALIK ALSHAHHI contacted the defendants THOMAS JOSEPH BARRACK and MATTHEW GRIMES and stated that AL MALIK needed to meet with

27

them.   After BARRACK and AL MALIK arranged to meet the following day, AL MALIK

stated, "[Emirati Official 2] is coming in few days.   Need to brief u.   Then the big

guy. . . . They have high expectations from us.   They love you."   AL MALIK subsequently

clarified that the United Arab Emirates officials would be traveling to Washington, D.C.

        74.     On or about May 14, 2017, the defendant THOMAS JOSEPH

BARRACK sent a text message to the defendant RASHID SULTAN RASHID AL MALIK

ALSHAHHI stating that he would "remain on the sidelines to help [the United Arab

Emirates] navigage [sic]" the new United States government administration.   AL MALIK

subsequently stated, "Our ppl wants u to help.   They were hoping you can officially run the

agendas."   BARRACK replied, "I will!"

     I.      Assistance to the United Arab Emirates with Appointments in the New
            Presidential Administration

        75.     Beginning in approximately March 2017, the defendant THOMAS

JOSEPH BARRACK, in concert with the defendants RASHID SULTAN RASHID AL

MALIK ALSHAHHI and MATTHEW GRIMES, as part of their actions on behalf of the

United Arab Emirates, agreed to advocate for the appointment of individuals favored by the

United Arab Emirates in the new United States government administration.

        76.     On or about March 13, 2017, the defendant RASHID SULTAN

RASHID AL MALIK ALSHAHHI sent the defendant MATTHEW GRIMES the résumé for

a United States Congressman (the "Congressman"), an individual whose identity is known to

the Grand Jury, that the United Arab Emirates wanted appointed as United States

Ambassador to the United Arab Emirates.   AL MALIK advised GRIMES that the

appointment of the Congressman was "important for our friends. Because ur [sic] are about to change the current one."   GRIMES agreed to relay the message to BARRACK.

77.   On or about March 15, 2017, the defendant RASHID SULTAN RASHID AL MALIK ALSHAHHI asked the defendant THOMAS JOSEPH BARRACK to assist the United Arab Emirates in securing the appointment of the Congressman as United States Ambassador to the United Arab Emirates, stating: "They r [sic] very keen on the ambassador they suggested to help the relationship.   Your help will go long way." BARRACK replied, "Yes – give me name again."   AL MALIK then provided BARRACK with the Congressman's résumé.   BARRACK further advised AL MALIK that Emirati Official 1 "should let [a senior United States official] know[ ]when he speaks to him that he would be happy to work with me as a special envoy . . . . [I]t would be helpful to have [Emirati Official 1] mention[ ]how much he would like[ ]my help."   AL MALIK agreed to relay the message.   AL MALIK subsequently apprised BARRACK that it was "[d]one from our side," and that BARRACK should "[g]et close with [a United Arab Emirates official] he likes you a lot and have great expectations from you."

78.   That same day, in subsequent communications, the defendant RASHID SULTAN RASHID AL MALIK ALSHAHHI advised the defendant THOMAS JOSEPH BARRACK that senior United Arab Emirates officials wanted BARRACK and AL MALIK "to meet with [the Congressman] next week so you can be comfortable with him. . . . I will coordinate with you and him for the best time.   [Emirati Official 2] and [Emirati Official 3] send[s] their best regards. . . . They will support u to the max . . . . All the way and everything."   BARRACK replied: "And me them!"   AL MALIK replied: "Very grateful for your support to us."

79.     On or about April 12, 2017, the defendant THOMAS JOSEPH

BARRACK sent a text message to the defendant RASHID SULTAN RASHID AL MALIK

ALSHAHHI stating that the President had discussed appointing BARRACK as either United

States Ambassador to the United Arab Emirates or as Special Envoy to the Middle East.

BARRACK advised AL MALIK that any such appointment "would give ABU DHABI more

power!"   AL MALIK replied, "This will be great for us.   And make you deliver more.

Very effective operation."   BARRACK responded, "And great for u!"   The following day,

AL MALIK sent a text message to BARRACK stating that senior United Arab Emirates

officials "love the idea" of BARRACK's potential appointment and would give him their

support.

J.     Emirati Official 1's White House Visit

80.     In or about May 2017, the defendants RASHID SULTAN RASHID AL

MALIK ALSHAHHI, THOMAS JOSEPH BARRACK and MATTHEW GRIMES took

steps to aid United Arab Emirates officials in connection with Emirati Official 1's White

House visit on or about May 15, 2017, and to report information about that meeting to United

Arab Emirates officials.

81.     On or about May 14, 2017, the defendants THOMAS JOSEPH

BARRACK and RASHID SULTAN RASHID AL MALIK ALSHAHHI discussed Emirati

Official 1's upcoming White House visit, scheduled for the following day, during which AL

MALIK stated that AL MALIK would be meeting with United Arab Emirates officials in

Washington, D.C.   BARRACK asked AL MALIK, "Do u [sic] want me to make sure [two

senior United States officials are] in [the] meetings[?]" AL MALIK responded, "Yes plz

[sic]."

