# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.  ) | No. 1:21-cr-00371(BMC)(TAM) |
| ) | Hon. Brian M. Cogan |
| MATTHEW GRIMES ) | |

## MR. GRIMES' MOTION TO SEVER

Abbe David Lowell
Christopher D. Man
Andrew E. Tauber
WINSTON & STRAWN LLP
1901 L Street, NW
Washington, DC 20036
ADLowell@winston.com
202-282-5000 (ph)
202-282-5100 (fax)

Sofia Arguello
Johanna Hudgens
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
SArguello@winston.com
212-294-6700 (ph)
212-294-4700 (fax)

*Counsel for Defendant Matthew Grimes*

**TABLE OF CONTENTS**

**Page**

INTRODUCTION .................................................................................................................. 1

BACKGROUND .................................................................................................................... 2

LEGAL STANDARD ............................................................................................................. 4

ARGUMENT .......................................................................................................................... 6

    I.    At a Joint Trial, Mr. Grimes Would Be Substantially Prejudiced by Spillover Bias from the Different Roles He and Mr. Barrack Played and the False-Statement Charges With Which He Is Not Charged .............................. 6

    II.    A Joint Trial Can Result in Inconsistent Defense Theories and Will Inject Complicated Bruton Issues ....................................................................................... 9

    III.    Severance Is Also Warranted Given Mr. Grimes' Interactions with Other Colony Officials and Their Advisors ...................................................................... 11

CONCLUSION ..................................................................................................................... 12

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bruton v. United States*,
   391 U.S. 123 (1968) ................................................................................................. 1, 9, 10

*Lutwak v. United States*,
   344 U.S. 604 (1953) .............................................................................................................. 8

*Nash v. United States*,
   54 F.2d 1006 (2d Cir. 1932) ............................................................................................. 9, 10

*United States v. Guillen-Rivas*,
   950 F. Supp. 2d 446 (E.D.N.Y. 2013) ................................................................................ 5, 9

*United States v. Bailey*,
   399 F. Supp. 526 (M.D. Fla. 1975) .................................................................................... 4, 11

*United States v. Branker*,
   395 F.2d 881 (2d Cir. 1968) ................................................................................................... 7

*United States v. Burke*,
   789 F. Supp. 2d 395 (E.D.N.Y. 2011) .................................................................................... 5

*United States v. Feyrer*,
   333 F.3d 110 (2d Cir. 2003) ................................................................................................... 5

*United States v. Gallo*,
   668 F. Supp. 736 (E.D.N.Y. 1987) ......................................................................................... 5

*United States v. Gilbert*,
   504 F. Supp. 565 (S.D.N.Y. 1980) ......................................................................................... 6

*United States v. Glover*,
   506 F.2d 291 (2d Cir. 1974) ................................................................................................. 11

*United States v. Jones*,
   16 F.3d 487 (2d Cir. 1994) ..................................................................................................... 9

*United States v. Locascio*,
   357 F. Supp. 2d 536 (E.D.N.Y. 2004) ................................................................................. 6, 8

*United States v. Mardian*,
   546 F.2d 973 (D.C. Cir. 1976) ............................................................................................... 8

*United States v. Nordlicht*,
  2018 WL 1796542 (E.D.N.Y. Apr. 16, 2018) ................................................................5, 10

*United States v. Shkreli*,
  260 F. Supp. 3d 247 (E.D.N.Y. 2017) ..................................................................................5

*United States v. Taylor*,
  745 F.3d 15 (2d Cir. 2014)..................................................................................................10

*United States v. Upton*,
  856 F. Supp. 727 (E.D.N.Y. 1994) ....................................................................................6, 7

*Zafiro v. United States*,
  506 U.S. 534 (1993)....................................................................................................2, 5, 7

**Statutes**

18 U.S.C. § 371 ...............................................................................................................................2

18 U.S.C. § 951 .......................................................................................................2, 7, 8, 9, 10

18 U.S.C. § 1001(a)(2).....................................................................................................................2

**Other Authorities**

Fed. R. Crim. P. 14 ................................................................................................................2, 4, 6

## INTRODUCTION

Mr. Grimes is charged with a novel statute applied to him in an unprecedented fashion (i.e., a young assistant carrying out the directions of a US boss). He is presently to be tried alongside that former boss, Thomas Barrack, a sophisticated international businessman with long-standing business and government connections. Mr. Barrack is also being charged with seven additional counts for obstruction of justice and making false statements. During the predecessor investigation to this indictment, led by the Office of Special Counsel ("OSC"), Mr. Grimes fully cooperated and ▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬ and an interview to federal prosecutors. Mr. Barrack also gave interviews, and statements he made therein form the basis of the additional counts against him. The statements that each defendant made in the past, no doubt, would likely be introduced by the government in the case. In addition, the government has indicated that it will call witnesses in its case from Mr. Grimes' former employer, whom counsel for Mr. Grimes can question, perhaps differently, than Mr. Barrack's counsel.

