# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 1:21-cr-00371(BMC)(TAM) |
| | ) | Hon. Brian M. Cogan |
| MATTHEW GRIMES | ) | |

## MR. GRIMES' REPLY BRIEF IN SUPPORT OF HIS MOTION TO SEVER

Abbe David Lowell
Christopher D. Man
Andrew E. Tauber
WINSTON & STRAWN LLP
1901 L Street, NW
Washington, DC 20036
ADLowell@winston.com
202-282-5000 (ph)
202-282-5100 (fax)

Sofia Arguello
Johanna Hudgens
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
SArguello@winston.com
212-294-6700 (ph)
212-294-4700 (fax)

*Counsel for Defendant Matthew Grimes*

## INTRODUCTION

Given the government's tardy response, its reliance on the inapplicable appellate heightened standard for reviewing a severance order and then mischaracterizing the motion's arguments as failing that standard, and employing unnecessary pejoratives to declare a serious motion as "meritless" and "frivolous," the phrase "a day late and a dollar short" comes to mind. The government's opposition reads like a reason a court of appeals should affirm a district court's decision not to sever a case and not a response to a motion to the district court in the first place. In writing it so, the government loses sight of the fact that a decision to sever the trial is committed to this Court's discretion and does not seriously dispute that granting a severance is well within that discretion. Given the risk of prejudice to Mr. Grimes in a joint trial, caused by the totality of the issues raised in his motion, a severance would be a prudent exercise of this Court's discretion.

## ARGUMENT

**I.      THE GOVERNMENT FAILS TO RECOGNIZE THIS COURT'S BROAD DISCRETION IN DECIDING WHETHER TO SEVER THE TRIAL**

The government's opposition to Mr. Grimes' motion to sever jumps the gun by relying upon cases that would hold Mr. Grimes to a very high standard in arguing to the Second Circuit that this Court abused its discretion if the Court denied the motion, but this is the wrong inquiry.[1]

---

[1] The government tells us it is "clear that the defendant's burden is a heavy one," but the very case it cites for that proposition is addressing "the denial of a motion to sever," which the Second Circuit explained is "virtually unreviewable" under the abuse-of-discretion standard because the Court's discretion to grant or deny a severance is broad. *United States v. Cardascia*, 951 F.2d 474, 482 (2d Cir. 1991); Gov't Opp'n at 4 (citing *Cardascia*). To succeed, Mr. Grimes would have to show that the denial of his severance motion violated his constitutional rights, which is a high burden. Nevertheless, this Court does not need to find that high burden met to grant a severance; rather, that decision is committed to this Court's discretion, which it can exercise to insure a fair trial to all.

1

Before the Court now is Mr. Grimes' motion to sever, and the Second Circuit has made clear that "[t]he decision to grant or deny severance is 'committed to the sound discretion of the trial judge.'" *United States v. Spinelli*, 352 F.3d 48, 54 (2d Cir. 2003) (quoting *United States v. Blount*, 291 F.3d 201, 209 (2d Cir. 2002) (internal quotation marks omitted). Given the breadth of this Court's discretion, the government is correct that it would be difficult for Mr. Grimes to argue on appeal that a ruling against him was an abuse of discretion, but the converse is also true. The government would face an even-greater challenge in arguing to the Second Circuit that this Court abused its discretion by granting Mr. Grimes motion to sever. *See United States v. Bergrin*, 682 F.3d 261, 277 n.20 (3d Cir. 2012) (suggesting the government's sole recourse is to seek mandamus).

The government accurately recognizes that "[t]he decision whether to grant a motion for severance is committed to the sound discretion of the trial judge" (Gov't Opp'n at 5), and that Rule 14 does not require that the Court clear any great hurdles to grant a severance. It respects this Court's grant of a severance if, in this Court's judgment, joinder "appears to prejudice a defendant or the government." Fed. R. Crim. P. 14(a) ("If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires."). Rather than cabin this Court's discretion to order a severance, "Rule 14 leaves the determination of risk of prejudice and any remedy that may be necessary to the sound discretion of the district courts." *Zafiro v. United States*, 506 U.S. 534, 541 (1993). As the Supreme Court explained, "Rule 14's concern is to provide the trial court with some flexibility when a joint trial may appear to risk prejudice to a party," and that flexibility is provided to the court by affording it the discretion to rule either way. *United States v. Lane*, 474 U.S. 438, 449 n.12 (1986). The question for the Court then is whether there appears, in its

discretion, to be "a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539. In this case, any one of the issues raised in Mr. Grimes' severance motion might not support the Court's exercise of that discretion, but the total of the various risks would.

