# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 1:21-cr-00371(BMC)(TAM) |
| | ) | Hon. Brian M. Cogan |
| MATTHEW GRIMES | ) | |

## MR. GRIMES' REPLY BRIEF IN SUPPORT OF HIS MOTION FOR RECONSIDERATION OF HIS MOTION TO DISMISS THE INDICTMENT FOR FAILURE TO CHARGE CRIMINAL INTENT PURSUANT TO *RUAN V. UNITED STATES* (U.S. JUNE 27, 2022)

Abbe David Lowell
Christopher D. Man
Andrew E. Tauber
WINSTON & STRAWN LLP
1901 L Street, NW
Washington, DC 20036
ADLowell@winston.com
202-282-5000 (ph)
202-282-5100 (fax)

Sofia Arguello
Johanna Hudgens
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
SArguello@winston.com
212-294-6700 (ph)
212-294-4700 (fax)

*Counsel for Defendant Matthew Grimes*

**INTRODUCTION**

The government is right that *Ruan v. United States*, 142 S. Ct. 2370, 2022 WL 2295024 (2022) (Dkt. 122-1 (Ex. A, *Ruan* slip opinion)), "addressed a different statute in a different context" (Dkt. 125 at 1), but the government's obvious point glosses over the fact that *Ruan* addressed how courts should construe criminal statutes "as a general matter," *Ruan*, Slip op. at 5. And while the government also is right that *Ruan* applied "ordinary and longstanding scienter requirements," the government is wrong that the decision did not "constitute a change in controlling law." (Dkt. 125 at 3 (quoting *Ruan*, slip op. at 5), 5.) *Ruan*, with its consolidated companion case *Kahn v. United States*, reversed decisions by the Tenth and Eleventh Circuits, and more importantly, it rejected the approach to statutory interpretation that all courts have followed in construing Section 951 to allow conviction without the government proving consciousness of wrongdoing. The government invites reversible error by asking this Court to ignore the Supreme Court's most recent guidance on how to construe criminal statutes and especially one as unique as Section 951.

**ARGUMENT**

**I.    *RUAN* CLARIFIED THAT THE PRESUMED LEVEL OF INTENT REQUIRED MUST BE SUFFICIENT TO ESTABLISH CONSCIOUSNESS OF WRONGDOING**

The government acknowledges "*Ruan*'s statement that courts are to 'read into criminal statutes that are silent on the required mental state . . . that mens rea which is necessary to separate wrongful conduct from otherwise innocent conduct,'" but it erroneously concludes that requirement can be met without requiring specific intent. (*Id.* at 5 (quoting *Ruan*, slip op. at 5).) To be sure, the Supreme Court repeatedly stated that the presumption of scienter must reflect "a vicious will," "that wrongdoing must be conscious to the criminal," demonstrate "consciousness of wrongdoing," sufficiently prove "that mens rea which is necessary to separate wrongful conduct

1

from 'otherwise innocent conduct,'" and accordingly requires knowledge of any "statutory clause [that] plays a critical role in separating a defendant's wrongful from innocent conduct." *Ruan*, slip op. at 5, 9 (cleaned up). Additionally, *Ruan* noted that "severe penalties counsel in favor of a *strong* scienter requirement," pointing to cases involving the same ten-year sentences as Section 951. *Id.* at 7 (emphasis added). Given the Supreme Court's repeated and heavy emphasis on the need for a strong scienter requirement that separates innocence from consciousness of wrongdoing, there can be no basis for stripping Section 951 of such a provision as the government insists.

