# WILLKIE FARR & GALLAGHER LLP

787 Seventh Avenue
New York, NY 10019-6099
Tel: 212 728 8000
Fax: 212 728 8111

July 29, 2022

**_VIA ECF_**

The Honorable Brian M. Cogan
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

**Re: _United States v. Rashid Sultan Rashid Al Malik Alshahhi_, et al., 1:2l-cr-371 (BMC) (S-1)**

Dear Judge Cogan:

      We represent Thomas J. Barrack, Jr. in the above captioned matter. This letter is being jointly submitted by Mr. Barrack and Mr. Grimes (together, the "Defendants"). We write to respectfully request that the Court issue the subpoena attached as Exhibit A (the "Proposed Subpoena"), which seeks certain material documents (the "Requested Documents" or "Requests") from DigitalBridge,[1] the Defendants' former company, the global investment management firm referred to extensively throughout the Superseding Indictment as "Company A." We request that Your Honor permit the defense to file a redacted version of this submission on the public docket because filing an unredacted version would require the defense to prematurely disclose trial strategy.

### I.   Background

      The Superseding Indictment alleges that, while the Defendants were acting as agents of the United Arab Emirates, ("the UAE"), they "made numerous and concerted efforts . . . to solicit the assistance of United Arab Emirates officials . . . in obtaining hundreds of millions of dollars for" DigitalBridge "by United Arab Emirates sovereign wealth funds." (Sup. Ind. ¶ 96.) Two specific sovereign wealth funds referenced in the Superseding Indictment as "UAE SWF 1" and "UAE SWF 2" are Mubadala and Abu Dhabi Investment Authority ("ADIA"). In particular, the Superseding Indictment references: (1) a $74 million investment that Mubadala made with DigitalBridge in a downtown Los Angeles office building called One California Plaza, and (2) a $300 million investment that ADIA made in a digital infrastructure fund managed by DigitalBridge called Digital Colony Partners. (Sup. Ind. ¶¶ 109-110). The Superseding Indictment implies that these investments, made by institutional investors based on the analysis

---

[1] As defined in the Proposed Subpoena, "DigitalBridge," shall mean DigitalBridge Group, Inc. (formerly Colony Capital, Inc.), together with its affiliates, subsidiaries, and any funds managed by DigitalBridge Group, Inc. "DigitalBridge" shall also include Digital Bridge Holdings LLC before its acquisition by Colony Capital, Inc. in or around July 25, 2019.

of their own professional staffs, were somehow a quid pro quo from UAE's government leaders in exchange for Mr. Barrack's supposed agency.

As described below, the narrow set of documents that the Defendants seek from DigitalBridge in Requests 1-9 are critical to proving at trial that: (1) ███████████████████████████████ not because of any agreement that the Defendants made to act as an unregistered agent of the UAE; and (2) ███████████████████████████████. The remaining requests (Requests 10-16) are additionally critical to Mr. Grimes proving at trial that: (1) ███████████████████████████████; and (2) that Mr. Grimes had an assistant role and his work was similar to that of other executive assistants, special project managers, analysts, and/or vice presidents at DigitalBridge.

## II.   Legal Standard

Pursuant to Rule 17(c) of the Federal Rules of Criminal Procedure, the parties in a criminal case may issue a subpoena that "order[s] the witness to produce any books, papers, documents, data, or other objects the subpoena designates." Fed. R. Crim. P. 17(c)(1). A court may direct a subpoena recipient to produce the requested items "before trial[.]" *Id.* A court may quash or modify a subpoena only "if compliance would be unreasonable or oppressive." Fed. R. Crim. P. 17(c)(2).

In *United States v. Nixon*, the Supreme Court held that when the Government wishes to issue a Rule 17(c) subpoena for pre-trial production, the Government must show:

> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general "fishing expedition."

