IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 1:21-cr-00371(BMC)(TAM) |
| | ) | Hon. Brian M. Cogan |
| MATTHEW GRIMES | ) | |

# MR. GRIMES' MOTION IN LIMINE TO EXCLUDE HEARSAY STATEMENTS BY THOMAS BARRACK

Abbe David Lowell
Christopher D. Man
Andrew E. Tauber
WINSTON & STRAWN LLP
1901 L Street, NW
Washington, DC 20036
ADLowell@winston.com
202-282-5000 (ph)
202-282-5100 (fax)

Sofia Arguello
Johanna Rae Hudgens
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
SArguello@winston.com
212-294-6700 (ph)
212-294-4700 (fax)

*Counsel for Defendant Matthew Grimes*

**INTRODUCTION**

The government has indicated that it plans to introduce out-of-court statements by Mr. Barrack, including his statements to law enforcement, which are inadmissible as to Mr. Grimes. Mr. Barrack's statements to law enforcement are particularly problematic as they are testimonial statements, and their admission would violate Mr. Grimes rights under the Confrontation Clause. Although the government may be able to use this evidence in a trial against Mr. Barrack alone, that evidence should be excluded from a joint trial involving Mr. Grimes as a Defendant.

**ARGUMENT**

**I.      THE COCONSPIRATOR HEARSAY EXCEPTION IS INAPPLICABLE**

Mr. Grimes incorporates the arguments from Defendants' motions in limine seeking to exclude coconspirator hearsay because the government has failed to establish that any conspiracy existed at all (i.e., requiring the knowledge of any participant that another had not registered as required) or that Mr. Grimes was part *and* to do so with independent evidence and without reliance on the very hearsay statements they seek to admit. FRE 801(d)(2)(E); *see also id.* (statements themselves cannot be used to prove conspiracy existed).

Any claim by the government that Mr. Barrack's statements to law enforcement qualify for the coconspirator hearsay exception would flounder as well because they came too late to be in furtherance of any conspiracy with Mr. Grimes. The Superseding Indictment alleges a conspiracy existed "between April 2016 and April 2018," but all the obstruction and false statement counts against Mr. Barrack concern statements that he made to law enforcement on June 20, 2019. (Dkt. 105 ¶116.) That is more than a year after the alleged conspiracy had ended and, plainly, Mr. Barrack's statements cannot be in furtherance of a conspiracy that no longer existed. Additionally, the Supreme Court has long made clear: "It is settled that in federal conspiracy trials the hearsay exception that allows evidence of an out-of-court statement of one conspirator to be admitted

against his fellow conspirators applies only if the statement was made in the course of and in furtherance of the conspiracy, and not during a subsequent period when the conspirators were engaged in nothing more than concealment of the criminal enterprise." *Dutton v. Evans*, 400 U.S. 74, 81 (1970); *see Krulewitch v. United States*, 336 U.S. 440, 444 (1949) (refusing to apply coconspirator hearsay exceptions to statements made after the conspiracy ended and refusing to infer an agreement to cover-up the conspiracy), *accord Lutwak v. United States*, 344 U.S. 604, 616–17 (1953).

This evidence is prejudicial to Mr. Grimes. The center of gravity of the government's entire case against Mr. Grimes is his connection to Mr. Barrack. Not even the government believes that the UAE would seek out then twenty-two-year-old Mr. Grimes alone to be an agent. Rather, the government claims that the UAE sought out Mr. Barrack for his clout and connections. Its case against Mr. Grimes rests entirely upon his work as an assistant to Mr. Barrack. The assumption is that the government will argue that Mr. Barrack allegedly lied about the things he did because he knew that his conduct was wrong. That leads to a distinct possibility that, because Mr. Grimes will be said to carry out Mr. Barrack's actions, the jury would be asked to infer that Mr. Grimes must have known it was wrong too.

Nor are limiting instructions adequate. Justice Jackson got it exactly right when he explained: "The naive assumption that prejudicial effects can be overcome by instructions to the jury, all practicing lawyers know to be unmitigated fiction." *Krulewitch*, 336 U.S. at 443 (Jackson, J., concurring); *see also Jackson v. Denno*, 378 U.S. 368, 388 n.15 (1963). "[L]imiting instructions of this type require the jury to perform 'a mental gymnastic which is beyond, not only their powers, but anybody's else.'" *United States v. Lipscomb*, 702 F.2d 1049, 1062 (D.C. Cir. 1983) (en banc) (quoting *Nash v. United States*, 54 F.2d 1006, 1007 (2d Cir.) (L. Hand, J.)). A

jury that may rely upon this evidence to convict Mr. Barrack would have a hard time recalibrating the evidence against Mr. Grimes by excluding this evidence.

## II. MR. BARRACK'S STATEMENTS ARE BARRED BY THE CONFRONTATION CLAUSE

### A. The Confrontation Clause Bars Mr. Barrack's Testimonial Statements

The Supreme Court has made clear that the Confrontation Clause applied to testimonial statements and that "interrogations by law enforcement officers falls squarely in that class." *Davis v. Washington*, 547 U.S. 813, 823 (2006) (quoting *Crawford v. Washington*, 541 U.S. 36, 53 (2004)). That is particularly true when "the interrogation was part of an investigation into possibly criminal past conduct." *Michigan v. Bryant*, 562 U.S. 344, 357 (2011) (citations omitted). Given that the government alleges that Mr. Barrack's statements were made at an interview that was scheduled in response to a grand jury subpoena, and allegedly intended to obstruct a grand jury investigation, his statements to law enforcement were testimonial. (Dkt. 105 ¶119.) Therefore, it would be constitutional error to admit Mr. Barrack's statements without affording Mr. Grimes an opportunity to confront him.

