UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
    UNITED STATES OF AMERICA,

                            Plaintiff,

                 - against -

    AL MALIK ALSHAHHI, et al.,

                          Defendants.

------------------------------------------------------------ X

**MEMORANDUM DECISION AND ORDER**

21-cr-371 (BMC)

**COGAN**, District Judge.

Before the Court is defendants' motion for reconsideration of the Court's Memorandum Decision and Order which resolved various pretrial disputes. See United States v. Alshahhi, No. 21-cr-371, 2022 WL 2239624 (E.D.N.Y. June 22, 2022). Shortly after entry of this Court's decision, the Supreme Court decided Ruan v. United States, 142 S. Ct. 2370 (2022). In light of Ruan, defendants argue that the Court should reconsider its determination that the Government was not required to allege specific intent regarding the notification element in the superseding indictment.

For the following reasons, motion is DENIED.

## ANALYSIS

In Ruan, the Supreme Court overturned the convictions of two doctors for violating 21 U.S.C. § 841. Section 841 makes it a federal crime, "[e]xcept as authorized . . . for any person *knowingly or intentionally* . . . to manufacture, distribute, or dispense . . . a controlled substance." 21 U.S.C. § 841(a) (emphasis added). Although, as doctors, the defendants could prescribe such substances to their patients, a prescription was only authorized when a doctor issued it "for a legitimate medical purpose . . . acting in the usual course of his professional practice." 21 C.F.R.

§ 1306.04(a). Interpreting the statute, the Supreme Court found that Section 841's overt "knowingly or intentionally" *mens rea* applied to the statute's "except as authorized" clause. Ruan, 142 S. Ct. at 2371.

In doing so, Ruan reaffirmed and applied the principle that "when we interpret criminal statutes, we normally 'start from a longstanding presumption, traceable to the common law, that Congress intends to require a defendant to possess a culpable mental state.'" Id. at 2377 (quoting Rehaif v. United States, 139 S. Ct. 2191, 2195 (2019)). This "culpable mental state" is "scienter" or "the degree of knowledge necessary to make a person criminally responsible for his or her acts." Id. In recent years, the Supreme Court has increasingly concluded that, even when "not the most grammatical reading of the statute," a statute's scienter provision will apply to all its non-jurisdictional elements. Id. at 2379 (quoting United States v. X-Citement Video, 513 U.S. 64, 70 (1994)).

Ruan is the Supreme Court's latest decision to opine on the applicability of this presumption of scienter for statutes that have a general scienter provision. See id. at 2379 (citing Liparota v. United States, 471 U.S. 419 (1985), X-Citement Video, 513 U.S. 64, and Rehaif, 139 S. Ct. 2191). The distinguishing issue in Ruan was that unlike in these earlier cases, the statutory provision at issue was not an element, but a clause. Extending its earlier decisions, the Supreme Court determined that, in certain cases, a statute's scienter provision may also apply to clauses that are "sufficiently like an element in respect to the matter at issue . . . as to warrant similar legal treatment." Id. at 2380. Two concerns seem to have animated the Supreme Court's decision to reach this conclusion with respect to Section 841.

First, in Section 841 prosecutions, "a lack of authorization is often what separates wrongfulness from innocence." Id. 2377. This is because of Section 841's unique, burden-

shifting framework. A defendant who is otherwise authorized to dispense controlled substances, such as a doctor, first produces evidence that his conduct was authorized, at which point the burden shifts back to the Government. Once a defendant has met his burden, his conduct would presumptively be legal.

This means, in some Section 841 prosecutions, that authorization is the *only* "thing distinguishing wrongful from proper conduct." Id. at 2370. Because of this, the Supreme Court found that applying the statute's general scienter provision to the authorization clause comported with precedent regarding reading explicit scienter clauses to modify "those other statutory terms that separate wrongful from innocent acts." Id. at 2371 (internal quotations and citations omitted).

Second, even if applying the statute's scienter provision to its authorization clause required a defendant to have knowledge of the law, doing so was necessary to cure due process concerns. Despite the familiar maxim that ignorance of the law is no defense to prosecution, in prior decisions, the Supreme Court had relaxed this requirement where there was a risk of sweeping in "individuals who had no knowledge of the facts that made their conduct blameworthy." Elonis v. United States, 575 U.S. 723, 735 (2015). This is because although a defendant need not "know that his conduct is illegal before he may be found guilty," id., he must have a consciousness of wrongdoing, which requires that he have knowledge of "'the facts that make his conduct fit the definition of the offense' even if he does not know that those facts give rise to a crime." Id. (quoting Staples v. United States, 511 U.S. 600, 608 n.3 (1994)).