82.     On or about May 15, 2017, Emirati Official 1, Emirati Official 2 and Emirati Official 3 attended meetings at the White House.   Simultaneously, the defendants MATTHEW GRIMES and RASHID SULTAN RASHID AL MALIK ALSHAHHI arranged for the defendant THOMAS JOSEPH BARRACK to meet with senior United Arab Emirates officials in the United Arab Emirates in the coming weeks.   That same day, BARRACK instructed a business associate, "Rashid [AL MALIK] is on his way to DC.   Please make sure you guys get together and we help Abu Dhabi with whatever they need."   The following day, BARRACK advised AL MALIK that he had "lots of info on [the White House] meeting!"

83.     On or about May 16, 2017, the defendants RASHID SULTAN RASHID AL MALIK ALSHAHHI and THOMAS JOSEPH BARRACK discussed arrangements for BARRACK to meet with Emirati Official 1 and Emirati Official 2, with AL MALIK advising BARRACK that Emirati Official 3 wanted to ensure that both Emirati Official 1 and Emirati Official 2 were present for the meeting with BARRACK. BARRACK agreed.   Thereafter, the defendant MATTHEW GRIMES and AL MALIK discussed via text message that BARRACK would provide AL MALIK with information about the meetings that occurred at the White House on or about May 15, 2017.   AL MALIK further advised GRIMES that GRIMES was "the hero of [Emirati Official 1] [and] [Emirati Official 2]."

   K.     The Qatari Blockade and Continuing Efforts to Assist the United Arab Emirates

84.     In or about and between June 2017 and October 2017, the defendants RASHID SULTAN RASHID AL MALIK ALSHAHHI, THOMAS JOSEPH BARRACK

and MATTHEW GRIMES took steps to advance the United Arab Emirates' foreign policy interests by attempting to influence United States foreign policy, including United States foreign policy with respect to the State of Qatar.

85.     On or about June 5, 2017, the defendant RASHID SULTAN RASHID AL MALIK ALSHAHHI sent a text message to the defendants THOMAS JOSEPH BARRACK and MATTHEW GRIMES containing an Internet link to a news article reporting that the United Arab Emirates, along with several other Middle Eastern governments, had severed ties with the State of Qatar.   The following day, AL MALIK relayed talking points to GRIMES that promoted Emirati Official 1 and the United Arab Emirates.   GRIMES later advised that BARRACK had requested the talking points.

86.     On or about July 8, 2017, the defendant RASHID SULTAN RASHID AL MALIK ALSHAHHI sent a text message to the defendant THOMAS JOSEPH BARRACK stating that he was in Washington, D.C. with a United Arab Emirates official and that AL MALIK and the United Arab Emirates official wanted "to set up a meeting for u [sic] with [Emirati Official 2] . . . to come to push our plan!"   BARRACK responded, "I am so ready!"   BARRACK added that AL MALIK was "the secret weapon to get Abu Dhabi's plan initiated by the [President]."

87.     On or about September 13, 2017, the defendant MATTHEW GRIMES sent a text message to the defendant RASHID SULTAN RASHID AL MALIK ALSHAHHI stating, "Heads up, [Emirati Official 1] is meeting with [a former United States government official ("U.S. Person 2"), an individual whose identity is known to the Grand Jury] on Friday.   Please keep super confidential."   GRIMES further advised AL MALIK that the defendant THOMAS JOSEPH BARRACK and GRIMES "worked hard to show [U.S.

32

Person 2] how strong of allies we are.   Very hard. . . . [BARRACK] spent lots of time."   AL

MALIK then confirmed with GRIMES that U.S. Person 2 "was briefed by [BARRACK] a

lot on [Emirati Official 1] and his vision."   GRIMES added that BARRACK "worked hard

to show our friendship and alliance," and that BARRACK had met with U.S. Person 2 many

times in the past several weeks "[a]bout this meeting" with Emirati Official 1, in which

BARRACK was "[c]hampioning [the] UAE."

88.     On or about September 20, 2017, the defendants THOMAS JOSEPH

BARRACK and RASHID SULTAN RASHID AL MALIK ALSHAHHI met in New York

City.   During the meeting, BARRACK advised AL MALIK that the United States

government was considering convening a summit at the Naval Support Facility Thurmont,

also known as "Camp David," with senior government officials from the United Arab

Emirates, the State of Qatar and other Middle Eastern governments to address the ongoing

dispute between the State of Qatar and the United Arab Emirates and other Middle Eastern

governments.   AL MALIK subsequently relayed this information to United Arab Emirates

officials and indicated that he did not believe such a meeting was in the interests of the

United Arab Emirates.

89.     On or about September 22, 2017, the defendant RASHID SULTAN

RASHID AL MALIK ALSHAHHI advised the defendant THOMAS JOSEPH BARRACK

that he had "a msg" and arranged to meet BARRACK on or about September 25, 2017 in

Los Angeles, California.   After meeting with AL MALIK on or about September 25, 2017,

BARRACK, through his assistant, emailed an executive assistant to the President, requesting

to speak to the President, as he had "something very important to share . . . about the Middle

East."   On or about September 27, 2017, AL MALIK sent a text message to BARRACK

33

stating, "I have very special thanks and appreciations from the big guy.   All respect for your efforts."