In a joint trial with Mr. Barrack, there is a real possibility that Mr. Grimes' defense would be impaired and his right to a fair trial threatened. A joint trial could easily: (i) lead to spillover bias from the fact that Mr. Grimes is not charged with any of the obstruction-of-justice or false-statement charges and would also be confronted with substantial evidence that does not involve him; (ii) result in the presentation to the jury of competing trial strategies and defenses by Mr. Grimes and Mr. Barrack based on each presenting their different roles at the company and in the events at issue; (iii) inject *Bruton* confrontation issues into the larger trial, since the government can be counted on to offer several out-of-court statements that one defendant has made regarding the alleged conduct that would be inadmissible against the other; and (iv) touch on some of the issues the Court has addressed concerning Colony Capital ("Colony") witnesses.

1

In short, these likely events define a well-supported case for severance pursuant to Rule 14, as the case presents "a serious risk that a joint trial would compromise a specific trial right of one of the defendants, [and] prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993). Accordingly, for the reasons discussed below, Mr. Grimes respectfully requests that this Court sever his trial on Counts One and Two.

## BACKGROUND

At the time of the alleged offenses, Mr. Grimes was a 22-year-old assistant to Mr. Barrack, the Executive Chairman of Colony. Dkt. 105 ¶ 2 ("Superseding Indict."). Hired straight out of college, Mr. Grimes "worked directly with and reported to" Mr. Barrack (*id.* ¶ 3) and assisted Mr. Barrack by relaying messages, coordinating meetings, and drafting materials. *Id.* ¶¶ 27(e), 35, 40–41, 55, 59, 76. Nothing that Mr. Grimes is alleged to have done occurred outside the scope of his "employ[ment]" as Mr. Barrack's assistant at Colony. *Id.* ¶ 3.

There is no evidence that Mr. Grimes ever agreed to be an agent of the UAE or that Mr. Grimes knew or would have known that his alleged activities on behalf of Colony rendered him an agent of the UAE. Nevertheless, Mr. Grimes is charged in two of the superseding indictment's nine counts: Count 1, acting as an unregistered agent of a foreign government in violation of 18 U.S.C. § 951(a), and Count 2, conspiracy to commit the same in violation of 18 U.S.C. § 371. He is not charged in the remainder of the indictment: obstruction of justice (Count 3) and making false statements to the government in violation of 18 U.S.C. § 1001(a)(2) (Counts 4 through 9)—those are alleged against Mr. Barrack only.

During the time period addressed in the indictment (April 2016 – April 2018), Mr. Barrack is alleged to have met and communicated with various foreign officials, hosted inauguration events in honor of and alongside President-Elect Trump and briefed the White House and other executive

2

branch agencies on key matters and meetings affecting the US-UAE relationship. *See* Superseding Indict. ¶¶ 34, 38, 64, 72, 82, 86. Mr. Grimes is alleged to have facilitated some of those meetings and accompanied Mr. Barrack on some of those business trips—as would be expected from an assistant to the Executive Chairman. Despite their vastly different roles, the actions of Messrs. Barrack and Grimes are often blended together both in the indictment and in the filings the government has made in motions practice. *See, e.g.*, *id.* ¶¶ 14, 38, 54, 69, 75, 80, 84; Dkt. 80 at 3–4, 15–16, 58–59, 67, 69, 72; Dkt. 84-1 (chart showing comparison between the indictment's allegations and the government's opposition brief to defendants' Motion to Dismiss and the government's repeated use of the phrase "the defendants"). Additionally, Mr. Grimes cannot foreclose the possibility that his defense will include questioning the Colony witnesses that the government has indicated it plans to call about the different roles he and Mr. Barrack had, and his reliance on those within the company and its advisors. In fact, the superseding indictment added allegations of a business transaction, referred to as the "Commercial Property," that the government believes is now relevant to the charges. *See* Superseding Indict. ¶¶ 96–110. This is but one example of an area where Mr. Grimes would have relied on those at Colony and its outside advisers with compliance responsibilities and experience. *Id.*