## II. THE COURT IS WELL WITHIN ITS DISCRETION TO GRANT A SEVERANCE

The government's opposition emphasizes that this is not the most compelling case of all time for a severance and that no defendant is entitled to a perfect trial, but neither rationale should hinder the Court from doing its best to ensure that each defendant receives as fair a trial as possible. That is particularly true here as the remedy requested would merely result in two rather short trials, each with only one defendant.

### A. Spillover

We can be certain that there are serious risks of prejudice with respect to a joint trial here. Mr. Grimes is charged in only two of the nine counts in the Superseding Indictment and, with respect to the two charges Mr. Grimes does face, the evidence will overwhelmingly concern Mr. Barrack. There is a serious risk of guilt by association. The government has accused Mr. Barrack of obstructing justice and making seven false statements to the government and, although Mr. Grimes was not charged with such offenses, there is a substantial risk of spillover prejudice by a jury that could find Mr. Grimes guilty due to his association with Mr. Barrack. Moreover, if Mr. Grimes were to be tried separately from Mr. Barrack, there is no question that Mr. Barrack's alleged false statements made during his interview with the government would be excluded from Mr. Grimes' trial as both irrelevant and prejudicial.

That risk is magnified because the entire thrust of the government's case rests upon Mr. Grimes being found guilty based on his association with Mr. Barrack. To make it plain, Mr.

Barrack may still have been charged without regard to any conduct by Mr. Grimes, but the opposite is not true. No matter what theory the government pursues against Mr. Grimes, it cannot deny that his actions came as a result of his work for Mr. Barrack.[2] The government's theory of the case is that the UAE wanted Mr. Barrack's assistance because of his close relationship to Donald Trump—a relationship that Mr. Grimes did not have. Mr. Grimes only comes into the picture because he was hired by Mr. Barrack's company, and then tasked by Mr. Barrack himself to assist in cultivating a business relationship with the UAE. While it is true that Mr. Barrack would have pursued the interactions described in the indictment even if Mr. Grimes had never worked for him, again, the opposite is not the case. Mr. Grimes had no motive, no reason, and no ability to reach out to anyone in the UAE except to assist his company and boss. There is no evidence that Mr. Grimes ever agreed to be the agent of anyone but Mr. Barrack through his employment, but the government's argument will be that Mr. Barrack became an agent of the UAE and, by working so closely with Mr. Barrack, Mr. Grimes must have either become a UAE agent himself or knowingly aided and abetted Mr. Barrack in doing so.

      B.      <u>Conflicting Defenses – Second Prosecutor</u>

Mr. Grimes' defense is clear. While he does not believe that Mr. Barrack ever acted as an agent of the UAE, he also had a good-faith belief that he was working solely as an employee of Colony Capital reporting to Mr. Barrack (founder, Executive Chairman, and significant shareholder of the company) and never as an agent of the UAE. The government mistakes Mr. Grimes' state-of-mind defense for an "advice-of-counsel" defense that Mr. Grimes has no intention of raising. Gov't Opp'n at 20–21. Mr. Grimes' point was not that he was aware of the possibility

---

[2] As the government itself describes it: "For example, Al Malik would frequently contact Grimes to locate and communicate with Barrack, and Grimes would regularly prepare materials requested by both Al Malik and Barrack." Gov't Opp'n at 11.

of being an agent and having to register and reached out to counsel to get advice to be sure. Rather, it is that he was surrounded by lawyers and compliance people, including Mr. Barrack himself, while working at Colony and, as occurred in other areas of his work, reasonably believed that he would have been told to do or not do something if he was acting as an agent who had to register. This is not a remote possibility. In the Court's denial of the defendants' motions to dismiss, when addressing the issue of specific intent, the Court referred to the decision in *United States v. Mancuso*, 420 F.2d 556, 557 (2d Cir. 1970), indicating there could be "circumstances which might move one to inquire as to the necessity of registration." Order (Dkt. 120) at 19. The Court then stated the point being made in this motion when it remarked: "[t]his is especially true concerning Barrack, a trained lawyer and businessman who claims to have worked in international political, legal, and business capacities throughout his career." *Id.* at 19–20. None of that can be said of Mr. Grimes, who would point out that difference.