Again, *Ruan* reflects the *opposite* approach of the courts that have construed Section 951 as dispensing with any requirement that there be consciousness of wrongdoing. As Mr. Grimes explained in his motion, the Eleventh Circuit concluded that statutory silence on the issue of specific intent meant that general intent is sufficient. (Dkt. 122 at 2 (citing *United States v. Campa*, 529 F.3d 980, 999 (11th Cir. 2008); *United States v. Duran*, 596 F.3d 1283, 1291 (11th Cir. 2010)).) By contrast, *Ruan* explained: "Applying the presumption of scienter, we have read into criminal statutes that are 'silent on the required mental state'—meaning statutes that contain no *mens rea* provision whatsoever—'that *mens rea* which is necessary to separate wrongful conduct from 'otherwise innocent conduct.'" Slip op. at 5 (internal citations omitted).[1] Thus, general intent is not sufficient where that does not convey a consciousness of wrongdoing.

---

[1] The government continues to misstate the significance of *United States v. Dumeisi*, 424 F.3d 566, 581 (7th Cir. 2005), which concluded in a single sentence that specific intent is not required. Mr. Grimes does not pretend that the Seventh Circuit said otherwise. (Dkt. 125 at 3 n.1.) Rather, he points out that this statement was *dicta* because the defendant "did not make this argument at trial, and the instruction given by the district court [was given] without objection," so the issue had been waived and was reviewable, if at all, on plain error. 424 F.3d at 581. However the government chooses to characterize *Dumeisi*, it unquestionably is a non-binding out-of-circuit opinion, and a conclusory single sentence of that opinion does not supply compelling legal reasoning worth following (Dkt. 122 at 3 n.1), especially given *Ruan*'s language to the contrary.

The touchstone here is whether the intent requirement establishes consciousness of wrongdoing, separating conduct that a defendant would know is wrongful from innocent conduct. Of course, the government is right that the Supreme Court has found that this standard can be met in different ways, *depending on the statute*. People who commit a *malum in se* offense, such as murder, for example, would have consciousness of wrongdoing under a general intent to kill standard, regardless of whether they have the specific intent of knowing that murder is a crime.

The government attempts to equate a violation of Section 951 with a *malum in se* crime, like murder, hoping to demonstrate that proof of general intent is sufficient. That analogy breaks down the second it is made. Unlike the inherent consciousness of wrongdoing associated with "thou shall not kill," the prohibition against acting as an agent of a foreign government without prior notice to the Attorney General is as different as two prohibitions can be. Murder is inherently wrong and, by contrast, acting as an agent of a foreign government is typically perfectly lawful.

The government's analysis first gets tripped up on linguistics in debating whether *Ruan* requires specific intent, but the holding of *Ruan* is clearly applicable whether it is characterized as a specific intent requirement or not. *Ruan*'s actual holding is not debatable, "the Government must prove beyond a reasonable doubt that the defendant knowingly or intentionally acted in an unauthorized manner," and plainly proving defendants know their conduct is unauthorized would establish consciousness of wrongdoing. Slip op. at 15–16.

The government seems to read *Ruan* as not requiring knowledge that a defendant's conduct is illegal (specific intent), only unauthorized, but that seems to ignore that this authorization is determined by the statute. 21 U.S.C. § 841(a) ("Except as authorized by this subchapter…."). Thus, *Ruan* requires that a defendant know their conduct is not authorized by a statue, and it is therefore a specific intent crime. But form here matters less than substance in any event, and *Ruan*

3

quite plainly requires proof of consciousness of wrongdoing.[2] The government's construction of Section 951 as a general intent statute does not do that.

The government then makes the astounding argument that "Section 951's requirement that a defendant know that he did not provide notification to the Attorney General is sufficient to separate wrongful from innocent conduct" because "Congress has determined that it is wrong." (Dkt. 125 at 5.) There is no dispute that Congress can identify something as wrongful by prohibiting it; rather, the issue here is whether a defendant has *consciousness* of wrongdoing. Congress declaring something illegal does not make everyone conscious that it is now wrongful. Indeed, *Ruan* and the numerous cases like it would have resulted in the affirmances of convictions, rather than the reversals, if Congress declaring something a crime were sufficient to demonstrate that a defendant knew his conduct was wrongful.