418 U.S. 683, 699-700 (1974).

In *United States v. Nachamie*, Judge Scheindlin explained that, because the prosecution can use the grand jury to investigate and has broad authority to issue grand jury subpoenas without any judicial oversight, a more lenient standard than *Nixon* is warranted when considering defense applications for Rule 17(c) subpoena. That is because defendants, unlike the Government, have no other means by which to issue pre-trial subpoenas. 91 F. Supp. 2d 552, 562-63 (S.D.N.Y. 2000). Subsequently, in *United States v. Tucker*, Judge Scheindlin held that the *Nixon* standard "is inappropriate where production is requested by (A) a criminal defendant; (B) on the eve of trial; (C) from a non-party; (D) where the defendant has an articulable suspicion that the documents may be material to his defense. A defendant in such a situation need only show that the request is (1) reasonable, construed as 'material to the defense,' and (2) not unduly oppressive for the producing

party to respond." 249 F.R.D. 58, 66 (S.D.N.Y. 2008); *see also United States v. Soliman*, No. 06CR236A, 2009 WL 1531569, at *4 (W.D.N.Y. May 29, 2009) (applying the *Tucker* standard and granting defendant's motion for the issuance of a Rule 17(c) subpoena); *United States v. Rajaratnam*, 753 F. Supp. 2d 317, 321 n.1 (S.D.N.Y. 2011) ("it remains ironic that a defendant in a breach of contract case can call on the power of the courts to compel third-parties to produce any documents 'reasonably calculated to lead to the discovery of admissible evidence,' . . . while a defendant on trial for his life or liberty does not even have the right to obtain documents 'material to his defense' from those same third-parties. Applying a materiality standard to subpoenas *duces tecum* issued to third parties under Federal Rule of Criminal Procedure 17(c) would resolve that puzzle at great benefit to the rights of defendants to compulsory process and at little cost to the enforcement of the criminal law, since Rule 17(c) permits the government to issue subpoenas as well.").

As recently as last year, Judge Rakoff held that the *Tucker* standard applies to a Rule 17(c) subpoena issued by a criminal defendant to a third party, observing that *Tucker* "aligns criminal discovery more closely with modern principles of liberal discovery and better balances the discovery powers of Government and defense." *United States v. Weigand*, 520 F. Supp. 3d 609, 613 (S.D.N.Y. 2021)

The Second Circuit has expressly declined to address the question of whether the *Nixon* or the *Tucker* standard is appropriate to apply to a Rule 17(c) subpoena issued by a criminal defendant to a third party. *See United States v. Bergstein*, 788 F. App'x 742, 746 (2d Cir. 2019); *Weigand*, 520 F. Supp. 3d at 613 ("The Second Circuit in *Bergstein* refused to reject *Tucker*'s more liberal approach, leaving the question open.").

### III. Argument

Here—unlike in *Nixon*—it is the defense that is moving for a Rule 17(c) subpoena to be issued upon a non-party. Accordingly, the more lenient *Tucker* standard ought to apply. *Weigand*, 520 F. Supp. 3d at 612. The Proposed Subpoena meets the *Tucker* standard because it (1) is reasonable, as it seeks documents "material to the defense," and (2) will not impose an unduly oppressive burden on DigitalBridge. *Tucker*, 249 F.R.D. at 66. However, even under the stricter *Nixon* standard, the Proposed Subpoena passes muster because the Requested Documents are (1) relevant, (2) admissible, and (3) specifically defined. *Nixon*, 418 U.S. at 699.

#### Requests 1 and 2

Requests 1 and 2 seek documents reflecting communications to, from, between, or among specific individuals at DigitalBridge demonstrating that those individuals—and not the Defendants—were responsible for soliciting and securing the investments referenced in the Superseding Indictment. These requests satisfy the standard for a Rule 17(c) subpoena.

First, the documents sought in Requests 1 and 2 are relevant and material to the defense. Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. A document is "material to the defense" if "there is a strong indication that it will play an important role in uncovering admissible evidence, aiding witness

preparation, corroborating testimony, or assisting impeachment or rebuttal." *United States v. Stein*, 488 F. Supp. 2d 350, 356-57 (S.D.N.Y. 2007) (*quoting United States v. Lloyd*, 992 F.2d 348, 351 (D.C. Cir. 1993) (internal quotation marks omitted)); *see also United States v. Stevens*, 985 F.2d 1175, 1180 (2d Cir. 1993) (evidence is material "if it could be used to counter the government's case or to bolster a defense").