### B. The Confrontation Clause Bars Statements That Would Otherwise Be Admissible As Coconspirator Hearsay

Even if the coconspirator hearsay exception were applicable to Mr. Barrack's statements, the Confrontation Clause would still preclude them. The Supreme Court made clear that the only hearsay exceptions that can trump the Confrontation Clause are those that existed at the Founding,[1] and the coconspirator hearsay exception is not among them. *Giles v. California*, 554 U.S. 353,

---

[1] Because the Confrontation Clause was modeled after the confrontation clauses in various state declarations of right adopted between 1776 and 1784, our understanding of the Clause rests upon the Framers' understanding of that right as it then existed. The Bill of Rights, including the Confrontation Clause, was approved by the First Congress and submitted to the states on September 25, 1789, and Madison took the language of the Confrontation Clause from the proposed amendments New York had submitted in 1788.

3

358 (2008) (quoting *Crawford*, 541 U.S. at 54) ("[T]he Confrontation Clause is 'most naturally read as a reference to the right of confrontation at common law, admitting only those exceptions established at the time of the founding.'"). *Giles* carefully examined the pre-Founding Era understanding of the "forfeiture by wrongdoing exception" and struck down a modern understanding of that exception that deviated from the Founding Era's understanding. Adam Mansfield, *Giles v. California And Forfeiture By Wrongdoing: Timing Is Everything*, 38 Cap. U. L. Rev. 673, 674 (2010) (*Giles* makes clear "the only exceptions to this re-worked Confrontation Clause standard were those that existed at the time of the founding of our nation.")

Like the "forfeiture by wrongdoing exception" examined in *Giles*, the modern co-conspirator hearsay exception did not exist when the Confrontation Clause was adopted. In fact, such evidence was precluded at common law. The defense is not aware of any pre-Founding Era case where the government obtained admission of any unsworn, out-of-court statement by an unavailable declarant under the co-conspirator hearsay exception, and we highly doubt that the government can cite to such a case for this Court.

Sir Walter Raleigh's conviction in 1603 on the basis of an out-of-court statement by an alleged co-conspirator led to a reformation of the law to make clear that statements by a co-conspirator can be used against the speaker, it cannot be admitted against any other alleged co-conspirator. *See, e.g.*, *Tong's Case*, 84 Eng. Rep. 1061, 1062 (K.B. 1662). The Supreme Court took note of this reform in *Crawford*. 541 U.S. at 45.

Founding Era treatises did not identify the existence of the coconspirator hearsay exception because it did not evolve until much later. *See, e.g.*, Chief Baron Geoffrey Gilbert, *The Law of Evidence* 107-08 (1754 ed.); *id.* at 149-50 (1777 ed.); *id.* at 149-50 (1788 ed.); Francis Buller, *An Introduction to the Law Relative to Trials at the Nisi Prius* 289-90 (1772 ed.). Likewise, the

leading justice of the peace manual, Richard Burn's *Justice of the Peace and Parrish Officer* (1755), failed to note the exception as well.

Additionally, two-decades following the Founding, Chief Justice Marshall *rejected* the exception in the trial of Aaron Burr. Marshall noted, "it is said by some, the declarations of all the conspirators, may be given in evidence on the trial of any one of them, for the purpose of proving the conspiracy" and it was argued that such an exception applied in that case. *United States v. Burr*, 25 F. Cas. 187, 195 (C.C.D. Va. 1807). But Marshall emphasized that, even under that view, the evidence could not be used to inculpate a defendant: "I believe there is no case where the words of an agent can be evidence against his principal on a criminal prosecution." *Id.* at 195. Marshall could not accept that "mere verbal declarations made in [the defendant's] absence, may be evidence against him." *Id.* at 193. And he grounded his decision to exclude the out-of-court inculpatory co-conspirator statements in confrontation terms: "a man should have a constitutional claim to be confronted with the witnesses against him." *Id.*; *see also id.* at 198 ("It is then the opinion of the court, that the declarations of third persons ... not made in the presence of the accused, cannot be received in evidence in this case."). Marshall emphasized the importance of not allowing the hearsay rule to be hollowed out by broadening its exceptions: "I know of no principle in the preservation of which all are more concerned. I know none, by undermining which, life, liberty and property, might be more endangered. It is therefore incumbent on courts to be watchful of every inroad on a principle so truly important." *Id.*; *see also Queen v. Hepburn*, 11 U.S. (7 Cranch) 290, 297 (1813) (Marshall, C.J.) (emphasizing that the early Supreme Court was "not inclined to extend the exceptions further than they have already been carried"). Thus, the modern coconspirator hearsay exception was not a Founding Era exception to the hearsay rule. *See Giles*, 554 U.S. at 366 (rejecting California's forfeiture-by-wrongdoing hearsay exception to

5

Confrontation because it was broader that any exception "established at the time of the founding").

## CONCLUSION

Mr. Barrack's out-of-court statements should be excluded.

Dated: August 15, 2022

/s/ *Abbe David Lowell*
Abbe David Lowell
Christopher D. Man
Andrew E. Tauber
WINSTON & STRAWN LLP
1901 L Street, NW
Washington, DC 20036
ADLowell@winston.com
202-282-5000 (ph)
202-282-5100 (fax)

Respectfully submitted,

Sofia Arguello
Johanna Rae Hudgens
WINSTON & STRAWN LLP
200 Park Avenue
New York, NY 10166
SArguello@winston.com
212-294-6700 (ph)
212-294-4700 (fax)

*Counsel for Defendant Matthew Grimes*

# CERTIFICATE OF SERVICE

I certify that on August 15, 2022, a copy of the foregoing was filed with the Court's electronic case filing system, thereby effecting service on counsel for all parties.

/s/ Abbe David Lowell
Abbe David Lowell