For example, in Liparota, the Supreme Court explained that "[a] strict reading of the statute with no knowledge-of-illegality requirement would thus render criminal a food stamp recipient who, for example, used stamps to purchase food from a store that, *unknown to him*,

charged higher than normal prices to food stamp program participants." Liparota, 471 U.S. at 426 (emphasis added). Similarly, in Rehaif, the problem was that a defendant would not "know that he is an alien 'illegally or unlawfully in the United States'" and because he lacked knowledge of this fact, he would then not "have the guilty state of mind that the statute's language and purposes require." Rehaif, 139 S. Ct.at 2198.

A statute's vagueness, especially with regards to its elements that separate wrongful from innocent conduct, can exacerbate this problem. If a statue is ambiguous regarding exactly what conduct is prescribed, a defendant might not understand that his actions met this standard. Therefore, without a clear statement, or knowledge of the law to ensure scienter, it may become impossible to separate legal innocence from wrongful conduct.

Because of ambiguity surrounding the sole clause separating wrongful from innocent conduct, Section 841 implicates these due process concerns. The Supreme Court noted that the regulation defining the bounds of authorization – a "doctor's prescribing authority" – is both "vague" and "highly general." Ruan, 142 S. Ct. at 2380. This meant that the "conduct prohibited by such language (issuing invalid prescriptions) is . . . 'often difficult to distinguish from the gray zone of socially acceptable . . . conduct' (issuing valid prescriptions)." Id. at 2378 (quoting United States v. United States Gypsum Co., 438 U.S. 422, 441 (1978)). Therefore, in some instances, not requiring specific intent would risk "swe[eping] in individuals who had no knowledge of the facts that made their conduct blameworthy." Elonis, 575 U.S. at 735 (internal quotations omitted). A defendant being prosecuted under Section 841 might not understand the bounds of what conduct was acceptable and might genuinely believe his conduct met this standard. Such a defendant would not know or understand the facts that gave rise to his violation of the law, and, barring specific intent, a line-drawing problem arises.

The statute at issue in the instant case – Section 951 – is readily distinguishable from Section 841. Most apparently, it does not contain a scienter provision. This does not mean that scienter is not required. Courts must also read scienter into statutes that are "silent on the required mental state" for all non-jurisdictional elements as well. Ruan, 142 S. Ct. at 2377. But where a statute is silent on *mens rea*, "the presumption in favor of scienter" might only require reading into the statute such "proof of *general intent* – that is, that the defendant possessed knowledge with respect to the *actus reus* of the crime." Carter v. United States, 530 U.S. 255, 268 (2000) (emphasis added). For that reason, this Court (in the decision under reconsideration here) and others have read into Section 951 a *mens rea* of general intent, meaning that a defendant must both *know* that he did not provide notice, and that he was acting as an agent, as defined by the statue. See United States v. Bailey, 444 U.S. 394, 405 (1980) ("knowledge" corresponds loosely with the concept of general intent); see also United States v. Duran, 596 F.3d 1283 (11th Cir. 2010) (Section 951 is a general intent crime); United States v. Dumeisi, 424 F.3d 566, 561 (7th Cir. 2005) (same).

Construing Section 951 to require general intent as to the notification element is all that is required.[1] The Supreme Court's holding in Ruan did not alter this. To the extent that Ruan required specific intent or knowledge of the law, as explained above, this was due to concerns unique to Section 841. Section 951 does not implicate the same type of due process concerns. Like in Section 841, illegality may turn solely on one element – here the notification element. However, unlike the authorization clause in Section 841, this element is a binary, with a clear standard of conduct. A defendant necessarily knows whether he provided notice without

---

[1] Defendants' argument that "Ruan demonstrated that the courts that have rejected a specific intent requirement for Section 951 reached that result by applying the exact opposite of the presumption of criminal intent required by the Supreme Court" is therefore incorrect.

referencing a standard of behavior provided by the law. Requiring specific intent as to the notification element would not separate legal innocence from wrongful conduct. Further, a defendant would necessarily have knowledge of "the facts that make his conduct fit the definition of the offense" even if he does not know that those facts give rise to a crime. Staples, 511 U.S. at 608 n. 3. He consequently also has a legally adequate consciousness of wrongdoing.[2]

Moreover, because of the clarity of the notification element, Section 951 prosecutions, as a practical matter, typically turn on whether a defendant acted as an agent within the meaning of the statute. The Government has already alleged that defendants "knowingly and intentionally" agreed to act as agents. This is all the law requires.

## CONCLUSION

As defendants' arguments are premised on an overreading of Ruan, their motion for reconsideration is therefore DENIED.

**SO ORDERED.**

Digitally signed by Brian M. Cogan
_____
U.S.D.J.

Dated: Brooklyn, New York
         August 21, 2022

---

[2] Defendants' argument that Section 951 does not fall into the "few exceptions" where the "presumption of scienter does not apply, including "regulatory or public welfare offense[s]", is also incorrect. Ruan, 142 S. Ct. at 2371. The exceptions to which defendants refer are strict liability offenses, meaning that they require no scienter at all nor that the Government prove that an accused had knowledge of the facts that make his actions criminal. No one has suggested that Section 951 is such an offense.