90.     On or about October 11, 2017, the defendant MATTHEW GRIMES sent a text message to the defendant RASHID SULTAN RASHID AL MALIK ALSHAHHI containing an Internet link to a news article profiling the defendant THOMAS JOSEPH BARRACK, which discussed how BARRACK had advised the President not to get involved in the ongoing dispute between the State of Qatar and other Middle Eastern governments, including the United Arab Emirates.   AL MALIK replied that BARRACK had told AL MALIK "that in this article [BARRACK] praised [Emirati Official 1] for his alliance with [the United States] for 30 years!   But it wasn't mentioned [i]n this one."   GRIMES responded that BARRACK did so during the interview, to which AL MALIK replied that the news organization had not included BARRACK's praise of Emirati Official 1 in the news article.

91.     Thereafter, the defendant RASHID SULTAN RASHID AL MALIK ALSHAHHI advised United Arab Emirates officials that he had spoken to the defendant THOMAS JOSEPH BARRACK and that BARRACK was "not happy about missing lots of parts of his interview specially [sic] about we have to support our longest ally in the current leadership [Emirati Official 1]," and that BARRACK, through the news article, "wanted to tell others indirectly in [the United States] specially [sic] [a senior United States government official] that [BARRACK] know[s] the region very well and don't interfere (By telling the [President] don't do it but can't specify the Camp David)."

92.     On or about October 13, 2017, the defendant RASHID SULTAN RASHID AL MALIK ALSHAHHI created a note in his cellular telephone containing a draft

message for United Arab Emirates officials, in which AL MALIK wrote that he had met the

defendant THOMAS JOSEPH BARRACK the previous day and that BARRACK had

advised AL MALIK that several senior United States government officials were seeking to

convince the President "that Qatar is a victim!  And that all of other countries (Saudi, UAE)

are also funding [terrorist] groups!!!"  The note further stated that BARRACK had further

advised AL MALIK that the State of Qatar was "pushing all the tactics to isolate [the United

Arab Emirates]" from support in the United States government.

V.    The Defendants' Failure to Comply with the Notification Requirement

93.    At no time did the defendants RASHID SULTAN RASHID AL

MALIK ALSHAHHI, THOMAS JOSEPH BARRACK or MATTHEW GRIMES provide

notification to the Attorney General that they were acting in the United States as agents of a

foreign government, specifically the United Arab Emirates, as required by law.

94.    At no time was the defendant RASHID SULTAN RASHID AL

MALIK ALSHAHHI, the defendant THOMAS JOSEPH BARRACK or the defendant

MATTHEW GRIMES:

(a)    a duly accredited diplomatic or consular official of a foreign

government, recognized by the United States Department of State;

(b)    an officially and publicly acknowledged and sponsored official or

representative of a foreign government; or

(c)    an officially and publicly acknowledged and sponsored member of the

staff of, or employee of, any such officer, official or representative described in subsection

(a) or (b).

35

95.     None of the conduct described herein, as engaged in by the defendants RASHID SULTAN RASHID AL MALIK ALSHAHHI, THOMAS JOSEPH BARRACK and MATTHEW GRIMES, constituted a legal commercial transaction.

VI.     The Defendants' Efforts to Obtain Investments from United Arab Emirates Sovereign Wealth Funds

96.     At the same time that the defendants RASHID SULTAN RASHID AL MALIK ALSHAHHI, THOMAS JOSEPH BARRACK and MATTHEW GRIMES acted at the direction of United Arab Emirates officials and aided and abetted one another in so acting, BARRACK and GRIMES also made numerous and concerted efforts both directly and through AL MALIK to solicit the assistance of United Arab Emirates officials, including Emirati Official 1 and Emirati Official 2, in obtaining hundreds of millions of dollars in investments for Company A by United Arab Emirates sovereign wealth funds, including UAE SWF 1 and UAE SWF 2.

97.     According to records maintained by Company A, Company A raised no new capital from United Arab Emirates sovereign wealth funds between 2009 and 2016. However, in 2017 and 2018, in part as a result of the efforts of the defendants THOMAS JOSEPH BARRACK and MATTHEW GRIMES and the assistance of the defendant RASHID SULTAN RASHID AL MALIK ALSHAHHI and United Arab Emirates officials, Company A raised approximately $374 million in capital commitments from United Arab Emirates sovereign wealth funds.

98.     Beginning in or about April 2016, in advance of the meeting between the defendant THOMAS JOSEPH BARRACK and Emirati Official 2 on or about May 1, 2016, in the United Arab Emirates, the defendant MATTHEW GRIMES discussed via text

36

message with the defendant RASHID SULTAN RASHID AL MALIK ALSHAHHI that he was preparing an investor presentation for Company A. AL MALIK advised GRIMES that the presentation would be made to Emirati Official 2. Thereafter, GRIMES advised BARRACK that he had sent the presentation to AL MALIK.