As noted above, during the OSC Investigation, both Messrs. Grimes and Barrack made statements (Mr. Grimes ███████████████ and once in an interview, and Mr. Barrack at two interviews, one with the OSC and the second with EDNY prosecutors) that the government will most certainly seek to introduce in a joint trial. Among the statements, Mr. Barrack stated in his interview with EDNY prosecutors that ██████████████████████████████████████ ████████████████████████ *See* Ex. 1 at 15 (Interview of Thomas J. Barrack on June 20, 2019). In that same interview, in connection with allegedly acquiring a dedicated cellphone

3

referenced in the superseding indictment charges against Mr. Barrack, Mr. Barrack stated that ▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ to connect with certain individuals in the Middle East. *Id.* at 23. For his part, Mr. Grimes stated in his interview with the Special Counsel that Rashid Al Malik ▉▉▉▉▉▉▉▉▉▉ and ▉▉▉▉▉▉▉▉ cultivating relationships for Barrack and Colony. *See* Ex. 2 at 8 (Interview of Matthew Grimes on April 3, 2018). Furthermore, Mr. Grimes made other out-of-court statements that the government might introduce. For example, in connection with ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ in or about September 2017, Mr. Grimes stated in a text message to Mr. Al Malik that ▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉. *See* Ex. 3 at 130–31 (GRIMES-000062723). Mr. Al Malik also asked Mr. Grimes whether there had been ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ and he replied, ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ *Id.* at 131. Neither Mr. Grimes nor Mr. Barrack can compel the other to testify to explain such statements (if needed), and so these would constitute out-of-court statements for which there would be no cross-examination. Courts have been particularly sensitive to these possibilities, as even limiting instructions are deemed insufficient. *See United States v. Bailey*, 399 F. Supp. 526, 528 (M.D. Fla. 1975) (granting severance to defendant midway through trial when "it became apparent that essential testimony from a codefendant would not be available to the defendant Bailey in the context of a joint trial.").

## LEGAL STANDARD

Rule 14 of the Federal Rules of Criminal Procedure permits a district court to "sever the defendants' trials" if the joinder of defendants for trial "appears to prejudice a defendant." Fed. R. Crim. P. 14(a). Where multiple defendants have been joined, "a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific



4

trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539. Whether such a "risk of prejudice" exists necessarily turns on "the facts of each case," and the evaluation of those facts and any resulting prejudice are "confided to the sound discretion of the trial court." *United States v. Feyrer*, 333 F.3d 110, 114 (2d Cir. 2003).

In exercising their discretion, courts in the Second Circuit consider a number of factors in determining whether to grant a motion to sever, including: (i) the number of defendants and counts; (ii) the complexity of the indictment; (iii) the estimated length of trial; (iv) disparities in the amount or type of proof offered against the defendants; (v) disparities in the degrees of involvement by defendants in the overall scheme; (vi) possible conflict between defense theories or strategies; (vii) potential prejudice from evidence admitted only against co-defendants but which is inadmissible or excluded as to a particular defendant; and (viii) potential prejudice if exculpatory evidence were unavailable in a joint trial, but would have been available to a defendant tried alone. *United States v. Guillen-Rivas*, 950 F. Supp. 2d 446, 457 (E.D.N.Y. 2013). While none of these factors are dispositive, each is intended to provide guidance as to "whether the jury would be 'reasonably able' to consider the evidence as to each defendant separately, independent of the evidence against his or her [co-defendants]." *United States v. Gallo*, 668 F. Supp. 736, 749 (E.D.N.Y. 1987). Applying these standards, courts in this district and this circuit regularly grant severance when the circumstances warrant it. *See, e.g.*, *United States v. Nordlicht*, No. 16-cr-00640 (BMC), 2018 WL 1796542, at *3 (E.D.N.Y. Apr. 16, 2018) (severing trial due to, among other reasons, "the positions that the parties will stake out at trial"); *United States v. Shkreli*, 260 F. Supp. 3d 247, 256–57 (E.D.N.Y. 2017) (severing trial due to serious risk that the jury would be prevented from making a reliable judgment about guilt or innocence); *United States v. Burke*, 789