The government, therefore, understates the issue of conflicting defenses as well. It is not that Mr. Grimes' defense is "mutually antagonistic" per se to Mr. Barrack's. He does not have to say, as in a murder or drug sale, "I didn't do it; he did." A Section 951 violation is not that type of offense. How someone "agrees" to become an agent and knows his status and then decides not to register are far different than how someone "agrees" to mislead a bank, submits applications to do so, and does not disclose the misrepresentation. Thus, Mr. Grimes can easily act as that "second prosecutor" that courts seek to avoid (*see, e.g.*, *United States v. Shkreli*, 260 F. Supp. 3d 247, 257 (E.D.N.Y. 2017) (finding a co-defendant's defense strategy "presents a realistic scenario that [a defendant] will be prosecuted, not only by the government, but also by [] his co-defendant")) because Mr. Grimes will show it was Mr. Barrack who decided what to say about the Middle East in media interviews, or what to submit to the Trump campaign for the draft Energy Speech, or to

5

share that draft with the UAE, or who interacted with US government officials regarding the Qatari blockade, or who put himself under consideration for a diplomatic position. In each instance, Mr. Barrack, not Mr. Grimes, was the ultimate decisionmaker, and when it mattered, Mr. Barrack left Mr. Grimes out of the communications and meetings entirely.

In the context of a Section 951 case, this is more than "mere finger pointing among codefendants," *United States v. Copeland*, 336 F. Supp. 2d 223, 224 (E.D.N.Y. 2004); *United States v. Casamento*, 887 F.2d 1141, 1154 (2d Cir. 1989), as the government tries to suggest. Gov't Opp'n at 13, 15. To be sure, Mr. Grimes believed that Mr. Barrack was acting on behalf of his company, Colony, and not as an agent of the UAE; nevertheless, Mr. Barrack could properly feel as though Mr. Grimes' counsel is acting as that second prosecutor because counsel will repeatedly emphasize at trial all that Mr. Barrack did and Mr. Grimes did not. *See* Gov't Opp'n at 17. For example, while the government's charges point to every trip Mr. Grimes went on, they fail to mention that he was never invited to or attended any of the meetings with UAE officials. Only Mr. Barrack attended those. And, contrary to the government's assertion (Gov't Opp'n at 15), Mr. Grimes' counsel will point out that Mr. Grimes had no involvement whatsoever with Mr. Barrack's June 2019 interview with the government from which Mr. Barrack's false statement charges are based, and where questions to him could also cast Mr. Grimes' counsel as a second prosecutor.

  C. <u>*Bruton* Risk</u>

Added to the other risks, the government acknowledges that it may introduce evidence that raises *Bruton* concerns, but it assures defendants that such statements can be sanitized or that the Court can prevent prejudice to Mr. Grimes through use of limiting instructions. Gov't Opp'n at 17–20. Nevertheless, the government has not disclosed the problematic statements that it seeks to introduce, even in a sanitized form, and even the authors of Rule 14 recognize that "[l]imiting

6

instructions to the jury may not in fact erase the prejudice." Fed. R. Crim. P. 14 (Notes of Advisory Committee) (1966); *see also United States v. Taylor*, 745 F.3d 15, 28 (2d Cir. 2014). Thus, there is that additional risk that a mistrial and severance will have to occur to avoid a *Bruton* error.

D. <u>Combined Impact of the Risks</u>

The government also picks each issue apart to argue that each, on its own, does not merit a severance. In doing so, it ignores the cumulative impact all of these issues can have to create an unfair trial. *See United States v. Upton*, 856 F. Supp. 727, 736 (E.D.N.Y. 1994) (granting severance of certain defendants under Rule 14 where no one issue was by itself dispositive and noting that "the court must consider them together" in determining whether to grant severance and if the evidence can be accurately attributed as to each defendant).

**CONCLUSION**

Given that there are concrete and serious risks of prejudice, the prudent course would be for this Court to exercise the discretion it has to sever the two cases now. At most, this will create two short trials, and any outcome of Mr. Barrack's trial that should go first could lead to a decision by the government not to proceed against Mr. Grimes. In that event, a severance will promote judicial efficiency by having only one streamlined trial. Based on the facts and circumstances of this case, the Court would be well within its discretion in granting a severance.

The Court should sever Mr. Grimes' trial from the trial of Mr. Barrack.

Dated: June 28, 2022                                                  Respectfully submitted,

/s/ *Abbe David Lowell*
Abbe David Lowell
Christopher D. Man
Andrew E. Tauber
WINSTON & STRAWN LLP
1901 L Street, NW
Washington, DC 20036
ADLowell@winston.com
202-282-5000 (ph)
202-282-5100 (fax)

Sofia Arguello
Johanna Hudgens
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
SArguello@winston.com
212-294-6700 (ph)
212-294-4700 (fax)

*Counsel for Defendant Matthew Grimes*

**CERTIFICATE OF SERVICE**

I certify that on June 28, 2022, a copy of the foregoing was filed with the Court's electronic case filing system, thereby effecting service on counsel for all parties.

/s/ *Abbe David Lowell*
Abbe David Lowell