A defendant who has acted as an agent of a foreign government or done so knowing he has not provided notice to the Attorney General has no consciousness of wrongdoing, unless he knew that providing such notice is required. This is not a *malum in se* offense, like murder, where such conduct is inherently wrongful. These are obscure statutes that are not commonly known, which is why knowledge of such an offense is typically explicitly required. *See* 22 U.S.C. § 618(a)(1)

---

[2] The issue that divided the *Ruan* majority and concurrence was whether this exception under Section 841 should be treated more as an element, as the majority believed, or as an affirmative defense, as the concurrence believed. Importantly, the Court was unanimous that the convictions had to be reversed with the concurrence agreeing there had to be a "subjective good faith" defense. Slip op. at 13 (Alito, J., concurring). Thus, all Justices agreed the defendant should be given some opportunity to demonstrate innocent intent—something the government would deny Mr. Barrack and Mr. Grimes here.

The government also suggests that *Ruan*'s burden-shifting approach for a statutory exception may apply to Section 951 somehow (like the exception for doctors in *Ruan*), but there is no exception clause being modified by an intent requirement in Section 951. Rather, defendants argue that the government must show in all cases that the defendant knew of a duty to provide prior notice to the Attorney General because their conduct would make them agents of a foreign government.

(imposing criminal violations under the Foreign Agents Registration Act, but only when violated "willfully"). *Ruan* makes clear this Court should do the same in the face of statutory language that is "silent on the mental state," as is the case with Section 951. Slip op. at 5.

II. **THE GOVERNMENT MISAPPLIES THE "IGNORANCE OF THE LAW IS NO EXCUSE" MAXIM**

The government struggles in squaring *Ruan*'s presumption of consciousness of wrongdoing with "the traditional rule that ignorance of the law is not a defense" (Dkt. 125 at 4), but the Supreme Court has repeatedly highlighted the difference. The "ignorance of the law" maxim is a common-law maxim that originated when there were just a handful of offenses, involving *malum in se* crimes that everyone was presumed to know were unlawful. Modern courts find that "[a]lthough the general rule is that 'ignorance of the law or a mistake of law is no defense to criminal prosecution,' the modern proliferation of statutes and regulations 'sometimes ma[kes] it difficult for the average citizen to know and comprehend the extent of the duties and obligations imposed by the ... laws.'" *United States v. Liu*, 731 F.3d 982, 989 (9th Cir. 2013) (quoting *Cheek v. United States*, 498 U.S. 192, 199–200 (1991)). Accordingly, the Supreme Court remains mindful of the "ignorance of the law" maxim, but explains, "[o]n the other hand, due process places some limits on its exercise. Engrained in our concept of due process is the requirement of notice." *Lambert v. California*, 355 U.S. 225, 228–29 (1957). In reconciling these principles, the Supreme Court explained that it will construe statutes to require fair warning and impose a clear statement rule on Congress if it wants "ignorance of the law" to apply. *Ratzlaf v. United States*, 510 U.S. 135, 148 (1994). At times, the Court denigrates the maxim, explaining that it will construe the scienter requirements of a statute broadly "despite the legal cliché 'ignorance of the law is no excuse.'" *Flores-Figueroa v. United States*, 556 U.S. 646, 652 (2009); *see Bryan v. United States*, 524 U.S. 184, 194–95 (1998) (treating "highly technical statutes that presented the

danger of ensnaring individuals engaged in apparently innocent conduct" as requiring the Court to "carv[e] out an exception to the traditional rule" that "ignorance of the law is no excuse and require that the defendant have knowledge of the law"). Consciousness of wrongdoing should be presumed in Section 951 for the same reasons.