The documents sought in Requests 1 and 2 are relevant and material because they would demonstrate that the investments referenced in the Superseding Indictment were not compensation for an agreement that Mr. Barrack entered into to act as the UAE's agent. Rather, they were the result of solicitation efforts spearheaded by DigitalBridge employees other than the Defendants. Such evidence tends to undermine the Government's allegation that Mr. Barrack agreed to act subject to the UAE's direction or control in exchange for UAE sovereign wealth fund investments with his company.

Second, the documents sought in Requests 1 and 2 are admissible. "Generally, relevant evidence . . . is admissible for all purposes except as provided otherwise by the Constitution or by Act of Congress." *United States v. Wey*, 252 F. Supp. 3d 237, 254 (S.D.N.Y. 2017) (quoting *United States v. Griffith*, 385 F.3d 124, 126 (2d Cir. 2004)); *Rajaratnam*, 753 F. Supp. 2d at 321 n.1 (noting that Rule 17(c) subpoena is "a way for a defendant to examine documents he believes to exist that would be relevant to, and therefore presumptively admissible in, his defense."). To satisfy the admissibility requirement, the defense must merely make a "preliminary showing" of the "potential evidentiary uses of [] material." *Nixon*, 418 U.S. at 700-02 (holding that there is a "sufficient preliminary showing" that material sought as part of a Rule 17(c) subpoena is admissible where requesting party has demonstrated "valid potential evidentiary uses" for the requested material); *Rajaratnam*, 753 F. Supp. 2d at 323 (documents sought are sufficient to satisfy the admissibility test of *Nixon* when they have "potential evidentiary uses.").

The communications sought in Requests 1 and 2 are admissible. They are relevant and would be offered for a nonhearsay purpose. The statements would be offered, not for the truth of any statement made in the communications, but rather for (1) the fact of the communications themselves, and (2) the Defendants' absence from the relevant communications.

For example, communications in which individuals listed in Requests 1 or 2 solicit the UAE sovereign wealth funds to participate in the investments referenced in the Superseding Indictment are relevant regardless of the truth of any assertion made in the communications. What is important is that the individuals identified in the requests—and not the Defendants—were in communication with the UAE sovereign wealth funds about the investments. Take for instance a communication involving the investment in the Digital Colony Partners fund, referenced in ¶ 110 of the Superseding Indictment, in which DigitalBridge's CEO Marc Ganzi pitches the fund to ADIA's head of infrastructure. Even if Mr. Ganzi were "puffing" or exaggerating the merits of the investment he was pitching, that fact would not make the communication any less relevant. What is important to the defense is that it is Mr. Ganzi, and not the Defendants, engaging in such a communication.

The same goes for internal DigitalBridge communications—from which the Defendants are excluded—about soliciting the investments from UAE sovereign wealth funds. The truth of any assertion made in such communications is irrelevant. What is relevant to the defense is that

the specified DigitalBridge employees are discussing the solicitation of the investments without the Defendants' participation. Consequently, the documents sought in Requests 1 and 2 are admissible.

Third, the documents sought in Requests 1 and 2 are also specific enough to satisfy Rule 17(c). The requests are "sufficiently narrowly focused on a group of records likely to contain helpful documents," about the investments referenced in the Superseding Indictment and thus "cannot be said to be . . . a fishing expedition." *United States v. Weisberg*, No. 08–CR–347 (NGG)(RML), 2011 WL 1327689, at *7 (E.D.N.Y. Apr. 5, 2011). The Requests are limited by:

- **Topic**: Requests 1 and 2 only seek communications reflecting that specified individuals were responsible for soliciting and securing the investments referenced in the Superseding Indictment.

- **Custodian**: Requests 1 and 2 only seek documents from individuals that discovery produced by the Government suggests solicited and secured the investments referenced in the Superseding Indictment.

- **Time Period**: Requests 1 and 2 are limited to the period from which DigitalBridge began soliciting the investments referenced in the Superseding Indictment to when the respective deals closed.