99.     On or about December 12, 2016, the defendant MATTHEW GRIMES sent an email to a Company A employee, with the subject line: "UAE Fund Structure," in which GRIMES discussed the "structuring of a fund that [AL MALIK] [wa]s setting up on behalf of [UAE SWF 2, Emirati Official 2 and Emirati Official 1]."

100.    On or about December 13, 2016, the defendant MATTHEW GRIMES emailed himself a document summarizing the structure of the proposed investment fund, which stated in relevant part that "[w]hile the primary purpose of the [investment fund] [will be] to achieve outsized financial returns, it will also accomplish a secondary mandate to garner political credibility for its contributions to the policies of [the President-Elect]. . . . We will do so by sourcing investing, financing, operationally improving, and harvesting assets in . . . those industries which will benefit most from a [President-Elect] Presidency."

101.    On or about April 17, 2017, the defendant MATTHEW GRIMES sent a text message to the defendant RASHID SULTAN RASHID AL MALIK ALSHAHHI, stating that the defendant THOMAS JOSEPH BARRACK "is going to go to the Middle East to raise money for [the proposed investment fund] and wants you to lead the effort[.]" GRIMES further indicated that BARRACK wanted to speak with AL MALIK on the telephone. The following day, BARRACK and AL MALIK communicated via telephone.

102.    On or about April 26, 2017, the defendant RASHID SULTAN RASHID AL MALIK ALSHAHHI sent a text message to the defendant MATTHEW

37

GRIMES that their "pitch" would be with Emirati Official 1 and a senior executive officer
with UAE SWF 1.

103.    On or about June 6, 2017, Company A, in conjunction with another
investment management firm, purchased a commercial property (the "Commercial
Property") located in Los Angeles, California.

104.    On or about June 20, 2017, the defendant RASHID SULTAN RASHID
AL MALIK ALSHAHHI sent a text message to the defendant THOMAS JOSEPH
BARRACK, "[Emirati Official 3] asked me to send our funds plan to [UAE SWF 1]."
BARRACK agreed.

105.    On or about July 8, 2017, the defendant RASHID SULTAN RASHID
AL MALIK ALSHAHHI sent a text message to the defendant THOMAS JOSEPH
BARRACK that Emirati Official 3 "want[ed] to set up a meeting for u with [Emirati Official
2] and will invite" a senior executive officer of UAE SWF 1 "to come to push our plan !"
AL MALIK further noted that Emirati Official 3 would "try [to] connect your team and
[UAE SWF 1]."

106.    On or about September 18, 2017, the defendant MATTHEW GRIMES
sent a text message to the defendant THOMAS JOSEPH BARRACK in which he discussed
that the defendant RASHID SULTAN RASHID AL MALIK ALSHAHHI "and [Emirati
Official 2] team [should] arrange" an upcoming meeting with UAE SWF 1 about a potential
co-investment with Company A in the Commercial Property.   GRIMES noted that Emirati
Official 2 and Emirati Official 3 had "personally pushed our [Commercial Property] deal."
BARRACK agreed that the meeting with the UAE SWF 1 should be arranged through AL
MALIK and Emirati official 2.

107.    On or about September 20, 2017, the defendant MATTHEW GRIMES sent a text message to another employee at Company A that "for [UAE SWF 1] we need to make sure to only go through [AL MALIK] for meetings. [Emirati Official 2] pushed our [Commercial Property] deal personally and it would be in poor form to deviate from our normal channel.   [BARRACK] on board with this idea."

108.    On or about September 26, 2017, the defendant MATTHEW GRIMES sent a text message to the defendant THOMAS JOSEPH BARRACK confirming "our earlier conversation about [UAE SWF 1]" that "we should use [AL MALIK] and [Emirati Official 2] to set up your meetings with UAE.   Considering that [AL MALIK] and [Emirati Official 2] have personally pushed our recent deals and are pushing from the top on our other deals[.]"   BARRACK agreed.   Thereafter, BARRACK sent a text message to an employee at Company A and advised that Company A should use AL MALIK for "all meetings with [UAE SWF 1]."   GRIMES also emailed the employee at Company A and stated that, "[g]iven the importance of the relationship with [AL MALIK] and the guys at the top, it seems appropriate that he be our proper channel[.]"

109.    On or about September 28, 2017, UAE SWF 1 made a capital commitment to invest approximately $74 million with Company A in the Commercial Property.   The following day, the defendant THOMAS JOSEPH BARRACK emailed a senior executive officer at UAE SWF 1 and stated that he was "honored and privileged" to have UAE SWF 1 as an investment partner in the Commercial Property.   That same day, the defendant RASHID SULTAN RASHID AL MALIK ALSHAHHI sent a text message to BARRACK, "Congrats on [UAE SWF 1]."

110.    During this same time period, Company A was also seeking investors for a digital infrastructure fund, including investments by United Arab Emirates sovereign wealth funds.   On or about February 18, 2018, a Company A employee emailed an investment tracker to other Company A employees, which listed the status of capital commitments by various potential investors in the digital infrastructure fund.   The investment tracker noted that Company A was anticipating a capital commitment from UAE SWF 2 of approximately $300 million in the digital infrastructure fund.   The investment tracker ascribed UAE SWF 2's anticipated capital commitment to "Barrack Magic."   On or about February 28, 2018, UAE SWF 2 made a capital commitment to invest approximately $300 million with Company A in the digital infrastructure fund.