5

F. Supp. 2d 395, 399 (E.D.N.Y. 2011) (severing trial for a defendant in a RICO action where that defendant's alleged actions were "limited in scope and in time" and where "overwhelming evidence" in co-defendants' trial would be inadmissible against severed defendant); *United States v. Locascio*, 357 F. Supp. 2d 536, 545 (E.D.N.Y. 2004) (granting severance under Rule 14 where prejudice likely to result from a joint trial); *United States v. Upton*, 856 F. Supp. 727, 735–37 (E.D.N.Y. 1994) (severing group of lesser-involved defendants from others in airplane record falsification case due to complexity of case and disparate evidence among defendants); *United States v. Gilbert*, 504 F. Supp. 565, 571 (S.D.N.Y. 1980) (severing trial for one of three defendants in a securities fraud conspiracy case because defendant "made a sufficient showing of disproportionate involvement in the overall scheme to raise a substantial risk that he would be prejudiced by the gradually accumulating effect of evidence" against more heavily involved defendants).

## ARGUMENT

I.  **At a Joint Trial, Mr. Grimes Would Be Substantially Prejudiced by Spillover Bias from the Different Roles He and Mr. Barrack Played and the False-Statement Charges With Which He Is Not Charged**

Severance is warranted here due to the spillover bias Mr. Grimes will suffer resulting from (i) the disparity in the weight of the evidence against Messrs. Barrack and Grimes, and (ii) the additional counts against Mr. Barrack.

The first five factors considered for severance—(1) the number of defendants and counts, (2) the complexity of the indictment, (3) the estimated length of the trial, (4) disparities in the amount or type of proof offered against the defendants, and (5) disparities in the degree of involvement by defendants in the overall scheme—all reflect concern for the same potential prejudice; namely, that "when many defendants are tried together in a complex case and they have markedly different degrees of culpability," there is a "heightened" risk that "evidence of a

6

codefendant's wrongdoing . . . erroneously could lead a jury to conclude that a defendant was guilty." *Zafiro*, *supra*, 506 U.S. at 539; *see also Upton*, 856 F. Supp. at 736 (finding unfair prejudice as to certain lesser-involved defendants). This kind of prejudice is particularly injurious to defendants who, among other things, "are charged in only a few of the many counts" and "who are involved in only a small proportion of the evidence." *United States v. Branker*, 395 F.2d 881, 888 (2d Cir. 1968).

Here, Mr. Grimes anticipates that the bulk of the evidence for the Section 951 charges will focus primarily on Mr. Barrack's relationship with foreign and US officials—which makes sense, seeing as Mr. Grimes was an assistant in his early twenties at the time of the alleged conduct, with no significant contacts of his own. After all, it was Mr. Barrack, not Mr. Grimes, who had the contacts and relationships at issue in this case, both domestically and abroad. While Mr. Grimes traveled with Mr. Barrack on various occasions described in the superseding indictment, he usually did not attend the meetings with foreign principals and, if he did, was a mere observer. *See* Dkt. 84-1. Any business meetings (attended by Mr. Barrack), inauguration events (hosted *by* Mr. Barrack), or policy papers (published by Mr. Barrack) were made possible because of Mr. Barrack's stature and connections, not Mr. Grimes'. To give just one illustrative example of the disparity of the evidence, seven of the government's discovery letters contain narrative summaries and excerpts of FBI 302 memoranda provided to defendants "in an abundance of caution." (Gov't Production Letters dated December 22, 2021; January 14, 2022; January 27, 2022; March 9, 2022; April 5, 2022; May 3, 2022; and May 31, 2022). Notably, not one of these interview summaries references Mr. Grimes; in contrast, they all mention Mr. Barrack.

The disparity in the weight of the evidence against the defendants in this case creates significant risk that the prosecution will "get into evidence against one defendant['s] acts or