The maxim also is inapplicable here when the status element of an offense, here acting as an "agent of a foreign government" who has not given prior notice to the Attorney General, is not inherently wrongful. The Supreme Court rejected a similar argument that the government makes here in *Rehaif*, which concerned the crime of possession of a firearm by an alien illegally in the United States. As the Court explained:

> The Government also argues that whether an alien is "illegally or unlawfully in the United States" is a question of law, not fact, and thus appeals to the well-known maxim that "ignorance of the law" (or a "mistake of law") is no excuse. This maxim, however, normally applies where a defendant has the requisite mental state in respect to the elements of the crime but claims to be "unaware of the existence of a statute proscribing his conduct." In contrast, the maxim does not normally apply where a defendant "has a mistaken impression concerning the legal effect of some collateral matter and that mistake results in his misunderstanding the full significance of his conduct," thereby negating an element of the offense. Much of the confusion surrounding the ignorance-of-the-law maxim stems from "the failure to distinguish [these] two quite different situations."
>
> We applied this distinction in *Liparota*, where we considered a statute that imposed criminal liability on "whoever knowingly uses, transfers, acquires, alters, or possesses" food stamps "in any manner not authorized by the statute or the regulations." We held that the statute required scienter not only in respect to the defendant's use of food stamps, but also in respect to whether the food stamps were used in a "manner not authorized by the statute or regulations." We therefore required the Government to prove that the defendant knew that his use of food stamps was unlawful—even though that was a question of law.
>
> This case is similar. The defendant's status as an alien "illegally or unlawfully in the United States" refers to a legal matter, but this legal matter is what the commentators refer to as a "collateral" question of law. A defendant who does not know that he is an alien "illegally or unlawfully in the United States" does not have the guilty state of mind that the statute's language and purposes require.

*Rehaif v. United States*, 139 S. Ct. 2191, 2198 (2019) (citations omitted); *see also Elonis v. United States*, 575 U.S. 723, 735 (2015) (explaining that while "'ignorance of the law' is no excuse," the Court requires knowledge sufficient to establish a culpable state of mind and adding that the Court has rejected statutory interpretations that, for example, "would have criminalized 'a broad range of apparently innocent conduct' and swept in individuals who had no knowledge of the facts that made their conduct blameworthy") (citing *Liparota v. United States*, 471 U.S. 419, 426 (1985)).

The juxtaposition of *Rehaif* and *Liparota* is informative as to Section 951. In *Rehaif*, proving a defendant knew he was an alien in the United States *illegally* was sufficient to show consciousness of wrongdoing because that conduct was in and of itself illegal. In *Liparota*, it would not be sufficient to show someone's status as a food stamp user to establish consciousness of wrongdoing; rather, the person would need to know that a particular use of the food stamps was illegal. As in *Rehaif*, where a defendant had to know they were an unlawful alien, a defendant under Section 951 would need to know that they were acting unlawfully as an agent of a foreign government. Being an "agent of a foreign government" is not unlawful unless no prior notice to the Attorney General is given, so no one would know of their status as an unlawful agent unless they were aware of the duty to give notice. Similarly, as in *Liparota*, being an agent of a foreign government is not necessarily any more illegal than using food stamps, so knowledge that you are doing an otherwise lawful activity in a wrongful manner is required. Absent such consciousness of wrongdoing, *Ruan* is not satisfied.

## CONCLUSION

The Court should dismiss the Superseding Indictment for failure to allege that Mr. Grimes committed an act that he knew was a crime.

Dated: July 14, 2022                            Respectfully submitted,

/s/ *Abbe David Lowell*
Abbe David Lowell
Christopher D. Man
Andrew E. Tauber
WINSTON & STRAWN LLP
1901 L Street, NW
Washington, DC 20036
ADLowell@winston.com
202-282-5000 (ph)
202-282-5100 (fax)

Sofia Arguello
Johanna R. Hudgens
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
SArguello@winston.com
212-294-6700 (ph)
212-294-4700 (fax)

*Counsel for Defendant Matthew Grimes*

**CERTIFICATE OF SERVICE**

I certify that on July 14, 2022, a copy of the foregoing was filed with the Court's electronic case filing system, thereby effecting service on counsel for all parties.

/s/ *Abbe David Lowell*
Abbe David Lowell