These requests are narrower than other 17(c) subpoenas issued by courts in this Circuit. For example, the subpoena granted by the court in *United States v. Rajaratnam* was far broader, requesting ". . . documents regarding compensation and investments in [the defendant's employer's] funds that appear relevant to motive; certifications of company policy regarding inside information that seem relevant to scienter; and communications regarding three issuers from time periods when Rajaratnam was allegedly tipped about major events involving those companies." 2011 WL 335170 at *3. Yet, because the requests in the *Rajaratnam* subpoena appeared to be "tailored to documents admissible for those purposes," the court concluded that it was "apparent" that the application for issuance of the subpoena was "made in good faith" and "not intended as a general fishing expedition." *Id.* (citation omitted). Request 1 and 2 are even narrower in subject matter than the subpoena granted in *Rajaratnam*, and the requested communications undoubtedly exist as part of DigitalBridge's internal processes. Indeed, DigitalBridge has produced other company communications to the Government, which have been turned over to the defense in discovery. Requests 1 and 2 are thus sufficient to satisfy the specificity requirement of Rule 17(c). *See Weisberg*, 2011 WL 1327689, at *6 ("Rule 17(c) subpoena should be issued 'where the movant knows that the material sought exists and can identify it with specificity, even if he is ignorant of the exact content of the material.'"); *Rajaratnam*, 753 F. Supp. 2d at 321 n.1 ("[I]n the context of a subpoena to a third party . . ., requiring the defendant to specify precisely the documents he wants without knowing what they are borders on rendering Rule 17 a nullity.").

### Requests 3 through 5

Likewise, Requests 3 through 5 seek investment trackers, and the communications they reference, which demonstrate that individuals other than the Defendants were responsible for

securing the UAE investments referred to in the Superseding Indictment. These documents are also relevant, admissible, and specific enough to satisfy Rule 17(c).

Like the communications sought in Requests 1 and 2, the investment trackers for the investments referenced in the Superseding Indictment demonstrate that individuals other than the Defendants spearheaded the solicitation efforts and secured the investments. Indeed, the two investment trackers identified in Requests 4 and 5 *do* demonstrate that individuals other than the Defendants spearheaded the solicitation efforts and secured the investments. For example, the investment tracker identified in Request 5: (i) indicates that the "team members" assigned to the investment team are DigitalBridge employees *other* than the Defendants, namely: Ben Jenkins, Marc Ganzi, Kevin Smithen, and Sylvio Tabet; and (ii) provides a chronology of the steps undertaken by those employees throughout the progression of the transaction. But while those investment trackers have been produced to the Defendants, the documents reflecting the communications that are referenced in the respective chronology largely do not appear to have been produced. Thus, the defense seeks the investment trackers and the communications they reference as relevant and material to his defense insofar as they undermine the Government's theory that the investments were compensation for Mr. Barrack's alleged agency.

The investment trackers and their underlying communications sought in Request 3 through 5 are also admissible. They are not barred as hearsay because they qualify as business records under Fed. R. Evid. 803(6). Employees at DigitalBridge created the investment trackers on a software program called Salesforce to record all contact with potential investors in the normal course of DigitalBridge's business. The investment trackers are therefore admissible. *See United States v. Kaiser*, 609 F.3d 556, 574 (2d Cir. 2010) (noting that Rule 803(6) "favors the admission of evidence rather than its exclusion if it has any probative value at all").

Finally, the documents sought in Request 3 through 5 are sufficiently specific. They are limited to particular types of identifiable documents that DigitalBridge maintained in the normal course of its business with respect to specific investments referenced in the Superseding Indictment.

### Request 6

Request 6 seeks documents sufficient to show the complete list of investors/co-investors in the investments referenced in the Superseding Indictment, . Such evidence is relevant because it would demonstrate  is evidence that the Defendants had not agreed to further the UAE's interests, subject to the UAE's direction or control.

Request 6 also seeks evidence that is admissible and specific, in that it only requests investor records related to the discrete investments referenced in the Superseding Indictment.

### Requests 7 & 8

Requests 7 and 8 seek due diligence requests made by Mubadala and ADIA with respect to the investments referenced in the Superseding Indictment. Such evidence is relevant because it shows that ███████████████████████████████████████████████████████████████████████████████████████████████ Thus, the due diligence requests made by Mubadala and ADIA with respect to the investments referenced in the Superseding Indictment constitute powerful proof that these investments were not compensation to Mr. Barrack in exchange for his acting as the UAE's agent.