VII.    BARRACK's Obstruction of Justice and Materially False Statements

111.    In or about February 2019, Federal Bureau of Investigation ("FBI") special agents served federal grand jury subpoenas on several individuals employed by or associated with Company A, including individuals that reported directly to the defendant THOMAS JOSEPH BARRACK, in connection with the criminal investigation of the activities of the defendants RASHID SULTAN RASHID AL MALIK ALSHAHHI, BARRACK and MATTHEW GRIMES.

112.    Following the service of these federal grand jury subpoenas, the defendant THOMAS JOSEPH BARRACK volunteered to speak with FBI special agents. On or about June 20, 2019, FBI special agents interviewed BARRACK, in the presence of counsel, regarding the activities of the defendant RASHID SULTAN RASHID AL MALIK ALSHAHHI, BARRACK and the defendant MATTHEW GRIMES.   At the outset of the interview, United States government officials advised BARRACK, and confirmed that he

40

understood, that lying to federal agents is a federal crime.   Thereafter, during the course of

the interview, BARRACK knowingly made numerous materially false statements relating to

the activities of AL MALIK, BARRACK and GRIMES.

COUNT ONE
(Acting as Agents of a Foreign Government
Without Prior Notification to the Attorney General)

113.    The allegations in paragraphs one through 112 are realleged and

incorporated as if fully set forth in this paragraph.

114.    In or about and between April 2016 and April 2018, both dates being

approximate and inclusive, within the Eastern District of New York and elsewhere, the

defendants RASHID SULTAN RASHID AL MALIK ALSHAHHI, also known as "Rashid

Al Malik" and "Rashid Al-Malik," THOMAS JOSEPH BARRACK and MATTHEW

GRIMES, together with others, did knowingly and intentionally act in the United States as

agents of a foreign government, to wit: the United Arab Emirates, without prior notification

to the Attorney General of the United States, as required by law.

(Title 18, United States Code, Sections 951(a), 2 and 3551 et seq.)

COUNT TWO
(Conspiracy to Act as Agents of a Foreign Government Without
Prior Notice to the Attorney General)

115.    The allegations in paragraphs one through 112 are realleged and

incorporated as if fully set forth in this paragraph.

116.    In or about and between April 2016 and April 2018, both dates being

approximate and inclusive, within the Eastern District of New York and elsewhere, the

defendants RASHID SULTAN RASHID AL MALIK ALSHAHHI, also known as "Rashid

Al Malik" and "Rashid Al-Malik," THOMAS JOSEPH BARRACK and MATTHEW

41

GRIMES, together with others, did knowingly and intentionally conspire to act in the United

States as agents of a foreign government, to wit: the United Arab Emirates, without prior

notification to the Attorney General of the United States as required by law, contrary to Title

18, United States Code, Section 951(a).

117.    In furtherance of the conspiracy and to effect its objects, within the

Eastern District of New York and elsewhere, the defendants RASHID SULTAN RASHID

AL MALIK ALSHAHHI, also known as "Rashid Al Malik" and "Rashid Al-Malik,"

THOMAS JOSEPH BARRACK and MATTHEW GRIMES, together with others, did

commit and caused the commission of, among others, the following:

OVERT ACTS

(a)    On or about the following dates, among others, the defendants

exchanged text messages and emails relating to BARRACK's promotion of the United Arab

Emirates and its foreign policy interests in media appearances:

| DATE | OVERT ACT |
|---|---|
| August 2, 2016 | Emails among BARRACK, GRIMES and AL MALIK |
| August 29, 2016 | Text messages between GRIMES and AL MALIK |
| September 2, 2016 | Emails between BARRACK and AL MALIK |
| September 5, 2016 | Text messages between GRIMES and AL MALIK |
| September 5, 2016 | Emails between BARRACK and AL MALIK |
| September 25, 2016 | Emails between BARRACK and AL MALIK |
| September 27, 2016 | Text messages between GRIMES and AL MALIK |
| October 14, 2016 | Text messages between GRIMES and AL MALIK |

| January 28, 2017 | Text messages between GRIMES and AL MALIK |
| January 31, 2017 | Text messages between GRIMES and AL MALIK |
| March 27, 2017 | Text messages between GRIMES and AL MALIK |
| March 28, 2017 | Text messages between GRIMES and AL MALIK |
| April 20, 2017 | Text messages between GRIMES and AL MALIK |
| May 9, 2017 | Text messages between GRIMES and AL MALIK |
| October 24, 2017 | Text messages among BARRACK, GRIMES and AL MALIK |

(b)     On or about the following dates, among others, the defendants exchanged text messages and emails relating to drafting materials proposing a strategy for the United Arab Emirates to further its foreign policy interests with the United States:

| DATE | OVERT ACT |
| --- | --- |
| July 25, 2016 | Text messages between GRIMES and AL MALIK |
| July 26, 2016 | Text messages between GRIMES and AL MALIK |
| July 27, 2016 | Emails between GRIMES and AL MALIK |
| August 7, 2016 | Emails between BARRACK and AL MALIK |
| August 12, 2016 | Text messages between GRIMES and AL MALIK |
| August 22, 2016 | Emails between BARRACK and AL MALIK |
| December 14, 2016 | Emails between GRIMES and AL MALIK |