7

omissions which color the case against all" (*Lutwak v. United States*, 344 U.S. 604, 623 (1953) (Jackson, J., dissenting)), or "that guilt will improperly 'rub off' on the others." *United States v. Mardian*, 546 F.2d 973, 977 (D.C. Cir. 1976). While Mr. Grimes recognizes that Count 1's aiding and abetting theory and the conspiracy charged in Count 2 warrant some joint evidence, Section 951(a) charges still require specific intent and proving that *each* defendant "agreed" to act as an agent "subject to the direction or control of" the UAE. *See* Dkt. 71 at 4, 10 ("Grimes MTD"). Yet, the indictment does not allege when, where, or how Mr. Grimes purportedly agreed to be an agent of the UAE, or who in the UAE controlled him, within the meaning of Section 951(a). *Id.* at 4. Given the evidence that will be focused on Mr. Barrack (his position as head of Colony, his close relationship with President Trump, his desire to be part of the Administration, the possibility of serving as an Ambassador or Special Envoy in the Middle East, etc.), there is the often-cited risk of spillover bias against Mr. Grimes based on the fact that Mr. Barrack, not Mr. Grimes, interacted with Emirati officials and communicated with foreign dignitaries and a jury may blend the acts of the two. This interferes with each defendant's right to a separate, fair and impartial verdict. *See, e.g.*, *Locascio*, 357 F. Supp. 2d at 543 ("While no one factor is dispositive, the ultimate question is whether the jury can keep the evidence relevant to each defendant separate and render a fair and impartial verdict as to each defendant."). If the government's motion to dismiss briefing is any indication, the risk of such spillover bias is not speculative, seeing as the government itself has already started blending Mr. Grimes with the others (alleging "the defendants" did certain acts) in an apparent effort to bolster its case against Mr. Grimes. *See* Dkt. 84-1 (chart illustrating mischaracterization of allegations in government's opposition brief).[1]

---

[1] On his part, Mr. Grimes will present evidence of his non-involvement in the acts alleged against the other defendants (as Mr. Barrack will no doubt do as to acts alleged against Mr. Grimes), and that creates the issue of competing defenses that severance is designed to avoid (discussed further *infra* Section II).

8

Particularly germane to the issue of severance are the false-statement charges against Mr. Barrack. Mr. Grimes is charged in only two of the superseding indictment's nine counts: Count 1, acting as an unregistered agent of a foreign government, and Count 2, conspiracy to commit the same offense. He is not charged in the remaining seven counts, which contain: obstruction of justice (Count 3) and making false statements to the government (Counts 4 through 9). The government's focus on these charges during trial can also spill over to prejudice Mr. Grimes in the eyes of the jury, and Mr. Grimes' natural response to these counts can prejudice Mr. Barrack. Each time there is evidence offered by the government to support its allegation, Mr. Grimes will be in the position of having to object or seek a limiting instruction, and then find a way to distance himself from any such evidence admitted. This could prejudice not just Mr. Grimes, but Mr. Barrack as well. Combined with the volume of evidence likely to be introduced against Mr. Barrack to support the Section 951 charges, this can effectively deny Mr. Grimes a fair trial, because the jurors cannot be expected to perform the "mental acrobatics" required by the numerous and complex limiting instructions that would be needed in a joint trial. *See United States v. Jones*, 16 F.3d 487, 493 (2d Cir. 1994) (citing *Nash v. United States*, 54 F.2d 1006, 1007 (2d Cir. 1932) (Hand, J.)). Because this real possibility of bias will only grow as trial progresses, particularly if the government continues to blend evidence as it has done to date, the Court should sever Mr. Grimes' trial from that of his co-defendant.

## II. A Joint Trial Can Result in Inconsistent Defense Theories and Will Inject Complicated *Bruton* Issues

A severance is also warranted given the different defense themes Mr. Grimes and Mr. Barrack will present and significant *Bruton* issues that may come into play.

As explained *supra* at 5, the sixth factor for courts to consider—"possible conflict between defense theories or trial strategies," *Guillen-Rivas*, 950 F. Supp. 2d at 457—further justifies a

9

severance. Just by pointing out the obvious—that Mr. Grimes was a young assistant and carried out the directions of his boss (Mr. Barrack), went with Mr. Barrack on some trips but was excluded from key meetings alleged in the indictment, and trusted Mr. Barrack and his advisors—Mr. Grimes' defense at trial will necessarily emphasize the differences between what Mr. Barrack and he did and did not do. Mr. Grimes will also have to assert at trial his position that there is no such thing as being a "derivative" agent, no matter what Mr. Barrack's status was at any time. *See* Grimes MTD at 11–13 (explaining that Section 951 requires specific intent and that there is no concept of a derivative agent under Section 951). Mr. Barrack has asserted the same point.[2] The statements that each defendant may make on these subjects create the real potential for conflicting theories in a joint trial. *See Nordlicht*, *supra*, 2018 WL 1796542, at *1, *3 (severing trial where one defendant, among other concerns, "will attempt to introduce out-of-court statements that he made to investigators" and noting the possibility of "innumerable objections during openings and witness examinations and cross-examinations" in a potential joint trial).