The documents sought in Requests 7 and 8 are also admissible. Because they are requests for information, they are not "assertions" within the meaning of Fed. R. Evid. 801, and thus are not hearsay. *United States v. Coplan*, 703 F.3d 46, 84 (2d Cir. 2012). And since the documents sought in Requests 7 and 8 are narrow categories of documents related to the transactions referenced in the Superseding Indictment, they are sufficiently specific to satisfy Rule 17(c).

### Request 9

Request 9 seeks documents reflecting communications to, from, between, or among several specified investor relations and compliance employees of DigitalBridge demonstrating their awareness of Mr. Barrack's interactions with government officials in the UAE. Such communications are relevant because they tend to prove that Mr. Barrack's interactions with UAE officials were a normal part of his job, and not part of an illegal scheme to act as an unregistered foreign agent in the U.S.

The documents sought in Request 9 are also admissible. They are not offered for the truth of a particular statement. The mere discussion of Mr. Barrack's interactions with UAE officials among DigitalBridge's employees—regardless of the truth or falsity of any assertion in those communications—is circumstantial evidence that those employees were aware of Mr. Barrack's relationship and communications with UAE leaders. The documents requested are also sufficiently specific to satisfy Rule 17(c) in that they are limited by subject matter, custodian, and the time period in which the Government alleges that Mr. Barrack acted as the UAE's agent.

### Request 10

Request 10 seeks documents reflecting the hiring of Talal Al-Sabah, son of the Ambassador of Kuwait to the United States, as an intern at DigitalBridge, and communications reflecting that individual's job duties and direct supervisors while employed by or with DigitalBridge. Such records are relevant because they tend to show ████████████████████████████████████████████████████

The employment records sought in Request 10 are admissible because they are business records under Fed. R. Evid. 803(6). *See United States v. Kaiser*, 609 F.3d 556, 574 (2d Cir. 2010) (noting that Rule 803(6) "favors the admission of evidence rather than its exclusion if it has any probative value at all"). Moreover, the documents requested are sufficiently specific to satisfy

Rule 17(c) in that they are limited by subject matter and the time period in which the Government alleges that the Defendants acted as the UAE's agent.

### Request 11

Request 11 seeks documents reflecting any communications about the possibility of Mr. Grimes attending, participating, or enrolling in flight attendant or flight safety school, training, or related programming in the period between April 2016 and April 2018. Such records are relevant because they tend to show Mr. Grimes' role and responsibilities while employed at DigitalBridge.

The documents sought in Request 11 are also admissible. They are not offered for the truth of a particular statement. The mere discussion of Mr. Grimes' attending or enrolling in flight attendant training or programming—regardless of the truth or falsity of any assertion in those communications—is circumstantial evidence that Mr. Grimes was a gofer and had an assistant role at DigitalBridge. The documents requested are also sufficiently specific to satisfy Rule 17(c) in that they are limited by subject matter and confined to the time period in which the Government alleges that Mr. Grimes acted as the UAE's agent.

### Request 12

Request 12 seeks documents reflecting communications to, from, between, or among certain individuals at DigitalBridge regarding efforts to raise funds during certain trips referenced in the Superseding Indictment. Such records are relevant because they tend to show that the purpose of such overseas trips was to solicit and secure investments for DigitalBridge, and that that interactions with foreign officials were a normal part of the individuals' job responsibilities.

The communications sought in Request 12 are also admissible. They are relevant and would be offered for a non-hearsay purpose. The statements would be offered, not for the truth of any statement made in the communications, but rather for (1) the fact of the communications themselves, and (2) establishing that the purpose of such trips was to raise funds for DigitalBridge, thereby contradicting the narrative that the Defendants took part in an illegal scheme to act as unregistered foreign agents on behalf of the UAE. Request 12 is sufficiently tailored to satisfy Rule 17(c) in that the requested communications are limited by subject matter (country), custodian, and the time period.

### Request 13

Request 13 seeks documents reflecting trips that Thomas J. Barrack took to foreign countries other than the UAE from April 2016 to April 2018 related to investor relations or business development for DigitalBridge on which Matthew Grimes accompanied Mr. Barrack.