(c)     On or about the following dates, among others, the defendants exchanged text messages and emails relating to BARRACK and GRIMES acquiring a

43

cellular telephone and installing a secure messaging application to facilitate BARRACK's

communications with senior officials of the United Arab Emirates:

| DATE | OVERT ACT |
| --- | --- |
| September 6, 2016 | Text messages between GRIMES and AL MALIK |
| September 25, 2016 | Emails between BARRACK and AL MALIK |
| September 25, 2016 | Text messages between GRIMES and AL MALIK |
| September 25, 2016 | Text messages between BARRACK and AL MALIK |
| September 27, 2016 | Text messages between GRIMES and AL MALIK |
| September 28, 2016 | Text messages between GRIMES and AL MALIK |
| September 29, 2016 | Text messages between GRIMES and AL MALIK |
| October 5, 2016 | Text messages between GRIMES and AL MALIK |
| October 6, 2016 | Text messages between GRIMES and AL MALIK |

       (d)      On or about the following dates, among others, the defendants

exchanged text messages and emails relating to BARRACK and GRIMES soliciting and

receiving input from senior United Arab Emirates officials relating to the Op-Ed:

| DATE | OVERT ACT |
| --- | --- |
| October 7, 2016 | Text messages between GRIMES and AL MALIK |
| October 10, 2016 | Text messages between GRIMES and AL MALIK |
| October 13, 2016 | Emails between GRIMES and AL MALIK |
| October 13, 2016 | Text messages between GRIMES and AL MALIK |
| October 14, 2016 | Text messages between GRIMES and AL MALIK |

| | |
|---|---|
| October 18, 2016 | Text messages between GRIMES and AL MALIK |
| October 22, 2016 | Emails between BARRACK and AL MALIK |
| October 22, 2016 | Text messages between GRIMES and AL MALIK |

(e)   On or about the following dates, among others, the defendants exchanged text messages and emails relating to BARRACK providing assistance to the United Arab Emirates in connection with the transition within the United States government to the incoming administration of the President-Elect:

| DATE | OVERT ACT |
|---|---|
| November 9, 2016 | Text messages between GRIMES and AL MALIK |
| November 9, 2016 | Text messages between BARRACK and AL MALIK |
| November 10, 2016 | Text messages between GRIMES and AL MALIK |
| November 10, 2016 | Text messages between BARRACK and AL MALIK |
| November 10, 2016 | Emails between BARRACK and Emirati Official 5 |
| November 16, 2016 | Emails between BARRACK and Emirati Official 5 |
| November 17, 2016 | Text messages between GRIMES and AL MALIK |
| November 18, 2016 | Text messages between GRIMES and AL MALIK |
| November 24, 2016 | Text messages between GRIMES and AL MALIK |
| November 25, 2016 | Text messages between GRIMES and AL MALIK |
| November 28, 2016 | Text messages between GRIMES and AL MALIK |
| November 28, 2016 | Text messages between BARRACK and AL MALIK |
| November 30, 2016 | Text messages between GRIMES and AL MALIK |

45

| December 1, 2016 | Text messages between GRIMES and AL MALIK |
| December 11, 2016 | Text messages between GRIMES and AL MALIK |

      (f)     On or about the following dates, among others, the defendants exchanged text messages and emails relating to BARRACK and GRIMES providing assistance to the United Arab Emirates in its dealings with the executive branch of the United States government:

| DATE | OVERT ACT |
| --- | --- |
| January 23, 2017 | Text messages between GRIMES and AL MALIK |
| January 29, 2017 | Text messages between GRIMES and AL MALIK |
| February 8, 2017 | Text messages between GRIMES and AL MALIK |
| March 15, 2017 | Text messages between BARRACK and AL MALIK |
| March 21, 2017 | Text messages between BARRACK and AL MALIK |
| March 21, 2017 | Text messages between GRIMES and AL MALIK |
| May 14, 2017 | Text messages between BARRACK and AL MALIK |

      (g)     On or about the following dates, among others, the defendants exchanged text messages and emails relating to BARRACK and GRIMES advocating for the appointment of candidates favored by the United Arab Emirates in the new administration of the President in the United States government:

| DATE | OVERT ACT |
| --- | --- |
| March 13, 2017 | Text messages between GRIMES and AL MALIK |
| March 14, 2017 | Text messages between GRIMES and AL MALIK |

| April 12, 2017 | Text messages between BARRACK and AL MALIK |

(h)     On or about the following dates, among others, the defendants exchanged text messages and emails relating to BARRACK aiding United Arab Emirates officials in connection with Emirati Official 1's visit on or about May 15, 2017 to the White House and reporting information about that meeting to United Arab Emirates officials after it occurred:

| DATE | OVERT ACT |
|------|-----------|
| May 14, 2017 | Text messages between BARRACK and AL MALIK |
| May 15, 2017 | Text messages between GRIMES and AL MALIK |
| May 16, 2017 | Text messages between BARRACK and AL MALIK |
| May 16, 2017 | Text messages between GRIMES and AL MALIK |