Defendants' respective defenses also present potential *Bruton* issues. "In *Bruton*, the Supreme Court recognized the risks posed by 'powerfully incriminating extrajudicial statements of a co-defendant, who stands accused side-by-side with the defendant,' which are then 'deliberately spread before the jury in a joint trial.' [] Such limiting instructions call for 'a mental gymnastic which is beyond, not only [the jury's] powers, but anybody[] else['s].'" *United States v. Taylor*, 745 F.3d 15, 28 (2d Cir. 2014) (quoting *Bruton v. United States*, 391 U.S. 123, 135–36 (1968) and *Nash*, 54 F.2d at 1007). Because Mr. Grimes ████████████████████ ████████████████████ and Mr. Barrack made statements during interviews, the

---

[2] Mr. Barrack has stated that "[t]he indictment nowhere alleges that Mr. Barrack knew that *Mr. Grimes or Mr. Al Malik were agents, let alone unregistered agents*, as would be required to hold Mr. Barrack liable as a principal[.]" Dkt. 83 at 23 (Barrack Reply Br. ISO MTD) (emphasis added); *see also id.* at 24, 25.

10

government can be expected to introduce Mr. Grimes' prior statements in support of the charges against Mr. Barrack and vice versa. If this occurs, Confrontation Clause issues for the co-defendants will be implicated. Accordingly, such statements would constitute potential incriminating extrajudicial statements made by a co-defendant in any joint trial. *See United States v. Glover*, 506 F.2d 291, 298–99 (2d Cir. 1974) (in case with multiple statements by co-defendants, minor defendant named in a single count should have been severed to avoid prejudice of trial with co-defendants who made multiple statements the prosecutors argued were inculpatory); *see also Bailey*, *supra*, 399 F. Supp. at 528 (granting severance to defendant mid-way through trial when "it became apparent that essential testimony from a codefendant would not be available to the defendant Bailey in the context of a joint trial."). Such constitutional concerns necessarily justify a severance in this case.

### III. Severance Is Also Warranted Given Mr. Grimes' Interactions with Other Colony Officials and Their Advisors

As noted above, part of Mr. Grimes' defense is that he never personally made any agreement with anyone in the Emirati government to be an agent of the UAE. The superseding indictment alleges that Mr. Grimes was the agent of Mr. Barrack because he was "employed" at Mr. Barrack's company and "worked directly with and reported to" him. Superseding Indict. ¶ 3. Part of the reason Mr. Grimes did not at any point question the work he did for Colony, or its Executive Chairman, was his knowledge of various Colony compliance officials and counsels' involvement in the work he did and observed, including Colony's General Counsel, who at one point became the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ and various outside counsel, some of whom continue to advise Colony's successor and/or Mr. Barrack. *See* Ex. 4 (BARRACKGRIMES_0005508) (▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮); Ex.

5 (BARRACKGRIMES_0009457) ().³ These interactions all go to Mr. Grimes' state of mind, and his belief that if any of the work he did for Colony or Mr. Barrack required action or inaction (including registration with a government agency), company counsel who were present or otherwise involved would have intervened or let him know. Because counsel for Mr. Grimes can question these individuals differently than Mr. Barrack's counsel, presenting this defense during trial may spill over to prejudice Mr. Barrack.

## CONCLUSION

For all of the aforementioned reasons, the Court should sever Mr. Grimes' trial from the trial of Mr. Barrack.⁴

Dated: June 6, 2022                                              Respectfully submitted,


/s/ *Abbe David Lowell*
Abbe David Lowell                                                Sofia Arguello
Christopher D. Man                                               Johanna Hudgens
Andrew E. Tauber                                                 WINSTON & STRAWN LLP
WINSTON & STRAWN LLP                                             200 Park Avenue
1901 L Street, NW                                                New York, NY 10166
Washington, DC 20036                                             SArguello@winston.com
ADLowell@winston.com                                             212-294-6700 (ph)
202-282-5000 (ph)                                                212-294-4700 (fax)
202-282-5100 (fax)

*Counsel for Defendant Matthew Grimes*

---

³ Notably, several law firms at one point or another served as corporate counsel for Colony and represented various of its employees, including Mr. Grimes, in connection with the OSC Investigation.

⁴ We have conferred with the government, and they oppose the motion to sever.

**CERTIFICATE OF SERVICE**

      I certify that on June 6, 2022, a copy of the foregoing was filed with the Court's electronic case filing system, thereby effecting service on counsel for all parties.

                                                  /s/ *Abbe David Lowell*
                                                  Abbe David Lowell