The documents and communications sought in Request 13 are admissible. They are relevant and would be offered for a nonhearsay purpose. The statements would be offered, not for the truth of any statement made in the communications, but rather to show that (1) Mr. Grimes' duties included serving as an assistant and travel coordinator for Mr. Barrack on trips together, and (2) Mr. Barrack and Mr. Grimes traveled abroad to many countries, beyond just the UAE, to solicit and secure investments for DigitalBridge. Request 13 is sufficiently narrow to satisfy Rule 17(c)

in that the requested documents are limited by subject matter, custodian, and the time period in which the Government alleges that the Defendants acted as the UAE's agent.

### Request 14

Request 14 seeks PowerPoint presentations prepared by Matthew Grimes for Thomas J. Barrack in advance of a December 2015 trip to Qatar where Mr. Barrack met with Sheikh Khalifa bin Hamad bin Khalifa Al Thani. Such documents are relevant because they tend to show that █████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

The documents sought in Request 14 are also admissible because they are business records under Fed. R. Evid. 803(6). *See United States v. Kaiser*, 609 F.3d 556, 574 (2d Cir. 2010) (noting that Rule 803(6) "favors the admission of evidence rather than its exclusion if it has any probative value at all"). Moreover, the documents requested are sufficiently specific to satisfy Rule 17(c) in that they are limited by subject matter, scope, and time period.

### Request 15

Request 15 seeks documents and communications sufficient to show efforts by employees or consultants of DigitalBridge to solicit investments from sovereign wealth funds located in countries other than in the UAE in the period between April 2016 and April 2018. The documents and communications sought in Request 15 are both relevant and admissible. First, the documents would constitute business records and would be admissible under Fed. R. Evid. 803(6). Second, the communications are admissible because they would be offered for a non-hearsay purpose. The statements would be offered, not for the truth of any statement made in the communications, but rather would constitute circumstantial evidence to show that DigitalBridge employees or consultants raised capital from sovereign wealth funds located all over the world, not just in the UAE, and that doing so was in the normal course of DigitalBridge's business.

Additionally, Request 15 is sufficiently narrow to satisfy Rule 17(c) in that the requested documents are limited by subject matter and the time period in which the Government alleges that the Defendants acted as the UAE's agent.

### Request 16

Request 16 seeks analyses and other deal-related documents prepared by Mr. Grimes in connection with DigitalBridge deals outside the UAE.

The documents sought in Request 16 are also admissible. They are not barred as hearsay because they qualify as business records under Fed. R. Evid. 803(6). They are also relevant because they tend to show that ████████████████████████████████████████████████████████████████████████████████ The documents sought in Request 16 are sufficiently specific to satisfy Rule 17(c) in that the documents are limited to particular types of identifiable documents that DigitalBridge maintained in the normal course of its business with respect to specific countries, regions, and investments referenced in Request 16.

## IV.  Request to Redact Trial Strategy

The Defendants respectfully request that the Court allow the defense to redact trial strategy in this submission so as to not disclose it to the government. Courts in this Circuit have traditionally permitted defendants seeking the issuance of Rule 17(c) subpoenas to avoid having to prematurely disclose trial strategy from the Government in doing so. *See e.g., Wey*, 252 F. Supp. 3d at 243–44; *United States v. Weissman*, No. 01 CR 529(BSJ), 2002 WL 1467845, at *1 (S.D.N.Y. July 8, 2002) (same); *United States v. Reyes*, 162 F.R.D. 468, 470 (S.D.N.Y. 1995).

Sincerely,

| | |
|---|---|
| WILLKIE FARR & GALLAGHER LLP | WINSTON & STRAWN LLP |
| /s/ Michael S. Schachter | /s/ *Abbe David Lowell* |
| Michael S. Schachter | Abbe David Lowell |
| Randall W. Jackson | Christopher D. Man |
| Steven J. Ballew | Sofia R. Arguello |
| | Johanna Rae Hudgens |
| O'MELVENY & MYERS LLP | |
| | *Counsel for Defendant* |
| Daniel M. Petrocelli | *Matthew Grimes* |
| James A. Bowman | |
| *Counsel for Defendant* | |
| *Thomas J. Barrack*, Jr. | |

Cc (via ECF): Hiral D. Mehta
Nathan Daniel Reilly
Ryan C. Harris
Samuel P. Nitze
Craig R. Heeren
Matthew John McKenzie