(i)     On or about the following dates, among others, the defendants exchanged text messages and emails relating to the defendants advancing the foreign policy interests of the United Arab Emirates by influencing the foreign policy of the United States with respect to Qatar:

| DATE | OVERT ACT |
|------|-----------|
| June 3, 2017 | Text messages between BARRACK and AL MALIK |
| June 4, 2017 | Text messages between GRIMES and AL MALIK |
| July 7, 2017 | Text messages between BARRACK and AL MALIK |
| September 13, 2017 | Text messages between GRIMES and AL MALIK |
| September 22, 2017 | Text messages between BARRACK and AL MALIK |

47

| September 27, 2017 | Text messages between BARRACK and AL MALIK |
| October 11, 2017 | Text messages between GRIMES and AL MALIK |

(Title 18, United States Code, Sections 371 and 3551 <u>et</u> <u>seq.</u>)

COUNT THREE
(Obstruction of Justice)

118.    The allegations in paragraphs one through 112 are realleged and incorporated as if fully set forth in this paragraph.

119.    On or about June 20, 2019, within the Eastern District of New York and elsewhere, the defendant THOMAS JOSEPH BARRACK, together with others, did knowingly, intentionally and corruptly obstruct, influence and impede, and attempt to obstruct, influence and impede, an official proceeding, to wit: a Federal Grand Jury investigation in the Eastern District of New York.

(Title 18, United States Code, Sections 1512(c)(2), 2 and 3551 <u>et</u> <u>seq.</u>)

COUNT FOUR
(Material False Statements)

120.    The allegations in paragraphs one through 112 are realleged and incorporated as if fully set forth in this paragraph.

121.    On or about June 20, 2019, within the Eastern District of New York and elsewhere, the defendant THOMAS JOSEPH BARRACK did knowingly and willfully make one or more materially false, fictitious and fraudulent statements and representations in a matter within the jurisdiction of the executive branch of the Government of the United States, to wit: the FBI, in that BARRACK falsely stated and represented to FBI special agents that RASHID SULTAN RASHID AL MALIK ALSHAHHI, also known as "Rashid

48

Al Malik" and "Rashid Al-Malik," did not ask BARRACK to do anything for the United

Arab Emirates, when in fact, as he then and there well knew and believed, AL MALIK asked

BARRACK to assist the United Arab Emirates on numerous occasions.

(Title 18, United States Code, Sections 1001(a)(2) and 3551 et seq.)

## COUNT FIVE
(Material False Statements)

122.    The allegations in paragraphs one through 112 are realleged and

incorporated as if fully set forth in this paragraph.

123.    On or about June 20, 2019, within the Eastern District of New York

and elsewhere, the defendant THOMAS JOSEPH BARRACK did knowingly and willfully

make one or more materially false, fictitious and fraudulent statements and representations in

a matter within the jurisdiction of the executive branch of the Government of the United

States, to wit: the FBI, in that BARRACK falsely stated and represented to FBI special

agents that RASHID SULTAN RASHID AL MALIK ALSHAHHI, also known as "Rashid

Al Malik" and "Rashid Al-Malik," never proffered any policies or requests to BARRACK,

when in fact, as he then and there well knew and believed, MALIK proffered policies and

requests to BARRACK on numerous occasions.

(Title 18, United States Code, Sections 1001(a)(2) and 3551 et seq.)

## COUNT SIX
(Material False Statements)

124.    The allegations in paragraphs one through 112 are realleged and

incorporated as if fully set forth in this paragraph.

125.    On or about June 20, 2019, within the Eastern District of New York

and elsewhere, the defendant THOMAS JOSEPH BARRACK did knowingly and willfully

make one or more materially false, fictitious and fraudulent statements and representations in

a matter within the jurisdiction of the executive branch of the Government of the United

States, to wit: the FBI, in that BARRACK falsely stated and represented to FBI special

agents that other than Gmail, iMessage and WhatsApp, BARRACK never used any

messaging application with anyone associated with the Middle East, and that BARRACK

was never asked to download any messaging application by anyone associated with the

Middle East, when in fact, as he then and there well knew and believed, BARRACK was

asked by Emirati Official 4 and AL MALIK to download a messaging application to

communicate directly with Emirati Official 1 and Emirati Official 2 and used that messaging

application to communicate with United Arab Emirates officials.

(Title 18, United States Code, Sections 1001(a)(2) and 3551 et seq.)

COUNT SEVEN
(Material False Statements)

126.   The allegations in paragraphs one through 112 are realleged and

incorporated as if fully set forth in this paragraph.

127.   On or about June 20, 2019, within the Eastern District of New York

and elsewhere, the defendant THOMAS JOSEPH BARRACK did knowingly and willfully

make one or more materially false, fictitious and fraudulent statements and representations in

a matter within the jurisdiction of the executive branch of the Government of the United

States, to wit: the FBI, in that BARRACK falsely stated and represented to FBI special

agents that BARRACK never had a dedicated telephone to communicate with anyone

associated with the Middle East, was never asked to acquire a dedicated telephone to

communicate with anyone associated with the Middle East and has had only one telephone,

50

the telephone number of which is known to the Grand Jury, when in fact, as he then and there

well knew and believed, BARRACK has had more than one telephone, AL MALIK asked

BARRACK to acquire a dedicated telephone to communicate directly with Emirati Official 1

and Emirati Official 2 via a messaging application and BARRACK in fact acquired a

dedicated telephone to communicate directly with Emirati Official 1 and Emirati Official 2

via the messaging application.

(Title 18, United States Code, Sections 1001(a)(2) and 3551 et seq.)

## COUNT EIGHT
(Material False Statements)

128.    The allegations in paragraphs one through 112 are realleged and

incorporated as if fully set forth in this paragraph.

129.    On or about June 20, 2019, within the Eastern District of New York

and elsewhere, the defendant THOMAS JOSEPH BARRACK did knowingly and willfully

make one or more materially false, fictitious and fraudulent statements and representations in

a matter within the jurisdiction of the executive branch of the Government of the United

States, to wit: the FBI, in that BARRACK falsely stated and represented to FBI special

agents that, after the 2016 United States Presidential Election, BARRACK had no role in

facilitating communications, including arranging telephone calls, between the President-Elect

and officials from the United Arab Emirates, including Emirati Official 1 and Emirati

Official 2, and that he had nothing to do with any phone calls between Emirati Official 1 and

Emirati Official 2 with the President-Elect, when in fact, as he then and there well knew and

believed, BARRACK facilitated communications between the President-Elect and Emirati

Official 1 and Emirati Official 2 after the 2016 Presidential Election, including by arranging

one or more telephone calls between the President-Elect and Emirati Official 1 and Emirati

Official 2 and by providing contact information for Emirati Official 1 and Emirati Official 2

to the President-Elect's assistant.

(Title 18, United States Code, Sections 1001(a)(2) and 3551 et seq.)

<u>COUNT NINE</u>
(Material False Statements)

130.    The allegations in paragraphs one through 112 are realleged and

incorporated as if fully set forth in this paragraph.

131.    On or about June 20, 2019, within the Eastern District of New York

and elsewhere, the defendant THOMAS JOSEPH BARRACK did knowingly and willfully

make one or more materially false, fictitious and fraudulent statements and representations in

a matter within the jurisdiction of the executive branch of the Government of the United

States, to wit: the FBI, in that BARRACK falsely stated and represented to FBI special

agents that BARRACK did not provide any guidance or input into U.S. Person 2's meeting

with Emirati Official 1 in or about September 2017 and that BARRACK did not learn of U.S.

Person 2's meeting with Emirati Official 1 until after the meeting, when in fact, as he then

and there well knew and believed, BARRACK advised U.S. Person 2 to meet with Emirati

Official 1 in or about September 2017 and BARRACK had advance notice of U.S. Person

2's meeting with Emirati Official 1 in or about September 2017.

(Title 18, United States Code, Sections 1001(a)(2) and 3551 et seq.)

<u>CRIMINAL FORFEITURE ALLEGATION AS TO COUNT THREE</u>

132.    The United States hereby gives notice to the defendant charged in

Count Three that, upon his conviction of such offense, the government will seek forfeiture in

accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United

States Code, Section 2461(c), which require any person convicted of such offense to forfeit

any property, real or personal, constituting, or derived from, proceeds obtained directly or

indirectly as a result of such offense.

133.    If any of the above-described forfeitable property, as a result of any act

or omission of the defendant charged in Count Three:

      (a)    cannot be located upon the exercise of due diligence;

      (b)    has been transferred or sold to, or deposited with, a third party;

      (c)    has been placed beyond the jurisdiction of the court;

      (d)    has been substantially diminished in value; or

      (e)    has been commingled with other property which cannot be divided

without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p),

to seek forfeiture of any other property of the defendant up to the value of the forfeitable

property described in this forfeiture allegation.

(Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States

Code, Section 853(p); Title 28, United States Code, Section 2461(c))

A TRUE BILL

FOREPERSON

BREON PEACE
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

F.#: 2018R001309

FORM DBD-34
JUN. 85

No.

# UNITED STATES DISTRICT COURT

## EASTERN *District of* NEW YORK

## CRIMINAL DIVISION

## THE UNITED STATES OF AMERICA

*vs.*

RASHID SULTAN RASHID AL MALIK ALSHAHHI, et al.,

Defendants.

# SUPERSEDING INDICTMENT

(T. 18, U.S.C., §§ 2, 371, 951(a), 981(a)(1)(C), 1001(a)(1), 1001(a)(2), 1512(c)(2) and 3551 et seq.; T. 21, U.S.C., § 853(p); T. 28, U.S.C., § 2461(c))

*A true bill.*

_____     Deighton Reid

*Foreperson*

*Filed in open court this* _____ *day,*

*of* _____ *A.D. 20* _____

_____

*Clerk*

*Bail, $* _____

_____

***Ryan Harris, Samuel Nitze, Hiral Mehta, Craig Heeren, Assistant U.S. Attorneys (718) 254-7000***